ELECTRONICALLY FILED
3/17/2023 2:08 PM
27-CV-2022-900217.00
CIRCUIT COURT OF
DALLAS COUNTY, ALABAMA
LYNNETHA R. BENNETT, CLERK

## IN THE CIRCUIT COURT FOR
## DALLAS COUNTY ALABAMA

Patrick Braxton, James Ballard,     )
Barbara Patrick, Janice Quarles, and  )
Wanda Scott,       )
       )
    Plaintiffs,     )
v.       )    **Case No. CV-2022-900217**
       )
Haywood Stokes, III, Gary Broussard,  )
Jesse Donald Leverett, Voncille Brown, Thomas, )
Lynn Thiebe, Willie Richard Tucker and  )
People's Bank of Greensboro,   )
       )
    Defendants     )

### FIRST AMENDED COMPLAINT

The Plaintiff Patrick Braxton, James Ballard, Barbara Patrick, Janice Quarles and Wanda Scott complain against the Defendants as follows:

### INTRODUCTION

1.    The Plaintiff Patrick Braxton accomplished something no other black resident of the City of Newbern ("City" or "Newbern") had ever accomplished since the City's founding in 1854: he was duly elected Mayor of the City. However, the minority white residents of the City, long accustomed to exercising total control over city government, refused to accept this outcome. Braxton had legally managed to become the first black Mayor because for as long as anyone can remember, the office of Mayor and City Council member had been treated as a "hand me down" by the white residents of the City.

2.    Because no resident had lawfully qualified as a candidate for the City council positions, Mayor Braxton appointed Plaintiffs Barbara Patrick, Wanda Scott, Jan Quarter and James Ballard to the open City council positions.  Upon the realizing that Mayor Braxton intended



EXHIBIT
H

on appointing black residents to the City council, the Defendant Stokes (who had acted as Mayor prior to Braxton) set in action a plan to thwart a majority black City Council from taking office and to effectively prevent the first black Mayor from exercising the duties and powers of his new job. Defendant Stokes found willing participants in this plot in the City council members he had appointed and other powerful persons/entities such as the Defendant Lynn Thiebe (the Post Master) and the Defendant People's Bank of Greensboro.

3.      Mayor Braxton and Plaintiffs Ballard, Patrick, Quarles and Scott bring this lawsuit against the Defendants to put an end to a continuing conspiracy to deprive the black residents of the City of Newbern meaningful representation in City government.

## PARTIES

4.      Plaintiff Patrick Braxton is a black resident of the Town of Newbern. He is the duly elected Mayor of the Newbern.

5.      Plaintiff James Ballard is a black resident of the Town of Newbern. He is an eligible voter for City and was sworn in as a City council member on November 2, 2020.

6.      Plaintiff Barbara Patrick is a black resident of the City of Newbern. She is an eligible voter for City and was sworn in as a City council member on November 2, 2020.

7.      Plaintiff Janice Quarles is a black resident of the City of Newbern. She is an eligible voter for City and was sworn in as a City council member on November 2, 2020.

8.      Plaintiff Wanda Scott is a black resident of the City of Newbern. She is an eligible voter for City and was sworn in as a City council member on November 2, 2020.

2

9.      Defendant Haywood Stokes, III is a white resident of the Town of Newbern. Mr. Stokes previously acted as the Mayor of Newbern. Mr. Stokes currently holds himself out as an elected member of the Town Council.

10.      Defendant Gary Broussard is a white resident of the City of Newbern. Mr. Broussard previously acted as an appointed City Council member. Mr. Broussard currently holds himself out as an elected member of the Town Council.

11.      Defendant Jesse Donald Leverett is a white resident of the City of Newbern. Mr. Leverett previously acted as an appointed City Council member. Mr. Leverett currently holds himself out as an elected member of the Town Council.

12.      Defendant Voncille Brown Thomas is a black resident of the City of Newbern. Upon information and belief, Voncille Brown Thomas was appointed to the Town Council. Ms. Thomas currently holds herself out as an elected member of the Town Council.

13.      Defendant Willie Richard Tucker is a white resident of the City of Newbern. Mr. Tucker previously acted as an appointed City Council member. Mr. Tucker currently holds himself out as an elected member of the Town Council.

14.      Defendant Lynn Thiebe is a white resident of Marengo County, Alabama. Ms. Thiebe holds the position of post master and oversees postal services for the City of Newbern.

15.      Defendant People's Bank of Greensboro is a chartered financial institution and headquartered

## FACTUAL ALLEGATIONS

16.      The town of Newbern AL (hereinafter "Newbern" or "Town") is located in Hale County AL. It is a class 8 municipality under Alabama's Municipal Corporations Code; meaning that it is a town with fewer than 6,000 residents. Based on the most recent census data,

3

approximately 85 percent of the residents of Newbern are African American. Indeed, Newbern has been a majority-minority city for at least the last 50 years.

17.    Newbern has also had a mayor-council form of government for decades.    In addition to the office of Mayor, there are five (5) Town council positions.    Under the Municipal Corporations Code (hereinafter the Code), municipal elections for Mayor and City council are supposed to be held on the fourth Thursday of August every four years.    The Code requires the Mayor (by a certain date) to notify the public of an upcoming election for Mayor and City council and that residents who have lived in the municipality for at least 90 days may qualify to run for office. Ala. Code § 11-46-22.

18.    During the period relevant to this complaint, a resident satisfying the 90 day period and wishing to have their name appear on a ballot for an elected position was required to file a statement of candidacy and a statement of economic interests on or before the third Tuesday of July proceeding the election. Ala. Code § 11-46-25.

19.    In the event only one individual has filed a statement of candidacy for an office by 5:00 P.M. on the third Tuesday in July preceding the date set for the election of municipal officers, then that individual shall for all purposes be deemed elected to office. Ala. Code § 11-46-26.

20.    Though the Mayor of Newbern has been required to provide notice and conduct an election for Mayor and Town Council every four years, Newbern has not held an election in decades until October 2020 as described below. Instead, the office of Mayor was "inherited" by a hand-picked successor and the newly designated Mayor then selected the Town Council members.

21.    Because the office of mayor was treated as a "hand me down" position and all prior mayors have been white residents, no black resident of Newbern has ever served as mayor prior to

4

November 2020. Only one black person has ever been selected to service as a Town council member; in other words, the council still remains a majority white body.

### Plaintiff Braxton Challenges the White Majority

22.     In April 2020, Plaintiff Braxton decided to run for the office of Mayor of Newbern. He had concerns that the Town Council and Mayor were not responding to the needs of the majority black community. These concerns only grew with the Town's response to COVID-19.

23.     Defendant Stokes was acting as Mayor in 2020. Stokes had appointed Defendants Broussard, Leverette, Thomas and Tucker to the Town Council prior to May, 2020.

24.     In April 2020, Braxton also told Stokes that he planned on qualifying as candidate for Mayor. Stokes gave Braxton wrong information about how to qualify and what was needed to qualify. However, he knew that Braxton planned on running for Mayor of Newbern.

25.     Under the Alabama Code, Stokes was required to give notice of an election by July 7, 2020 and inform residents that they had until July 21, 2020 to qualify. Even though Stokes knew that Braxton planned on qualifying for Mayor, he did not provide notice nor did the Town council pass any ordinances related to conducting an election. No preparations were made for conducting an election.

26.     Though Defendant Stokes did not comply with the notice requirements for the 2020 municipal elections and after consulting with the Alabama Conference of Black Mayors, Plaintiff Braxton filed his statement of candidacy and statement of economic interests with the circuit clerk for Hale County and online with the State of Alabama.

27.     On July 21, 2020, the last day to qualify, Braxton gave the then City clerk Lynn Williams a money order for $50.00 (which was the qualifying fee) and the statement of candidacy. Williams accepted the payment and told Braxton that she wasn't going to let Stokes get her

involved in his mess. Williams did not elaborate on this comment but resigned as City clerk a few months later.

28.     Braxton was the only person who qualified as a candidate for the position of Mayor. Stokes did not bother to qualify as a candidate even though he knew that Braxton planned on qualifying since April 2020. Upon information and belief, Stokes knew or reasonably believed that he would not prevail in an election for the office of Mayor against Braxton.

29.     Because he was the only person qualified, Braxton was elected Mayor of the Town of Newbern by operation of law. He was Mayor-elect as of July 22, 2020. He was also the first Black mayor of the Town of Newbern in the 165 years since its founding.

30.     Not only was Braxton the only person who qualified as a candidate for the office of Mayor, he was the only person to qualify as a candidate for **any** elected municipal office including the Town council positions. As explained above, the practice was not to hold elections but simply pick who served as mayor and Town council members.

### The  Defendants Stokes, Broussard, Thomas and Tucker

### Conspire to Unlawfully Remain in Office

31.     No resident of Newbern timely qualified for a position on the Town council in part because the Defendants Stokes, Broussard, Leverette, Thomas and Tucker failed to provide the necessary notice and/or take steps to hold an election.  The County probate Judge Arthur Crawford told Braxton that he could appoint the Town council members because no one qualified for these positions.  This was consistent with the past practice and, in fact, the Town council members had all been appointed to their positions.  As a result, Braxton immediately set about asking residents of the Town to accept an appointment to the Town council. Braxton asked black and white

6

residents of the Town about serving on the Town council.  No white resident Braxton had asked agreed to serve on the Town council.

32.     Word of Braxton's recruitment of new Town council members spread in the community.  The "acting" Mayor Stokes and his appointed Town Council members decided to depart from the past practice of the Mayor naming the Town Council members if no resident qualified as a candidate for the Town Council.

33.     To prevent Braxton from appointing a majority black Town council, the Defendants Stokes, Broussard, Leverette, Thomas and Tucker agreed to hold a secret meeting and adopt resolutions to conduct a special election.  This is the first time in decades (if ever) that an ordinance setting an election was proposed.

34.     In August, 2020, the Defendants Stokes, Broussard, Leverette, Thomas and Tucker met in secret to adopt a "special" election ordinance. Notice of this meeting was not published.

35.     At this secret meeting, Defendant Stokes presented an "ordinance" setting a special election for the Town Council positions because the council members had allegedly "forgotten" to qualify as candidates for the 2020 municipal elections.  Under the ordinance, a special election for purposes of electing council members was scheduled for October 6, 2020.

36.     No notice of a special election to be held on October 6, 2020 was ever published.

37.     As a result of the "special election" ordinance, the Defendant Stokes, Leverett, Tucker, Broussard and Thomas-Brown filed statements of candidacy for the Town Council positions to be elected at the special election. Not surprisingly, Stokes, Broussard, Leverett, Tucker and Thomas-Brown were the only persons who qualified.

7

38.     The Town Council appointed by Stokes effectively reappointed themselves and Stokes as the "new" Town Council because notice of the October 6, 2020 special election was not provided to Braxton and other residents of Newbern.

39.     The Defendants unlawfully assumed their new terms as Town Council members in November 2020.

40.     Unaware that the Defendants had secretly set a special "election" and filed paperwork to qualify for the Town council positions, Braxton obtained the consent of Plaintiffs Ballard, Patrick, Quarles and Scott to serve on the Town council.

41.     On November 2, 2020, Plaintiffs Braxton, Ballard, Patrick, Quarles and Scott were sworn into office. The Oath of Office was filed with the County Probate Judge's office.

42.     Ten days later on November 12, 2020, the Defendants Stokes, Broussard, Leverett, Thomas and Tucker executed an Oath of Office at the City Attorney's office and, upon information and belief, the City Attorney filed these oaths with the Probate Judge. None of the Defendants informed Braxton or the Plaintiffs that they were taking this action.

43.     The Plaintiffs held a meeting in the Town Hall in late November 2020. This was the one and only meeting they held in the Town Hall as the new majority black Town government because the Defendants acted to prevent the Plaintiffs from accessing any information regarding the Town, destroyed or removed documents from the Town Hall and locked down the Town Hall, preventing any access to the facility. Thus, the Defendants accomplished the goal of the conspiracy, namely, to prevent a majority black Town council from taking power.

44.     The Defendants had to strip Plaintiff Braxton of all the duties, privileges and powers of the office of Mayor in order to retain control of Newbern. As detailed below, the key to the success of this conspiracy required the cooperation of the Defendant Thiebe, the Defendant

Bank, the City clerk, the City attorney and other professionals who provided services to the Town. All of these individuals are white residents of Newbern and/or Hale County, Alabama.

**The Defendants Strip Plaintiff Braxton of His Powers as Mayor**

45.     The white majority Town Council elected Stokes as the President of the Council. Stokes effectively assumed the role of Mayor, indeed he continues to hold himself out as mayor of Newbern and has continually and unlawfully interfered with Mayor Braxton's efforts to discharge his duties as Mayor. The following overt acts in furtherance of the conspiracy described above have been undertaken by one or more of the Defendants Stokes, Broussard, Leverett, Thomas and Tucker:

**Denying Access to Town Hall**

46.     One of the duties of the Mayor is to maintain Town Hall. There is an office in the Town Hall that the City uses to conduct official business.

47.     In December 2020, after the first meeting the Plaintiffs held in the Town Hall, Stokes and/or other Town Council members had the locks to the Town Hall changed.

48.     In January 2021, Braxton gained access to the Town Hall and discovered that someone had removed official Town documents from the building. Braxton then had the locks changed so that he could have access to Town Hall.

49.     Upon learning that Braxton had gained access to the Town Hall, Stokes acting in concert with the Defendant Broussard, Leverett, Thomas and Tucker had the locks changed again. Braxton discovered that the locks had been changed April 2021 and the Plaintiffs have not been able to gain uninterrupted access the building since April 2021.

50.     Indeed, Braxton was not allowed access to the Town hall in November 2022 to assist in setting up voting machines for the most recent election.

### Denying Access to Bank Accounts

51.     The Town of Newbern maintains a bank account with the People's Bank of Greensboro (hereinafter the "Bank"). The Bank has its main branch in Greensboro, AL. Greensboro is the county seat for Hale County AL.

52.     On several occasions, Mayor Braxton went to the Bank to have his name placed on the Town's accounts. Braxton presented a Bank employees named Vickie (last name unknown) with documents showing he was the lawful Mayor of the Town and asked her to grant him full access to the Town's accounts.

53.     Vickie (last name unknown) told Braxton that she would have to check with the Bank president and that he should come back the next day.

54.     Braxton returned the next day but Vickie did not meet with him. Another bank employee told Braxton that his name would not be added to the account and that Stokes would remain on the account.

55.     A day or two after this second meeting at the Bank, Braxton witnessed Stokes at the Bank and meeting with Bank representatives. Since this day, the Bank has refused to honor any request from Braxton.

56.     In July 2022, Braxton sent the Bank a letter demanding that it provide Braxton as the Mayor of Newbern access to information regarding the Town's accounts.  The Bank has ignored this letter. Upon information and belief, the Bank is following the Defendant Stokes's request not to communicate or deal with Braxton on any Town business.

10

## Denying Access to Official City Mail and
### Diverting Mail Addressed to Mayor Braxton

57.      In early 2021, Braxton met with Valerie (last name unknown) who at the time was the post master for the Town.  Braxton requested access to the Town's P.O. box and asked that the box to be re-keyed. Braxton showed Ms. Valerie documents that certified he was the Mayor.  Ms. Valerie granted Braxton's request.

58.      Braxton received mail for the Town for approximately two weeks until he learned from Ms. Valerie that Defendant Stokes had complained to her superiors about being denied access to the Town's P.O. Box and that she had been instructed to allow Defendant Stokes access to the P.O. box.

59.      In late 2021, Defendant Thiebe replaced Ms. Valerie as the post master for the Town of Newbern.  Without his consent, Defendant Thiebe re-keyed the Town's P.O. Box and denied Braxton access to the Town's P.O. Box.

60.      Braxton requested access to the P.O. Box and showed Thiebe documents certifying him as the Mayor. Braxton told Thiebe that Stokes did not have authority to deny him access and that he was taking over his job. Braxton told Thiebe that he used to have access and that she should not deny him access.   Thiebe still refused to grant Braxton equal access to the P.O. box.  Thiebe has given mail addressed to Braxton to Defendant Stokes.

61.      Without access to the Town's P.O. Box, Braxton cannot perform the duties of his position or exercise the privileges of being Mayor. The Plaintiffs Ballard, Patrick, Quarles and Scott cannot perform their duties without Braxton's access to official Town business.

62.     Ms. Valerie the former post master that initially granted Braxton access to the Town's P.O. Box is African American. Ms. Thiebe, the post master refusing Braxton any access, is white. Upon information and belief, Ms. Thiebe is acting in concert and/or at the request

**Denying Access to Information and Documents**

63.     The Defendants Stokes, Broussard, Leverette, Thomas and Tucker have instructed the City clerk and the City's accountant to deny Braxton access to financial information or documents related to the official Town business.

64.     After Braxton and the Plaintiffs Ballard, Patrick, Quarles and Scott were sworn in and conducted a meeting at the Town Hall, the Defendants Stokes, Broussard, Leverette, Thomas and Tucker had all the documents stored at the Town Hall removed.

65.     Ms. Williams resigned from her position as City clerk in November 2020. The Defendants lacking proper authority appointed Defendant Stokes's sister Dana (last name unknown) as the City clerk. Ms. Dana has refused to grant Braxton access to any documents or information regarding the Town's official business.

66.     Ms. Dana, upset with Braxton efforts to assert his rights as Mayor, confronted Braxton and told him "you're not the mayor and we don't need you here."

67.     The Town's accountant Mr. Steve Kirk has also refused Braxton's requests for information about the Town finances.  As recently as July 2022, Plaintiff Braxton sent a letter to Mr. Kirk requesting that he, among other things, grant access to financial records and that he provide Braxton with information about the Town's expenditures.  Mr. Kirk has not responded to Braxton's letter.

68.     Upon information and belief, the Defendants Stokes, Broussard, Leverette, Thomas and Tucker have instructed Mr. Kirk to deny Braxton's requests for information.  Without access

to information about the Town's finances and expenditures, the Plaintiffs cannot perform their duties and exercise the privileges of their offices.

### Holding Meetings Without Notice and In Private Residences

69.     The Defendants Stokes, Broussard, Leverette, Thomas and Tucker have not conducted regular public meetings in the Town Hall since the election of Plaintiff Braxton and his swearing of Plaintiffs Ballard, Patrick, Quarles and Scott.

70.     The Defendants Stokes, Broussard, Leverette, Thomas and Tucker have not provided Braxton and residents to the Town notice of public meetings.

71.     Upon information and belief, the Defendants Stokes, Broussard, Leverette, Thomas and Tucker have conducts meetings and business at private residences.

72.     As Mayor of Newbern, the Alabama Code requires the Town Council to pay Plaintiff Braxton a salary for his services as Mayor. *See*, Ala. Code 11-43-80, 86. Plaintiff Braxton holds the job of Mayor for a four year period, unless removed from the position. The Town Council has prevented Braxton from holding his job as Mayor and has effectively removed him from the position without any process. The denial of his job as Mayor and any related compensation or benefits constitutes a tangible harm in a property interest.

### Retaliation Against Braxton

73.     In 2022, the Defendant Stokes "appointed" John Swanson as the fire chief. Stokes also arranged for Swanson and his wife Susan Swanson to be put on the Newbern Fire Department's Board of Directors.

74.     The Newbern Fire Department's Board of Directors has approximately seven members. Six of the seven members are white residents of Newbern. Upon information and belief,

13

in addition to John and Susan Swanson, the Defendants Stokes, Broussard, Leverett, Thomas and Tucker make up the fire department's Board of Directors.

75.     Plaintiff Braxton objected to Swanson being appointed as the fire chief without his approval.  Braxton also objected to John Swanson and Susan Swanson's appointment to the Board of Director's without his approval.  He raised concerns that the black residents of Newbern were not being adequately represented on the Board and that this meant that the black residents did not get the same level of service as the white residents of Newbern.

76.     In response to Braxton's objections to these appointments and to Braxton's efforts to assert his rights and privileges as Mayor, in the summer of 2022, the Defendants suspended Braxton from his position as a volunteer fire fighter and first responder.

77.     Stokes and John Swanson also changed the locks to the fire department building and deprived Braxton of access to the building and its equipment until the County EMA director intervened.

## COUNT I

### (Section 1983 – Equal Protection)

78     The Plaintiffs Braxton, Ballard, Patrick, Quarles and Scott are black residents of the Town of Newbern.

79.     The Defendants Stokes, Broussard, Leverett, Tucker and Thomas-Brown acted under color of law to deprive Plaintiffs Braxton, Ballard, Patrick, Quarles and Scott of equal protection of the laws on account of his race.

80.     The Defendants have taken official actions to prevent Plaintiff Braxton from discharging his duties as Mayor and Plaintiffs Ballard, Patrick, Quarles and Scott from discharging their duties, responsibilities and privileges as Town council members on account of their race. For

example, since December 2020 and continuing thereafter, the Defendants have, among other things, (i) excluded Mayor Braxton from Town council meetings, (ii) have conducted meetings in secret without notifying Mayor Braxton or the other Plaintiffs; (iii) have changed the locks and shut the Plaintiffs out of Town Hall, (iv) have removed official Town records stored at the Town Hall and instructed the City clerk (who is related to Defendant Stokes) to not discuss or provide Braxton any information regarding any official Town business; (v) have told and obtained the consent of the Town's Bank to deny Mayor Braxton and the Plaintiffs all access to financial information regarding the Town's accounts; (vi) have instructed the Town's accountant not to discuss or provide Braxton any information regarding the Town's finances; (vii) have instructed the Town's attorney Mr. Holmes not to discuss any legal matters or other Town business with Plaintiff Braxton, (viii) have told the Defendant Thiebe to deny Plaintiff Braxton access to the Town's post office box and access to any official correspondence, (ix) have instructed Defendant Thiebe to give any official mail addressed to Plaintiff Braxton to Defendant Stokes and (x) retaliated against Plaintiff Braxton by suspending him from the fire department.

81.    The Defendants, acting under color of law, have assigned or delegated the duties of the Mayor to the former white Mayor Defendant Stokes.  Defendant Stokes has been acting as Mayor instead of Plaintiff Braxton.

82.    On or about August 10, 2020, the Defendants, acting under color, unlawfully adopted resolutions to hold a special election for Town council positions because every council member had failed to timely qualify as a candidate for office. Though Defendant Stokes occupied the position of Mayor, orchestrated the special election resolution because he intended to qualify as a candidate for Town council.

83.    The Defendants did not provide public notice of this meeting, to the extent it even occurred, prior to unlawfully adopting resolutions setting a special election.

84.    The Defendants also did not provide notice to residents of Newbern that they had set a special election for October 10, 2020. The Defendants intended and executed a plan that they would be the only ones to qualify as candidates for the Town council position pursuant to the resolution and thus avoiding an actual election for these positions. In August 2020, the Defendants failed to provide notice of the Town's plan to hold a "special" election and to provide information on qualifying as a candidate to the majority black population of Newbern. Indeed, the white dominated Town council has not noticed or held an election as required under Alabama law for many decades.

85.    Plaintiff Braxton did not discover that the Defendants had adopted the special election resolutions that set a special election until the summer of 2021. Plaintiffs did not receive notice of a special election to be held in October 2020 because the Defendants concealed this information from the public.

86.    Unaware of the secret special election, Plaintiffs Ballard, Patrick, Quarles and Scott did not submit paperwork to qualify as candidates. Instead, they agreed to Braxton's request that they serve as appointed Town Council members. As noted above, the past practice of the Town was that the Mayor would appoint Town council members if no one qualified for a seat on the Town council.  Consistent with this practice, Braxton had approached the Plaintiffs to serve on the Town Council in August and September of 2020.

87.    Still unaware that the Defendants had orchestrated a secret election, Plaintiffs Ballard, Patrick, Quarles and Scott were sworn in as Town council members in November 2020. They held a Town council meeting on or about November 20, 2020 at the Town Hall. This was

16

the first time in the history of Newbern that black residents held a majority of the Town council seats.

88.     Defendants, with the assistance of the City clerk, moved to prevent the Plaintiffs Ballard, Patrick, Quarles and Scott from acting as the Town council. Defendants removed all official documents from the Town Hall. The Defendants changed the locks to the Town Hall and denied Plaintiffs Ballard, Patrick, Quarles and Scott access to the Town Hall. The Defendants also instructed the City clerk to not respond to or conduct any official business with Plaintiffs Ballard, Patrick, Quarles and Scott.

89.     The conduct of all the Defendants perpetuates the history of race discrimination in the Black Belt. Over 80 percent of the residents of Newbern identify as black and yet the Town has never had a black Mayor.  Indeed, the Newbern has never has a majority black Town Council. When confronted with the first duly elected black Mayor and majority black Town Council, the all Defendants undertook racially motivated actions to prevent the first black Mayor from exercising the duties of this position and the first majority black Town council for exercising legislative power.

90.     The Individual Defendants would not have succeeded in this plot to deprive the first elected black Mayor and/or first majority black Town Council from exercising political power without the assistance of the Bank and the Post Master.

91.     Prior transitions of power between white residents of Newbern did not result in the Bank and the Post Master's refusal to work with the designated Mayor and/or majority white Town Council.

92.     Prior transitions between a majority white Town council to another majority white Town council did not result in locking out the incoming Town council members, depriving them

of access to official documents or other official business of the Town and/or an instruction to the Town's employees or agents not to interact or cooperate with the incoming Town council members. This obstructive conduct only occurred when a majority black Town council was set to take over Town hall.

93.     As a result of the Defendants actions taken under color of law, the Plaintiffs have been deprived of their rights to participate in Town governance and to discharge the duties and exercise the privileges of holding office because of their race and in violation of the Equal Protection Guarantee of the Fourteenth Amendment to the United States Constitution.

## COUNT II

### Race Discrimination

### (Section 1985(3))

94.     The Plaintiff incorporates by reference the conspiracy and overt acts allegations found in paragraphs 31-73.

95.     Defendants Stokes, Broussard, Leverett, Thomas, Tucker, Thiebe and the Bank conspired to deprive Plaintiffs Braxton, Ballard, Patrick, Quarles and Scott the privileges and rights of residents of the Town to participate in the governance of the Town on account of their race. The Defendant Stokes and the other Town Council members did not want a Black person in the position of Mayor nor did they want a majority Black Town council. In order to prevent a black person from exercising power as the Mayor of Newbern, Defendant Stokes and the Town Council defendants orchestrated a secret special election so that they could remain in office and then undertook actions to (1) prevent Plaintiff Braxton from performing the duties of his job as Mayor and (2) to prevent the majority black Town Council members Braxton had lawfully appointed from taking office.

18

96.     Defendant Stokes secured the agreement or consent of the Ms. Thiebe and the white leadership of the Bank to prevent Mayor Braxton from performing the duties of his job as Mayor of Newbern.

97.     During prior transitions of power from a white Mayor and white majority Town Council to other white residents of the Town, the Bank and the Post Master recognized the new white leadership of the Town and cooperated with the transition. However, the Defendants refused to cooperate with the transition of power to the first black Mayor in this history of Newbern even though Braxton was officially certified as the Mayor of Newbern.

98.     The Defendants have continued to deprive Plaintiff Braxton of the rights and privileges of his job as Mayor because of his race.  Defendants also continue to deprive Plaintiffs Patrick, Scott and Quarles the right and privilege of serving on the Town council on account of their race.

99.     The Defendants conspiracy to deprive Plaintiffs, on account of their race, (i) equal protection of the laws or (ii) equal privileges and immunities of the laws or (iii) preventing or hindering the properly constituted Town council and Mayor of the Town of Newbern from representing the majority black residents of the Town conduct violates 42 U.S.C. Section 1985(3).

## COUNT III

### (Failure to Prevent Conspiracy – Section 1986)

100.     The Plaintiff incorporates by reference the conspiracy and overt acts allegations found in paragraphs 31-79.

101.     This is a claim against Defendant Theibe and Defendant People's Bank of Greensboro for negligently failing or refusing to prevent the unlawful conspiracy to deny Plaintiffs

19

Braxton, Ballard, Patrick, Quarles and Scott equal protection under the laws or the equal privileges and rights of holding office because of their race.

102.   Defendant Thiebe had knowledge that Plaintiff Braxton had been elected Mayor of Newbern.  In late 2021 and on several occasions thereafter, the Defendant Thiebe refused to provide Braxton access to official Town mail. Indeed, Thiebe gave mail addressed to Mayor Braxton to Defendant Stokes. Defendant Stokes had instructed Defendant Thiebe not to give Mayor Braxton access to official Town mail.

103.   Defendant Thiebe had knowledge that Defendant Stokes and the other Town Council members were depriving Mayor Braxton of the ability to discharge his duties as Mayor on account of Braxton's race. She also had knowledge that Plaintiffs Ballard, Patrick, Quarles and Scott had been appointed to and sworn in as Town council members. Nonetheless, Defendant Thiebe negligently failed or refused to prevent Defendant Stokes and the other Individual Defendants from carrying out their conspiracy to deprive Plaintiffs equal protection under the law or of equal privileges and rights of holding office on account of their race.

104.   In April 2021 and thereafter, Defendant People's Bank of Greensboro (acting through its agents, employees or officers) knew that Plaintiff Braxton had been elected and installed as the Mayor of Newbern. Plaintiff Braxton had informed the Bank that he was the Mayor of Newbern and that he had appointed Plaintiffs Ballard, Patrick, Quarles and Scott to the Town council. The Bank however refused to grant Braxton access to information about the Town's accounts and would not allow him to add himself and Plaintiff Scott as a signatories to the account.

105.   Defendant People's Bank of Greensboro (acting through its agents, employees or officers) had knowledge that Defendant Stokes and the other Town Council members were depriving Mayor Braxton of the ability to discharge his duties as Mayor on account of Braxton's

race. The Bank also had knowledge that Plaintiffs Ballard, Patrick, Quarles and Scott had been appointed to and sworn in as Town council members. Nonetheless, the Bank negligently failed or refused to prevent Defendant Stokes and the other Individual Defendants from carrying out their conspiracy to deprive Plaintiffs equal protection under the law or of equal privileges and rights of holding office on account of their race.

106.   In *Park v. City of Atlanta*, 120 F.3d 1157 (11th Cir. 1997), the Eleventh Circuit held that a person who negligently fails or refuses to prevent a conspiracy in violation of Section 1985 is liable for such negligence. Thus Defendants Thiebe and/or People's Bank of Greensboro's negligent failure or refuse to prevent the conspiracy to deprive the Plaintiffs of equal protection under law or equal privileges and rights violated 42 U.S.C. § 1986.

## **PRAYER FOR RELIEF**

107.   Wherefore premises considered, the Plaintiffs respectfully request that the Court enter an order:

(a)   Enjoining the Defendants from preventing, hindering, interfering (directly or indirectly) the Plaintiffs from exercising the duties, responsibilities or privileges of their offices as Mayor and/or Town council member;

(b)   Directing the Defendants to immediately grant the Plaintiffs access to all official documents, accounts and Town property or to take such actions are necessary to permit such access;

(c)   Enjoining the Defendants from conducting any business for the Town;

(d)   Requiring Defendant's pay the Plaintiffs any monetary losses resulting for their unlawful conspiracy and/or deprivation of rights;

(e)   Awarding the Plaintiffs compensatory or punitive damages as established at trial;

(f)     Awarding the Plaintiffs a reasonable attorney's fee and costs of litigation;

(g)     Awarding any other injunctive, equitable or legal relief the Court deems appropriate to remedy the violations of law established at trial.

## **TRIAL BY JURY**

The Plaintiffs demand a trial by jury to the extent provided under the Constitution of the State of Alabama or United States Constitution.

/s/ *Richard P. Rouco*
Richard P. Rouco

/s/*George Davies*
George N. Davies

OF COUNSEL:

Quinn, Connor, Weaver,
Davies & Rouco, LLP
2 – 20th Street North
Suite 930
Birmingham, AL 35203
Tel. 205-870-9989
Fax. 205-803-4143
rrouco@qcwdr.com
gdavies@qcwdr.com