**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| PATRICK BRAXTON, JAMES BALLARD, BARBARA PATRICK, JANICE QUARLES, and WANDA SCOTT, | |
| **Plaintiffs,** | Civil Action No. 2:23-cv-00127-KD-N |
| v. | |
| HAYWOOD STOKES, III, GARY BROUSSARD, JESSE DONALD LEVERETT, VONCILLE BROWN THOMAS, LYNN THIEBE, WILLIE RICHARD TUCKER, and PEOPLE'S BANK OF GREENSBORO, | |
| **Defendants.** | |

**DEFENDANT LYN THIEBE'S MOTION TO
DISMISS AND INCORPORATED SUPPORTING BRIEF**

Defendant Lyn Thiebe, in her individual capacity and by and through the United States Attorney for the Southern District of Alabama, Sean P. Costello, respectfully moves this Court to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). In support thereof, Ms. Thiebe shows as follows:

**INTRODUCTION**

In this case, Plaintiffs have failed to state a claim under 42 U.S.C. § 1985(3) because (1) they have failed to allege the violation of any specific constitutional right, (2) they have failed to allege invidiously discriminatory animus on the part of Ms. Thiebe, (3) they have failed to allege the existence of any agreement between Ms. Thiebe and the other Defendants, and (4) any such claim is barred by qualified immunity. Plaintiffs' claim under 42 U.S.C. § 1986 cannot proceed

in light of the failure of their Section 1985(3) claim.  Finally, to the extent Plaintiffs have attempted to assert a *Bivens* claim against Ms. Thiebe, any such claim arises in a new context where Congress has provided alternative remedies and is barred by qualified immunity.  For these reasons, Ms. Thiebe respectfully requests that this Court grant this motion to dismiss and dismiss Plaintiffs' claims against Ms. Thiebe.

## STATEMENT OF RELEVANT FACTS

1.      Plaintiff Patrick Braxton alleges that he was elected mayor of Newbern, Alabama on or around July 22, 2020, and that he was the first Black mayor of the town.  (Doc. 1-3, PageID.49, ¶ 29.)

2.      The remaining Plaintiffs[1] allege that Braxton appointed them to serve on the Town Council, and all Plaintiffs were sworn into their respective positions on November 2, 2020.  (*Id.*, PageID.51, ¶ 41.)

3.      Plaintiffs also allege that Defendants Haywood Stokes, III, Gary Broussard, Jesse Donald Leverett, Voncille Brown Thomas, and Willie Richard Tucker[2] (collectively referred to as the "Town Defendants") conspired to remain in office despite Plaintiff Braxton's election.  (*Id.*, PageID.49-51, ¶ 39-43.)  Specifically, Plaintiffs allege that the Town Defendants "acted to prevent the Plaintiffs from accessing any information regarding the Town, destroyed or removed documents from the Town Hall and locked down the Town Hall, preventing any access to the facility."  (*Id.*, PageID.51, ¶ 43.)

---

[1]  All Plaintiffs are Black.  (Doc. 1-3, PageID.45, ¶ 4-8.)

[2]  Defendant Thomas is Black.  (*Id.*, PageID.46, ¶ 12.)  The remaining individual Defendants, including Ms. Thiebe, are White.  (*Id.*, ¶ 9-11, 13-14.)

4. According to Plaintiffs, "the key to the success of this conspiracy required the cooperation of the Defendant Thiebe, the Defendant Bank, the City clerk, the City attorney and other professionals who provided services to the Town." (*Id.*, PageID.51-52, ¶ 44.)

5. Plaintiffs allege the following facts regarding Ms. Thiebe's purported involvement in the alleged conspiracy:

57. In early 2021, Braxton met with Valerie (last name unknown) who at the time was the post master [sic] for the Town. Braxton requested access to the Town's P.O. box and asked that the box to be re-keyed. Braxton showed Ms. Valerie documents that certified he was the Mayor. Ms. Valerie granted Braxton's request.

58. Braxton received mail for the Town for approximately two weeks until he learned from Ms. Valerie that Defendant Stokes had complained to her superiors about being denied access to the Town's P.O. Box and that she had been instructed to allow Defendant Stokes access to the P.O. box,

59. In late 2021, Defendant Thiebe replaced Ms. Valerie as the post master [sic] for the Town of Newbern. Without his consent, Defendant Thiebe re-keyed the Town's P.O. Box and denied Braxton access to the Town's P.O. Box.

60. Braxton requested access to the P.O. Box and showed Thiebe documents certifying him as the Mayor. Braxton told Thiebe that Stokes did not have authority to deny him access and that he was taking over his job. Braxton told Thiebe that he used to have access and that she should not deny him access. Thiebe still refused to grant Braxton equal access to the P.O. box. Thiebe has given mail addressed to Braxton to Defendant Stokes.

61. Without access to the Town's P.O. Box, Braxton cannot perform the duties of his position or exercise the privileges of being Mayor. The Plaintiffs Ballard, Patrick, Quarles and Scott cannot perform their duties without Braxton's access to official Town business.

62. Ms. Valerie the former post master [sic] that initially granted Braxton access to the Town's P.O. Box is African American. Ms. Thiebe, the post master [sic] refusing Braxton any access, is white. Upon information and belief, Ms. Thiebe is acting in concert or at the request [sic].

(Doc. 1-3, PageID.54-55, ¶ 57-62.)

3

6.     Based on these factual allegations, Plaintiffs allege in Counts II and III of their Amended Complaint that Defendants, including Ms. Thiebe, violated 42 U.S.C. § 1985(3) and 1986.  (*Id.*, PageID.61-64, ¶ 94-106.)

7.     Specifically, Plaintiffs allege that Ms. Thiebe violated Section 1985(3) because she "conspired to deprive Plaintiffs Braxton, Ballard, Patrick, Quarles and Scott the privileges and rights of residents of the Town to participate in the governance of the Town on account of their race." (*Id.*, PageID.61, ¶ 95.)  They also alleged the following:

96.     Defendant Stokes secured the agreement or consent of the [sic] Ms. Thiebe and the white leadership of the Bank to prevent Mayor Braxton from performing the duties of his job as Mayor of Newbern.

97.     During prior transitions of power from a white Mayor and white majority Town Counsel to other white residents of the Town, the Bank, and the Post Master [sic] recognized the new white leadership of the Town and cooperated with the transition.  However, the Defendants refused to cooperate with the transition of power to the first black Mayor in this history of Newbern even though Braxton was officially certified as the Mayor of Newbern.

(*Id.*, PageID.62, ¶ 96-97.)  Plaintiffs make the conclusory allegation that Defendants conspired "to deprive Plaintiffs, on account of their race, (i) equal protection of the laws or (ii) equal privileges and immunities of the laws or (iii) preventing or hindering the properly constituted Town counsel and Mayor of the Town of Newbern from representing the majority black residents . . . ." (*Id.*, PageID.62, ¶ 99.)

8.     Plaintiffs also allege that Ms. Thiebe failed to prevent the "unlawful conspiracy to deny [them] equal protection under the laws or the equal privileges and rights of holding office because of their race." (*Id.*, PageID.62-63, ¶ 101.)  More specifically, Plaintiffs allege:

102.     Defendant Thiebe had knowledge that Plaintiff Braxton had been elected Mayor of Newbern.  In late 2021 and on several occasions thereafter, the Defendant Thiebe refused to provide Braxton access to official Town mail. Indeed, Thiebe gave mail addressed to Mayor Braxton to Defendant Stokes.

Defendant Stokes had instructed Defendant Thiebe not to give Mayor Braxton access to official Town mail.

103.     Defendant Thiebe had knowledge that Defendant Stokes and the other Town Council members were depriving Mayor Braxton of the ability to discharge his duties as Mayor on account of Braxton's race.  She also had knowledge that Plaintiffs Ballard, Patrick, Quarles and Scott had been appointed to and sworn in as Town council members.   Nonetheless, Defendant Thiebe negligently failed or refused to prevent Defendant Stokes and the other Individual Defendants from carrying out their conspiracy to deprive Plaintiffs equal protection under the law or of equal privileges and rights of holding office on account of their race.

(*Id.*, PageID.63, ¶ 102-103.)

**9.**     Plaintiff Braxton filed his initial complaint in the Circuit Court of Dallas County, Alabama on November 21, 2022.  (*Id.*, PageID.8-21.)  Plaintiffs filed their First Amended Complaint on March 17, 2023.  (*Id.*, PageID.44-65.)

## STANDARD OF REVIEW

Rule 12(b)(6) permits a defendant to move to dismiss an action for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  This Court utilizes the following standard when deciding a Rule 12(b)(6) motion:

> To survive a motion to dismiss, a plaintiff must plead only enough facts to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  This standard asks for more than a sheer possibility that a defendant has acted unlawfully.  That is, factual allegations must be enough to raise a right of relief above the speculative level, and must be a plain statement possessing enough heft to show that the pleader is entitled to relief.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  In determining whether a claim is stated, the factual allegations are accepted as true, except for conclusory allegations or a recitation of a cause of action's elements, and the allegations must be considered in the light most favorable to the plaintiff.  In addition to the foregoing, a complaint is subject to dismissal for failure to state a claim when its allegations, on their face, show that an affirmative defense bars recovery on the claim or when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.

*WM Mobile Bay Envtl. Center, Inc. v. City of Mobile*, No. 18-0429-KD-MU, 2019 WL 759294,

\*1 (S.D. Ala. Feb. 1, 2019), *adopted by* 2019 WL 722850, \*1 (S.D. Ala. Feb. 20, 2019) (internal

quotations and citations omitted).

## ARGUMENT

## I.   Plaintiffs failed to state a claim under 42 U.S.C. § 1985(3).

Plaintiffs' claims pursuant to 42 U.S.C. § 1985(3) are due to be dismissed because (1) they

have not alleged that Ms. Thiebe conspired to violate any of Plaintiffs' specific constitutional

rights, (2) they failed to make sufficient factual allegations supporting their claims of invidiously

discriminatory animus on the part of Ms. Thiebe, and (3) they failed to make sufficient factual

allegations in support of their claim of an agreement between Ms. Thiebe and the other Defendants.

Regardless, Plaintiffs' claims against Ms. Thiebe are barred because she is entitled to qualified

immunity.  As such, this Court should dismiss Plaintiffs' Section 1985(3) claims against Ms.

Thiebe for failure to state a claim.

### A.  Plaintiffs failed to adequately plead their Section 1985(3) claim.

Section 1985(3) provides a cause of action against private individuals who "conspire or go

in disguise on the highway or on the premises of another, for the purpose of depriving, either

directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal

privileges and immunities under the laws . . . ."  42 U.S.C. § 1985(3).  A plaintiff must prove the

following in a Section 1985(3) claim:

> (1) [A] conspiracy; (2) for the purpose of depriving, either directly or indirectly,
> any person or class of persons of the equal protection of the laws, or of equal
> privileges and immunities under the laws; and (3) an act in furtherance of the
> conspiracy, (4) whereby a person is either injured in his person or property or
> deprived of any right or privilege of a citizen of the United States.

*Moore v. Marshall*, No. CA 19-0294-TFM-MU, 2020 WL 3161002, *16 (S.D. Ala. Jan. 24, 2020), *adopted as modified by* 2020 WL 1131144, *1-2 (S.D. Ala. March 9, 2020) (internal quotations omitted).

As the Supreme Court has recognized, "[t]hat the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971).  In other words, Section 1985(3) should not be utilized "as a general federal tort law . . . ." *Id.*

### 1. Plaintiffs failed to allege that Ms. Thiebe conspired to violate any specific constitutional right.

Importantly, "Section 1983(5) is not itself a source of substantive rights.  'It merely provides a remedy for violation of the rights it designates.'" *Ford v. Strange*, No. 2:13-CV-214-WKW, 2013 WL 6804193, *7 (M.D. Ala. Dec. 23, 2013) (quoting *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 766 (11th Cir. 2000)).  In fact, "courts have been careful to limit causes of action brought under Section 1985 to only those conspiracies that seek to deprive persons of constitutionally protected rights, privileges and immunities that are protected against private as well as official encroachment." *Benton v. Cousins Props., Inc.*, 230 F. Supp. 2d 1351, 1383 (N.D. Ga. Sept. 27, 2002) (internal quotation omitted).

Federal courts routinely dismiss Section 1985(3) claims where a plaintiff fails to allege that the defendant conspired to violate a specific constitutional right.  *See, e.g., Rodemaker v. City of Valdosta Bd. of Educ.*, No. 7:21-CV-76 (HL), 2022 WL 3927821, *4 (M.D. Ga. Aug. 31, 2022), *appeal filed*, No. 22-13300 (11th Cir. Sept. 30, 2022) (dismissing the plaintiff's conspiracy claim because it "ma[de] no mention of a specific constitutional right"); *Amiri v. Gupta*, No. 7:18-cv-00425-RDP, 2018 WL 3548729, *4 (N.D. Ala. July 24, 2018) (dismissing the plaintiff's § 1985(3) claim, in part, because "the court [could] not discern any underlying civil right"); *Bethel v. Baldwin*

*County Bd. of Educ.*, No. 06-0223-KD-C, 2007 WL 9717457, *7 (S.D. Ala. Aug. 22, 2007) (dismissing the plaintiffs' § 1985(3) claim because they "failed to allege a cognizable constitutional violation of which the [defendants] conspired to deprive her"); *Ayers v. Intown Suites Mgmt., Inc.*, No. 1:05-CV-1528-JOF, 2006 WL 783352, *4 (N.D. Ga. March 21, 2006) (dismissing the plaintiff's § 1985(3) claim because she alleged only that the defendants conspired to deprive her of her "civil rights, of equal protection of the laws, and of the equal privileges and immunities under the law"); *Benton*, 230 F. Supp. 2d at 1383-43 (dismissing the plaintiff's conspiracy claim because she only alleged that the defendants conspired to deprive her of her rights under 42 U.S.C. § 1981, and not of any of her constitutional rights).

Here, Plaintiffs do not allege that Ms. Thiebe violated or conspired to violate any of their specific constitutional rights. In fact, Plaintiffs do not mention any specific constitutional rights in Count II of their First Amended Complaint.[3] (Doc. 1-3, PageID.61-62, ¶ 94-99.) Instead, Plaintiffs only allege that "the Defendants refused to cooperate with the transition of power to the first black Mayor in this [sic] history of Newbern even though Braxton was officially certified as the Mayor of Newbern." (*Id.*, PageID.62, ¶ 97.) Plaintiffs then make the conclusory allegation that

---

[3] While Plaintiffs allege that the Town Defendants violated "the Equal Protection Guarantee of the Fourteenth Amendment to the United States Constitution" in Count I of the First Amended Complaint, those claims cannot survive against Ms. Thiebe because she is not alleged to have violated any such rights. (Doc. 1-3, PageID.57-61, ¶ 78-93.) Regardless, any such claims against Ms. Thiebe are not cognizable under Section 1985(3) because she has been sued in her individual capacity only and no state action has been alleged by Plaintiffs. *See, e.g., Korts v. Littleton*, No. 8:09-cv-2122, 2009 WL 5067651, *2 (M.D. Fla. Dec. 16, 2009) (holding that "the plaintiff cannot premise a private conspiracy claim under Section 1985(3) on an intent to deprive the plaintiff of rights protected by the Fourteenth Amendment, which rights are not guaranteed against private impairment"); *Wilson v. Realty So., Inc.*, No. 04-HS-3261-S, 2005 WL 8157946, *2-3 (N.D. Ala. April 25, 2005) (holding that § 1985(3) claims based on violations of the Fifth or Fourteenth Amendment were due to be dismissed where there was no allegations of state action).

> The Defendants conspiracy to deprive Plaintiffs, on account of their race, (i) equal protection of the laws or (ii) equal privileges and immunities of the laws or (iii) preventing or hindering the properly constituted Town council and Mayor of the Town of Newbern from representing the majority black residents of the Town conduct violates 42 U.S.C. Section 1985(3).

(*Id.*, ¶ 99.)  As discussed above, Section 1985(3) does not provide any substantive rights and a plaintiff must allege the violation of a specific constitutional right to proceed with a claim under that section.  Because Plaintiffs have failed to do so in the First Amended Complaint and, instead, have only repeated the statutory language, they have failed to state a claim under Section 1985(3) and this Court should dismiss any such claims against Ms. Thiebe.

### 2. Plaintiffs have failed to plead any facts showing that Ms. Thiebe acted with some invidiously discriminatory animus.

Even if Plaintiffs could point to a constitutional right that Ms. Thiebe purportedly conspired to violate, they have not made sufficient factual allegations to show that Ms. Thiebe acted with any invidiously discriminatory animus toward them.  The Eleventh Circuit has held that it is "the plaintiff's obligation to allege among other things, 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus' behind the defendant's action taken in furtherance of the conspiracy."  *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993)).  The "animus standard requires that the defendant proceeded on his course of conduct 'because of, and not merely in spite of, its adverse effects upon an identifiable group.'"  *Dean*, 12 F.4th at 1255 (quoting *Bray*, 506 U.S. at 271-72).

The Court should dismiss a Section 1985(3) claim where the plaintiff fails to plead sufficient facts regarding the defendants' alleged motivations, i.e., that the defendants acted with invidiously discriminatory animus.  *See, e.g., Wong v. Stripling*, 881 F.2d 200, 203 (5th Cir. 1989) (affirming the dismissal of § 1985(3) claims where the plaintiff alleged that he was subjected to a double standard because of his race and alleged race discrimination); *Coker v. Warren*, No. 3:22-

cv-518-MMH-LLL, 2023 WL 2330666, *11-12 (M.D. Fla. March 2, 2023), *appeal filed*, No. 23-11160 (11th Cir. April 10, 2023) (dismissing § 1985(3) claims where the plaintiff did not "contend that [the defendants] were motivated by invidious discriminatory intent" and did not "include any allegations in [her conspiracy claim] concerning the motivations of the numerous [d]efendants involved in the alleged conspiracy"); *Anderson v. Vanguard Car Rental USA Inc.*, No. 05-61359-CIV-GRAHAM/SULLIVAN, 2008 WL 11400777, *3 (S.D. Fla. Feb. 29, 2008), *aff'd* 304 F. App'x 830 (11th Cir. Dec. 23, 2008) (finding no allegations of race-based invidiously discriminatory animus even though the plaintiff alleged that 99.9% of the individuals subject to the defendant's policy were Black and specifically included "racial discrimination" language in the complaint); *Lake Lucerne Civic Ass'n, Inc. v. Dolphin Stadium Corp.*, 801 F. Supp. 684, 701 (S.D. Fla. 1992) (holding that the plaintiff failed to allege racial, discriminatory animus where they set forth the history of discrimination by one of the purported conspirators and the alleged disparate impact that the stadium at issue would have on a predominately Black middle-class residential neighborhood).

In *Dean*, African American cheerleaders at a public university were prohibited from kneeling during the national anthem at several football games. One of the cheerleaders filed suit against the university's leadership, the county sheriff, and a state legislator alleging, among other things, a conspiracy to commit civil rights violations under Section 1985(3). The cheerleader specifically alleged that the county sheriff engaged in a conspiracy to deprive her of her constitutional rights because (1) she was African American, and (2) she was protesting police brutality against African Americans. The district court granted the sheriff's motion to dismiss because the cheerleader failed to allege sufficient facts showing that the sheriff's actions were motivated by her race. While the Eleventh Circuit recognized that a conspiracy to violate the

cheerleader's First Amendment rights because she was African American could satisfy the requirements of Section 1985(3), the court affirmed the district court's determination that she failed to plead sufficient facts to plausibly support her theory.  12 F.4th at 1256.  The court went on to hold that because the sheriff's "targets are African American, without more, does not make it plausible that he targeted the cheerleaders *because* they are African American."  *Id.* (emphasis original).  The court also disposed of the plaintiff's argument that the protests were related to police brutality against African Americans, stating:

> Certainly [the protests] relate to race and racial issues . . . , and they support the theory that [the sheriff] discriminated against [the cheerleader] because of the content of her protests . . . .  But discrimination based on the protesting of racial issues, no matter how compelling those issues are, is simply not the same as discrimination based on the race of the protestors.  Thus, the additional allegations do not support [the cheerleader's] theory that [the sheriff] discriminated against her because she is African American.

*Id.* at 1257.  As such, the court held that "[the cheerleader] failed to allege that [the sheriff] undertook the conspiracy **because** [she] and her teammates are African Americans" and agreed with the district court that the plaintiff's claims were insufficiently pled.  *Id.* (emphasis added); *see also Harris v. Food Giant Supermarkets, Inc.*, No 1:17-cv-286-WKW-DAB, 2017 WL 9732025, *5 (M.D. Ala. Nov. 29, 2017) (dismissing the plaintiff's § 1985(3) claims because the complaint did not contain any allegations that race was a motivating factor behind the defendants' actions); *Curtis v. GTE Commc'n Sys. Corp.*, No. 90 C 0633, 1990 WL 106511, *5-6 (N.D. Ill. July 12, 1990) (dismissing the plaintiff's § 1985(3) claims because he failed to plead facts supporting his conclusory allegations that the defendants were motivated by racial animus and, instead, the facts pled are consistent with the theory that one of the defendants wanted to oust the plaintiff from his position in a labor union).

In this case, as in *Dean*, Plaintiffs have failed to plead any facts showing that Ms. Thiebe's alleged actions were motivated by their race.  Instead, Plaintiffs only allege that:

- Ms. Thiebe, the post master [sic] refusing Braxton any access, is white.  (Doc. 1-3, PageID.55, ¶ 62);

- The Defendants have taken official actions to prevent Plaintiff Braxton from discharging his duties as Mayor and Plaintiffs Ballard, Patrick, Quarles and Scott from discharging their duties, responsibilities and privileges as Town council members on account of their race.  (*Id.*, PageID.57, ¶ 80);

- The Defendants have continued to deprive Plaintiff Braxton of the rights and privileges of his job as Mayor because of his race.  Defendants also continue to deprive Plaintiffs Patrick, Scott, and Quarles the right and privilege of serving on the Town council on account of their race.  (*Id.*, PageID.62, ¶ 98);

- This is a claim against Defendant Thiebe . . . for negligently failing or refusing to prevent the unlawful conspiracy to deny Plaintiffs Braxton, Ballard, Patrick, Quarles and Scott equal protection under the laws or the equal privileges and rights of holding office because of their race.  (*Id.*, PageID.62-63, ¶ 101); and

- Nonetheless, Defendant Thiebe negligently failed or refused to prevent Defendant Stokes and the other Individual Defendants from carrying out their conspiracy to deprive Plaintiffs equal protection under the law or of equal privileges and rights of holding office on account of their race.  (*Id.*, PageID.63, ¶ 103).

In other words, Plaintiffs do not make any allegations regarding Ms. Thiebe's (or the other Defendants') motivation and, instead, offer only the conclusory allegations that Ms. Thiebe acted "because of" or "on account of" Plaintiffs' race.[4]  These allegations are insufficient to state a claim

---

[4] To the extent Plaintiffs have made factual allegations that Ms. Thiebe engaged in some type of political conspiracy to keep them from acting as Mayor and Town Council (and they have not), any such allegations are insufficient to state a claim under Section 1985(3).  *See, e.g., Harrison v.*

under Section 1985(3).   Plaintiffs also make allegations regarding the "history of race discrimination in the Black Belt."  (*Id.*, PageID.60, ¶ 89.)  As in *Lake Lucerne Civic Association*, allegations of a history of discrimination are insufficient to allege the invidiously discriminatory animus necessary to pursue a Section 1985(3) claim.  As the Eleventh Circuit stated in *Dean*, the fact that the alleged "targets are African American, without more, does not make it plausible that [Defendants] targeted [Plaintiffs] *because* they are African American."  12 F.4th at 1256 (emphasis original).  Because Plaintiffs have failed to state sufficient facts supporting their allegations that Ms. Thiebe acted with invidiously discriminatory animus toward them, this Court should dismiss Plaintiffs' Section 1985(3) claim against Ms. Thiebe.

### 3. Plaintiffs have failed to plead any facts supporting the existence of an agreement or meeting of the minds between Ms. Thiebe and the other Defendants.

Although Plaintiffs have failed to plead the violation of any specific constitutional right or the existence of any invidiously discriminatory animus by Ms. Thiebe, they have also failed to plead facts showing that Ms. Thiebe entered into any agreement with Defendants to violate Plaintiffs' constitutional rights.  As this Court has recognized, "importantly, it is incumbent upon a [plaintiff] to show some evidence of agreement between the defendants."  *Moore*, 2020 WL 3161002 at *16.  In that case, the Court dismissed a plaintiff's Section 1985(3) conspiracy claim

---

*KVAT Food Mgmt., Inc.*, 766 F.2d 155, 162-63 (4th Cir. 1985) (affirming the district court's dismissal of a § 1985(3) action because a conspiracy to discourage a person from participating the in the affairs of a certain political party does not violate § 1985(3)); *Coker*, 2023 WL 2330666 at *12 (holding that opposing a plaintiff due to criticism of the city council did not constitute the racially discriminatory intent necessary to state a claim under § 1985(3)); *Anderson*, 2008 WL 11400777 at *3 (holding that motivation to make money or maximize profits do not satisfy the requirements of § 1985(3)); *Schneeweis v. Nw. Tech. College*, No. 97-1742, 1998 WL 420564, *12 (D. Minn. June 1, 1998) (holding that a conspiracy for purely political purposes did not state a claim under § 1985(3)); *Lake Lucerne Civic Ass'n*, 801 F. Supp. at 701 (holding that "a purely economic and political" conspiracy failed to state a claim under § 1985(3)).

because the plaintiff's allegations established that there was never any communication between the defendants at issue and, thus, there could be no conspiracy. *Id.*

In *Odom v. City of Anniston*, No. 1:21-cv-00612-ACA, 2021 WL 3851976, *2-3 (N.D. Ala. Aug. 27, 2021), the court dismissed a Section 1985(3) claim because the plaintiff failed to allege sufficient facts regarding an agreement between the defendants. In that case, the plaintiff alleged that the city manager was in attendance at a meeting where two other defendants attacked the plaintiff's character and implied that they were opposed to the plaintiff because of his race, and that one of the defendants spoke directly to the city manager during a city council meeting and asked him to "make a change." The city manager fired the plaintiff several months later. The court held that these allegations "[were] not enough to support a reasonable inference that [the city manager] had a 'meeting of the minds' with [the defendants complained about the plaintiff]. *Id.* at *3; *see also Coker*, 2023 WL 2330666 at *12 (dismissing the plaintiff's § 1985(3) because the complaint "is largely devoid of factual allegations from which one could plausibly infer the existence of an agreement between the numerous [d]efendants allegedly involved); *Sams v. Ga West Gate, LLC*, No. CV415-282, 2017 WL 436281, *5 (S.D. Ga. Jan. 30, 2017) (dismissing § 1985(3) claims for failure to allege the existence of an agreement where the plaintiffs alleged that certain defendants met with the city police chief and assured him they would "cooperate with the police").

As with their failure to plead Ms. Thiebe's invidiously discriminatory animus, Plaintiffs also failed to plead sufficient facts supporting the existence of an agreement between Ms. Thiebe and the other Defendants. In their First Amended Complaint, Plaintiffs make the following conclusory allegations regarding the alleged "agreement" between Ms. Thiebe and the other Defendants:

- Defendant Stokes found willing participants in this plot in the City council members he had appointed and other powerful persons/entities such as the Defendant Lynn [sic] Thiebe . . . . (Doc. 1-3, PageID.45, ¶ 2);

- As detailed below, the key to the success of this conspiracy required the cooperation of the Defendant Thiebe . . . . (*Id.*, PageID.51, ¶ 44);

- Upon information and belief, Ms. Thiebe is acting in concert and/or at the request [sic].  (*Id.*, PageID.55, ¶ 62);

- [The Town Defendants] have told the Defendant Thiebe to deny Plaintiff Braxton access to the Town's post office box and access to any official correspondence.  (*Id.*, PageID.58, ¶ 80);

- The Individual Defendants would not have succeeded in this plot . . . without the assistance of the Bank and the Post Master [sic].  (*Id.*, PageID.60, ¶ 90);

- Defendant Stokes secured the agreement or consent of the [sic] Ms. Thiebe and the white leadership of the Bank to prevent Mayor Braxton from preforming the duties of his job as Mayor of Newbern.  (*Id.*, PageID.62, ¶ 96); and

- Defendant Stokes had instructed Defendant Thiebe not to give Mayor Braxton access to official Town mail.  (*Id.*, PageID.63, ¶ 102).

Here, Plaintiffs have generally alleged that Defendant Stokes "instructed" or "told" Ms. Thiebe to withhold the Town's mail from Plaintiffs and that there was an "agreement" between Ms. Thiebe and the remaining Defendants; they have not alleged that any specific communications between Ms. Thiebe and any other Defendants occurred.  These allegations, which are even weaker than those in *Odom*, are insufficient to state the existence of the requisite agreement to pursue a Section

1985(3) claim existed.  As such, this Court should dismiss Plaintiffs' Section 1985(3) claim against

Ms. Thiebe.

**B. Plaintiffs' Section 1985(3) claims against Ms. Thiebe are barred by qualified immunity.**

While Plaintiffs have failed to state a claim against Ms. Thiebe under Section 1985(3), any

such claims are barred by the doctrine of qualified immunity.  In *Ziglar v. Abbasi*, 582 U.S. 120,

152 (2017), the Supreme Court held that the doctrine of qualified immunity applies to bar a Section

1985(3) claim.  *See also Chua v. Ekonomou*, 1 F.4th 948, 956 (11th Cir. 2021) (recognizing that

the Supreme Court held that the doctrine of qualified immunity applies in a § 1985(3) case).

According to the Eleventh Circuit:

> Qualified immunity is an immunity from suit, rather than merely a defense to liability.  It protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. To be entitled to qualified immunity, a defendant must first establish that she was acting within the scope of her discretionary authority, meaning the government employee must have been performing a legitimate job-related function, or pursuing a job-related goal, through means that were within the official's power to utilize. Once the defendant has established that she was acting within her discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate by showing: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation.

*McClamma v. Remon*, 561 F. App'x 787, 790 (11th Cir. 2014) (internal citations and quotations

omitted).  Plaintiff, however, "cannot overcome an officer's qualified immunity by merely citing

a general constitutional right and asserting that the officer's conduct violated the right."  *Elkins v.*

*Elenz*, No. 8:11-cv-2817-T-23AEP, 2012 WL 2952435, *2 (M.D. Fla. July 19, 2012), *aff'd* 516 F.

App'x 825 (11th Cir. 2013).

In *Watkins v. U.S. Postal Employee*, 611 F. App'x 549 (11th Cir. 2015), the Eleventh

Circuit determined that a postal employee was entitled to qualified immunity in a case involving

alleged violations of the plaintiff's First Amendment rights.  Specifically, the plaintiff alleged that

16

the postal employee refused to allow him to purchase a mailbox because he was singing in line. The court stated that the plaintiff "ha[d] made no supportable allegations that any constitutional right to sing in the lobby of a post office was clearly established at the time of the incident." *Id.* at 553. Moreover, "[r]efusing service to a disruptive customer does not violate any clearly established and obvious federal law; nor were [the postal employee's] actions so clearly violative of the Constitution that [the employee] had to know that her response was impermissible regardless of prior case law." *Id.* As such, the court held that the plaintiff's claims were barred by qualified immunity. *Id.*; *see also Gaffney v. Ficarrotta*, No. 8:21-cv-21-CEH-CPT, 2022 WL 17668825, *10-12 (M.D. Fla. Dec. 14, 2022) (dismissing § 1985(3) claims against a sheriff based on qualified immunity because the plaintiffs failed to establish that the alleged violations of the plaintiffs' Fourteenth Amendment rights were clearly established at the time of the purported violations).

Plaintiffs' claims against Ms. Thiebe are barred by the doctrine of qualified immunity because,[5] as discussed above, they have failed to allege that Ms. Thiebe violated any of their specific constitutional rights and, instead, allege generally that she conspired to deprive them of equal protection of the laws, equal privileges and immunities of the laws, and of their ability to run the Town of Newbern. (Doc. 1-3, PageID.62, ¶ 99.) Even if Plaintiffs' allegations are true (and they are not), Plaintiffs cannot show that allegedly withholding mail from Plaintiff Braxton or interfering with his "duties" as "Mayor" were clearly established violations of any of Plaintiffs' constitutional rights at the time they occurred. In fact, any such violations could not have been clearly established at the time they allegedly occurred because Plaintiffs' allegations, if true, support the existence of a question as to who was entitled to access the mail for the Town of

---

[5] There is no dispute that Plaintiffs are alleging that Ms. Thiebe was acting withing the scope of her discretionary authority when she allegedly withheld mail from Plaintiffs because they allege numerous times that she was acting as the "post master" in doing so.

Newbern.  (*See, e.g.,* Doc. 1-3, PageID.50-52, 58, 62-63, ¶ 37, 42, 45, 80, 96, 102.)  Because Plaintiffs have failed to allege that Ms. Thiebe violated any specific constitutional right and, even if she did, any such violation was not clearly established at the time it occurred, Plaintiffs' Section 1985(3) claims are barred by qualified immunity and this Court should dismiss Plaintiffs' Section 1985(3) claims against her.

## II.  Plaintiffs failed to state a claim under Section 1986.

"Section 1986 requires the plaintiff to prove that the defendant knew of a Section 1985 conspiracy, that he had the power to prevent (or aid in preventing) the constitutional violation made the object of the conspiracy, and that he failed to do so."  *Muhammad v. Bethel-Muhammad*, No. 11-0690-WS-B, 2013 WL 5531698, *4 (S.D. Ala. Oct. 7, 2013).  When a plaintiff fails to properly plead a conspiracy to violate an individual's civil rights pursuant to Section 1985(3), no Section 1986 claim can go forward.  *Nicholson v. City of Daphne*, No. 07-0496-WS-M, 2009 WL 2028389, *1 (S.D. Ala. July 7, 2009) ("A claim under Section 1986 is derivative of a claim under Section 1985, and if the Section 1985 claim fails, the Section 1986 claim fails along with it."); *see also Harris*, 2017 WL 9732025 at *5 (dismissing a claim under § 1986 where the plaintiff "fail[ed] to state a cause of action for a § 1985 conspiracy").  In this case, Plaintiffs' Section 1986 claims necessarily fail because, as set forth above, Plaintiffs have failed to state a claim for a Section 1985(3) conspiracy, and this Court should dismiss Plaintiffs' Section 1986 claims against Ms. Thiebe.

III.   **Plaintiffs failed to state a claim under *Bivens*.**

To the extent that Plaintiffs attempt to make claims against Ms. Thiebe under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971),[6] those claims must be dismissed because they are not entitled to pursue those claims under *Bivens* and Ms. Thiebe is entitled to qualified immunity.

A.   **Plaintiffs' claims against Ms. Thiebe do not support the creation of a new *Bivens* cause of action.**

In *Bivens*, the Supreme Court "create[d] 'a cause of action under the Fourth Amendment' against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) (quoting *Bivens*, 403 U.S. at 397). While the Court created two new causes of action in the years following *Bivens*, "[s]ince these cases, the Court has not implied any additional causes of action under the Constitution." *Id.* The Court came to realize that "creating a cause of action is a legislative endeavor" and "Congress is 'far more competent than the Judiciary' to weigh [the necessary] policy considerations." *Egbert*, 142 S. Ct. at 1802-03 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)).

With these principles in mind, the Court has "emphasized that recognizing a cause of action under *Bivens* is 'a highly disfavored judicial activity.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)). Specifically, a court should consider the following when determining whether to recognize a cause of action under *Bivens*:

> If there are sound reasons to think Congress might doubt the efficacy of necessity of a damages remedy, the courts must refrain from creating it. Even a single sound

---

[6] Any Section 1983 claims against Ms. Thiebe are properly construed as *Bivens* claims. *See McCorvey v. U.S.*, No. 12-00757-KD-C, 2014 WL 4594475, *4 (S.D. Ala. Sept. 11, 2014) (recognizing that Section 1983 claims "challenges the constitutionality of the conduct of state officials").

reason to defer to Congress is enough to require a court to refrain from creating such a remedy.  Put another way, the most important question is who should decide whether to provide a damages remedy, Congress or the courts?  If there is a rational reason to think that the answer is "Congress"—as it will be in most every case—no *Bivens* action may lie.  Our cases instruct that, absent utmost deference to Congress' preeminent authority in this area, the courts arrogate legislative power.

*Egbert*, 142 S. Ct. at 1803 (internal quotations and citations omitted).

In order to determine whether a *Bivens* remedy exists, the Court has set forth a two-step inquiry:  (1) whether the case presents a new *Bivens* context, i.e., one that is meaningfully different from the three cases in which the Court has implied a damages action, and (2) "if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Egbert*, 142 S. Ct. at 1803 (quoting *Abbasi*, 582 U.S. at 136).  Recently, however, the Court recognized that, "[w]hile our cases describe two steps, those steps often resolve to a single question:  whether there is any reason to think that Congress might be better equipped to create a damages remedy."  *Egbert*, 142 S. Ct. at 1803.  Finally, "[a] court may not fashion a *Bivens* remedy if Congress has already provided, or has authorized the Executive to provide, an alternative remedial structure."  *Id.* at 1804.  The existence of such an alternative remedial structure is alone sufficient to limit the power of the judiciary to infer a new *Bivens* cause of action.  *Id.*

Various courts have determined that no cause of action should exist under *Bivens* for violations of the Thirteenth Amendment or of equal protection under the Fifth Amendment.  *See, e.g., Saintillus v. U.S. Supreme Court*, No. 2:23-cv-0776 AC P, 2023 WL 3254963, *2 (E.D. Cal. May 4, 2023), *appeal filed*, No. 23-15793 (9th Cir. May 24, 2023) ("*Bivens* actions, the federal corollary to Section 1983, do not extend to alleged violations of the Thirteenth Amendment") (Claire, Mag. J.) (internal footnote omitted); *Joseph v. Becerra*, No. 22-cv-40-wmc, 2022 WL

20

17262231, *3 (W.D. Wis. Nov. 29, 2022) (recognizing that the Supreme Court has not recognized a *Bivens* cause of action under the Thirteenth Amendment); *Hall v. Chapman*, No. 4:17-CV-10985-TGB-APP, 2022 WL 4122024, *6-9 (E.D. Mich. Sept. 9, 2022) (holding that no *Bivens* cause of action was available for alleged violations of Fifth Amendment equal protection rights); *Castelli v. Garrett*, No. 7:19-cv-01332-KOB-HNJ, 2022 WL 2132847, *3 (N.D. Ala. Dec. 30, 2021) (dismissing a *Bivens* claim for a violation of equal protection rights).

To the extent Plaintiffs have attempted to state a *Bivens* claim against Ms. Thiebe under the Thirteenth or Fifth Amendments (it is not clear that they have), this Court should not recognize such a cause of action. Plaintiffs' claims arise in a new *Bivens* context and other courts have recognized that these new causes of action should not be recognized. Moreover, to the extent a racially motivated conspiracy to strip Plaintiffs of their civil rights may have occurred (and it did not here), Congress created an adequate remedy to address those claims through Sections 1985 and 1986.[7] As such, this Court should dismiss any *Bivens* claim Plaintiffs may have asserted against Ms. Thiebe.

**B. Plaintiffs' purported *Bivens* claims are barred by qualified immunity.**

Any potential claims against Ms. Thiebe under *Bivens* are barred by qualified immunity for the reasons set forth in Sections II.A.1, II.A.2, and II.B (i.e., because Plaintiffs have failed to allege that Ms. Thiebe violated any of their specific constitutional rights and there is no authority showing that any such constitutional right was clearly established at the time of the purported violations). As such, Plaintiffs' *Bivens* claims against Ms. Thiebe (to the extent they have attempted to state one) should be dismissed for failure to state a claim.

---

[7] While Congress may have made a remedy available under Sections 1985(3) and 1986, Plaintiffs have failed to state a claim under those provisions for the reasons set forth above.

## CONCLUSION

As set forth above, Plaintiffs have failed to state a claim under 42 U.S.C § 1985(3) and 1986, and *Bivens*.  Accordingly, Ms. Theibe respectfully requests that this Court grant her motion to dismiss and dismiss Plaintiffs' claims against her.


Dated: June 26, 2023                                    Respectfully submitted,

                                                        SEAN P. COSTELLO
                                                        UNITED STATES ATTORNEY


                                                        By: *s/ Timothy A. Heisterhagen*
                                                           Timothy A. Heisterhagen
                                                           Assistant United States Attorney
                                                           Southern District of Alabama
                                                           63 South Royal Street, Suite 600
                                                           Mobile, Alabama 36602
                                                           Telephone: 251-415-7180
                                                           Email: timothy.heisterhagen@usdoj.gov

                                                           *Attorney for the United States*


## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.


                                                        *s/ Timothy A. Heisterhagen*
                                                           Timothy A. Heisterhagen
                                                           Assistant U.S. Attorney