IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PATRICK BRAXTON, JAMES BALLARD, BARBARA PATRICK, JANICE QUARLES, and WANDA SCOTT, | * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | 2:23-cv-00127-KD-N |
| HAYWOOD STOKES III, GARY BROUSSARD, JESSE DONALD LEVERETT, VONCILLE BROWN THOMAS, LYNN THIEBE, WILLIE RICHARD TUCKER, and PEOPLE'S BANK OF GREENSBORO, | * * * * * * * | |
| Defendants. | * | |

## DEFENDANTS' MEMORANDUM BRIEF IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

COME NOW Defendants Haywood Stokes III, Gary Broussard, Jesse Donald Leverett, Voncille Brown Thomas, and Willie Richard Tucker (hereinafter "the Newbern Defendants"), by and through counsel, and submit this memorandum brief in support of Defendants' motion for judgment on the pleadings pursuant to Rule 12(c). In support of this motion, the Newbern Defendants state the following:

## FACTS OF THE COMPLAINT[1]

Plaintiff Patrick Braxton, an African-American, alleges that he became the first African-American Mayor of the Town of Newbern since its founding in 1854 when he was elected as Mayor in 2020. (Doc. 1-3, ¶ 1). Prior to his alleged election, Braxton alleges that the Town of Newbern had not had an election for decades and that the position of Mayor of the Town of Newbern had instead been a "hand me down" position among white Town residents. (*Id.*, ¶ 1). Braxton alleges that he was the only person who qualified as a candidate for Mayor because no one else qualified, including Defendant Haywood Stokes, III ("Stokes"), who is white and had been acting as Mayor. (*Id.*, ¶¶ 2, 9). Braxton also alleges that Stokes gave him incorrect information as to how to qualify for the mayoral election when he informed Stokes that he planned to run for the position. (*Id.*, ¶ 24). In spite of this, Braxton maintains that he still managed to qualify to run for the position by filing a statement of candidacy and statement of economic interests with the Circuit Clerk of Hale County and the State of Alabama. (*Id.*, ¶ 26). On the last day of qualifying, he also submitted his statement of candidacy and paid the $50 qualifying fee to the Town clerk. (*Id.*, ¶ 27). Due to no other resident lawfully qualifying as a candidate, Braxton

---

[1] Defendants recite the factual allegations from Plaintiffs' Amended Complaint, as those are the operative facts at this stage. *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998) ("In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party.") These may not be the actual facts.

2

claims that he became Mayor on or around July 22, 2020, by operation of law. (Doc. 1-3, ¶ 29).

Braxton alleges that he was the only candidate to qualify for <u>any</u> elected municipal office in Newbern. (*Id.*, ¶ 30). Following his alleged election to the Mayor position, he <u>appointed</u> the remaining Plaintiffs, namely Barbara Patrick, Wanda Scott, Jan Quarter, and James Ballard, to the open City council positions. (*Id.*, ¶¶ 31, 40-41). At that point, Plaintiffs allege that Defendant Stokes conspired with the other defendants to unlawfully remain in office in order to prevent a majority black Town Council from taking office. (*Id.*, ¶ 33). In order to do this, Plaintiffs allege that the Newbern Defendants "met in secret" without giving notice of the meeting and adopted resolutions to conduct a special election on October 6, 2020. (*Id.*, ¶¶ 33-35). Braxton claims that notice of the special election was not given. (*Id.*, ¶ 36). The Newbern Defendants then filed statements of candidacy and were the only people who qualified for the special election. (*Id.*, ¶ 37). They assumed their new terms as Town Council members in November 2020. (*Id.*, ¶ 39).

The Plaintiffs held a meeting in the Newbern Town Hall in November 2020. (*Id.*, ¶ 43). Following this meeting, they allege that they were prevented from accessing Town Hall and official Town documents by the Newbern Defendants. (*Id.*). They further allege that the Newbern Defendants conspired with Defendant Lynn Thiebe—the postmaster for the Town of Newbern— and Defendant People's

Bank of Greensboro to prevent Plaintiffs from accessing the Town's official mail and bank accounts. (*Id.*, ¶¶ 56, 62).

On November 21, 2022, Plaintiffs filed this action in the Circuit Court of Dallas County. On March 17, 2023, Plaintiffs filed their first amended complaint. (Doc. 1-3). The amended complaint alleges the following claims: (1) a 42 U.S.C. §1983 Equal Protection claim against the Newbern Defendants; (2) a 42 U.S.C. § 1985(3) race discrimination against the Newbern Defendants, Thiebe, and the Bank; and (3) a Failure to Prevent Conspiracy under 42 U.S.C. § 1986 claim against Defendants Thiebe and the People's Bank of Greensboro. (*Id.*, ¶¶ 79, 95, 101). The Newbern Defendants removed this action to this court on April 17, 2023. (Doc. 1). As there are no genuine issues of material fact in this case relative to any of the Plaintiffs' theories of action, the Newbern Defendants are entitled to judgment on the pleadings.

## **STANDARD OF REVIEW**

Pursuant to Rule 12(c) of the *Federal Rules of Civil Procedure*, a party may move for judgment on the pleadings "after the pleadings are closed – but early enough not to delay trial . . . " Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Canon v. City of W. Palm Beach*, 250 F. 3d 1299, 1301 (11th Cir. 2001). "In determining whether a party is entitled to judgment

on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367,1370 (11th Cir. 1998). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956).

## **LEGAL ARGUMENT**

**I.     The Newbern Defendants are entitled to qualified immunity because the law is not clearly established regarding the actions to be taken by officials in a town that has not "held an election in decades."**

"The qualified immunity inquiry involves three steps: (1) the alleged conduct must fall within the scope of the discretionary authority of the actor; (2) if it does, we must then determine whether that conduct violates a constitutional right; (3) if so, we must inquire whether the asserted right was clearly established at the time of the alleged violation." *Tinker v. Beasley*, 429 F.3d 1324, 1326 (11th Cir. 2005). In the Eleventh Circuit, there are three means of showing a violation of clearly established law: (1) case law with indistinguishable facts; (2) a broad statement of principal within the constitution, statute or case law; or (3) conduct so egregious that a constitutional right was clearly violated even in the total absence of case law. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). The standard for determining whether law is clearly established by a specific case or broad principal,

the principal must be established with "obvious clarity" by the case law so that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002).

The undersigned has found no specific case law remotely close to the facts set forth in this case. Further, this case does not appear to involve conduct that is so egregious that a constitutional right is clearly violated. Indeed, Plaintiffs do not argue such in their complaint. Accordingly, Plaintiffs must show law clearly establishing that the Defendants were wrong in attempting to rectify a decades old mistake by holding a special election and that the officials would have known their conduct violated the law.

In this particular situation, Plaintiffs' complaint proves that Plaintiffs James Ballard, Barbara Patrick, Janice Quarrels, and Wanda Scott are not Town Council members and have no claim to be Council members. Based on the complaint, "Braxton immediately set about asking residents of the Town to accept an appointment to the Town council." (Doc. 1-3, ¶ 31). Under Alabama law, a Mayor cannot fill vacancies on the Town Council. Alabama Code § 11-43-41 states that vacancies shall be filled by the Council. Even if the Mayor considers himself a Council member, there was not a quorum to act. *See* Alabama Code § 11-43-48. Based on Plaintiffs' complaint, all claims by James Ballard, Barbara Patrick, Janice

Quarrels, and Wanda Scott should be dismissed because they have no valid claim to Town Council positions and cannot cite to law regarding restoring elections after decades of no elections that would place the Newbern Defendants on notice of wrongdoing.

Plaintiff Braxton claims that he is the legitimate Mayor of the Town of Newbern, Alabama. For the purposes of this motion for judgment on the pleadings, Newbern Defendants will address that argument in the context of Plaintiffs' alleged facts. To be sure, the Newbern Defendants specifically dispute that Patrick Braxton is still the Mayor of Newbern and contend that an Attorney General's opinion confirms he was disqualified as Mayor by operation of law.

As the newly elected Mayor, Braxton had a duty to conduct the organizational meetings pursuant to Alabama Code § 11-43-44. This provision states that "Members of such Council shall meet on the first Monday after their election." Based on Plaintiffs' complaint, Town Hall was locked and an organizational meeting did not take place. More importantly, Plaintiffs' complaint makes it clear that there were no legitimately elected Town Council members to conduct the organizational meeting. Because the meetings were not properly conducted by legitimately elected Council members as required by Alabama Code §11-43-2, Braxton could not attend any properly held meeting with the Town Council for ninety consecutive days. Pursuant to Alabama Code § 11-40-25, which provides for the removal of any

elected municipal Defendant who misses all regular and special called meetings for ninety consecutive days, Mayor Braxton was removed from official office by operation of law. *See* Ala. Op. Atty. Gen. No. 2023-022, 2023 WL 2776383 (Ala. A.G. March 14, 2023).[2] Accordingly, Mayor Braxton has no legitimate claim for Mayor because he was removed by operation of law for not attending a properly held Council meeting for ninety days and cannot cite to law stating otherwise.

In summary, the facts as set forth in Plaintiffs' complaint that the Town of Newbern did not hold an election for "decades" disqualifies Plaintiffs from being Mayor and Town Council members. The Town Council members that were "appointed" by Mayor Braxton are not legitimate because they must be elected. Mayor Braxton is not Mayor because a legitimate council meeting could not occur for ninety consecutive days, and he was removed by operation of law.

Patrick Braxton's complaint filed in the Circuit Court of Dallas County states that a "mistake" was made and attempted to be rectified through another election. (Doc. 2-2). Plaintiffs refer to this rectified election as a "secret election" but present no legitimate alternative as to how to rectify the situation where elections have not occurred. Alabama law requires Council members to be elected and Council member

---

[2] A district court may take judicial notice of matters of public record without converting a motion into one for summary judgment. *Klopfenstein v. Deutsche Bank Securities, Inc.*, 592 Fed. Appx. 812, 816, f. 5; *see also Reeves v. United States*, 526 F. Supp. 3d 1226 (S.D. Fla. 2021) (stating that a district court may take judicial notice of matters of public record without converting a motion for judgment on the pleadings into one for summary judgment).

vacancies to be filled by a Council. The alleged "secret election on October 6, 2020" to rectify a mistake in elections was at least an attempt to comply with Alabama law. *See* Doc. 2-2. Further, when the Town of Newbern Defendants were properly elected, they were entitled to fill the vacancy of Mayor pursuant to Alabama Code § 11-44g-2(2), as such vacancy was created by Braxton's removal by operation of law. This provision allows a Town Council to fill a vacant Mayor's position. There is no clearly established law regarding what to do when an Alabama town does not hold elections for decades. Based on the allegations of the complaint, the Newbern Defendants certainly could have attempted to rectify the situation by doing exactly what they did, i.e. holding another election, installing legitimate council members, and installing a legitimate Mayor pursuant to Alabama law.

Because the law was not clearly established as to what municipal officers or residents should do in this situation, the Town of Newbern Defendants are entitled to immunity on all of Plaintiffs' claims.

**II.     Plaintiffs fail to allege a viable equal protection claim under      42 U.S.C. § 1983, as they cannot show that the Newbern Defendants   intended   to discriminate against them based on their race.**

Even if this Court determines that the law was clearly established, the Newbern Defendants are still entitled to qualified immunity, as Plaintiffs fail to show that the Defendants intended to discriminate against them because of their race. Plaintiffs allege that the Newbern Defendants took official actions to prevent

9

Braxton from performing his duties as Mayor and the remaining Plaintiffs from performing their duties as Town council members. Specifically, Plaintiffs allege that Defendants committed numerous actions such as excluding them from Town council meetings, changing the locks at Town Hall to prevent Plaintiffs from accessing it, and denying them access to Town financial records, among other things. (Doc. 1-3, ¶ 80). However, none of the allegations asserted by Plaintiffs show any intent on the part of Defendants to discriminate against Plaintiffs because of their race.

Qualified immunity generally shields government officials from individual liability under Section 1983, provided that "their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Keating v. City of Miami*, 598, F.3d 753, 762 (11th Cir. 2010). Because "qualified immunity is the 'usual rule' for governmental actors sued in their individual capacities, it will shield them unless case law establishes a bright line in a 'concrete and factually defined context' that makes a violation of federal law obvious." *Scarborough v. Myles*, 245 F.3d 1299, 1301 (11th Cir. 2001).

In order to evaluate the defense of qualified immunity, a court must first determine whether the government official was acting within the line and scope of his discretionary authority when the allegedly wrongful act occurred. *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983). This low initial threshold is met if in performing the general act complained of, ignoring whether the act was done within

constitutional limits, "the official [was] engaged in a legitimate job-related function." *Holloman ex rel. Hollman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Here, it is clear that the Newbern Defendants were acting as Town officials at all times relevant to the claims in Plaintiffs' complaint.

The burden then shifts to Plaintiffs to show that Defendants were not entitled to qualified immunity. "A government actor, however, cannot violate a plaintiff's equal protection rights unless the defendant has the intent to discriminate." *Mencer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir. 1998); *see also Parks v. City of Warner Robins, Georgia*, 43 F.3d 609, 616 (11th Cir. 1995) ("[P]roof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim."). Moreover, a government actor cannot know he is violating clearly established equal protection rights unless he harbors discriminatory intent. *Mencer*, 134 F.3d at 1070.

Here, Plaintiffs allege numerous actions on the part of Defendants such as excluding Plaintiffs from Town Council meetings, changing the locks at the Town Hall, and removing official Town documents. However, there is nothing in the Plaintiffs' amended complaint, taken in the light most favorable to the Plaintiffs, that would show that Defendants intended to discriminate against Plaintiffs because of their race. Accordingly, Defendants are entitled to qualified immunity as to Plaintiffs' Section 1983 equal protection claim.

**III.     The Defendants are entitled to judgment as a matter of law as to Plaintiffs' claim under 42 U.S.C. § 1985(3).**

Plaintiffs' claim under 42 U.S.C. § 1985(3) fails, as Plaintiffs fail to allege a violation of any specific constitutional right or allege facts showing that the Newbern Defendants acted with some invidiously discriminatory animus. Section 1985(3) provides a cause of action against private individuals who "conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). In order to prevail on this claim, a plaintiff would have to prove each of the following elements: "(1) The existence of a conspiracy; (2) For the purpose of depriving, either directly or indirectly, any person or class of persons, of the equal protection of the laws or of the equal privileges and immunities under the laws; (3) Some act in furtherance of the conspiracy; and (4) That the plaintiff was injured in person or property or deprived of having or exercising any right or privilege of a citizen of the United States." *Griffin v. Breckenridge*, 403 U.S. 88, 102–103 (1971). In *Griffin*, the U.S. Supreme Court stated that just because "the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." *Id.* at 101. Thus, Section 1985(3) should not be utilized "as a general federal tort law . . . " *Id.* at 102.

**A. Plaintiffs cannot show that the Newbern Defendants conspired to violate any specific constitutional rights.**

In their amended complaint, Plaintiffs fail to allege that the Newbern Defendants violated any specific constitutional rights. "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Dickerson v. Alachua Cnty Comm'n*, 200 F.3d 761, 766 (11th Cir. 2000) (quoting *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979)). Thus, Section 1985(3) claims are frequently dismissed when a plaintiff fails to allege a violation of a specific constitutional right. *See Bethel v. Baldwin Cnty Bd. of Educ.*, 2007 WL 9717457, *7 (S.D. Ala. Aug. 22, 2007) (dismissing plaintiffs' § 1985(3) claim for failure to allege a "cognizable constitutional violation"); *Hogan v. City of Fort Walton Beach*, 817 Fed. Appx. 717, 723 (11th Cir. 2020) (upholding the district court's dismissal of the plaintiff's Section 1985(3) conspiracy claim due to failure to identify an underlying constitutional right).

In this action, Plaintiffs fail to allege that the Newbern Defendants violated any specific constitutional rights, as Count II of Plaintiffs' amended complaint does not even mention any specifical constitutional rights. (Doc. 1-3, ¶¶ 94-99). Instead, Plaintiffs state the following:

> The Defendants conspiracy to deprive Plaintiffs, on account of their race, (i) equal protection of the laws or (ii) equal privileges and immunities of the laws or (iii) preventing or hindering the properly constituted Town council and Mayor of the Town of Newbern from

13

representing the majority black residents of the Town conduct violates
42 U.S.C. Section 1985(3).

(Doc. 1-3, ¶ 99). Here, Plaintiffs clearly fail to allege any violation of a specific
constitutional right. Accordingly, they fail to state a claim under Section 1985(3),
and Defendants are entitled to judgment as a matter of law.

### B. Plaintiffs cannot show that the Newbern Defendants acted with some invidiously discriminatory animus.

Moreover, even if Plaintiffs did allege a violation of a specific constitutional
right under Section 1985(3), they fail to show that Defendants acted with some
invidiously discriminatory animus. It is "the plaintiff's obligation to allege among
other things, 'some racial, or perhaps otherwise class-based, invidiously
discriminatory animus' behind the defendant's action taken in furtherance of the
conspiracy." *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (quoting *Bray
v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993)). The "animus
standard requires that the defendant proceeded on his course of conduct 'because of,
not merely in spite of, its adverse effects upon an identifiable group.'" *Dean*, 12
F.4th at 1255 (quoting *Bray*, 506 U.S. at 271-72). Moreover, a Section 1985(3) claim
is due to be dismissed when a plaintiff fails to plead sufficient facts showing that the
defendants acted with invidiously discriminatory animus. *See, e.g.*, *Phillips v. Scully*,
2022 WL 19934416, *5 (S.D. Ala. October 28, 2022) (dismissing a Section 1985 for
failure to allege discriminatory animus); *Shedd v. Odom*, 2023 WL 2772627, *11

14

(N.D. Ala. February 8, 2023) (holding that the plaintiff failed to allege a viable Section 1985(3) claim, in part, due to plaintiff's failure to allege any invidiously discriminatory animus).

In *Dean*, African-American cheerleaders at a Georgia public university were prohibited from kneeling during the national anthem at football games. *Dean*, 12 F.4th at 1251. One of the cheerleaders filed a lawsuit alleging a claim of conspiracy to commit civil rights violations under Section 1985(3) against the school's leadership, the county sheriff, and a Georgia legislator. *Id.* The cheerleader specifically alleged that the sheriff engaged in a conspiracy to deprive her of her constitutional rights because of her race and due to the fact that she was protesting police brutality against African Americans. *Id.* at 1254. The district court found that the cheerleader failed to allege sufficient facts showing that the sheriff's actions were motivated by her race and granted the sheriff's motion to dismiss. *Id.* The Eleventh Circuit affirmed the district court's holding that the cheerleader failed to plead sufficient facts to support her conspiracy claim. *Id.* at 1257. The court further held that the fact that the sheriff's "targets are African American, without more, does not make it plausible that he targeted the cheerleaders <u>because</u> they are African American." *Id.* at 1256 (emphasis in original). The court stated the following in regard to the plaintiff's argument that the protests were related to police brutality against African Americans:

> Certainly [the protests] relate to race and racial issues . . . , and they
> support the theory that [the sheriff] discriminated against [the plaintiff]
> because of the content of her protests . . . . But discrimination based on
> the protesting of racial issues, no matter how compelling those issues
> are, is simply not the same as discrimination based on the race of the
> protestors. Thus, the additional allegations do not support [the
> plaintiff's] theory that [the sheriff] discriminated against her because
> she is African American.

*Id.* at 1257. As such, the court held that "[the plaintiff failed to allege that [the sheriff]

undertook the conspiracy because [she] and her teammates are African Americans"

and upheld the district court's dismissal due to insufficient pleading. *Id.*

Like in *Dean*, the Plaintiffs fail to plead any facts showing that the alleged

actions of the Newbern Defendants were motivated by their race. Plaintiffs instead

allege only the following:

- Defendants Stokes, Broussard, Leverett, and Tucker are white residents of the Town. Defendant Thomas is a black resident of the Town. (Id., ¶¶ 9-13);

- The Defendants have taken official actions to prevent Plaintiff Braxton from discharging his duties as Mayor and Plaintiffs Ballard, Patrick, Quarles and Scott from discharging their duties, responsibilities and privileges as Town council members on account of their race. (*Id.*, ¶ 80); and

- The Defendants have continued to deprive Plaintiff Braxton of the rights and privileges of his job as Mayor because of his race.

> Defendants also continue to deprive Plaintiffs Patrick, Scott, and
>
> Quarles the right and privilege of serving on the Town council
>
> on account of their race. (*Id.*, ¶ 98).

Plaintiffs make only conclusory allegations that the Newbern Defendants acted "because of" or "on account of" the Plaintiffs' race without providing any facts to show that their actions were motivated by race. (Doc. 1-3, ¶¶ 98-99). Accordingly, the Newbern Defendants are entitled to judgment as a matter of law as to Plaintiffs' Section 1985(3) claim.

### C. Plaintiffs' Section 1985(3) claim fails because Plaintiffs cannot show a meeting of the minds among defendants.

Plaintiffs cannot show a meeting of the minds among defendants to violate Plaintiffs' constitutional rights. As set forth above, a meeting of the minds is required to plead a Section 1985(3) claim. In *Odom v. City of Anniston*, the plaintiff's Section 1985(3) claim was dismissed because the plaintiff failed to allege sufficient facts regarding an agreement among defendants. 2021 WL 3851976, *3 (N.D. Ala. Aug. 27, 2021). In *Odom*, the plaintiff alleged that the city manager attended a meeting where the plaintiff's character was attacked and implied that the city manager was opposed to the plaintiff because of his race. *Id.* at *1. One of the defendants also spoke directly to the city manager during a city council meeting requesting that the city manager "make a change"; the plaintiff was fired several months later. *Id.* The Court held that the plaintiff's allegations were "not enough to support a reasonable

inference that [the city manager] had a 'meeting of the minds'" with the other alleged conspirators. *Id.* at *3. Accordingly, the plaintiff's Section 1985(3) claim was dismissed.

Just as they fail to allege a violation of a specific constitutional right or invidiously discriminatory animus, Plaintiffs fail to plead sufficient facts to show any agreement, or meeting of the minds, among Defendants. Plaintiffs instead allege only the following:

- Defendant Stokes found willing participants in this plot in the City council members he had appointed and other powerful persons/entities such as the Defendant Lynn [sic] Thiebe (the Post Master) and the Defendant People's Bank of Greensboro (Doc. 1-3, ¶ 2);

- As detailed below, the key to the success of this conspiracy required the cooperation of the Defendant Thiebe, the Defendant Bank . . . (*Id.*, ¶ 44);

- Ms. Thiebe, the post master refusing Braxton any access is white. Upon information and belief, Ms. Thiebe is acting in concert and/or at the request [sic] (*Id.*, ¶ 62).

- [The Newbern Defendants] have told and obtained the consent of the Town's Bank to deny Mayor Braxton and the Plaintiffs all

access to financial information regarding the Town's accounts.
(*Id.*, ¶ 80);

- The Individual Defendants would not have succeeded in this plot .
  . . without the assistance of the Bank and the Post Master [sic]. (*Id.*,
  ¶ 90);

- Defendant Stokes secured the agreement or consent of the [sic]
  Ms. Thiebe and the white leadership of the Bank to prevent
  Mayor Braxton from performing the duties of his job as Mayor
  of Newbern. (*Id.* ¶ 96); and

- Defendant Stokes had instructed Defendant Thiebe not to give
  Mayor Braxton access to official Town mail. (*Id.*, ¶ 102).

Thus, Plaintiffs fail to allege facts showing an agreement, or meeting of the
minds, among Defendants. Instead, they have only generally alleged an instruction
by Defendant Stokes to Defendant Thiebe to withhold mail from Braxton and that
there was an "agreement" among all defendants. These conclusory allegations are
not sufficient to show a meeting of the minds. Accordingly, Plaintiffs fail to allege
a viable Section 1985(3) claim, and judgment as a matter of law is due to be granted
as to the Newbern Defendants.

## **CONCLUSION**

As set forth above, the Newbern Defendants are entitled to qualified

immunity, as the law was not clearly established. Additionally, Plaintiffs fail to allege viable claims against the Newbern Defendants under 42 U.S.C § 1983 and 42 U.S.C. 1985(3). Accordingly, the Newbern Defendants respectfully request this Court grant their motion and enter judgment in favor of the Newbern Defendants.

Respectfully submitted this the 21st day of July, 2023.

*/s/Rick A. Howard*
Rick A. Howard (ASB-9513-W79R)
M. Ashley Tidwell (ASB-3974-O48M)
Morgan B. Beckman (ASB-3529-T81J)
Attorneys for Haywood Stokes III,
Gary Broussard, Jesse Donald Leverett,
Voncille Brown Thomas, and Willie Richard
Tucker

OF COUNSEL:
Holtsford Gilliland Hitson Howard
        Stevens Tuley & Savarese, P.C.
Post Office Box 4128
Montgomery, Alabama 36103-4128
334-215-8585
334-215-7101 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon:

Richard P. Rouco
George N. Davies
Quinn, Connor, Weaver, Davies & Rouco, LLP
2 North 20th Street, Suite 930
Birmingham, AL 35203

Woodruff R. Jones
Gamble, Gamble, Calame & Jones, LLC
P.O. Box 345
Selma, Alabama 36702

Keith A. Jones
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama 36602


by placing same in the United States Mail, postage prepaid, or through the court's
electronic filing service, on this the 21st day of July, 2023.


/s/Rick A. Howard
OF COUNSEL