## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA

Patrick Braxton, James Ballard, Barbara
Patrick, Janice Quarles, Wanda Scott and
Dorothy Holley,

        *Plaintiffs*,

    vs.

Haywood Stokes, III, Gary Broussard, Jesse
Donald Leverett, Voncille Brown Thomas,
Willie Richard Tucker and the Town of
Newbern,

        *Defendants*.

Case No. 2:23-CV-00127-KD-N

## SECOND AMENDED COMPLAINT

The Plaintiffs Patrick Braxton, James Ballard, Barbara Patrick, Janice Quarles, Wanda Scott and Dorothy Holley allege as follows:

## INTRODUCTION

1. The Plaintiff Patrick Braxton accomplished something no other Black resident of the Town of Newbern ("Town" or "Newbern") had ever accomplished since the Town's founding in 1854: he became Mayor of the Town. However, some white residents of the Town, long accustomed to exercising total control over city government, refused to accept this outcome. Mayor Braxton had legally managed to become the first Black Mayor because for as long as anyone can remember, the office of Mayor and Town Councilmember had been treated as a "hand me down" by Defendants and other white residents of the Town.

2. Because no resident had lawfully qualified as a candidate for the Town

1

Council positions, and in line with state law, Ala. Code § 11-46-26, and decades of past practice, Mayor Braxton appointed Plaintiffs Barbara Patrick, Wanda Scott, Jan Quarter and James Ballard to the open Town Council positions. Upon the realizing that Mayor Braxton intended on appointing Black residents to the Town council, the Defendant Stokes (who had acted as Mayor prior to Braxton) and the other Defendants, acting in concert, set in action a plan to thwart a majority Black Town Council from taking office, to effectively prevent the first Black Mayor from exercising the duties and powers of his new job, and to prevent voters in Newbern, the majority of whom are Black, from electing their candidates of choice.  Defendant Stokes found willing participants in this plot in the Defendants Gary Broussard, Jesse Donald Leverett, Voncille Brown, Thomas, and Willie Richard Tucker, who are Town council members who he had previously appointed, and other powerful persons/entities.

3.      Upon information and belief, no mayoral or Town Council election has been held in the six decades since the passage of the Voting Rights Act of 1965 ("VRA"), which eliminated many of the barriers to Black people registering to vote and voting in Alabama.

4.      Mayor Braxton and Plaintiffs Ballard, Holley, Patrick, Quarles and Scott bring this lawsuit against the Defendants to put an end to the continuing policy, practice, and conspiracy to deprive Plaintiffs and other Black residents of the Town of Newbern of the equal opportunity to elect candidates of their choice and enjoy meaningful representation in City government.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1331,

2

1343, and 1357 because the matters in controversy arise under the Constitution and laws of the United States, as well as under 42 U.S.C. §§ 1983 and 1988.

6.      The Court has jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

7.      The Court has personal jurisdiction over the Defendants, who are all citizens of Alabama.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district and because at least one Defendant resides in this district and all Defendants are Alabama residents.

## **PARTIES**

9.      Plaintiff Patrick Braxton is a Black resident of the Town of Newbern. He is the Mayor of Newbern. Mayor Braxton is the only candidate who qualified for the position of town mayor in the November 2020 election. As such, he became mayor by operation of law. On or around November 2, 2020, he was sworn in as mayor. He is unaware of any mayoral elections taking place. He does not recall Newbern ever holding any mayoral or Town Council elections, nor providing any notice to its residents to participate in any such election.

10.     Plaintiff James Ballard is a Black resident of the Town of Newbern. He is a lawfully registered voter in the Town and was sworn in as a Town Councilmember on November 2, 2020 after being lawfully appointed by Mayor Braxton. He does not recall Newbern ever holding any mayoral or Town Council elections, nor providing any notice to its residents to participate in any such election.

3

11.     Plaintiff Barbara Patrick is a Black resident of the Town of Newbern. She is a lawfully registered voter in the Town and was sworn in as a Town Councilmember on November 2, 2020 after being lawfully appointed by Mayor Braxton. She does not recall Newbern ever holding any mayoral or Town Council elections, nor providing any notice to its residents to participate in any such election.

12.     Plaintiff Janice Quarles is a Black resident of the Town of Newbern. She is a lawfully registered voter in the Town and was sworn in as a Town Councilmember on November 2, 2020 after being lawfully appointed by Mayor Braxton. She does not recall Newbern ever holding any mayoral or Town Council elections, nor providing any notice to its residents to participate in any such election.

13.     Plaintiff Wanda Scott is a Black resident of the Town of Newbern.  She is a lawfully registered voter in the Town and was sworn in as a Town Councilmember on November 2, 2020 after being lawfully appointed by Mayor Braxton. She does not recall Newbern ever holding any mayoral or Town Council elections, nor providing any notice to its residents to participate in any such election.

14.     Plaintiff Dorothy Holley is a Black resident who was born and raised in Newbern. She has been a lawfully registered voter in the Town for approximately fifty years, and does not recall Newbern ever holding any mayoral or Town Council elections, nor receiving notice to participate in any such election. Defendants' actions have deprived her of her constitutional rights and have violated her rights under the Voting Rights Act to vote in municipal elections free from racial discrimination.

15.     Defendant Haywood Stokes, III is a white resident of the Town of Newbern. Mr. Stokes previously acted as the Mayor of Newbern. Presently, Mr. Stokes

holds himself out as the current Mayor of Newbern and a member of the Town Council.

16.     Defendant Gary Broussard is a white resident of the Town of Newbern. Mr. Broussard previously acted as an appointed Town Councilmember. Presently, Mr. Broussard holds himself out as a current member of the Town Council.

17.     Defendant Jesse Donald Leverett is a white resident of the Town of Newbern. Mr. Leverett previously acted as an appointed Town Councilmember. Presently, Mr. Leverett holds himself out as a current member of the Town Council.

18.     Defendant Voncille Brown Thomas is a Black resident of the Town of Newbern. Upon information and belief, Voncille Brown Thomas was previously appointed by Defendant Stokes to the Town Council. Presently, Ms. Thomas holds herself out as a current member of the Town Council.

19.     Defendant Willie Richard Tucker is a white resident of the Town of Newbern. Mr. Tucker previously acted as an appointed Town Councilmember. Presently, Mr. Tucker holds himself out as a current member of the Town Council.

20.     Defendant Town of Newbern is the municipal government located in Newbern, Alabama.

## FACTUAL ALLEGATIONS

21.     The town of Newbern (hereinafter "Newbern" or "Town") is located in Hale County, Alabama.  It is a class 8 municipality under Alabama's Code ("the Code"); meaning that it is a town with fewer than 6,000 residents. Ala. Code § 11-40-12. Based on the most recent census data, Newbern has approximately fewer than 300 residents, and is 85% Black. Newbern has been a majority-minority city for at least the last 50 years.

5

22.     Upon information and belief, Newbern has also had a mayor-council form of government for decades. Pursuant to the Code, Newbern is governed by a mayor and five (5) Town Council positions. Ala. Code § 11-43-2. Under the Code, municipal elections for Mayor and Town Council are supposed to be held on the fourth Thursday of August every four years. Ala. Code § 11-46-21. Where at least one candidate qualifies for mayor or town council, the Code requires the Mayor (by a certain date) to notify the public of an upcoming election for Mayor and Town Council and that residents who have lived in the municipality for at least 90 days may qualify to run for office. Ala. Code § 11-46-22.

23.     During the period relevant to this complaint, a resident satisfying the 90 day period and wishing to have their name appear on a ballot for an elected position was required to file a statement of candidacy and a statement of economic interests on or before the third Tuesday of July proceeding the election. Ala. Code § 11-46-25.

24.     In the event only one individual files a statement of candidacy for an office by 5:00 P.M. on the third Tuesday in July preceding the date set for the election of municipal officers, then that individual shall for all purposes be deemed elected to office. Ala. Code § 11-46-26.

25.     Though the Mayor of Newbern has been required to provide notice and conduct an election for Mayor and Town Council every four years, no notice of Mayoral or Town Council elections have been given and Newbern has not held an election in six decades. Instead, the office of Mayor was "inherited" by a hand-picked successor and the newly designated Mayor then selected the Town Council members. Upon information and belief, Mayor Stokes was mayor from approximately 2008 until 2020.

6

26.     Upon information and belief, because the office of mayor was treated as a "hand me down" position and all prior mayors have been white residents, no Black resident of Newbern has ever served as mayor prior to November 2020. Upon information and belief, only one Black person has ever been selected to serve as a Town Councilmember before the appointment of Plaintiffs Ballard, Patrick, Scott and Quarles. In other words, the council has remained an overwhelmingly white body.

**Ongoing Racial Discrimination against Black Voters in Alabama**

27.     Plaintiffs' disenfranchisement due to Defendants' conduct occurs against a backdrop of persistent discrimination against Black voters throughout Alabama and in Hale County specifically.

28.     Alabama has a history of racially discriminating against Black voters, that continues through today. Before the Civil War, Black voters were legally prohibited from voting. Even after Black voters secured the right to vote, Alabamians used force and threats of force to prevent Black residents from voting. In 1901, the Alabama Constitution was amended to impose literacy tests and a poll tax which had the effect of greatly disenfranchising Black voters. *See United States v. Alabama,* 252 F. Supp. 95, 99 (M.D. Ala. 1966)*.*

29.     Since that time, Alabama has employed and continues to employ various voting practices to impair Black electoral success. *See Sims v. Baggett*, 247 F. Supp. 96, 108-109 (M.D. Ala. 1965); *Dillard v. Crenshaw Cty.*, 640 F. Supp. 1347, 1357 (1986); *Allen v. Milligan*, 216 L. Ed. 2d 60 (2023); *People First of Alabama v. Merrill*, 491 F. Supp. 3d 1076 (N.D. Ala. 2020); *Ala. State Conf. of NAACP v. Alabama*, No. 2:16-CV-731-WKW, 2020 WL 583803 (M.D. Ala. Feb. 5, 2020); *Jones v. Jefferson Cnty. Bd. of*

*Educ.*, No. 2:19-cv-01821-MHH, 2019 WL 7500528 (N.D. Ala. Dec. 16, 2019); *Allen v. City of Evergreen*, No. 13-0107, 2014 WL 12607819 (S.D. Ala. Jan. 13, 2014); *United States v. McGregor*, 824 F. Supp. 2d 1339, 1345-46 & n.3 (M.D. Ala. 2011).

30.     Discrimination against Black voters in Hale County persists as well. *See e.g., Hale Cnty., Ala. v. United States,* 496 F. Supp. 1206, 1219 (D.D.C. 1980). Between 1965 and 2013, the U.S. Department of Justice objected under the preclearance provisions of Section 5 of the Voting Rights Act to state or local laws that discriminated against Black voters in Hale County.

31.     In Newbern, upon information and belief, white Mayors and Town Councilmembers have prevented the residents of Newbern, which has a Black majority population, from electing their candidates of choice by failing to hold elections and "handing down" the positions of mayor and Town Councilmember from one white resident to the next. Prior to 2020, Newbern had only ever had one Black town councilmember, and had never had a Black mayor.

### Ongoing Discrimination in Education, Healthcare, the Environment and Employment against Black People in Alabama

32.     Alabama's discrimination against Black residents is not limited to the voting sphere. As courts have recently and repeatedly held, racial disparities in education, economics, housing, and health between Black and white Alabamians are "inseparable from and (at least in part) the result of, the state's history of official discrimination." *Id.* at 1022; *People First of Alabama v. Merrill*, 491 F. Supp. 3d 1076 at 1174-75.

33.     This is particularly true for Black residents living in Hale County, which

is located in the Black Belt of Alabama.[1]

34.    Black residents in Hale County have less educational attainment than white residents, attend more segregated schools, and earn far lower wages. In 2019, the U.N.'s Special Rapporteur on Extreme Poverty and Human Rights, Philip Alston, reported that Black residents in Alabama's Black Belt communities lacked proper sewage and drinking water systems and have unreliable electricity.

35.    These disparities in infrastructure and environmental safety contribute to more adverse health outcomes and shorter life expectancy rates for Black residents in the Black Belt. Black Alabamians have less access to healthcare and health insurance.[2] Black voters in the Black Belt counties in particular "have fewer primary care physicians, dentists and mental health providers per resident than other counties."[3]

36.    Black Alabamians are more than twice as likely as whites to die from diabetes and nearly three times as likely to die from hypertension or asthma.[4] Many of these underlying conditions result from past and present policies that both relegate

---

[1] The Black Belt is named for the region's fertile black soil. The Black Belt region has a substantial majority-Black population because of the many enslaved people brought there to work in the antebellum period.

[2] Heeju Sohn, Racial and Ethnic Disparities in Health Insurance Coverage: Dynamics of Gaining and Losing Coverage over the Life-Course, 36 Popul Res Policy Rev. 181 (Apr. 2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5370590/ ("African Americans . . . are more likely to be uninsured throughout adulthood than non-Hispanic [white] individuals. Without insurance, people face considerable barriers in receiving health services. Many health care providers require insurance coverage from their patients or charge a prohibitively high fee.")

[3] Anna Maria Barry-Jester, The Healthcare System is Leaving the Southern Black Belt Behind, FiveThirtyEight Jun. 28, 2017, https://fivethirtyeight.com/features/the-health-care-system-is-leaving-the-southern-black-belt-behind/; see also The Office of Primary Care and Rural Health Alabama Department of Public Health and The Alabama Rural Health Association, Selected Health Status Indicators (Oct. 2007), http://www.adph.org/ruralhealth/assets/BBACData.pdf.

[4] ADPH, Selected Health Status Indicators: Alabama's Caucasian and African American Populations 4-5 (July 2013), http://www.adph.org/minorityhealth/assets/MinorityHealthStatus2013.pdf.

Black people to particular neighborhoods and disproportionately allocate landfills, factories, and other environmental risks to Black neighborhoods.[5]

37.     Racial discrimination in Alabama also results in socioeconomic inequalities that disadvantage Black people, like higher rates of unemployment, disability, and poverty.

### Mayor Braxton Challenges the White Majority

38.     In April 2020, Mayor Braxton decided to run for the office of Mayor of Newbern. He had concerns that the prior Town Council and Mayor were not responding to the needs of the majority Black community.  These concerns only grew with the Town's response to COVID-19.

39.     Upon information and belief, Defendant Stokes was acting as Mayor in 2020. Stokes had appointed Defendants Broussard, Leverette, Thomas and Tucker to the Town Council prior to May 2020.

40.     In April 2020, Mayor Braxton also told Defendant Stokes that he planned on qualifying as a candidate for Mayor. Defendant Stokes gave Mayor Braxton incorrect information about how to qualify and what was needed to qualify.  Defendant Stokes knew that Mayor Braxton planned on running for Mayor of Newbern. Defendant Stokes told Mayor Braxton that he could not provide Mayor Braxton the paperwork to qualify for Mayor, because Defendant Stokes was also intending on running for Mayor. Defendant Stokes also told Mayor Braxton that there were not ballots or voting

---

[5] *See, e.g.,* Ihab Mikati et al., Disparities in Distribution of Particulate Matter Emission Sources by Race and Poverty Status, 108 Am J. Pub. Health 480-83 (2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5844406/; Diane Alexander & Janet Currie, Is it who you are or where you live? Residential segregation and racial gaps in childhood asthma, 55 J. Health Econ. 186 (2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6112984/.

machines in Newbern.

41.     Under the Code, Defendant Stokes was required to give notice of an election by July 7, 2020, and inform residents that they had until July 21, 2020 to qualify.  Typically, residents of Newbern post announcements in the local stores, Newbern library, post office, and the local paper, the Greensboro Watchman. No announcements were posted about the mayoral election or standards to qualify for the election.

42.     Though Defendant Stokes did not comply with the notice requirements for the 2020 municipal elections and after consulting with the Alabama Conference of Black Mayors, Mayor Braxton filed his statement of candidacy and statement of economic interests with the circuit clerk for Hale County and online with the State of Alabama. Upon information and belief, Defendant Stokes did not submit any paperwork to qualify as a mayoral candidate.

43.     On July 21, 2020, the last day to qualify, Mayor Braxton gave the then City clerk Lynn Williams a money order for $50.00 (which was the qualifying fee) and the statement of candidacy. Ms. Williams accepted the payment and told Mayor Braxton that she wasn't going to let Defendant Stokes get her "involved in his mess". Ms. Williams did not elaborate on this comment but resigned as City clerk a few months later.

44.     Mayor Braxton was the only person who qualified as a candidate for the position of Mayor. Defendant Stokes did not qualify as a candidate even though he knew that Mayor Braxton planned on qualifying since April 2020. Upon information and belief, Defendant Stokes knew or reasonably believed that he would not prevail in

a contested election for the office of Mayor against Mayor Braxton.

45.     Upon information and belief, voting is racially polarized in the Town. Upon information and belief, in partisan and nonpartisan elections, Black voters in the Town tend to vote overwhelming for their preferred candidates (who are usually Black people) and white voters tend to vote overwhelming against Black candidates and other candidates preferred by Black voters. This pattern of racially polarized voting in the Town and across both Hale County and the State of Alabama is well-known and has existed for decades. *See, e.g.*, *Allen v. Milligan*, 143 S. Ct. 1487, 1505-06 (2023); *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 277 (2015); *Dillard v. City of Greensboro*, 946 F. Supp. 946, 952-53 (M.D. Ala. 1996); *Hale County v. United States*, 496 F. Supp. at 1213.

46.     Because he was the only person qualified, Mayor Braxton became Mayor of the Town of Newbern by operation of law. He was Mayor-elect as of July 22, 2020. Upon information and belief, he was also the first Black mayor of the Town of Newbern in the 165 years since its founding.

47.     Not only was Mayor Braxton the only person who qualified as a candidate for the office of Mayor, he was the only person to qualify as a candidate for **any** elected municipal office including the Town council positions.

48.     Upon information and belief, Newbern has not held municipal elections for decades. Instead, past mayors and town councilmembers were *de facto* appointed to their positions without filing the required paperwork, notifying the public about open positions   or   election   dates,   or   otherwise   complying   with   the   Code.

**The Defendants Stokes, Broussard, Thomas and Tucker**
**Conspire to Unlawfully Remain in Office**

49.     No resident of Newbern timely qualified for a position on the Town council in part because, upon information and belief, the Defendants Stokes, Broussard, Leverette, Thomas and Tucker failed to provide the necessary notice and/or take steps to hold an election. The County Probate Judge Arthur Crawford told Mayor Braxton that he could appoint the Town Councilmembers because no one qualified for these positions.  This was consistent with the past practice and, in fact, the prior Town Councilmembers had all been appointed to their positions.

50.     Furthermore, the Code does not specify that elections must be held for Town Council members. Ala. Code § 11-46-1.The Code does, however, specify that if more than one resident qualifies as a candidate, there must be notice of the election—whether it is a Mayoral election or special election. Ala. Code § 11-46-21-22. Because no notice of any special election electing any Town Councilmembers had been given, Mayor Braxton did not know there were any Town Councilmembers elected.

51.     In keeping with past Newbern practice of previous Mayors, including former Mayor Stokes, Mayor Braxton immediately set about asking several residents of the Town if they would accept an appointment to the Town Council. Braxton asked both Black and white residents of the Town about serving on the Town Council. Despite Mayor Braxton's sincere requests, no resident who was white agreed to serve on his appointed Town Council.

52.     Word of Mayor Braxton's recruitment of new Town Councilmembers spread in the community.  Upon information and belief, upon hearing of Mayor Braxton's recruitment and recent mayoral position, the Defendants devised a plan to

13

thwart Braxton from appointing Black Town Councilmembers and to otherwise prevent the voters in majority-Black Newbern from electing their candidates of choice.

53.     The outgoing Mayor Stokes and his outgoing Town Councilmembers decided to depart from the past practice of the Mayor naming the Town Councilmembers if no resident qualified as a candidate for the Town Council.

54.     To prevent Mayor Braxton from appointing a majority black Town council, the Defendants Stokes, Broussard, Leverette, Thomas and Tucker agreed to hold a secret meeting and adopt resolutions to conduct a special election.  No notice was given to Plaintiffs or other members of the public about this meeting and the resolutions passed at this meeting.

55.     Upon information and belief, in August, 2020, the Defendants Stokes, Broussard, Leverette, Thomas and Tucker met in secret to adopt a "special" election ordinance. Upon information and belief, this was the first time in decades (if ever) that an ordinance setting a special election was proposed and adopted by the Town Council or purported Town Councilmembers.

56.     At this secret meeting, Defendant Stokes presented an "ordinance" setting a special election for the Town Council positions because the council members had allegedly "forgotten" to qualify as candidates for the 2020 municipal elections. Under the ordinance, a special election for purposes of electing council members was scheduled for October 6, 2020.

57.     Upon information and belief, no public notice of a special election to be held on October 6, 2020 was ever published, in direct contravention of the Code. The Defendants failed to provide Plaintiffs or other Black residents of the Town with any

form of "notice of all municipal elections by publishing notice thereof in a newspaper published in the city or town, and, if no newspaper is published in the city or town, by posting notices thereof in three public places in the city or town" about the alleged special elections scheduled for October 2020. Ala. Code § 11-46-22.

58.     As a result of the unpublished "special election" ordinance, Defendants Stokes, Leverett, Tucker, Broussard and Thomas-Brown filed statements of candidacy for the Town Council positions to qualify for the special election.

59.     Because notice of the October 6, 2020 special election was not provided to Plaintiffs and other residents of Newbern, Plaintiffs did not submit candidate statements or run for the Town Council positions. Defendants Stokes, Broussard, Leverett, Tucker and Thomas-Brown were the only persons who qualified, and no Newbern residents were able to vote in the special election.

60.     Unaware that the Defendants had secretly purported to set a special "election" and filed paperwork to qualify for the Town Council positions, Mayor Braxton obtained the consent of Plaintiffs Ballard, Patrick, Quarles and Scott to serve on the Town Council.

61.     On November 2, 2020, Plaintiffs Braxton, Ballard, Patrick, Quarles and Scott were sworn into office. The Oath of Office was filed with the County Probate Judge's office.

62.     Ten days later on November 12, 2020, Defendants Stokes, Broussard, Leverett, Thomas and Tucker executed an Oath of Office at the City Attorney's office and, upon information and belief, the City Attorney filed these oaths with the Probate Judge.  None of the Defendants informed Braxton or the Plaintiffs that they were taking

this action.

63.     The Plaintiffs held a meeting in the Town Hall in late November 2020. This was the one and only meeting they held in the Town Hall as the new majority Black Town government because the Defendants acted to prevent the Plaintiffs from accessing any information regarding the Town, destroyed or removed documents from the Town Hall and locked down the Town Hall, preventing any access to the facility.

64.     As detailed below, Defendants conspired to prevent Plaintiffs from exercising their official duties. The Defendants also stripped Mayor Braxton of all the duties, privileges and powers of the office of Mayor in order to retain control of Newbern.

### The Defendants Strip Mayor Braxton and the Plaintiffs' of their Official Duties

65.     Upon information and belief, since November 2020, Defendants have engaged in a policy, practice, and course of conduct designed to thwart Plaintiffs from fulfilling their official duties; govern the town council in contravention of the Alabama Code; and undermine Newbern residents' ability to elect their candidates of choice. Defendant Stokes effectively assumed the role of Mayor, indeed he continues to hold himself out as mayor of Newbern and has continually and unlawfully interfered with Mayor Braxton's efforts to discharge his duties as Mayor. Additionally, Defendants Gary Broussard, Jesse Donald Leverett, Voncille Brown, Thomas, and Willie Richard Tucker continue to hold themselves as town councilmembers, thus preventing Plaintiffs James Ballard, Barbara Patrick, Janice Quarles, and Wanda Scott from exercising their duties as town councilmembers.

16

**Denying Access to Town Hall**

66.     One of the duties of the Mayor is to maintain Town Hall. There is an office in the Town Hall that the Town uses to conduct official business.

67.     In December 2020, after the first meeting the Plaintiffs held in the Town Hall as their capacity as Mayor and Town councilmembers, Defendants had the locks to the Town Hall changed.

68.     In January 2021, Mayor Braxton gained access to the Town Hall and discovered that someone had removed official Town documents from the building. Mayor Braxton then had the locks changed so that he could have access to Town Hall.

69.     Sometime thereafter, upon learning that Mayor Braxton had gained access to the Town Hall, Defendants had the locks changed again. Mayor Braxton discovered that the locks had been changed in April 2021 and the Plaintiffs have not been able to gain uninterrupted access the building since April 2021.

70.     Indeed, Mayor Braxton was not allowed access to the Town hall in November 2022 to assist in setting up voting machines for the most recent sheriff's election.

**Denying Access to Bank Accounts**

71.     The Town of Newbern maintains a bank account with the People's Bank of Greensboro (hereinafter the "Bank"). The Bank has its main branch in Greensboro, AL. Greensboro is the county seat for Hale County AL.

72.     On several occasions after November 2020, Mayor Braxton went to the Bank to have his name placed on the Town's accounts. Mayor Braxton presented a Bank employee named Vickie (last name unknown) with documents showing he was the

lawful Mayor of the Town and asked her to grant him full access to the Town's accounts.

73.     Ms. Vickie  told Mayor Braxton that she would have to check with the Bank president and that he should come back the next day.

74.     Mayor Braxton returned the next day but Ms. Vickie did not meet with him. Another bank employee told Mayor Braxton that his name would not be added to the account and that Defendant Stokes would remain on the account.

75.     A day or two after this second meeting at the Bank, Mayor Braxton witnessed Defendant Stokes at the Bank  meeting with Bank representatives. Since this day, the Bank has refused to honor any request from Mayor Braxton.

76.     In July 2022, Mayor Braxton sent the Bank a letter demanding that it provide Mayor Braxton as the Mayor of Newbern access to information regarding the Town's accounts. The Bank has ignored this letter. Upon information and belief, the Bank is following the Defendant Stokes's request not to communicate or deal with Mayor Braxton on any Town business.

**Denying Access to Official City Mail and
Diverting Mail Addressed to Mayor Braxton**

77.     In early 2021, Mayor Braxton met with Valerie (last name unknown) who at the time was the post master for the Town.  He requested access to the Town's P.O. box and asked that the box be re-keyed. He showed Ms. Valerie documents that certified he was the Mayor. Ms. Valerie granted Mayor Braxton's request.

78.     Mayor Braxton received mail for the Town for approximately two weeks until he learned from Ms. Valerie that Defendant Stokes had complained to her superiors about being denied access to the Town's P.O. Box and that she had been

instructed to allow Defendant Stokes access to the P.O. box.

79.    In late 2021, Lynn Thiebe replaced Ms. Valerie as the postmaster for the Town of Newbern.  Without his consent, Defendant Thiebe re-keyed the Town's P.O. Box and denied Braxton access to the Town's P.O. Box.

80.    Later, Mayor Braxton requested access to the P.O. Box and showed Thiebe documents certifying him as the Mayor. He told Thiebe that Defendant Stokes did not have authority to deny him access and that he was taking over his job. He told Thiebe that he used to have access and that she should not deny him access.  Thiebe still refused to grant him equal access to the P.O. box.  Thiebe has given mail addressed to Mayor Braxton to Defendant Stokes.

81.    Without access to the Town's P.O. Box, Mayor Braxton cannot perform the duties of his position or exercise the privileges of being Mayor. The Plaintiffs Ballard, Patrick, Quarles and Scott cannot perform their duties without Mayor Braxton's access to official Town business.

**Denying Access to Information and Documents**

82.    The Defendants Stokes, Broussard, Leverette, Thomas and Tucker have instructed the City clerk and the City's accountant to deny Mayor Braxton access to financial information or documents related to the official Town business.

83.    After Mayor Braxton and the Plaintiffs Ballard, Patrick, Quarles and Scott were sworn in and conducted a meeting at the Town Hall, the Defendants Stokes, Broussard, Leverette, Thomas and Tucker had all the documents stored at the Town Hall removed.

84.    Williams resigned from her position as City clerk in November 2020.

The Defendants lacking proper authority appointed Defendant Stokes's sister Dana (last name unknown) as the City clerk. Ms. Dana has refused to grant Mayor Braxton access to any documents or information regarding the Town's official business.

85.    Ms. Dana, upset with Mayor Braxton efforts to assert his rights as Mayor, confronted Braxton and told him "You're not the mayor and we don't need you here."

86.    The Town's accountant Steve Kirk has also refused Braxton's requests for information about the Town finances.  As recently as July 2022, Mayor Braxton sent a letter to Kirk requesting that he, among other things, grant access to financial records and that he provide Mayor Braxton with information about the Town's expenditures. Kirk has not responded to his letter.

87.    Upon information and belief, the Defendants Stokes, Broussard, Leverette, Thomas and Tucker have instructed Kirk to deny Mayor Braxton's requests for information.  Without access to information about the Town's finances and expenditures, the Plaintiffs cannot perform their duties and exercise the privileges of their offices.

**Holding Meetings Without Notice and In Private Residences**

88.    Upon information and belief, even while continuing to hold themselves out as the Mayor and Town Council members of Newbern, the Defendants Stokes, Broussard, Leverette, Thomas and Tucker have not conducted regular public meetings in the Town Hall since the election of Mayor Braxton and his swearing in of Plaintiffs Ballard, Patrick, Quarles and Scott.

89.    The Defendants Stokes, Broussard, Leverette, Thomas and Tucker have

not provided Mayor Braxton and residents of the Town notice of public meetings.

90.     Upon information and belief, the Defendants Stokes, Broussard, Leverette, Thomas and Tucker have conducted meetings and business at private residences.

91.     Mayor Braxton holds the job of Mayor for a four year period, unless removed from the position. The Town Council has prevented Braxton from fulfilling his responsibilities as Mayor and upon information and belief, have effectively removed him from the position without any process.

**Retaliation Against Mayor Braxton**

92.     In 2022, Defendant Stokes "appointed" John Swanson as the fire chief. Stokes also arranged for Swanson and his wife Susan Swanson to be put on the Newbern Fire Department's Board of Directors.

93.     The Newbern Fire Department's Board of Directors has approximately seven members. Six of the seven members are residents of Newbern who are white. Upon information and belief, in addition to John and Susan Swanson, the Defendants Stokes, Broussard, Leverett, Thomas and Tucker make up the fire department's Board of Directors.

94.      Mayor Braxton objected to Swanson being appointed as the fire chief without his approval.  Braxton also objected to John Swanson and Susan Swanson's appointment to the Board of Director's without his approval. As Mayor, the Board was required to consult with Mayor Braxton before these approvals. He raised concerns that the Black residents of Newbern were not being adequately represented on the Board and that this meant that the Black residents did not get the same level of service as the

white residents of Newbern.

95.     In response to Braxton's objections to these appointments and to Braxton's efforts to assert his rights and privileges as Mayor, in the summer of 2022, the Defendants suspended Braxton from his position as a volunteer fire fighter and first responder.

96.     Stokes and John Swanson also changed the locks to the fire department building and deprived Braxton of access to the building and its equipment until the County EMA director intervened.

### Removal of Patrick Braxton as Mayor

97.     As described above, Defendants repeatedly thwarted Mayor Braxton from fulfilling his official duties and held themselves out as town councilmembers.

98.     In late 2020 and early 2021, at the same time that Plaintiffs held town council meetings, Defendants held their own meetings without any of the Plaintiffs present.

99.     Upon information and belief, at a March 2021 meeting, Defendants, purporting to act as the Town Council, voted to appoint Defendant Stokes as mayor. At an April 2021 meeting, Defendants passed a resolution finding that Mayor Braxton had not attended town council meetings for 90 consecutive days and removing him as Mayor by operation of law under Ala. Code § 11-40-25(b).

100.     Defendants, purporting to act as the Town Council, adopted this resolution despite the fact that (1) Mayor Braxton in fact met with Plaintiffs during the relevant 90-day timeframe; (2) Defendants repeatedly prevented Mayor Braxton from entering town hall to attend meetings and conduct official business during this

timeframe; (3) Defendants held purportedly official Town Council meetings at private residences without notice to Mayor Braxton; and (4) Plaintiffs James Ballard, Barbara Patrick, Janice Quarles and Wanda Scott had been lawfully appointed as Town Councilmembers by Mayor Braxton and at the time of Defendants' conduct, were the only people with authority to adopt such a resolution.

## COUNT I

### Intentional Racial Discrimination
### (42 U.S.C. § 1983 –Equal Protection Clause of the Fourteenth Amendment, and the Fifteenth Amendment to the U.S. Constitution)

101.   Plaintiffs re-allege and incorporate by reference each allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

102.   "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

103.   Factors to consider in this inquiry include: the "impact of the official action" and whether it " 'bears more heavily on one race than another'"; the "historical background of the decision" and whether it "reveals a series of official actions taken for invidious purposes"; the "specific sequence of events leading up the challenged decision" and whether it departs procedurally or substantively from normal practice; and the "legislative or administrative history" and what it reveals about the purpose of the official action. *Id.* at 266-68.

104.   The Plaintiffs Braxton, Ballard, Patrick, Quarles Scott and Holley are Black residents of the Town of Newbern.

105.    The Defendants Stokes, Broussard, Leverett, Tucker and Thomas-Brown acted (or purported to act) under color of law to deprive Plaintiffs Braxton, Ballard, Patrick, Quarles and Scott of equal protection of the laws on account of Plaintiffs' race.

106.    Motivated to maintain an all-white Town Council and Mayor's office, the Defendants never held any elections, only providing opportunities to positions of power in the Town of Newbern to white residents for decades. The impact was that no Black resident has ever held office in Newbern until Braxton qualified for office.

107.    As soon as a Black resident of Newbern assumed the official title of Mayor of Newbern, the Defendants have taken official actions (or purported to take official actions) to prevent Mayor Braxton from discharging his duties as Mayor and Plaintiffs Ballard, Patrick, Quarles and Scott from discharging their duties, responsibilities and privileges as Town Councilmembers on account of their race. For example, since December 2020 and continuing thereafter, the Defendants have, among other things, (i) excluded Mayor Braxton from Town council meetings, (ii) have conducted meetings in secret without notifying Mayor Braxton or the other Plaintiffs; (iii) have changed the locks and shut the Plaintiffs out of Town Hall, (iv) have removed official Town records stored at the Town Hall and instructed the City clerk (who is related to Defendant Stokes) to not discuss or provide Braxton any information regarding any official Town business; (v) have told and  obtained the consent of the Town's Bank to deny Mayor Braxton and the Plaintiffs all access to financial information regarding the Town's accounts; (vi) have instructed the Town's accountant not to discuss or provide Braxton any information regarding the Town's finances; (vii)

have instructed the Town's attorney Holmes not to discuss any legal matters or other Town business with Mayor Braxton, (viii) have told Thiebe to deny Mayor Braxton access to the Town's post office box and access to any official correspondence, (ix) have instructed Thiebe to give any official mail addressed to Mayor Braxton to Defendant Stokes and (x) retaliated against Mayor Braxton by suspending him from the fire department.

108.    The Defendants, purportedly acting under color of law, have assigned or delegated the duties of the Mayor to the former white Mayor Defendant Stokes. Defendant Stokes has been acting as Mayor instead of Mayor Braxton. The impact of these actions and resolutions by Defendants ensured that the Mayor of Newbern was again a white resident rather than Black resident.

109.    As soon as the possibility of a majority-Black Town Council that would have been appointed by Mayor Braxton became known to Defendants, they took actions to prevent Plaintiffs, Black residents, from assuming positions in Newbern Town Council. On or about August 10, 2020, the Defendants, purportedly acting under color of law, unlawfully adopted resolutions to hold a special election for Town Council positions because every then Councilmember had failed to timely qualify as a candidate for office. Though Defendant Stokes occupied the position of Mayor, he orchestrated the special election resolution because he intended to qualify as a candidate for Town Council.

110.    The Defendants did not provide public notice of this meeting, to the extent it even occurred, prior to unlawfully adopting resolutions setting a special election. . The Defendants intended and executed a plan to exclude Plaintiffs and other

Black voters in the Town from the electoral process. Defendants sought to ensure that they would be the only ones to qualify as candidates for the Town council position pursuant to the resolution and thus avoiding an actual racially polarized election for these positions. The Defendants ensured that the only residents who received notice of any municipal elections were white residents of Newbern.

111.    The Defendants also did not provide notice to residents of Newbern that they had set a special election for October 10, 2020. The impact was that no Black resident has been able to recall, let alone participate, in a Town election in decades.

112.    Mayor Braxton did not discover that the Defendants had adopted the special election resolution that set a special election until the summer of 2021. Plaintiffs did not receive notice of a special election to be held in October 2020 because the Defendants concealed this information from the public.

113.    Unaware of the secret special election, Plaintiffs Ballard, Patrick, Quarles and Scott did not submit paperwork to qualify as candidates. Instead, they agreed to Braxton's request that they serve as appointed Town Councilmembers. As noted above, the past practice of the Town was that the Mayor would appoint Town council members if no one qualified for a seat on the Town council.  Consistent with this practice, Mayor Braxton had approached the Plaintiffs to serve on the Town Council in August and September of 2020.

114.    Still unaware that the Defendants had orchestrated a secret election, Plaintiffs Ballard, Patrick, Quarles and Scott were sworn in as Town Councilmembers in November 2020. They held a Town council meeting on or about November 20, 2020 at the Town Hall. This was the first time in the history of Newbern that Black residents

held a majority of the Town council seats.

115.    Defendants, with the assistance of the City clerk, moved to prevent the Plaintiffs Ballard, Patrick, Quarles and Scott from acting as the Town Council. Defendants removed all official documents from the Town Hall. The Defendants changed the locks to the Town Hall and denied Plaintiffs Ballard, Patrick, Quarles and Scott access to the Town Hall. The Defendants also instructed the City clerk to not respond to or conduct any official business with Plaintiffs Ballard, Patrick, Quarles and Scott.

116.    Defendants' conduct is the product of intentional racial discrimination and perpetuates the history of race discrimination in Hale County and across the Black Belt. Over 80 percent of the residents of Newbern identify as Black and yet the Town has never had a Black Mayor.  Indeed, Newbern has never had more than one Black person on the Town Council. When confronted with the first duly elected Black Mayor and majority Black Town Council, the Defendants undertook racially motivated actions to prevent Plaintiffs from exercising their official duties and sought to prevent Black voters and candidates from participating in the Defendants' special election.

117.    Prior transitions of power between white Mayors and Town Council members of Newbern did not result in Defendants and other state officials' refusal to work with the designated Mayor and/or majority white Town Council.

118.    Prior transitions between a majority white Town Council to another majority white Town Council did not result in locking out the incoming Town Councilmembers, depriving them of access to official documents or other official business of the Town and/or an instruction to the Town's employees or agents not to

interact or cooperate with the incoming Town council members.  This obstructive conduct only occurred when a Black Mayor and majority Black Town Council was set to take over Town hall.

119.    As a result of the Defendants actions taken under color of law (or purportedly taken under color of law), the Plaintiffs have been deprived of their rights to participate in Town governance and to discharge the duties and exercise the privileges of holding office because of their race and in violation of the Equal Protection Guarantee of the Fourteenth Amendment to the United States Constitution.

120.    The infringement of Plaintiffs' rights by Defendants is ongoing and likely to continue into the future.

## COUNT II

### Conspiracy to Deny Federal Rights
### (Section 1985(3))

121.    Plaintiffs re-allege and incorporate by reference each allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

122.    Defendants Stokes, Broussard, Leverett, Thomas, and Tucker, conspired to deprive Plaintiffs Braxton, Ballard, Patrick, Quarles Scott and Holley of the privileges and rights of residents of the Town to participate in the governance of the Town on account of their race. Upon information and belief, the Defendants undertook this course of conduct from discharging their duties. Defendants did not want a Black person in the position of Mayor nor did they want a majority Black Town council.

123.    Defendants acted in concert to prevent a Black person from exercising power as the Mayor of Newbern. Defendants orchestrated an illegal secret special election so that they could remain in office and then undertook actions to (1) prevent

Mayor Braxton from performing the duties of his job as Mayor;(2) prevent the majority Black Town Councilmembers Mayor Braxton had lawfully appointed from taking office; and (3) held an illegal special election to prevent voters in majority-Black Newbern from voting.

124.     The Defendants have continued to deprive Mayor Braxton of the rights and privileges of his job as Mayor because of his race; Plaintiffs James Ballard, Barbara Patrick, Janice Quarles, and Wanda Scott from discharging their duties; and all Plaintiffs from exercising the right to vote because of their race.

125.     The Defendants conspired to deprive Plaintiffs, on account of their race, (i) equal protection of the laws; and (ii) equal privileges and immunities of the laws; and (iii) prevented or hindered the properly constituted Town Council and Mayor of the Town of Newbern from representing the majority Black residents of the Town in a manner that violates 42 U.S.C. Section 1985(3).

126.     The infringement of Plaintiffs' rights by Defendants is ongoing and likely to continue into the future.

## COUNT III

**Violation of Due Process**
**U.S. Constitution, Amendment XIV, 42 U.S.C. § 1983**

127.     Plaintiffs re-allege and incorporate by reference each allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

128.     The Due Process Clause of the 14th Amendment to the U.S. Constitution prohibits state and local governments from depriving individuals of life, liberty, or property without due process of the law.

129.     The Due Process Clause of the 14th Amendment to the U.S. Constitution

prohibits state and local governments from depriving individuals of life, liberty, or property without due process of the law.

130.    42 U.S.C. § 1983 ("Section 1983") allows individuals to bring actions against state actors, including municipalities, for deprivations of federal constitutional and statutory rights, including those protected by the 14th Amendment.

131.    Defendants' conduct has been taken under color of state and local law (or purportedly taken under color of law).

132.    After learning Mayor Braxton intended to lawfully appoint Plaintiffs to the Town Council, Defendants organized an illegal special election to instead reappoint themselves to the Town Council.

133.    Defendants, in contravention of the Alabama Code, failed to provide notice to voters in Newbern of this special election, thereby preventing them from participating in the election. The denial of a "legally-required election obviously erodes the democratic process" in a manner that is incompatible with due process. *See Duncan v. Poythress*, 657 F.2d 691, 703 (5th Cir. 1981).

134.    Defendants still have not administered a mayoral or Town Council election in Newbern.

135.    Defendants' refusal to host elections and provide notice of a special election so that all the residents of Newbern could participate violates the due process rights of Plaintiffs.

136.    The infringement of Plaintiffs' rights by Defendants is ongoing and is likely to continue into the future.

<u>**COUNT IV**</u>

**Violation of Section 2 of the Voting Rights Act**
**52 U.S.C. § 10301, et seq.**
**(Discriminatory Results)**

137.    Plaintiffs re-allege and incorporate by reference each allegation

contained in the preceding and subsequent paragraphs as though fully set forth herein.

138.    Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301(a),

prohibits voting laws, policies, or practices that "result[] in a denial or abridgement of

the right of any citizen of the United States to vote on account of race or color."

139.    "The essence of a § 2 claim is that a certain electoral law, practice, or

structure interacts with social and historical conditions to cause an inequality in the

opportunities enjoyed by black and white voters to elect their preferred representatives."

*Thornburg v. Gingles*, 478 U.S. 30, 47 (1986).

140.    A violation of Section 2 may be based either on a finding of

discriminatory purpose motivating a challenged governmental action or on a finding of

a discriminatory result from the challenged governmental action. *See Reno v. Bossier*

*Par. Sch. Bd.*, 520 U.S. 471, 481–82 (1997).

141.    Alabama has a long, well-established history of racially discriminatory

voting restrictions and societal discrimination against Black Alabamians.

142.    Defendants had not held an election in the town of Newbern for decades,

ensuring that the Mayor and Town Council positions continued to be filled by white

residents only. No Black resident, until Patrick Braxton, had knowledge of how to vote

in elections or how to qualify to run in elections.

143.    Defendants provided incorrect or incomplete information to Mayor

Braxton on how to qualify as a candidate for Mayor.

144.    Defendants then deviated from historical Town practice and held a secret meeting and secret election without notice, the first mayoral election in the history of Newbern, as soon as there was a possibility of a Black-majority Town Council.

145.    Defendants provided information to only white Defendants, and no Black residents, on how to qualify for this special election for Town Council positions.

146.    Defendants did not provide notice to any residents, aside from the white residents who qualified for the Town Council positions, that a special election was taking place.

147.    As detailed herein, Defendants' conduct resulted in the discrimination of Black voters by preventing them from participating, as a candidate or voter, in municipal elections.

148.    Defendants will continue to violate Plaintiffs' rights under the Voting Rights Act absent relief from this Court. Plaintiffs have no adequate remedy at law other than the judicial relief sought in this case.

149.    The infringement of Plaintiffs' rights by Defendants is ongoing and likely to continue into the future.

## **PRAYER FOR RELIEF**

107.    Wherefore premises considered, the Plaintiffs respectfully request that the Court enter an order:

(a)    Declaring Plaintiff Mayor Braxton as the rightful mayor of the town of Newbern ;

(b)     Enjoining the Defendants from preventing, hindering, interfering (directly or indirectly) the Plaintiff Mayor Braxton from exercising the duties, responsibilities or privileges of his office as Mayor;

(c)     Directing the Defendants to immediately grant the Plaintiff Mayor Braxton access to all official documents, accounts and Town property or to take such actions are necessary to permit such access;

(d)     Enjoining the Defendants from conducting any business for the Town;

(e)     Directing Newbern to hold a special election for the Town Council positions and provide complete and adequate notice to all residents of Newbern to participate in the special election;

(f)     Or alternatively, declaring that the Plaintiffs are the rightful Town Council members

(g)     Awarding the Plaintiffs compensatory or punitive damages as established at trial;

(h)     Awarding the Plaintiffs a reasonable attorney's fee and costs of litigation;

()     Awarding any other injunctive, equitable or legal relief the Court deems appropriate to remedy the violations of law established at trial.

## <u>TRIAL BY JURY</u>

The Plaintiffs demand a trial by jury to the extent provided under the Constitution of the State of Alabama or United States Constitution.

/s/ *Richard P. Rouco*
Richard P. Rouco

/s/*George Davies*
George N. Davies

33

OF COUNSEL:

Quinn, Connor, Weaver,
Davies & Rouco, LLP
2 – 20th Street North
Suite 930
Birmingham, AL 35203
Tel. 205-870-9989
Fax. 205-803-4143
rrouco@qcwdr.com
gdavies@qcwdr.com

**NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.**

*/s/ Morenike Fajana*
Morenike Fajana*
Leah Wong*
40 Rector Street, 5th Floor
New York, NY 10006
(212) 217-1690
mfajana@naacpldf.org
lzwong@naacpldf.org