IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PATRICK BRAXTON, JAMES BALLARD, BARBARA PATRICK, JANICE QUARLES, WANDA SCOTT, and DOROTHY HOLLEY, | * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | 2:23-cv-00127-KD-N |
| HAYWOOD STOKES III, GARY BROUSSARD, JESSE DONALD LEVERETT, VONCILLE BROWN THOMAS, WILLIE RICHARD TUCKER, and the TOWN OF NEWBERN, | * * * * * | |
| Defendants. | * | |

## DEFENDANTS' MEMORANDUM BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

COME NOW Defendants Haywood Stokes III, Gary Broussard, Jesse Donald Leverett, Voncille Brown Thomas, Willie Richard Tucker, and the Town of Newbern (hereinafter "Defendants"), by and through counsel, and submit this memorandum brief in support of their motion to dismiss Plaintiffs' second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support thereof, the Defendants state the following:

## FACTS OF THE COMPLAINT[1]

Plaintiff Patrick Braxton, an African-American, alleges that he became the first African-American Mayor of the Town of Newbern since its founding in 1854 when he was elected as Mayor in 2020. (Doc. 57, ¶ 1). Prior to being elected Mayor, Braxton alleges that the Town of Newbern had not had an election for decades and that the position of Mayor of the Town of Newbern had instead been an "inherited" and "hand me down" position among white Town residents. (*Id.*, ¶ 3, 25-26). Braxton alleges that he was the only person who qualified as a candidate for Mayor because no one else qualified, including Defendant Haywood Stokes, III ("Stokes"), who is white and had been acting as Mayor. (*Id.*, ¶¶ 42, 44). Braxton also alleges that Stokes gave him incorrect information as to how to qualify for the mayoral election when he informed Stokes that he planned to run for the position. (*Id.*, ¶ 40). In spite of this, Braxton maintains that he still managed to qualify to run for the position by filing a statement of candidacy and statement of economic

---

[1] Defendants recite the factual allegations from Plaintiffs' Second Amended Complaint, as those are the operative facts at this stage. *See Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff."). These may not be the actual facts.

Moreover, filed contemporaneously with their motion to dismiss and brief in support of the motion, Defendants have filed a motion to strike as immaterial, irrelevant, and prejudicial portions of Plaintiffs' factual allegations pertaining to issues not relevant to this action and allegations against non-parties to this action.

interests with the Circuit Clerk of Hale County and the State of Alabama. (*Id.*, ¶ 42). On the last day of qualifying, he also submitted his statement of candidacy and paid the $50 qualifying fee to the Town clerk. (*Id.*, ¶ 43). Due to no other resident lawfully qualifying as a candidate, Braxton claims that he became Mayor on or around July 22, 2020, by operation of law. (Doc. 1-3, ¶ 46).

Braxton alleges that he was the only candidate to qualify for <u>any</u> elected municipal office in Newbern. (*Id.*, ¶ 47). Following his alleged election to the Mayor position, County Probate Judge Arthur Crawford informed Braxton that he could appoint Town Councilmembers due to no one qualifying for the position. (*Id.*, ¶ 49). Braxton then proceeded to <u>appoint</u> the remaining Plaintiffs, namely Barbara Patrick, Wanda Scott, Jan Quarter, and James Ballard, to the open City council positions. (*Id.*, ¶ 51, 60). At that point, Plaintiffs allege that Defendant Stokes conspired with the other defendants to "hold a secret meeting" and adopt resolutions for conducting a special election in order to prevent a majority black Town Council from taking office. (*Id.*, ¶ 54). In order to do this, Plaintiffs allege that the Defendants "met in secret" without giving notice of the meeting and adopted resolutions to conduct a special election on October 6, 2020. (*Id.*, ¶¶ 55-56). Braxton claims that notice of the special election was not given. (*Id.*, ¶ 57). The Defendants then filed statements of candidacy and were the only people who qualified for the special election. (*Id.*, ¶ 57). Plaintiffs allege that the individual

Defendants failed to give notice of the special election. (*Id.*, ¶ 57). The individual Defendants assumed their new terms as Town Council members in November 2020. (*Id.*, ¶ 61).

The Plaintiffs held a meeting in the Newbern Town Hall in November 2020. (*Id.*, ¶ 63). Following this meeting, they allege that they were prevented from accessing Town Hall and official Town documents by the individual Defendants. (*Id.*). They further allege that Defendants have denied them access to Town bank accounts, official Town mail, and other Town information and documents. (*Id.*, ¶¶ 71, 77, 82).

On November 21, 2022, Plaintiffs filed this action in the Circuit Court of Dallas County. On March 17, 2023, Plaintiffs filed their first amended complaint. (Doc. 1-3). The Defendants removed this action to this court on April 17, 2023. (Doc. 1). Plaintiffs filed a motion for leave to file a second amended complaint, which was granted on October 2, 2023. (Doc. 50; Doc. 56). Plaintiffs filed a second amended complaint on October 5, 2023. (Doc. 57). The second amended complaint adds Dorothy Holley as a plaintiff and the Town of Newbern as an additional defendant. The second amended complaint alleges the following claims: (1) a § 1983 intentional racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and the Fifteenth Amendment to the U.S. Constitution; (2) conspiracy to deny federal rights; (3) violation of due process in

violation of the Fourteenth Amendment; and (4) violation of Section 2 of the Voting Rights Act (discriminatory results). (*Id.*, ¶¶ 101-19, 121-26, 127-36, 137-49). As Plaintiffs have failed to state a claim upon which relief can be granted, Plaintiffs' second amended complaint is due to be dismissed.

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants now move to dismiss each claim asserted against them in Plaintiffs' second amended complaint. Rule 12(b)(6) permits a party to raise by motion the defense of "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules of Civil Procedure demands that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 12(b)(6) allows a defendant to move to dismiss the complaint if it "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1318, (11th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Adinolfe v. United Techs. Corp.,* 768 F.3d 1161, 1175–76 (11th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 550 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## LEGAL ARGUMENT

**I.     The Defendants are entitled to qualified immunity on all Plaintiff's claims because the law is not clearly established regarding the actions to be taken by officials in a town that has not "held an election in decades."**

"The qualified immunity inquiry involves three steps: (1) the alleged conduct must fall within the scope of the discretionary authority of the actor; (2) if it does, we must then determine whether that conduct violates a constitutional right; (3) if so, we must inquire whether the asserted right was clearly established at the time of the alleged violation." *Tinker v. Beasley*, 429 F.3d 1324, 1326 (11th Cir. 2005). In the Eleventh Circuit, there are three means of showing a violation of clearly established law: (1) case law with indistinguishable facts; (2) a broad statement of principal within the constitution, statute or case law; or (3) conduct so egregious that a constitutional right was clearly violated even in the total absence of case law. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).

6

Under the standard for determining whether law is clearly established by a specific case or broad principal, the principal must be established with "obvious clarity" by the case law so that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002).

## I.   Plaintiffs cannot show that they have a legitimate claim to the political offices they claim.

Under no set of facts do James Ballard, Barbara Patrick, Janice Quarles, and Wanda Scott have a legitimate claim to be council members for the Town of Newbern because they were not elected. Plaintiffs' complaint clearly states that these individuals were appointed instead of elected. Thus, their claim to office is not valid. A council member can be appointed by other council members if there is a vacancy; however, in this case, there were no validly elected council members to fill vacancies. *See* Ala. Code § 11-43-41. Accordingly, all claims by James Ballard, Barbara Patrick, Janice Quarles, and Wanda Scott are due to be dismissed.

Plaintiff Braxton's claim for mayor is likewise invalid. Taking Plaintiffs' version of facts as true, the Plaintiff was elected Mayor of the Town of Newbern, but he did not retain the position of Mayor because it was impossible for him to attend a council meeting with the required quorum. (Doc. 57, ¶ 99-100). Pursuant to Alabama Code § 11-40-25(b), any elected municipal official who misses all or regular specially called council meetings for ninety (90) consecutive days is

removed from office. Further, Alabama Code § 11-40-25 requires a quorum for there to be an official meeting. *See also* Ala. Code § 11-43-48. Thus, ninety days after the first Monday in November following the election, Mayor Braxton became former Mayor Braxton. *See* Ala. Code § 11-43-44. Accordingly, Plaintiff Braxton has no legitimate claim as mayor.

Instead of seeking monetary damages or compensation from his job as Mayor, Plaintiffs at best could have filed an election contest. Plaintiffs appear to allege that they did not receive notice of the election. *See* Second Amended Complaint, Doc. 57, ¶¶ 57-59). If Plaintiffs truly thought this was a "secret election," Plaintiffs sole recourse was to file an election contest arguing that they did not receive notice of the election. *See* Ala. Code, Title 17. Accordingly, none of the Plaintiffs have a legitimate claim to their claimed offices, and Plaintiffs' complaint is due to be dismissed.

II.   **Plaintiffs' second amended complaint fails to allege a viable intentional race discrimination claim under 42 U.S.C. § 1983, as Plaintiffs cannot show that the Defendants intended to discriminate against them based on their race in violation of the Equal Protection Clause of the Fourteenth Amendment or the Fifteenth Amendment.[2]**

---

[2] Defendants note that the Plaintiffs' second amended complaint includes a reference to the Fifteenth Amendment on page 23 of the complaint in the title of Count I but fails to reference the Fifteenth Amendment again anywhere in the body of the complaint. Out of any abundance of caution, Defendants have still included this allegation in their discussion.

In addition to the absence of clearly established law, the individual Defendants are also entitled to qualified immunity because Plaintiffs fail to show that the Defendants intended to discriminate against them because of their race in violation of the Equal Protection Clause of the Fourteenth Amendment and the Fifteenth Amendment.

Plaintiffs allege that the individual Defendants took official actions to prevent Braxton from performing his duties as Mayor and the purported Town Councilmembers from performing their duties. Specifically, Plaintiffs allege that Defendants committed numerous actions such as excluding them from Town council meetings, changing the locks at Town Hall to prevent Plaintiffs from accessing it, and denying them access to Town financial records, among other things. (Doc. 57, ¶ 107). However, none of the allegations asserted by Plaintiffs show any intent on the part of Defendants to discriminate against Plaintiffs because of their race.

Qualified immunity generally shields government officials from individual liability under Section 1983, provided that "their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). Because "qualified immunity is the 'usual rule' for governmental actors sued in their individual capacities, it will shield them unless case law establishes a bright

line in a 'concrete and factually defined context' that makes a violation of federal law obvious." *Scarborough v. Myles*, 245 F.3d 1299, 1301 (11th Cir. 2001).

In order to evaluate the defense of qualified immunity, a court must first determine whether the government official was acting within the line and scope of his discretionary authority when the allegedly wrongful act occurred. *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983). This low initial threshold is met if in performing the general act complained of, ignoring whether the act was done within constitutional limits, "the official [was] engaged in a legitimate job-related function." *Holloman ex rel. Hollman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Here, it is clear that the individual Defendants were acting as Town officials at all times relevant to the claims in Plaintiffs' complaint.

The burden then shifts to Plaintiffs to show that Defendants were not entitled to qualified immunity. "A government actor, however, cannot violate a plaintiff's equal protection rights unless the defendant has the intent to discriminate." *Mencer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir. 1998); *see also Parks v. City of Warner Robins, Georgia*, 43 F.3d 609, 616 (11th Cir. 1995) ("[P]roof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim."). Moreover, a government actor cannot know he is violating clearly established equal protection rights unless he harbors discriminatory intent. *Mencer*, 134 F.3d at 1070. "[P]roof of intentional discrimination is required for Plaintiffs to

prevail on their Fourteenth and Fifteenth Amendment claims." *Ala. State Conference of NAACP v. Ala.*, 612 F.Supp.3d 1232, 1244 (M.D. Ala. 2020); *see also Greater Birmingham Ministries v. Sec'y of State of Ala.*, 992 F.3d 1299, 1321 (11th Cir. 2021) ("A successful equal protection claim under the Fourteenth Amendment requires proof of both an intent to discriminate and actual discriminatory effect."; "[R]acially discriminatory motivation is a necessary ingredient of a Fifteenth Amendment violation." (internal citations omitted)).

Here, Plaintiffs allege numerous actions on the part of Defendants such as excluding Plaintiffs from Town Council meetings, changing the locks at the Town Hall, and removing official Town documents. Yet there is nothing in the Plaintiffs' second amended complaint, taken in the light most favorable to the Plaintiffs, that would show that Defendants intended to discriminate against Plaintiffs because of their race. Accordingly, the individual Defendants are entitled to qualified immunity as to Plaintiffs' Section 1983 intentional racial discrimination claim.

Plaintiffs seem to attempt to show intentional discrimination by making incorrect assertions such as that "no Black resident has ever held office in Newbern until Braxton qualified for office" and that "[m]otivated to maintain an all-white Town Council and Mayor's office, the Defendants never held any elections, only providing opportunities to positions of power in the Town of Newbern to white residents for decades." (Doc. 57, ¶ 106). But in direct contravention of that

11

statement, Plaintiffs' second amended complaint correctly states that one of the defendants named by them in this case, Voncille Brown Thomas, is a Black resident who has served on the Town Council and holds herself out to be a Town council member today. (*Id.*, ¶ 18). Thus, the Plaintiffs have failed to show that the Defendants, including a Black resident who serves on the Town Council, intentionally discriminated against the Plaintiffs on the basis of race, and this claim is due to be dismissed.

### III.  The Plaintiffs' claim of conspiracy to deny federal rights under 42 U.S.C. § 1985(3) is due to be dismissed.

Plaintiffs' claim of conspiracy to deny federal rights under 42 U.S.C. § 1985(3) fails, as Plaintiffs do not allege facts showing that the Defendants acted with some invidiously discriminatory animus. Section 1985(3) provides a cause of action against private individuals who "conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). In order to prevail on this claim, a plaintiff would have to prove each of the following elements: "(1) The existence of a conspiracy; (2) For the purpose of depriving, either directly or indirectly, any person or class of persons, of the equal protection of the laws or of the equal privileges and immunities under the laws; (3) Some act in furtherance of the conspiracy; and (4) That the plaintiff was injured in person or

property or deprived of having or exercising any right or privilege of a citizen of the United States." *Griffin v. Breckenridge*, 403 U.S. 88, 102–103 (1971). In *Griffin*, the U.S. Supreme Court stated that just because "the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." *Id.* at 101. Thus, Section 1985(3) should not be utilized "as a general federal tort law . . . ." *Id.* at 102.

**A. Plaintiffs cannot show that the individual Defendants acted with some invidiously discriminatory animus.**

First, Plaintiffs have failed to show that Defendants acted with some invidiously discriminatory animus. It is "the plaintiff's obligation to allege among other things, 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus' behind the defendant's action taken in furtherance of the conspiracy." *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993)). The "animus standard requires that the defendant proceeded on his course of conduct 'because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Dean*, 12 F.4th at 1255 (quoting *Bray*, 506 U.S. at 271-72). Moreover, a Section 1985(3) claim is due to be dismissed when a plaintiff fails to plead sufficient facts showing that the defendants acted with invidiously discriminatory animus. *See, e.g.*, *Phillips v. Scully*, 2022 WL 19934416, *5 (S.D. Ala. October 28, 2022) (dismissing a

Section 1985 for failure to allege discriminatory animus); *Shedd v. Odom*, 2023 WL 2772627, *11 (N.D. Ala. February 8, 2023) (holding that the plaintiff failed to allege a viable Section 1985(3) claim, in part, due to plaintiff's failure to allege any invidiously discriminatory animus).

In *Dean*, African-American cheerleaders at a Georgia public university were prohibited from kneeling during the national anthem at football games. *Dean*, 12 F.4th at 1251. One of the African-American cheerleaders filed a lawsuit alleging a claim of conspiracy to commit civil rights violations under Section 1985(3) against the school's leadership, the county sheriff, and a Georgia legislator. *Id.* She specifically alleged that the sheriff engaged in a conspiracy to deprive her of her constitutional rights because of her race and due to the fact that she was protesting police brutality against African Americans. *Id.* at 1254. The district court found that the cheerleader failed to allege sufficient facts showing that the sheriff's actions were motivated by her race and granted the sheriff's motion to dismiss. *Id.* The Eleventh Circuit affirmed the district court's holding that the cheerleader failed to plead sufficient facts to support her conspiracy claim. *Id.* at 1257. The court further held that the fact that the sheriff's "targets are African American, without more, does not make it plausible that he targeted the cheerleaders because they are African American." *Id.* at 1256 (emphasis in original). The court stated the

following in regard to the plaintiff's argument that the protests were related to police brutality against African Americans:

> Certainly [the protests] relate to race and racial issues . . . , and they support the theory that [the sheriff] discriminated against [the plaintiff] because of the content of her protests . . . . But discrimination based on the protesting of racial issues, no matter how compelling those issues are, is simply not the same as discrimination based on the race of the protestors. Thus, the additional allegations do not support [the plaintiff's] theory that [the sheriff] discriminated against her because she is African American.

*Id.* at 1257. Therefore, the court held that "[the plaintiff failed to allege that [the sheriff] undertook the conspiracy because [she] and her teammates are African Americans" and upheld the district court's dismissal due to insufficient pleading. *Id.*

As in *Dean*, the Plaintiffs fail to plead any facts showing that the alleged actions of the individual Defendants were motivated by their race. Plaintiffs instead allege only the following:

- Defendants Stokes, Broussard, Leverett, and Tucker are white residents of the Town. Defendant Thomas is a black resident of the Town. (*Id.*, ¶¶ 15-19);

- The collective Defendants—both black and white—have taken actions to prevent Plaintiff Braxton from discharging his duties as Mayor and Plaintiffs Ballard, Patrick, Quarles, and Scott from taking office and "held an illegal special election to

15

prevent voters in majority-Black Newbern from voting." (*Id.*, ¶ 123); and

- "The Defendants have continued to deprive Plaintiff Braxton of the rights and privileges of his job as Mayor because of his race." Defendants also continue to deprive Plaintiffs Ballard, Patrick, Scott, and Quarles "from discharging their duties" and deprived "all Plaintiffs from exercising the right to vote because of their race." (*Id.*, ¶ 124-25).

Plaintiffs make only conclusory allegations that the Defendants acted "because of" or "on account of" the Plaintiffs' race without providing any facts to show that their actions were motivated by race. (Doc. 57, ¶¶ 124-25). Moreover, they assert this claim of motivation by race, without any support whatsoever, against Voncille Brown Thomas, a Black female. (*Id.*, ¶ 18). Accordingly, the Plaintiffs' Section 1985(3) claim is due to be dismissed.

### B. Plaintiffs' Section 1985(3) claim fails because Plaintiffs cannot show a meeting of the minds among defendants.

Plaintiffs cannot show a meeting of the minds among defendants to violate Plaintiffs' constitutional rights. As set forth above, a meeting of the minds is required to plead a Section 1985(3) claim. In *Odom v. City of Anniston*, the plaintiff's Section 1985(3) claim was dismissed because the plaintiff failed to allege sufficient facts regarding an agreement among defendants. 2021 WL

16

3851976, *3 (N.D. Ala. Aug. 27, 2021). In *Odom*, the plaintiff alleged that the city manager attended a meeting where the plaintiff's character was attacked and implied that the city manager was opposed to the plaintiff because of his race. *Id.* at *1. One of the defendants also spoke directly to the city manager during a city council meeting requesting that the city manager "make a change"; the plaintiff was fired several months later. *Id.* The Court held that the plaintiff's allegations were "not enough to support a reasonable inference that [the city manager] had a 'meeting of the minds'" with the other alleged conspirators. *Id.* at *3. Accordingly, the plaintiff's Section 1985(3) claim was dismissed.

Just as they fail to allege a violation of a specific constitutional right or invidiously discriminatory animus, Plaintiffs fail to plead sufficient facts to show any agreement, or meeting of the minds, among Defendants. Plaintiffs instead allege only the following:

- "Defendant Stokes found willing participants in this plot in the in the Defendants Gary Broussard, Jesse Donald Leverett, Voncille Brown Thomas, and Willie Richard Tucker." (Doc. 57, ¶ 2);

- Defendants "agreed to hold a secret meeting and adopt resolutions to conduct a special election." (*Id.*, ¶ 54);

- Defendants "have instructed the City clerk and the City's

accountant to deny Mayor Braxton access to financial information or documents related to the official Town business." (*Id.*, ¶ 82);

- Defendants have instructed Kirk "to deny Mayor Braxton's requests for information." (*Id.*, ¶ 87);

- Defendants "have not provided Mayor Braxton and residents of the Town notice of public meetings" and "have conducted meetings and business at private residences." (*Id.*, ¶¶ 89, 90); and

- "Defendants acted in concert to prevent a Black person from exercising power as the Mayor of Newbern." (*Id.*, ¶ 123).

Thus, Plaintiffs fail to allege facts showing an agreement, or meeting of the minds, among Defendants. Instead, they have only generally alleged that there was an "agreement" among all defendants and that Defendants have instructed non-parties to withhold financial information and other documents from Braxton. These conclusory allegations are not sufficient to show a meeting of the minds. Accordingly, Plaintiffs' Section 1985(3) claim is due to be dismissed.

**III.    Plaintiffs' due process violation claim is due to be dismissed because Defendants did not violate any of the Plaintiffs' constitutional rights.**

18

Plaintiffs' due process violation claim is due to be dismissed as Plaintiffs cannot show that Defendants violated their due process rights. Section 1 of the Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amend XIV, § 1. To make out a claim under § 1983, a plaintiff must show that a person acting under color of state law deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or a federal law. *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). However, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimum levels of safety and security*." DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 195 (1988). Moreover, "to prevail on a § 1983 claim against a local government entity, a plaintiff must prove both that her harm was caused by a constitutional violation and that the government entity is responsible for that violation." *Wyke v. Polk County Sch. Bd.*, 129 F.3d 560, 568 (11th Cir. 1997).

Here, the Plaintiffs allege that the individual Defendants "organized an illegal special election" to "reappoint themselves to the Town Council" after Plaintiff Braxton "lawfully" attempted to appoint people to the Town of Newbern Town Council. (*Id.*, ¶ 132). However, Alabama law does not provide for the

appointment of Town Council members. Instead, Alabama Code § 11-46-72 states that "the incumbent officers shall remain in office until their successors shall be elected and qualified" and an election can occur. Thus, Alabama law clearly requires Town Council members to be elected and Council member vacancies to be filled by a council—not by appointment. Although Plaintiffs refer to this election as an "illegal secret election," the Town Council members who properly remained in office attempted to remedy the issue by holding an election on October 6, 2020, to elect Town Council members pursuant to Alabama law. (*Id.*, ¶¶ 56, 132).

Further, when the individual Defendants were properly elected to the Town Council, they were entitled to fill the vacancy of Mayor pursuant to Alabama Code § 11-44G-2(2), as such vacancy was created by Braxton's removal by operation of law. Alabama Code § 11-44g-2(2) provides that "[i]n the event of a vacancy from any cause in the office of mayor, the city council shall fill the vacancy either from its own membership or from without the membership of the city council." Thus, by appointing Defendant Stokes to the mayor position upon Braxton's removal by operation of law, Defendants properly followed Alabama law. Accordingly, Plaintiffs have failed to show a violation of their due process rights, and this claim should be dismissed.

**IV.     Plaintiffs have failed to allege a valid claim under Section 2 of the Voting Rights Act.**

Section 2 of the Voting Rights Act prohibits voting practices or procedures that discriminate on the basis of race, color, or membership in one of the groups identified in Section 4(f)(2) of the Act. Specifically, Section 2(a) states the following:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

In *Thornburg v. Gingles*, the U.S. Supreme Court stated that "[t]he 'right' question . . . is whether 'as a result of the challenged practice or structure plaintiffs do not have an equal opportunity to participate in the political processes and to elect candidates of their choice.'" 478 U.S. 30, 44 (1986). "A finding of discriminatory impact is necessary and sufficient to establish a section 2 violation." *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 942 (11th Cir. 2023). A violation of Section 2 exists if "members of a protected class 'have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.'" *League*, 66 F.4th at 942-43 (quoting *Chisom v. Roemer*, 501 U.S. 380, 388 (1991), quoting language now codified at 52 U.S.C. § 10301(b)). "A finding of discriminatory intent alone will

21

not suffice." *League*, 66 F.4th at 943. Instead, a finding of discriminatory impact is required to find a violation of Section 2 of the Voting Rights Act. *Id.*

As to this claim, Plaintiffs incorrectly allege that Defendants failed to "provide notice to any residents, aside from the white residents who qualified for the Town Council positions," as one of the Defendants is a black female. (Doc. 57, ¶¶ 146). Defendants also allege that Defendants' failed to provide notice of the special election and that this resulted in the discrimination of Black voters by preventing them from participating, as a candidate or voter, in municipal elections. (*Id.*, ¶ 147). However, if the facts Plaintiffs allege are taken in the light most favorable to Plaintiffs and deemed true, Defendants failed to provide notice to any residents, which would result in the prevention of all residents to participate in the election as either a candidate or voter, not just Black residents of the Town of Newbern.

Here, the test would require a finding that, because of the registration-delivery provision, "'political processes leading to . . . election in [Newbern] . . . are not equally open to' black voters 'in that [they] have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.'" *League*, 66 F. 4th at 943-44 (quoting *Wis. Legislature v. Wis. Elections Comm'n*, ___U.S. ____, 142 S. Ct. 1245, 1248 (2022) (quoting 52 U.S.C. § 10301(b)). Plaintiffs cannot meet this high burden, as their

own allegations state that Defendants failed to provide notice of the election to any residents, which Plaintiffs allege resulted in no other residents voting in the election. (Doc. 57, ¶ 146). Therefore, Plaintiffs have failed to meet Section 2's high standard of showing that any actions taken by Defendant have resulted in the denial or abridgement of the Plaintiffs' right to vote because of their race, and Plaintiffs' claim alleging a violation of Section 2 of the Voting Rights Act is due to be dismissed.

### V. Plaintiffs' § 1983 claims against the Town are due to be dismissed, as Plaintiffs have failed to present a valid policy and custom claim against the City.

Plaintiffs' § 1983 claims against the Town of Newbern are due to be dismissed, as Plaintiffs have failed to allege that any official Town policy or custom was the cause of their injury. In order for a municipality to be held accountable for the conduct of a Town official, a plaintiff must show that the execution of the local government's "policy" or "custom" was the cause of the injury. *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 694 (1978). In other words, "[a] local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'" *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1287 (11th Cir. 1998). Here, Plaintiffs cannot present any evidence that the Town of Newbern had an unconstitutional policy or prove causation between an

23

unconstitutional policy and any alleged violation of Plaintiffs' constitutional rights. As set forth above, Plaintiffs' § 1983 claims against the Town fail for want of an underlying constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Even if it could be shown, Plaintiffs cannot establish that the injury was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the Town]." *Monell*, 436 U.S. at 690. Plaintiffs present no evidence that any official policy of the Town is unconstitutional. As Plaintiffs cannot establish a viable policy and custom claim against the Town under any recognized method, Plaintiffs' § 1983 claims against the Town are due to be dismissed.

## CONCLUSION

The Plaintiffs have failed to state a claim against the Defendants upon which relief can be granted. Accordingly, the Defendants move this Court to dismiss all claims against them.

Respectfully submitted this the 25th day of October, 2023.

/s/Rick A. Howard
Rick A. Howard (ASB-9513-W79R)
M. Ashley Tidwell (ASB-3974-O48M)
Morgan B. Beckman (ASB-3529-T81J)
Attorneys for Haywood Stokes III,
Gary Broussard, Jesse Donald Leverett,
Voncille Brown Thomas, and Willie
Richard Tucker

24

OF COUNSEL:

Holtsford Gilliland Hitson Howard
      Stevens Tuley & Savarese, P.C.
Post Office Box 4128
Montgomery, Alabama 36103-4128
334-215-8585
334-215-7101 (Facsimile)

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing has been served upon:

Richard P. Rouco
George N. Davies
Quinn, Connor, Weaver, Davies & Rouco, LLP
2 North 20th Street, Suite 930
Birmingham, AL 35203

Morenike Fajana
Leah Wong
40 Rector Street, 5th Floor
New York, NY 10006

by placing same in the United States Mail, postage prepaid, or through the court's electronic filing service, on this the 25th day of October, 2023.

                            */s/Rick A. Howard*
                            OF COUNSEL

25