**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| Patrick Braxton, James Ballard, ) | |
| Barbara Patrick, Janice Quarles, ) | |
| Wanda Scott and Dorothy Holley, ) | |
| ) | |
|     Plaintiffs, ) | |
| v. ) | Case No. 2:23-CV-00127-KD-N |
| ) | |
| Haywood Stokes, III, Gary Broussard, ) | |
| Jesse Donald Leverett, Voncille Brown Thomas, ) | |
| Willie Richard Tucker and The Town of Newbern, ) | |
| ) | |
|     Defendants, ) | |
| ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND DEFENDANTS' MOTION TO STRIKE

1

## TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS .................................................................................................. 2

TABLE OF AUTHORITIES ........................................................................................... 3

INTRODUCTION ........................................................................................................... 5

FACTUAL BACKGROUND .......................................................................................... 6

LEGAL STANDARD ..................................................................................................... 9

ARGUMENT ................................................................................................................ 10

I.     THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS. ....................... 10

   A.   Plaintiffs Properly Allege that Defendants Violated Section 2 of the VRA. ..................... 10

   B.   Plaintiffs Adequately Allege an Intentional Discrimination Claim. ................................. 14

   C.   Plaintiffs Properly Allege that Defendants Violated the Right to Vote. ............................ 18

   D.   Plaintiffs Adequately Allege *Monell* Liability Against the Town of Newbern. ................. 20

   E.   Plaintiffs State a Claim Under Section 1985(3). ............................................................... 22

      1.   The Second Amended Complaint Adequately Alleges a Racially Discriminatory Motive. 23

      2.   The Second Amended Complaint Adequately Alleges an Unlawful Agreement Under Section 1985(3). ................................................................................................................ 24

II.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY ON ANY OF PLAINTIFFS' CLAIMS. ................................................................................................. 26

III.   DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED. ................................... 26

CONCLUSION ............................................................................................................. 29

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Milligan*, 143 S. Ct. 1487 (2023) ........................................................ 14

*Allen v. Milligan*, 599 U.S. 1 (2023) ................................................................. 28

*Am. Fed'n of Labor and Congress of Indus. Orgs. v. City of Miami, FL*, 637 F.3d 1178 (11th Cir. 2011) ................................................................................................. 25

*Barna Conshipping, S.L. v. 1,800 Metric Tons, more or less, of Abandoned Steel*, No. CIV.A. 09-0027-KD-C, 2009 WL 1211334 (S.D. Ala. May 4, 2009) ...................................... 9

*Brnovich v. Democratic Nat. Committee*, 141 S. Ct. 2321 (2021) ................................. 12

*Brown v. Post*, 279 F. Supp. 60 (W.D. La. 1968) ........................................... 12, 16

*Castaneda v. Partida*, 430 U.S. 482 (1977) ........................................................ 17

*Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.,* 48 F.4th 1222 (11th Cir. 2022) ...... 21

*Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140 (11th Cir. 1996) .......................... 23

*Chisom v. Roemer*, 501 US 380 (1991) ............................................................ 12

*Coal. for Ed. in Dist. One v. Bd. of Elections of City of New York*, 370 F. Supp. 42 (S.D.N.Y.), *aff'd*, 495 F.2d 1090 (2d Cir. 1974) ........................................................ 13

*Crawford v. Dolgencorp,* LLC, No. CIV.A. 10-00256-KD-B, 2010 WL 3927614 (S.D. Ala. Sept. 9, 2010) .......................................................................................... 16

*Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962 (11th Cir. 2002) ....................... 21

*Dean v. Warren*, 12 F.4 1248 (11th Cir. 2021) .................................................. 24

*Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312 ...................................... 18, 20

*Dillard v. Town of N. Johns*, 717 F. Supp. 1471 (M. D. Ala. 1989) .......................... 11, 13

*Duncan v. Poythress*, 657 F.2d 691 (5th 1981) ............................................... 18, 19

*G.H. v. Marstiller*, 424 F. Supp. 3d 1109 (N.D. Fla. 2019) ..................................... 9

*Gonzalez v. Governor of Georgia*, 978 F.3d 1266 (11th Cir. 2020) ............................. 19

*Greater Birmingham Ministries v. Sec'y of Ala.*, 992 F.3d 1299 (11th Cir. 2021) ............. 15

*Griffin v. Breckenridge*, 403 U.S. 88, 29 L. Ed. 2d 338 (1971) ............................... 24

*Hill v. Clifton*, 74 F.3d 1150 (11th Cir. 1996) ................................................ 21

*Hunt v. Aimco Props., L.P.*, 814 F.3d 1213 (11th Cir. 2016) .................................... 9

*League of United Latin Am. Citizens v. Perry*, 548 U.S. 399 (2006) ............................ 28

*Leatherman v. Tarrant Cnty.*, 507 U.S. 163 (1993) ............................................ 26

*Lewis v. City of St. Petersburg*, 260 F.3d 1260 (11th Cir. 2001) ................................. 9

*Maldonado v. Firstservice Residential, Inc.*, 2021 U.S. Dist. LEXIS 114302 (S.D. Tex. June 18, 2021) ......................................................................................... 23

*McIntosh Cnty. Branch of the NAACP v. City of Darien*, 605 F.2d 753 (5th Cir. 1979) ......... 27

*McMillian v. Johnson*, 88 F.3d 1573 (11th Cir. 1996) ...................................... 21, 22

*McMillian v. Monroe Cnty., Ala.,* 520 U.S. 781 (1997) ........................................ 21

*Milligan v. Merrill*, 582 F. Supp. 3d 924 1020 (N.D. Ala. 2022) ................................ 28

*Moore v. Morgan*, 922 F.2d 1553 (11th Cir. 1991) ............................................ 26

*Murry v. Walmart Stores, Inc.*, No. 2:20-CV-00721-ACA, 2021 WL 3212205 (N.D. Ala. July 29, 2021) ......................................................................................... 16

*N.C. State Conf. of the NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016) ..................... 15

*N.R. v. Sch. Bd. of Okaloosa Cnty.*, 418 F. Supp. 3d 957 (N.D. Fla. 2019) .................................. 25
*Odom v. City of Anniston*, 2023 U.S. Dist. LEXIS 159216 (N.D. Ala. Sept. 8, 2023) ................ 25
*Oncale v. Sundowner Offshore Services, Inc.*, 523 US 75 (1998) ................................................. 17
*Park v. City of Atlanta*, 120 F.3d 1157 (11th Cir. 1997) ............................................................. 23
*Powers v. CSX Transportation*, 105 F. Supp. 2d 1295 (S.D. Ala. 2000) ................................ 24, 25
*Singleton v. Merrill*, 582 F. Supp. 3d 924 (N.D. Ala. 2022) .......................................................... 7
*Solomon v. Liberty Cnty., Fla.*, 899 F.2d 1012 (11th Cir. 1990) .................................................. 27
*Taite v. Monroe Cnty. Pub. Libr.*, No. 1:19-CV-212-TFM-MU, 2020 WL 6342721 (S.D. Ala. Oct. 28, 2020) ......................................................................................................................... 10, 28
*Terrebonne Parish NAACP v. Jindal*, 154 F. Supp. 3d 354 (M.D. La. 2015) .............................. 26
*Thornburg v. Gingles*, 478 U.S. 30 (1986)........................................................... 11, 13, 17, 27
*United States v. Berks Cnty., Pa.*, 250 F. Supp. 2d 525 (E.D. Pa. 2003)........................................ 13
*United States v. Marengo County Com'n*, 731 F. 2d 1546 (11th Cir. 1984) ........................... 12, 27
*United States v. Palmer*, 356 F.2d 951 (5th Cir. 1966) ................................................................ 13
*United States v. Post*, 297 F. Supp. 46 (W.D. La. 1969) ........................................................ 11, 16
*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977).......................... 14, 15
*Washington v. Davis*, 426 U.S. 229 (1976) ................................................................................. 15
*Worthy v. City of Phenix City, Alabama,* 930 F.3d 1206 (11th Cir. 2019)...................................... 9

## **Statutes**

Alabama Code § 11-43-2 ............................................................................................................ 21
Alabama Code § 11-46-21 .......................................................................................................... 21
Alabama Code § 11-46-22 .......................................................................................................... 21
Civil Rights Act of 1871, 42 U.S.C. § 1985(3).............................................................................. 5
Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983 .............................. 5
Voting Rights Act § 2, 52 U.S.C. § 10301 .............................................................................. 5, 10

**INTRODUCTION**

Plaintiffs Patrick Braxton, James Ballard, Barbara Patrick, Janice Quarles, Wanda Scott and Dorothy Holley, (collectively, "Plaintiffs"), lawfully registered voters and residents of Newbern, Alabama, filed their Second Amended Complaint ("SAC") on October 5, 2023, challenging the policy of Haywood Stokes, III, Gary Broussard, Jesse Donald Leverett, Voncille Brown Thomas, Willie Richard Tucker and the Town of Newbern (collectively, "Defendants"). SAC, ECF No. 57. Plaintiffs plausibly allege that Defendants improperly prevented Plaintiffs and other Black voters, who are the majority of Newbern's electorate, from participating in the political process and electing candidates of their choice in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and the Civil Rights Act of 1871, 42 U.S.C. § 1985(3). Among other things, Defendants have, (1) for decades, failed to regularly hold and provide proper notice for municipal elections in Newbern; and (2) recently administered an illegal special election to prevent Black citizens from voting.

Defendants have filed a motion to dismiss the SAC based on qualified immunity and a failure to state a claim, and a motion to strike paragraphs 27-37 of the SAC. Defs' Mot to Dismiss, ECF No. 63 [hereinafter "Br."]; Defs' Mot to Strike, ECF No. 61 [hereinafter "Strike Br."].

Defendants' motions are meritless. Defendants are not entitled to qualified immunity because the individual Defendants are sued in their official capacities, and Plaintiffs do not seek damages against Defendants in their individual capacity. And the detailed SAC is more than sufficient to provide the notice required under Rule 12. Fed. R. Civ. Proc. 12. Indeed, rather than refute the plausibility of Plaintiffs' allegations, Defendants ignore the SAC's allegations; fail to accept the allegations as true; and repeatedly apply the wrong legal standards. A review of the

SAC makes clear that the allegations support each of their claims. Additionally, the motion to strike must be denied because the paragraphs are plainly relevant to Plaintiffs' Section 2 claim. The Court should deny Defendants' motions.

## FACTUAL BACKGROUND

For decades, the Town of Newbern has failed to hold elections as required by law. *See* SAC ¶¶ 25-26, 31, 48. In 2020, however, Plaintiff Patrick Braxton was lawfully elected mayor in an uncontested race. *Id.* ¶¶ 9, 38-48.  Since then, Defendants have prevented him from exercising his full powers as mayor. *Id.* ¶¶ 49-100.  And—upon learning that Newbern would have a majority-Black town council—Defendants administered a secret election only they had notice about and de facto appointed themselves as mayor and town council as the only Newbern residents who were candidates in this secret election. *Id.* ¶¶ 49-64.

Newbern's town council and mayor are legally required to provide notice and conduct an election for mayor and town council every four years. *Id.* ¶¶ 22, 41.  Yet, for at least sixty years, Defendants and their predecessors have failed to conduct any municipal elections or provide sufficient public notice of any administered municipal elections. SAC ¶¶ 22-25 (citations omitted). Instead, a series of white mayors and town councilmembers have a policy and custom of "handing down" the positions of mayor and town councilmember from one white person to the next, preventing Newbern voters, the majority of whom are Black, from electing their candidates of choice. *Id.* ¶¶ 25-26, 31. Prior to 2020, Newbern had only ever had one Black councilmember (Defendant Thomas) and had never had a Black mayor. *See id.* Voting in Newbern is racially polarized in that Black people vote overwhelming for their preferred candidates (who are usually Black people) and white people vote overwhelming against the candidates preferred by Black voters. *Id.* ¶ 45.

6

Defendants' infringement of Plaintiffs' voting rights occurs against a backdrop of persistent discrimination against Black voters in Hale County and throughout Alabama. Alabama has historically employed and continues to employ numerous voting practices that impair Black electoral success. *Id.* ¶¶ 29-31. Additionally, Black Alabamians continue to experience racial disparities in education, economic access, housing, and health, which are "inseparable from and (at least in part) the result of, the state's history of official discrimination." *Singleton v. Merrill*, 582 F. Supp. 3d 924, 1022 (N.D. Ala. 2022); SAC ¶¶ 32-37.

In April 2020, Plaintiff Patrick Braxton, who is Black, decided to run for the office of Mayor of Newbern. SAC ¶ 38. At that time, Plaintiff Braxton also told Defendant Woody Stokes that he planned on qualifying as a candidate for Mayor. *Id.* ¶ 40. Defendant Stokes gave Plaintiff Braxton incorrect information about how to qualify and what was needed to qualify. *Id.* Several months later, Plaintiff Braxton successfully identified the correct process and fulfilled the necessary requirements on his own. *Id.* ¶ 42. Plaintiff Braxton filed his statement of candidacy and statement of economic interests with the circuit clerk for Hale County and online with the State of Alabama. *Id.* Plaintiff Braxton was the only Newbern resident to qualify for any municipal office in Newbern. *Id.* ¶¶ 44, 49. Because he was the only person qualified, Plaintiff Braxton became Mayor of the Town of Newbern by operation of law in July 2020. *Id.* ¶ 46.

The Code does not specify how town councilmembers should assume office if there are no qualifying candidates. *Id.* ¶ 50. Upon information and belief, for at least six decades, former mayors in Newbern appointed people of their choice to the town council. *Id.* ¶¶ 25-26, 31, 48. Prior to 2020, Newbern had only ever had one Black town councilmember, and had never had a Black mayor. *Id.* ¶ 31. Upon information and belief, Defendant Stokes also engaged in this practice while serving as mayor from 2008 until 2020. *Id.* ¶¶ 25-26. In 2020, Plaintiffs Braxton was the

7

only candidate who qualified for any positions. *Id.* ¶ 9. Because no one qualified to run for any town council positions, when Plaintiff Braxton lawfully won the office of town mayor, he decided to recruit people to serve on the town council. *Id.* ¶ 49. Although he sought out Black and white residents, only Black residents agreed to serve as town councilmembers. *Id.* ¶ 51. In the summer of 2020, Plaintiff Braxton recruited Plaintiffs James Ballard, Barbara Patrick, Janice Quarles, and Wanda Scott to serve as the town council and appointed them in the fall of 2020. *Id.* ¶¶ 9-14; 59-61.

Upon learning of Plaintiff Braxton's recent mayoral position and recruitment of Plaintiffs, Defendants devised a plan to thwart Plaintiff Braxton from appointing a majority-Black town council and to otherwise prevent Black voters in Newbern from electing their candidates of choice. *Id.* ¶ 52. To stop Mayor Braxton from appointing a majority-Black town council, Defendants Stokes, Broussard, Leverette, Thomas and Tucker held a secret meeting where, they purported to act as the Town Council and adopted resolutions to conduct a special election for the first time in Newbern history. *Id.* ¶ 54. No notice was given to Plaintiffs or any other members of the public about this meeting, nor the resolutions passed at this meeting. *Id.* ¶¶ 54-57. No public notice was given to Plaintiffs or other members of the public about qualifying deadlines, time, date, or other relevant information about the special election, in direct contravention of Alabama law. *See id.*

After this secret election occurred in October 2020, Defendants began to hold out themselves as mayor and town council. *Id.* ¶¶ 15-19, 62. Defendants' conduct continues Newbern's longstanding practice of preventing Black voters from participating in local elections, and worse, even knowing that local elections are happening. *Id.* ¶¶ 25-26, 31, 48. Defendants' racially motivated policy has deprived Black voters of the right to vote and prevent Plaintiffs from performing their official duties as mayor and town councilmembers. As such, Plaintiffs' SAC *inter*

8

*alia* asks this court to compel Defendants to administer a new election in accordance with Alabama Code in order to ensure all voters in Newbern have a right to vote and that Black voters in Newbern have the equal opportunity to participate in the political process.

## LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the Court "is limited to the allegations in the complaint." Fed. R. Civ. Proc. 12(b)(6); *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1264 (11th Cir. 2001). In evaluating Plaintiffs' claims, the court accepts all well-pleaded facts as true, construes them in the light most favorable to Plaintiffs, and draws all reasonable inferences from those facts in Plaintiffs' favor. *See Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).; *Worthy v. City of Phenix City, Alabama,* 930 F.3d 1206, 1214 (11th Cir. 2019).

"To withstand a motion to dismiss under Rule 12(b)(6)," a complaint only "must include 'enough facts to state a claim to relief that is plausible on its face.'" *G.H. v. Marstiller*, 424 F. Supp. 3d 1109, 1113 (N.D. Fla. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means that "the plaintiff [has pled] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs' SAC easily satisfies Rule 12(b)(6).

Regarding Defendants' motion to strike, under Rule 12(f), a "motion to strike is a drastic remedy which is disfavored by the courts and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." Fed. R. Civ. Proc. 12(f); *Barna Conshipping, S.L. v. 1,800 Metric Tons, more or less, of Abandoned Steel*, No. CIV.A. 09-0027-KD-C, 2009 WL 1211334, at *1 (S.D. Ala. May 4, 2009). Motions to strike are often "time wasters" and "not an appropriate vehicle for a general attack on an opposing parties'

9

affidavits and evidence." *Taite v. Monroe Cnty. Pub. Libr.*, No. 1:19-CV-212-TFM-MU, 2020 WL

6342721, at *2 (S.D. Ala. Oct. 28, 2020); *accord Augustus v. Bd. of Pub. Instruction of Escambia*

*Cnty.*, 306 F.2d 862, 868 (5th Cir. 1962). Defendants have not demonstrated that striking Plaintiffs'

pleadings about Alabama's history of discrimination is necessary or appropriate here.

## ARGUMENT

Defendants' motions to dismiss and strike portions of the SAC should be denied in their

entirety. At the outset, Defendants' motion to strike fails to meet their burden of demonstrating

how the additional facts around Alabama's history of racial discrimination is "highly prejudicial,

irrelevant, and immaterial" to Defendants, and simply make conclusory statements reiterating the

Rule 12(f) standard. Strike Br. 2-3. Furthermore, the backdrop of persistent discrimination against

Black voters throughout Alabama and Hale County is directly relevant and material to Plaintiffs'

Section 2 claim and necessary for the court's adjudication of the claim.

As for the Defendants motion to dismiss, Defendants do not dispute the facial plausibility

of Plaintiffs' well-pled SAC, fail to engage with Plaintiffs' factual allegations, misstate the relevant

legal standards, and attempt to present their own factual allegations – all of which are improper at

this stage of the litigation. And none of Defendants' remaining arguments have merit.

## I.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS.

### A.  Plaintiffs Properly Allege that Defendants Violated Section 2 of the VRA.

Section 2 prohibits states from imposing any voting practice that "results in a denial or

abridgment of the right of any citizen . . . to vote on account of race or color." 52 U.S.C. §10301(a).

A violation of subsection (a) results where, "based on the totality of circumstances," a class of

citizens has "less opportunity than other members of the electorate to participate in the political

process and to elect representatives of their choice." 52 U.S.C. §10301(a)–(b). "The essence of a

10

§2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986).

Defendants do not address any of the principles established by the Supreme Court in *Gingles*, or any allegations in Plaintiffs' SAC supporting this claim. They simply assert the Section 2 claim should be dismissed because (1) one of the Defendants is a Black woman; and (2) in failing to provide notice to all Newbern residents of their illegal special election, Defendants' conduct impacted all voters and "not just Black residents of the Town of Newbern." Br. 22. In so doing, Defendants attempt to argue that because Defendants' conduct does not specifically single out only Black voters, there can be no discriminatory result within the meaning of Section 2. Defendants' argument is flawed legally and factually.

Section 2 does not require that only members of a minority group be impacted by the challenged conduct for plaintiffs to prevail. Here, Plaintiffs clearly allege that purported town officials failed to provide Newbern residents, the majority of whom are Black, with notice about the municipal elections, but gave this information to Defendants, most of whom are white. SAC ¶¶ 25-26, 28, 46-64. "[O]nce [town officials] voluntarily proceeded to provide … forms and information to any candidates, the town had to do so in a racially nondiscriminatory manner or run afoul of § 2." *Dillard v. Town of N. Johns*, 717 F. Supp. 1471, 1477 (M. D. Ala. 1989) (finding that a mayor violated Section 2 in failing to provide Black candidates with information about an upcoming election). As in *Dillard*, Defendants' Section 2 violation stems from selectively providing information to more white voters about the election, while refusing to widely inform Black residents (save one) about the same. *Id.*; *see also United States v. Post*, 297 F. Supp. 46, 50-51 (W.D. La. 1969) (finding that election officials violated Section 2 in inadequately informing

11

Black voters about the mechanics of a voting machine); *Brown v. Post*, 279 F. Supp. 60,  64 (W.D. La. 1968) (finding that officials violated Section 2 in failing to inform Black voters about absentee voting options).[1] Moreover, the SAC alleges that Defendants' refusal to notify Newbern residents was due to their intentional scheme to prevent Black voters there from electing their candidates of choice. SAC ¶¶ 52-54.

More fundamentally, Defendants' position that Section 2 requires that only members of one minority group be impacted by a challenged provision contravenes decades of controlling precedent. Rather, Section 2 "applies to a broad range of voting rules, practices, and procedures," and a violation "does not require outright denial of the right" and even "a 'facially neutral' law or practice may violate [Section 2]." *Brnovich v. Democratic Nat. Committee*, 141 S. Ct. 2321, 2341 (2021). Voting practices that negatively impact Black and white voters alike, but that place a disproportionate burden on Black voters, can violate Section 2. *See e.g., Chisom v. Roemer*, 501 US 380, 408 (1991) (Scalia, J., dissenting[2]) ("If, for example, a county permitted voter registration for only three hours one day a week, and that made it more difficult for blacks to register than whites, blacks would have less opportunity '*to participate* in the political process' than whites, and § 2 would therefore be violated") (emphasis in original); *United States v. Marengo County Com'n*, 731 F. 2d 1546, 1570 (11th Cir. 1984) ("By holding short hours the Board made it harder for unregistered voters, more of whom are black than white, to register. By meeting only in Linden the Board was less accessible to eligible rural voters, who were more black than white. By having

---

[1] The 1982 Senate Report, which is the "authoritative source for legislative intent" about the amended Section 2, identifies both *United States v. Post* and *Brown v. Post* as paradigmatic examples of Section 2 violations. S. Rep. No. 97-417, at 30 n.119; *accord Brnovich* at 2333 & n.4 (2021).

[2] The majority did not disagree with Justice Scalia's general articulation of what constitutes a Section 2 violation.

few black poll officials and spurning the voluntary offer of a black citizen to serve as a registrar, county officials impaired black access to the political system and the confidence of blacks in the system's openness."); *United States v. Palmer*, 356 F.2d 951, 952 (5th Cir. 1966)(" …. in a parish where most white persons of voting age are registered and most Negroes of voting age are not registered, we cannot take seriously a registrar's wry defense that since the office was closed to applicants of both races, there was no discrimination. There is no greater inequality than the equal treatment of unequal,") (internal quotation marks omitted).

Here, Defendants' decision to hold a secret special election—after refusing to hold any municipal elections for the last sixty years—had a clear disparate impact. Newbern is 85% Black, has been a majority-Black town for at least the last 50 years, and has a history of racially polarized voting. SAC ¶¶ 21, 44-45. Yet Newbern failed to provide adequate notice of an illegal special election to its Black electorate and, historically, has refused to even hold municipal elections, instead "handing down" the positions of mayor and town council from one white person to the next. SAC ¶¶ 25-26, 31, 48. These well-pleaded allegations state a claim under Section 2. *See e.g., United States v. Berks Cnty., Pa.*, 250 F. Supp. 2d 525, 540 (E.D. Pa. 2003) (finding a Section 2 violation based on the failure to provide adequate notice of an upcoming election); *Coal. for Ed. in Dist. One v. Bd. of Elections of City of New York*, 370 F. Supp. 42 (S.D.N.Y.), *aff'd*, 495 F.2d 1090 (2d Cir. 1974) (finding a violation based on the failure to properly disseminate election information). Defendants' decision to selectively inform only themselves (a majority white group of voters) about the election necessarily had a disparate impact on the majority-Black electorate and denied them the chance to vote. *See Dillard*, 717 F. at 1476.

When evaluating Plaintiffs' allegations under the totality of circumstances, including the nine Senate Factors relevant to assessing Section 2 violations, *see Gingles*, 478 U.S. at 44-45, it is

clear that Plaintiffs have properly pled a Section 2 violation. Plaintiffs properly allege that Newbern, Hale County, and the State have a past history of racial discrimination in voting (SAC ¶¶ 27-30), racially polarized voting (SAC ¶¶ 44-45), and an ongoing discrimination in education, healthcare, the environment and employment (SAC¶¶ 32-37), which negatively impact Black voters' ability to participate in the political process. *See Allen v. Milligan*, 143 S. Ct. 1487, 1505-06 (2023) (affirming a violation based on these factors). Specifically, these allegations speak directly to the factors recently identified by the Supreme Court as most relevant to vote denial cases. [3] Taking all allegations as true and together, Plaintiffs have more than plausibly pled their entitlement to relief under Section 2.

## B. Plaintiffs Adequately Allege an Intentional Discrimination Claim.

Plaintiffs adequately allege sufficient facts which—when taken as true, as they must be at this stage—support the inference that Defendants' conduct was motivated by a racially discriminatory purpose and has a discriminatory effect on Black Alabamians. Rather than acknowledge Plaintiffs' well-pleaded allegations, Defendants ignore and misconstrue these allegations and the applicable law.

"Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). "Determining whether invidious discriminatory purpose was a motivating factor demands

---

[3] In *Brnovich*, the Supreme Court identified a non-exhaustive list of factors that should be considered in addition to many of the factors previously identified in *Thornburg v. Gingles*, 478 U.S. 30 (1986). Although the Court noted that some Senate factors may not be applicable in certain vote denial cases, the Court stressed that "Factors two, six, and seven (which concern racially polarized voting, racially tinged campaign appeals, and the election of minority-group candidates), *ibid.*, have a bearing on whether a districting plan affects the opportunity of minority voters to elect their candidates of choice." *Brnovich*, 141 S. Ct. at 2340. The Court also reaffirmed that a Section 2 claim "requires consideration of "the totality of circumstances." *See id.*

a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266.

Courts use the five-factor *Arlington Heights* framework to examine whether a facially neutral law was passed with discriminatory intent, which includes: "(1) the impact of the challenged law; (2) the historical background; (3) the specific sequence of events leading up to its passage; (4) procedural and substantive departures; . . . (5) the contemporary statements and actions of key legislators." *See Greater Birmingham Ministries v. Sec'y of Ala.*, 992 F.3d 1299, 1321-22 (11th Cir. 2021). The Eleventh Circuit has supplemented these factors with: "(6) the foreseeability of the disparate impact; (7) knowledge of that impact[;] and (8) the availability of less discriminatory alternatives." *Id.* While these factors inform the discriminatory purpose inquiry, courts should not "miss[] the forest in carefully surveying the many trees" by focusing on each factor in isolation, or to the exclusion of other relevant evidence. *N.C. State Conf. of the NAACP v. McCrory*, 831 F.3d 204, 214 (4th Cir. 2016). These factors are non-exhaustive, and a plaintiff is not required to prove the existence of each and every factor. *See Greater Birmingham Ministries v. Sec'y of Ala*, 992 F.3d at 1327. Rather, discriminatory purpose under *Arlington Heights* is determined "from the totality of the relevant facts," and courts must weigh Plaintiffs' evidence as a whole. *Washington v. Davis*, 426 U.S. 229, 242 (1976).

Plaintiffs' allegations amply support an inference of discriminatory purpose and effect— far beyond what is required at the pleadings stage.[4] As the SAC alleges, upon realizing that Plaintiff Patrick Braxton would appoint a majority-Black Town Council, Defendants secretly organized an

---

[4] Moreover, intentional discrimination claims are rarely dismissed at the pleading stage, where the record is not fully developed. *See, e.g.*, *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Ala. State Conf. of NAACP v. City of Pleasant Grove*, 372 F. Supp. 3d 1333, 1341 (N.D. Ala. 2019); *Thompson v. Alabama*, 293 F. Supp. 3d 1313, 1321-24 (M.D. Ala 2017); *Greater Birmingham Ministries v. Merrill*, 250 F. Supp. 3d 1238, 1244-45 (N.D. Ala. 2017).

election and provided no notice to Newbern's Black residents—in order to prevent Newbern's first Black-majority municipal government from holding office, and voters in Newbern, the majority of whom are Black, from electing their candidates of choice. *See, e.g.,* SAC ¶¶ 2, 25-26, 31, 40, 44-64.

Plaintiffs support these assertions by addressing the *Arlington Heights* factors in detail. *See, e.g., Id.* ¶¶ 21, 52, 57, 62-64 (explaining how Defendants' conduct resulted in a disparate impact on Black Newbern residents, through the denial of the opportunity to vote, run for, and hold, municipal office); *id.* ¶¶ 27-31 (noting historical background including past findings of racial discrimination in voting and practice of "handing down" the positions of mayor and town councilmember from one white resident to the next); *id.* ¶¶ 25-26; 31, 40-64 (detailing evidence of procedural and substantive departures, including the administration of a municipal election without any notice, providing incorrect information to Plaintiff Braxton regarding how to qualify for mayor, and breaking with past practice of allowing the duly elected mayor to appoint town councilmembers). This is more than sufficient to survive a motion to dismiss. *See e.g.,* R. & R., *Crawford v. Dolgencorp,* LLC, No. CIV.A. 10-00256-KD-B, 2010 WL 3927614, at *3 (S.D. Ala. Sept. 9, 2010); Order, *Crawford v. Dolgencorp,* LLC, No. CIV.A.10-256-KD-B, 2010 WL 3909579 (S.D. Ala. Sept. 30, 2010) (denying defendant's motion to dismiss and finding that plaintiff "alleged facts sufficient to nudge her [discrimination] claim 'across the line from conceivable to plausible'"); *Murry v. Walmart Stores, Inc.*, No. 2:20-CV-00721-ACA, 2021 WL 3212205, at *4 (N.D. Ala. July 29, 2021) (denying defendant's motion to dismiss and finding plaintiff's claims "sufficient to permit an inference of discrimination). *See also Dillard v. Town of North Johns,* 717 F. Supp. at 1476*; United States v. Post,* 297 F. Supp. at 51 (W.D. La. 1969)*; Brown v. Post,* 279 F. Supp. (W.D. La. 1968).

16

Defendants merely nitpick three allegations in Plaintiffs' 34-page Second Amended Complaint and eschew the rest. Defendants contend that Plaintiffs have not shown "Defendants intended to discriminate against Plaintiffs because of their race." Br. 11. Defendants' principal argument is that Defendants could not be motivated by a racially discriminatory purpose because Defendant Thomas is a Black resident who currently holds herself out as a town councilmember. *Id.* 11-12. The fact that there is one Black resident serving as a purported town councilmember in Newbern's two-hundred-year history does not mean that she and other Defendants did not intend to discriminate. Indeed, Defendants' argument would not provide a basis for dismissing the SAC even if this lone Town Councilmember were the principal decisionmaker (when in fact she is one of five members of the Town Council). *See Oncale v. Sundowner Offshore Services, Inc.*, 523 US 75, 78 (1998) (rejecting "any conclusive presumption that [a person] will not discriminate against members of his own race"); *Castaneda v. Partida*, 430 U.S. 482, 499 (1977) (observing that the mere fact that some decisionmakers and impacted parties were both Mexican-American did not disturb finding of intentional discrimination); *cf. Gingles*, 478 US at 57 (1986) (finding that the election of a Black person in special circumstances, like as an incumbent or running unopposed, does not preclude finding of discrimination). Furthermore, Plaintiffs provide plausible facts, taken in totality, that Defendants engaged in a racially discriminatory scheme in failing to provide the Black residents of Newbern with notice of municipal elections. One Black person serving in the purported Town Council does not diminish the discriminatory harms of this scheme.

Tellingly, nowhere in their motion to dismiss do Defendants engage with the *Arlington Heights* analysis. Defendants' secondary argument that Plaintiffs did not properly allege disparate treatment, Br. 9, 11, also fails because, as described above, Plaintiffs are clearly proceeding on a disparate impact theory. *See* SAC ¶¶ 102-120. Plaintiffs repeatedly allege that Defendants were

17

motivated by a discriminatory purpose in deciding to hold an illegal secret election and prevent Black residents from electing their candidates of choice, that had a discriminatory effect. *See id.* ¶¶ 2, 25-26, 31, 40, 44-64.

### C.  Plaintiffs Properly Allege that Defendants violated the Right to Vote.

Plaintiffs have sufficiently and properly pled their due process claim. "Voting is the beating heart of democracy. It is a 'fundamental political right, because [it is] preservative of all rights.'" *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1315 (11th Cir. 2019) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)). An official may violate the fundamental right to vote where, as here, Defendants engage in a pattern of conduct that "erodes the democratic process" in failing to "properly carry out the state ordained electoral process," and instead have "succumbed to 'temptations to control.... elections by violence and by corruption.'" *Duncan v. Poythress*, 657 F.2d 691 (5th 1981) (citations omitted).[5] "[I]t is fundamentally unfair and constitutionally impermissible for public officials to disenfranchise voters in violation of state law so that they may fill the seats of government through the power of appointment." *Duncan v. Poythress*, 657 F.2d at 704.

Plaintiffs allege that the right to vote was violated when Defendants impermissibly filled the town council vacancies by holding a special election without any notice to the residents of Newbern. *See* SAC ¶¶ 49-64. In support of this, Plaintiffs allege that they are injured by Defendants' history of failing to host municipal elections and subsequently not providing any notice when they did, as was the case with the special election for Town Council in 2020. *Id.* ¶¶ 21-26, 54-59. Plaintiffs further allege that Defendants intentionally failed to give notice of the special election, so that white Newbern residents could remain the only candidates and Black

---

[5] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

residents would not have an opportunity to elect their candidates of choice, and that this special election was a part of the Defendants' policy and custom of only appointing white Newbern residents to the Mayor and Town Council positions. *Id.* ¶¶ 1-4, 21-26, 31, 47-64.

Plaintiffs describe how there had been no elections for Mayor or Town Council for decades, and only after the first Black resident of Newbern was officially elected mayor, did the purported Town Councilmembers decide to "remedy" the past practice of informal appointments to Town Council by conducting an illegal special election. *See id.* Lastly, Plaintiffs plausibly pled facts that if no voters have knowledge of the special election, it is akin to Defendants failing to hold an election at all, constituting a "patent and fundamental unfairness in the electoral process," and thereby a due process violation. *Duncan,* 657 F.2d at 703; *cf. also Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1268 (11th Cir. 2020) (finding that a district attorney candidate's due process rights were likely violated when the state appointed someone to fill an open district attorney position instead of holding an election pursuant to state law).

In addressing this claim, Defendants primarily argue that Plaintiffs have not demonstrated Defendants were acting under color of state law and assert that Defendants were instead private actors. Br. 19. Simultaneously, however, Defendants assert that they were indeed town councilmembers "who properly remained in office." Br. 20. Plaintiffs also allege that Defendants acted as purported state actors, including conducting secret town council meetings, taking actions related to the mayor's office, records, and finances, without notifying Mayor Braxton, changing the locks and shutting Mayor Braxton out of Town Hall, passing resolutions, and hosting elections without notice. SAC ¶¶ 54-57, 107.

Defendants also argue that they did not break the law by attempting to "remedy the issue" of Town Councilmembers being improperly appointed by holding an election. Br. 20.  However,

19

Plaintiffs' allegations that their due process rights were violated are premised on whether they had a right to vote in a municipal town election at all. Plaintiffs sufficiently plead facts that Defendants, in "remedying" their past practice by allegedly holding a special election for Town Council, failed to provide any notice to any resident of Newbern of this election. *See* SAC ¶¶ 54-64. Thus, no resident of Newbern, except for the Defendants, could vote let alone run for office in the special election for Town Council. In failing to provide notice of an allegedly official municipal election, Defendants violated Plaintiffs' right to due process to participate in the political process.

The Eleventh Circuit has held that providing even belated notice about changed election rules violated voters' Fourteenth Amendment rights by creating "illusory" opportunities for voters to cast their ballot accurately. *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1319, 1324 (voters' right to vote were burdened by "infringement by the states" when the state provided late notice on regulatory changes affecting voters' deadline to cure ballots) (quoting *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968)). Defendants concede that as final policymakers in the past, they failed to host any elections for town councilmembers, instead appointing them. Br. 20. They then state that they are remedying their past policy and custom of appointing town councilmembers by hosting the special election in 2020. *Id*. But to not provide any notice of this special election creates the same "illusory" opportunity for Black Newbern residents to participate in the election, and again prevents them from voting just like the decades before. *Id.*

Accordingly, Plaintiffs have pled plausible facts to demonstrate that Defendants, the purported public officials of Newbern and the Town of Newbern, disenfranchised voters in violation of Alabama state law and the Fourteenth Amendment right to due process, by providing no notice of any municipal election for decades.

### D.  Plaintiffs Adequately Allege *Monell* Liability Against the Town of Newbern.

Defendants' attempt to argue that Plaintiffs are not entitled to relief from the Town of Newbern because they fail to allege *Monell* liability, citing the absence of allegations about an injury caused by a "policy statement, ordinance, regulation or decision officially adopted and promulgated by the Town," Br. 24 (internal quotation omitted). Defendants' argument is wholly without merit.

At the outset, Defendants misstate the proper standard for alleging municipal liability. Eleventh Circuit law is clear that "[a] plaintiff can establish municipal liability under *Monell* in three ways: (1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *See Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.,* 48 F.4th 1222, 1229 (11th Cir. 2022); *See also Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 966-68 (11th Cir. 2002); *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996)

Here, Plaintiffs' SAC clearly alleges that Defendants are final policymakers who violated Plaintiffs' constitutional rights. *See e.g.,* SAC ¶¶ 15-19; 21-26, 31, 48-64. First, because final policymaking authority is governed by state law, Plaintiffs describe Newbern's form of government as provided by the Alabama Code. *See McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996), *aff'd sub nom. McMillian v. Monroe Cnty., Ala.,* 520 U.S. 781 (1997). Specifically, Plaintiffs allege that the town of Newbern "is governed by a mayor and five (5) Town Council positions. Ala. Code § 11-43-2;" it has "had a mayor-council form of government for decades;" and under Ala. Code § 11-46-22 and § 11-46-21, the mayor is responsible for providing official notice to voters about municipal elections and conducting these elections. SAC ¶ 22. Under

21

the Code, therefore, the mayor and mayoral town council constitute the entire municipal government in Newbern.

Plaintiffs' SAC names the individuals who continue to hold themselves out as mayor and town councilmembers of Newbern, and who, upon information and belief, previously held such municipal positions, and failed to administer and/or give notice of any municipal elections, including the 2020 illegal special election. *Id.* ¶¶ 15-19; 21-26, 31, 48-64. In doing so, Plaintiffs have clearly sought relief against the municipal officials who have "the responsibility for making law or setting policy in any given area of a local government's business." *McMillian v. Johnson*, 88 F.3d at 1577. Defendants do not even dispute any of the alleged facts, and they must in any event be taken as true on a motion to dismiss. Furthermore, Defendants contend that they acted on behalf of the Town of Newbern when they failed to provide notice for, and held, a secret election. *See* Br. 10, 19-20.

Because Plaintiffs have plainly sought relief from Newbern officials with final policymaking authority, and as described more fully above, *see infra,* Plaintiffs have clearly alleged how Defendants have violated their constitutional rights and Defendants' motion to dismiss based on Plaintiffs' failure to plead *Monell* liability should be denied.

### E.  Plaintiffs State a Claim Under Section 1985(3).

Plaintiffs allege sufficient facts from which the court can plausibly infer that the Defendants conspired to prevent the first Black mayor and his appointed town council from taking office and exercising any authority because they sought to maintain white control of the Town's government. Given Plaintiffs' allegations regarding Defendants' conduct and Hale County's history of racial discrimination in voting, the alleged unlawful agreement to prevent the Town's Black residents from constituting a majority of the Town's governing offices is more than plausible.

1. **The Second Amended Complaint Adequately Alleges a Racially Discriminatory Motive.**

To state a claim under § 1985(3), the plaintiff must show that a racial or class-based animus motivated the conspirators' actions. *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997); *Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146-47 (11th Cir. 1996). A plaintiff can allege discriminatory intent through direct or circumstantial evidence. *See Maldonado v. Firstservice Residential, Inc.*, 2021 U.S. Dist. LEXIS 114302, at *13 (S.D. Tex. June 18, 2021) (citing *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017)).

Plaintiffs' SAC adequately alleges that race motivated the Defendants' actions, *see supra*. As described above, the SAC explains how, in order to prevent Plaintiff Braxton from appointing a majority-Black town council, the Defendants held secret meetings and adopted resolutions to conduct a special election, failed to provide the Plaintiffs or other Black residents of the Town with notice of this special election, purported to re-appoint themselves as town councilmembers, and then undertook actions to prevent the newly appointed majority-Black council from exercising their duties as councilmembers. *See supra* Sections I(A)I(B); SAC ¶¶ 54, 57-61, 63-91.

Not only did the Defendants prevent a majority Black town council and the Town's first Black mayor from exercising their official duties, Defendants also orchestrated the removal of Plaintiff Braxton and then replaced him with Defendant Stokes (the Town's former White mayor). SAC ¶¶ 97-100. The replacement of the first Black mayor of Newbern with a former White mayor supports the inference that race motivated the Defendants. *See Dillard v. Town of North Johns,* 717 F. Supp. at 1476.

With the removal of Plaintiff Braxton, the Defendants maintained white control of Town government. SAC ¶¶ 106-120. Indeed, the maintenance of white control of a Town whose residents are overwhelming Black had motivated the decision to not hold elections for decades. *Id.*

23

¶ 106. Because Plaintiff Braxton upset the "status quo" by becoming the first Black resident to qualify as Mayor, the Defendants undertook actions described in the SAC because they "did not want a Black person on the position of mayor nor did they want a majority Black Town council." *Id.* ¶ 122.

Plaintiffs' allegations more than plausibly show how Defendants undertook to violate Plaintiffs' rights because of their race. *See e.g.,* In *Powers v. CSX Transportation*, 105 F. Supp. 2d 1295, 1314 (S.D. Ala. 2000) (holding allegation that defendant had a policy of not placing rail crossing in majority black neighborhoods a sufficient pleading of discriminatory motive); *Griffin v. Breckenridge*, 403 U.S. 88, 96–97, 91 S. Ct. 1790, 1795–96, 29 L. Ed. 2d 338 (1971).

The Defendants' reliance on *Dean v. Warren*, 12 F.4 1248 (11th Cir. 2021) is misplaced. In *Dean*, the plaintiffs alleged that defendants engaged in a racially motivated civil conspiracy to prevent Black high schoolers from kneeling during the national anthem as a form of protest against racial injustice. *Id.* at 1254-55. The Eleventh Circuit found that the plaintiff failed to properly plead a civil conspiracy claim because the complaint did not contain sufficient allegations that defendants' conduct was motivated by race-based animus. *Id.* at 1256. The court found that the plaintiff's complaint only "contains two allegations that arguably support her theory" that defendants were motivated by race. *Id.* Here, by contrast, the SAC repeatedly and clearly alleges that the Plaintiffs' race alone motivated the Defendants' actions. *See supra*; SAC ¶¶ 2, 25-26, 31, 40, 44-64. Indeed, Defendants' chief purpose for undertaking the actions alleged in the SAC was to preserve and maintain white control of the Town's government.

### 2. The Second Amended Complaint Adequately Alleges an Unlawful Agreement Under Section 1985(3).

To plausibly allege a conspiracy under Section 1985(3) the Plaintiff must allege facts from which an agreement or understanding to violate Plaintiffs' rights may be inferred. *See*, *N.R. v. Sch.*

*Bd. of Okaloosa Cnty.*, 418 F. Supp. 3d 957, 999 (N.D. Fla. 2019). An agreement may be inferred "from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct." *Am. Fed'n of Labor and Congress of Indus. Orgs. v. City of Miami, FL*, 637 F.3d 1178, 1192 (11th Cir. 2011).

Here, Plaintiffs plainly allege that Defendants acted together when they jointly *inter alia* (1) decided to hold a secret meeting to adopt resolutions to conduct a special election; failed to give notice of the election; purported to re-appoint themselves as mayor and town councilmembers; secretly signed the Oath of Office; repeatedly met in secret; denied Plaintiffs' access to Town documents, information, and buildings; purported to vote Plaintiff Braxton out of office; and held themselves out as purported town councilmembers. *See* SAC ¶¶ 54-90.

This is more than enough to show Defendants had an agreement to violate Plaintiffs' rights. *See e.g., N.R. v. Sch. Bd. of Okaloosa Cnty.*, 418 F. Supp. 3d at 999 (holding that the plaintiff had plausibly alleged an understanding among school district officials to deprive him of his substantive due process and equal protections rights because he alleged that (1) the school officials knew about reports of abuse but took no action; (2) that the school officials misrepresented the nature and extent of the abuse and (3) that the school officials allegedly engaged in intimidation and retaliation against an employee who reported abuse); *Powers v. CSX Transportation*, 105 F. Supp. 2d at 1315 (holding that an allegation that the "defendants jointly established a policy of race discrimination in the provision of railroad crossing safety devices" was sufficient to allege an agreement for purposes of Section 1985(3)); *Odom v. City of Anniston*, 2023 U.S. Dist. LEXIS 159216 at *47 (N.D. Ala. Sept. 8, 2023) (denying summary judgment against one of the defendants finding that reasonable jurors could infer a conspiracy because the City manager testified about "meetings and communications" with the defendant and a co-conspirator urging dismissal of the plaintiff; that the

defendant and co-conspirator emphasized the need to hire someone of a different race to replace the plaintiff; and the defendant publicly thanked his co-conspirator for helping out on these things).

Defendants, again, seize on only a few allegations in Plaintiffs' Complaint in arguing that Plaintiffs' allegations of a conspiracy are "conclusory." Br. 18. On the contrary, Plaintiffs' allegations of a common agreement are robust. And moreover, Defendants concede throughout their motion to dismiss that they have acted together to fulfill a common purpose. *See infra*; Br. 10, 19-20. As such, Defendants' argument here is meritless and should be denied.

## II.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY ON ANY OF PLAINTIFFS' CLAIMS.

Defendants are sued in their official capacity for injunctive and declaratory relief and, thus, are not entitled to quality immunity. *See Terrebonne Parish NAACP v. Jindal*, 154 F. Supp. 3d 354, 361-62 (M.D. La. 2015). Plaintiffs' SAC does not assert a claim for damages relief against Defendants as individuals. Plaintiffs' prayer for relief states that this court award "Plaintiffs compensatory or punitive damage as established at trial." *See* SAC at 33. For the avoidance of doubt, Plaintiffs submit that their damages relief is sought against only the Defendant Town of Newbern. Because "[m]unicipal entities are not protected from compensatory damages by the doctrine of qualified immunity," no Defendant may properly raise a qualified immunity defense. *Moore v. Morgan*, 922 F.2d 1553, 1556 (11th Cir. 1991); *see also Leatherman v. Tarrant Cnty.*, 507 U.S. 163, 166 (1993).

Additionally, Defendants' attempt to raise any qualified immunity defense would only apply to Plaintiffs' claims for damages relief and has no bearing on Plaintiffs' claims for injunctive or declaratory relief.

## III.    DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED.

26

As an initial matter, Defendants' motion to strike Plaintiffs' pleadings about Alabama's history of racial discrimination should be denied. When considering a Section 2 Voting Rights Act claim, the Supreme Court stated that the factors included in the Senate Report accompanying the 1982 VRA Amendment "will often be pertinent to certain types of § 2 violations." *Thornburg v. Gingles*, 478 U.S. 45 (1986). The 11th Circuit also found that these factors will "typically establish" whether there was a violation of Section 2. *Solomon v. Liberty Cnty., Fla*., 899 F.2d 1012, 1015 (11th Cir. 1990). Among other things, the Senate factors include "the extent of any history of official discrimination in the state or political subdivision that touched the right of the members of the minority group to register, to vote or otherwise to participate in the democratic process" and "the extent to which voting in the elections of the state or political subdivision is racially polarized." *Id*.

Because Plaintiffs allege a Section 2 Voting Rights Act in the SAC, Plaintiffs seek to provide the Court facts responding to the Senate factors. Thus, Plaintiffs' facts with respect to Alabama's history of racial discrimination are directly relevant and should not be struck. For the court to weigh the factors under a "totality of circumstances" approach, Plaintiffs must provide allegations of past discrimination by the Town of Newbern as well as the state of Alabama or similar towns. "A history of pervasive purposeful discrimination may provide strong circumstantial evidence that the present-day acts of elected officials are motivated by the same purpose, or by a desire to perpetuate the effects of that discrimination." *United States v. Marengo Cnty. Comm'n*, 731 F.2d at 1567-68, n. 36 (also finding that a history of private discrimination should also be considered); *see also McIntosh Cnty. Branch of the NAACP v. City of Darien*, 605 F.2d 753, 756 (5th Cir. 1979) (considering whether "past discrimination has the present effect of discouraging participation by minority members in the political process").

27

Furthermore, Defendants' argument about the Plaintiffs' citation to a case from 40 years ago (Strike Br. at 2) and therefore being irrelevant is also inapposite, as Plaintiffs seek to provide the court a <u>history</u> of discrimination—which would include several decades, especially because Newbern has failed to hold elections further back than just 40 years. *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 439-40, 449 (2006) (considering discrimination from over 40 years ago relevant to establishing whether the "political, social, and economic legacy of past discrimination" for a minority voting block may well "hinder their ability to participate effectively in the political process" (quoting *Gingles*, 478 U.S., at 45 (citing Senate Report factors))); *Milligan v. Merrill*, 582 F. Supp. 3d 924, 1020 (N.D. Ala. 2022) ("If Alabama's history of jailing Black persons for voting and marching in support of their voting rights is sufficiently recent for a plaintiff to recall firsthand how that history impacted his childhood, then it seems insufficiently distant for us to completely disregard it in a step of our analysis that commands us to consider history.") *aff'd sub nom Allen v. Milligan*, 599 U.S. 1 (2023). Defendants' broad dispute with the significant or relevance of Alabama's history of racial discrimination does not make their motion to strike "an appropriate vehicle for a general attack" on Plaintiffs' evidence about their legal claims. *Taite v. Monroe Cnty. Pub. Libr.,* 2020 WL 6342721, at *2; *accord Augustus*, 306 F.2d 862, 868 (5th Cir. 1962).

Accordingly, all of Plaintiffs' allegations with respect to Alabama's history of racial discrimination are relevant for the court's consideration of their Section 2 claims and should not be struck.

*          *          *

Accordingly, Plaintiffs' allegations are more than sufficient and Defendants' Motion to Dismiss and Motion to Strike should be denied.

## **CONCLUSION**

For all the reasons set forth above, Plaintiffs respectfully request that the Court deny

Defendants' Motion to Dismiss and Motion to Strike in their entirety.


Dated: November 9, 2023                             Respectfully submitted,

                                                    */s/Morenike Fajana*
                                                    Morenike Fajana

**NAACP LEGAL DEFENSE AND EDUCATION FUND, INC.**

*/s/ Morenike Fajana*
Morenike Fajana*
Leah Wong**
40 Rector Street, 5th Floor
New York, NY 10006
(212) 217-1690
mfajana@naacpldf.org
lzwong@naacpldf.org


***Counsel for Plaintiffs***
**Admitted pro hac vice*
***Pro hac vice forthcoming*

**QUINN, CONNOR, WEAVER, DAVIES & ROUCO, LLP**

/s/ *Richard P. Rouco*
Richard P. Rouco
George N. Davies
2 – 20th Street North, Suite 930
Birmingham, AL 35203
T: 205-870-9989
Fax. 205-803-4143
rrouco@qcwdr.com
gdavies@qcwdr.com