## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| Patrick Braxton, James Ballard, Barbara Patrick, Janice Quarles, Wanda Scott, and Dorothy Holley,<br><br>_Plaintiffs_,<br><br>vs.<br><br>Haywood Stokes, III, in his official capacity, Gary Broussard, in his official capacity, Jesse Donald Leverett, in his official capacity, Voncille Brown Thomas, in her official capacity, Willie Richard Tucker, in his official capacity, and the Town of Newbern,<br><br>_Defendants_. | Case No. 2:23-CV-00127-KD-N |

## <u>THIRD AMENDED COMPLAINT</u>

Plaintiffs Patrick Braxton, James Ballard, Barbara Patrick, Janice Quarles, Wanda Scott and Dorothy Holley allege as follows:

1.     In 2020, Plaintiff Patrick Braxton accomplished something no other Black person had ever accomplished: he became Mayor of the Town of Newbern ("Town" or "Newbern"). Although 85% of Newbern residents are Black, Newbern has not held municipal elections for Mayor or City Council since at least the passage of the Voting Rights Act of 1965. Rather, white leaders of Newbern have long practiced "hand-me-down governance," whereby the sitting mayor picks a successor to "inherit" the position, and the successor then appoints residents to serve on the town council. Until Plaintiff Stokes took office in 2020, no Black person had served as mayor. Defendant Stokes and other white residents who were long accustomed to exercising total control over the town government without elections, refused to accept that Plaintiff Braxton had legally

become Newbern's first Black mayor.

2.      Once Plaintiff Braxton became mayor—because no resident had lawfully qualified as a candidate for the Town Council positions and in line with decades of past practice—he appointed Plaintiffs Barbara Patrick, Wanda Scott, Janice Quarles and James Ballard to the open Town Council positions. Upon the realizing that Mayor Braxton intended on appointing Black residents to the Town council, Defendant Stokes (who had acted as mayor prior to Braxton) and the other Defendants, acting in concert, set in action a plan to thwart a majority-Black Town Council from taking office. Defendants conspired to prevent the first Black mayor from exercising the duties and powers of his new job, and to prevent voters in Newbern, the majority of whom are Black, from electing their candidates of choice. Defendant Stokes—who now holds himself out as mayor and who, because of his discriminatory actions, exercises the powers as mayor—found willing participants in this plot in Defendants Gary Broussard, Jesse Donald Leverett, Voncille Brown Thomas, and Willie Richard Tucker—who now hold themselves out as the Town Council and who, because of their conspiracy, are exercising the powers and authority of the Town Council.

3.      As long as anyone can remember, no mayoral or Town Council election has been held in Newbern. In the six decades since the passage of the Voting Rights Act of 1965 ("VRA"), which eliminated barriers to Black people registering to vote and voting in Alabama, the Town has refused to hold free and fair elections, the bedrock of our democracy. Defendants intentionally operate and maintain this hand-me-down-governance system to prevent the majority-Black electorate from electing a Black mayor or majority-Black council. This system results in denying or abridging the rights of Black voters, like Plaintiff Holley, from electing the candidates of their choice in violation of Section 2 of the VRA. 52 U.S.C. § 10301; 42 U.S.C. § 1983. And Defendants have set arbitrary and discriminatory candidate qualifications and failed to give adequate notice to

Black voters in violation of Section 2, 52 U.S.C. § 10301; 42 U.S.C. § 1983, and the Fourteenth and Fifteenth Amendments to the Constitution. U.S. Const. Amend. XIV, XV; 42 U.S.C § 1983.

4.      Plaintiffs bring this lawsuit against Defendants to end this discriminatory policy, practice, and conspiracy to deprive Plaintiffs and other Black residents of Newbern of the equal opportunity to elect candidates of their choice and enjoy meaningful representation in the Town.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1331, 1343, and 1357 because the matters in controversy arise under the Constitution and laws of the United States, as well as under 42 U.S.C. §§ 1983, 1985 and 1988 and 52 U.S.C. §§ 10301 and 10308(f). This action involves "a person asserting rights" under the VRA. 52 U.S.C. § 10308(f). The Court also has jurisdiction over this action under 28 U.S.C. §§ 1343(a)(4) and 1357 because this is a civil action to secure equitable relief under the VRA, an Act of Congress that protects the right to vote.

6.      The Court has jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

7.      The Court has personal jurisdiction over the Defendants, who are all citizens of Alabama.

8.      Venue is proper under 28 U.S.C. § 1391(b) because all Defendants are Alabama residents, a substantial part of the events giving rise to the claims occurred in this district, a substantial part of the property that is subject to the action is situated in this district, and at least one Defendant resides in this district.

## PARTIES

9.      Plaintiff Patrick Braxton is a Black resident of the Town of Newbern. He is the lawful Mayor of Newbern. Mayor Braxton is the only candidate who qualified for the position of

town mayor in the November 2020 election. As such, he became mayor by operation of law. On or around November 2, 2020, he was sworn in as mayor. He is unaware of any contested mayoral elections taking place in Newbern. He does not recall Newbern ever holding any contested mayoral or council elections, nor providing any notice to its residents to participate in any such election. Defendants' actions have violated his constitutional rights and his rights under the VRA to hold office and vote for candidates of his choice in municipal elections free from racial discrimination.

10.     Plaintiff James Ballard is a Black resident of the Town of Newbern. He is a lawfully registered voter in the Town and was sworn in as a Town Councilmember on November 2, 2020, after being lawfully appointed by Mayor Braxton. Defendants have denied, and will continue to deny, him the opportunity to exercise his power and authority as a member of the Town Council. He does not recall Newbern ever holding any contested mayoral or Town Council elections, nor does he recall Newbern ever providing any notice to its residents to participate in any such election. Defendants' actions have violated his constitutional rights and his rights under the VRA to hold office and vote for candidates of his choice in municipal elections free from racial discrimination.

11.     Plaintiff Barbara Patrick is a Black resident of the Town of Newbern. She is a lawfully registered voter in the Town and was sworn in as a Town Councilmember on November 2, 2020, after being lawfully appointed by Mayor Braxton. Defendants have denied and will continue to deny her the opportunity to exercise her powers as a Town Councilmember. She does not recall Newbern ever holding any contested mayoral or Town Council elections, nor does she recall Newbern ever providing any notice to its residents to participate in any such election. Defendants' actions have violated her constitutional rights and her rights under the VRA to hold office and vote for candidates of her choice in municipal elections free from racial discrimination.

12.     Plaintiff Janice Quarles is a Black resident of the Town of Newbern. She is a

4

lawfully registered voter in the Town and was sworn in as a Town Councilmember on November 2, 2020, after being lawfully appointed by Mayor Braxton. Defendants have denied and will continue to deny her the opportunity to exercise her powers as a Town Councilmember. She does not recall Newbern ever holding any contested mayoral or Town Council elections, nor does she recall Newbern ever providing any notice to its residents to participate in any such election. Defendants' actions have violated her constitutional rights and her rights under the VRA to hold office and vote for candidates of her choice in municipal elections free from racial discrimination.

13.     Plaintiff Wanda Scott is a Black resident of the Town of Newbern.  She is a lawfully registered voter in the Town and was sworn in as a Town Councilmember on November 2, 2020, after being lawfully appointed by Mayor Braxton. Defendants have denied and will continue to deny her the opportunity to exercise her powers as a Town Councilmember. She does not recall Newbern ever holding any contested mayoral or Town Council elections, nor does she recall Newbern ever providing any notice to its residents to participate in any such election. Defendants' actions have violated her constitutional rights and her rights under the VRA to hold office and vote for candidates of her choice in municipal elections free from racial discrimination.

14.     Plaintiff Dorothy Holley is a Black resident who was born and raised in Newbern. She has been a lawfully registered voter in the Town for approximately fifty years. She does not recall Newbern ever holding any mayoral or Town Council elections, nor receiving notice to participate in any such election. Defendants have violated her constitutional rights and rights under the VRA to vote for candidates of her choice in municipal elections free from racial discrimination.

15.     Defendant Haywood Stokes, III is a white resident of the Town of Newbern. Mr. Stokes previously acted as the Mayor of Newbern. Presently, Mr. Stokes holds himself out as the current Mayor of Newbern and a member of the Town Council. Due to his discriminatory actions,

he continues to exercise all the powers and authority of the Newbern mayor under color of law.

16.     Defendant Gary Broussard is a white resident of the Town of Newbern. Mr. Broussard previously acted as an appointed Town Councilmember. Presently, Mr. Broussard holds himself out as a current member of the Town Council. Due to his discriminatory actions, he continues to exercise all the powers and authority of a Town Councilmember under color of law.

17.     Defendant Jesse Donald Leverett is a white resident of the Town of Newbern. Mr. Leverett previously acted as an appointed Town Councilmember. Presently, Mr. Leverett holds himself out as a current member of the Town Council. Due to his discriminatory actions, he continues to exercise all the powers and authority of a Town Councilmember under color of law.

18.     Defendant Voncille Brown Thomas is a Black resident of the Town of Newbern. She was previously appointed by Defendant Stokes to the Town Council. Presently, Ms. Thomas holds herself out as a current member of the Town Council. Due to her discriminatory actions, she continues to exercise all the powers and authority of a Town Councilmember under color of law.

19.     Defendant Willie Richard Tucker is a white resident of the Town of Newbern. Mr. Tucker previously acted as an appointed Town Councilmember. Presently, Mr. Tucker holds himself out as a current member of the Town Council. Due to his discriminatory actions, he continues to exercise all the powers and authority of a Town Councilmember under color of law.

20.     Defendant Town of Newbern is the municipal government located in Newbern, Alabama. It is a class 8 municipality under Alabama law and organized as a mayor-council form of government. Ala. Code § 11-40-12(a). As a class 8 municipality, council members for the Town shall be elected by the Town at-large at a general election held as provided by law quadrennially. Ala. Code § 11-43-2(b) (2020). The next election should be held in August 2025.

**FACTUAL ALLEGATIONS**

21.     The town of Newbern is located in Hale County, Alabama.   It is a class 8 municipality under Alabama's Code ("the Code"); meaning that it is a town with fewer than 6,000 residents. Ala. Code § 11-40-12. Based on the most recent census data, Newbern has approximately fewer than 300 residents, and is 85% Black. Newbern has been a majority-Black town for at least the last 50 years.

22.     Newbern has had a mayor-council form of government for decades. Pursuant to the Code, Newbern is governed by a mayor and five (5) town council positions. Ala. Code § 11-43-2. Under the Code, municipal elections for mayor and town council are supposed to be held on the fourth Thursday of August every four years. Ala. Code § 11-46-21. Where at least one candidate qualifies for mayor or town council, the Code requires the mayor (by a certain date) to notify the public of an upcoming election for mayor and town council and that residents who have lived in the municipality for at least 90 days may qualify to run for office. Ala. Code § 11-46-22.

23.     During the period relevant to this complaint, a resident satisfying the 90-day residency requirement and who wishes to have their name appear as a candidate on a ballot for an elected municipal office was required to file a statement of candidacy and a statement of economic interests on or before the third Tuesday of July proceeding the election. Ala. Code § 11-46-25.

24.     In the event only one individual files a statement of candidacy for an office by 5:00 P.M. on the third Tuesday in July preceding the date set for the election of municipal officers, then that individual shall for all purposes be deemed elected to the office. Ala. Code § 11-46-26.

25.     Though the Mayor of Newbern has always been required to provide broad notice to the electorate and conduct an election for mayor and town council every four years, no notice of mayoral or town council elections have been given and Newbern has not held an election in six

decades. Instead, in violation of state and federal laws, the office of mayor has been "inherited" by a hand-picked successor and the newly designated mayor has then selected the town council. Prior to Plaintiff Braxton becoming mayor, Defendant Stokes was mayor from 2008 until 2020.

26.     Because the office of mayor was treated as a hand-me-down position and all prior mayors have been white residents, no Black resident of Newbern has ever served as mayor or town councilmember prior to November 2020. Moreover, only one Black person has ever been selected to serve as a Town Councilmember before the appointment of Plaintiffs Ballard, Patrick, Scott and Quarles. In other words, the Town Council has been an entirely or overwhelmingly white body.

**A. Ongoing Racial Discrimination against Black Voters in Alabama.**

27.     Plaintiffs' disenfranchisement due to Defendants' conduct occurs against a backdrop of persistent discrimination against Black voters throughout Alabama and in Hale County specifically.

28.     Alabama has a history of racially discriminating against Black voters, that continues through today. Before the Civil War, Black voters were legally prohibited from voting. Even after Black voters secured the right to vote, Alabamians used force and threats of force to prevent Black residents from voting. In 1901, the Alabama Constitution was amended to impose literacy tests and a poll tax which had the effect of greatly disenfranchising Black voters. *See United States v. Alabama,* 252 F. Supp. 95, 99 (M.D. Ala. 1966)*.*

29.     Since that time, Alabama has employed and continues to employ various voting practices to impair Black electoral success. *See, e.g.*, *Allen v. Milligan*, 599 U.S. 1 (2023); *City of Pleasant Grove v. United States*, 479 U.S. 462 (1987); *Hunter v. Underwood*, 471 U.S. 222 (1985); *Milligan v. Allen*, No. 2:21-CV-1291-AMM, 2023 WL 5691156 (N.D. Ala. Sept. 5, 2023); *People First of Alabama v. Merrill*, 491 F. Supp. 3d 1076 (N.D. Ala. 2020); *Jones v. Jefferson Cnty. Bd.*

*of Educ.*, No. 2:19-cv-01821-MHH, 2019 WL 7500528 (N.D. Ala. Dec. 16, 2019); *Ala. State Conf.
of NAACP v. City of Pleasant Grove*, No. 2:18-cv-02056, 2019 WL 5172371 (N.D. Ala. Oct. 11,
2019); *Ala. Legis. Black Caucus v. Alabama*, 231 F. Supp. 3d 1026 (M.D. Ala. 2017) (three-judge
court); *Allen v. City of Evergreen*, No. 13-0107, 2014 WL 12607819 (S.D. Ala. Jan. 13, 2014);
*United States v. McGregor*, 824 F. Supp. 2d 1339, 1345-46 & n.3 (M.D. Ala. 2011); *Dillard v.
City of Foley*, 926 F. Supp. 1053 (M.D. Ala. 1995); *Straw v. Barbour Cnty*., 864 F. Supp. 1148,
1151 (M.D. Ala. 1994); *Dillard v. Town of N. Johns*, 717 F. Supp. 1471 (M.D.Ala.1989); *Harris
v. Siegelman*, 695 F. Supp. 517 (M.D. Ala. 1992); *Dillard v. Crenshaw Cty.*, 640 F. Supp. 1347,
1357 (1986); *Sims v. Baggett*, 247 F. Supp. 96, 108-109 (M.D. Ala. 1965) (three-judge court).

30.     Hale County and the cities therein have also discriminated against Black voters. *See
e.g., Dillard v. City of Greensboro*, 956 F. Supp. 1576 (M.D. Ala. 1997); *Hale County v. United
States,* 496 F. Supp. 1206 (D.D.C. 1980) (three-judge court); Order and Judgment*, United States
v. Hale County,* No. 76-403-P (S.D. Ala. Sept. 6, 1978) (probate judge held in contempt for
accepting commissioner candidates for an enjoined at-large election plan); *United States v. Hale
County*, 425 F. Supp. 433, (S.D.Ala.1976) *aff'd mem.*, 430 U.S. 924 (1977); *Williams v. Wallace*,
240 F. Supp. 100, 104 (M.D. Ala. 1965); *United States v. Tutwiler,* No. 3200-63 (S.D. Ala.) (U.S.
Department of Justice challenge to literacy tests in Hale County). For example, between 1965 and
2013, the U.S. Department of Justice objected six times under the preclearance provisions of
Section 5 of the VRA to state or local laws that discriminated against Black voters in Hale County.

31.     In Newbern, the past and present white mayors and the majority-white town
councils have prevented the residents of Newbern, which has a majority-Black population, from
being properly notified about elections, from becoming candidates for elections, from participating
in elections, and have otherwise prevented the Black majority from electing their candidates of

choice. Defendants have failed to hold elections and used the hand-me-down-governance to select mayors and the town council from one white resident to the next. Prior to 2020, Newbern never had a Black mayor, and Newbern had never had a Black member of the Town Council. Defendant Thomas is the only Black person ever selected by white officials to serve as Town Councilmember.

**B. Ongoing Discrimination in Education, Healthcare, the Environment and Employment Against Black People in Alabama.**

32. Alabama's discrimination against Black residents is not limited to the voting sphere. As courts have recently and repeatedly held, racial disparities in education, economics, housing, and health between Black and white Alabamians result from "Alabama's extensive history of repugnant racial and voting-related discrimination," which is "undeniable and well documented." *Milligan*, 599 U.S. at 22; *see also People First*, 491 F. Supp. 3d 1076 at 1174-75.

33. This history of public and private acts of discrimination in education, the criminal legal system, and employment is true for Black residents living in Hale County. *See, e.g., Black v. Curb*, 464 F. 2d 165 (5th Cir. 1972); *United States v. Hale Cnty. Bd. of Educ.*, 445 F.2d 1330 (5th Cir. 1971); *Bryant v. Johnny Kynard Logging, Inc.*, 930 F. Supp. 2d 1272 (N.D. Ala. 2013); *Stephens v. Haley*, 823 F. Supp. 2d 1254 (S.D. Ala. 2011); *United States v. Hale Cnty. Bd. of Educ*. 426 F. Supp. 275 (S.D. Ala. 1977); *United States v. Hale Cnty. Bd. of Educ*., 12 Race Rel. L. Rep. 114 (S.D. Ala. 1967).

34. Among other socioeconomic disparities that result from past discrimination, Black residents in Hale County have less educational attainment than white residents, attend more single-race schools, and earn far lower wages. For example, according to the U.S. Census Bureau's 2015-2019 American Community Survey, 59.4% of the county's population is Black and 39.5% is white. In Hale County, about 19.2% of Black people, but only 11.8% of whites failed to complete high school. And only 9.4% of Black residents, as compared to 20.7% of white residents have a college

degree or higher level of educational attainment. About 32.8% of Black residents live in poverty (including 52.2% of Black children under 18), as compared to only 11.8% of whites (and only 14.9% of white children under 18); and 38.1% of Black people and only 7.6% of whites receive food stamps.

35.     Black unemployment (16.1%) as a percentage of the civilian aged 16 to 64 labor force is three times white unemployment (4.9%) in the county. Black median household income is only $24,165 and white median household income is more than double that amount ($57,364). Many Black residents (21.7%) lack access to a computer and 39.7% lack broadband internet access (versus only 10.6% of whites without a computer and 18.8% without broadband internet). And 20% of Black residents aged 18-64 lack health insurance (versus 8.3% of whites). Similar racial disparities exist in Newbern. Further, Newbern is a part of the Hale County school district, which is 69.4% Black. Black students are overrepresented among students who required to repeat a grade (80.7% Black). Greensboro High school and Middle school were recently listed as "D" (or nearly failing) schools.

36.     Hale County is located in the Black Belt.[1] In 2019, the U.N.'s Special Rapporteur on Extreme Poverty and Human Rights, Philip Alston, reported that Black residents in Alabama's Black Belt communities lacked proper sewage and drinking water systems and have unreliable electricity. These disparities in infrastructure and environmental safety contribute to more adverse health outcomes and shorter life expectancy rates for Black residents in the Black Belt. Black Alabamians have less access to healthcare and health insurance.[2] Black voters in the Black Belt

---

[1] The Black Belt is named for the race of its residents and the region's fertile black soil. The Black Belt region has a substantial majority-Black population because of the many enslaved people forcibly brought there to work in the antebellum period.

[2] Heeju Sohn, *Racial and Ethnic Disparities in Health Insurance Coverage: Dynamics of Gaining and Losing Coverage over the Life-Course*, 36 Population Rsch. Pol'y Rev. 181 (Apr. 2017),

counties in particular "have fewer primary care physicians, dentists and mental health providers per resident than other counties.")[3]

37.     Black Alabamians are more than twice as likely as whites to die from diabetes and nearly three times as likely to die from hypertension or asthma.[4] Many of these underlying conditions result from past and present policies that both relegate Black people to particular neighborhoods and disproportionately allocate landfills, factories, and other environmental risks to Black neighborhoods.[5]

38.     Racial discrimination in Alabama also results in socioeconomic inequalities that disadvantage Black people, like higher rates of unemployment, disability, and poverty.

**C. Mayor Braxton Challenges the White Majority.**

39.     In April 2020, Mayor Braxton decided to run for the office of Mayor of Newbern. He had concerns that the prior town council and mayor were not responding to the needs of the majority Black community.  These concerns only grew with the Town's response to COVID-19.

40.     Defendant Stokes was acting as Mayor in 2020. Stokes had appointed Defendants

---

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5370590/. ("African Americans . . . are more likely to be uninsured throughout adulthood than non-Hispanic [white] individuals. Without insurance, people face considerable barriers in receiving health services. Many health care providers require insurance coverage from their patients or charge a prohibitively high fee.")

[3] Anna Maria Barry-Jester, *The Healthcare System is Leaving the Southern Black Belt Behind*, FiveThirtyEight Jun. 28, 2017, https://fivethirtyeight.com/features/the-health-care-system-is-leaving-the-southern-black-belt-behind/; see also The Office of Primary Care and Rural Health Alabama Department of Public Health and The Alabama Rural Health Association, Selected Health Status Indicators (Oct. 2007), http://www.adph.org/ruralhealth/assets/BBACData.pdf.

[4] ADPH, Selected Health Status Indicators: Alabama's Caucasian and African American Populations                         4-5                   (July                   2013), http://www.adph.org/minorityhealth/assets/MinorityHealthStatus2013.pdf.

[5] *See, e.g.,* Ihab Mikati et al., Disparities in Distribution of Particulate Matter Emission Sources by Race and Poverty Status, 108 Am. J. Pub. Health 480, 480-83 (2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5844406/; Diane Alexander & Janet Currie, Is it who you are or where you live? Residential segregation and racial gaps in childhood asthma, 55 J. Health Econ. 186 (2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6112984/.

Broussard, Leverette, Thomas, and Tucker to the Town Council prior to May 2020.

41.     In April 2020, Plaintiff Braxton also told Defendant Stokes that he planned on qualifying as a candidate for mayor. Defendant Stokes gave Plaintiff Braxton incorrect information about how to qualify and what was needed to qualify. Defendant Stokes knew that Plaintiff Braxton planned on running for Mayor of Newbern. Defendant Stokes refused to provide Plaintiff Braxton with the paperwork required to run for mayor. Defendant Stokes told Plaintiff Braxton that he could not provide Plaintiff Braxton the paperwork to qualify for mayor, because Defendant Stokes himself was also intending on running as a candidate for mayor. Defendant Stokes also told Plaintiff Braxton that there were not ballots or voting machines in Newbern.

42.     Under the Code, Defendant Stokes was required to give notice of an election by July 7, 2020, and inform residents that they had until July 21, 2020 to qualify. Typically, residents of Newbern post announcements in the local stores, Newbern library, post office, and the local paper, the Greensboro Watchman. No announcements were posted about the mayoral election or standards to qualify for the election. There are no ballots or voting machines in Newbern.

43.     Though Defendant Stokes did not comply with the notice requirements for the 2020 municipal elections and after consulting with the Alabama Conference of Black Mayors, Plaintiff Braxton filed his statement of candidacy and statement of economic interests with the circuit clerk for Hale County and online with the State of Alabama. Defendant Stokes did not submit any paperwork to qualify as a mayoral candidate.

44.     On July 21, 2020, the last day to qualify, Plaintiff Braxton gave the then City clerk Lynn Williams a money order for $50.00 (which was the qualifying fee) and the statement of candidacy. Ms. Williams accepted the payment and told Plaintiff Braxton that she was not going to let Defendant Stokes get her "involved in his mess". Ms. Williams did not elaborate on this

comment but resigned as city clerk a few months later.

45.     Plaintiff Braxton was the only person who qualified as a candidate for the position of Mayor. Defendant Stokes did not qualify as a candidate even though he knew that Plaintiff Braxton planned on qualifying since April 2020. Defendant Stokes knew or reasonably believed that, if the majority-Black electorate were given an adequate opportunity to vote in Newbern elections, Defendant Stokes would not prevail in a contested election for mayor against Plaintiff Braxton because Defendant Stokes would not be the candidate of choice of the Black electorate.

46.     Voting is racially polarized in the Town. Black voters in the Town tend to vote overwhelming for their preferred candidates (who are usually Black people) and white voters tend to vote overwhelming against Black candidates and other candidates preferred by Black voters. This pattern of racially polarized voting in the Town and across both Hale County and the State of Alabama is well-known and has existed for decades. *See, e.g.*, *Milligan*, 599 U.S. at 21-12; *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 277 (2015); *Greensboro*, 946 F. Supp. at 952-53; *Hale County*, 496 F. Supp. at 1213.

47.     Because he was the only person qualified, Plaintiff Braxton became Mayor of the Town of Newbern by operation of law. He was Mayor-elect as of July 22, 2020. He was also the first Black mayor of the Town of Newbern in the 165 years since its founding.

48.     Not only was Mayor Braxton the only person who qualified as a candidate for the office of Mayor, he was the only person to qualify as a candidate for **any** elected municipal office including the Town Council positions.

49.     Newbern has not held municipal elections for decades. Instead, past mayors and town councilmembers were *de facto* appointed to their positions without filing the required paperwork, notifying the public about open positions or election dates, or otherwise complying

14

with the Code.

**D. The Defendants Stokes, Broussard, Thomas, and Tucker Conspire to Unlawfully Remain in Office.**

50.     No resident of Newbern timely qualified for a position on the Town Council because Defendants Stokes, Broussard, Leverette, Thomas, and Tucker failed to provide the necessary notice and/or take steps to hold an election. The County Probate Judge Arthur Crawford told Mayor Braxton that he could appoint the Town Councilmembers because no one qualified for these positions. This was consistent with Defendants' past practice of hand-me-down-governance and, in fact, Defendants and the prior Town Council had all been appointed to their positions.

51.     Furthermore, the Code does not specify that elections must be held for Town Councilmembers. Ala. Code § 11-46-1. The Code does, however, specify that if more than one resident qualifies as a candidate, there must be notice of the election—whether it is a Mayoral election or special election. Ala. Code § 11-46-21-22. Because no notice of any special election electing any Town Councilmembers had been given, Mayor Braxton did not know there were any Town Councilmembers elected.

52.     In keeping with past Newbern practice of previous Mayors, including former Mayor Stokes, Mayor Braxton immediately set about asking several residents of the Town if they would accept an appointment to the Town Council. Mayor Braxton asked both Black and white residents of the Town about serving on the Town Council. Despite Mayor Braxton's sincere requests, no white resident agreed to serve on his appointed Town Council.

53.     Word of Mayor Braxton's recruitment of new Town Councilmembers spread in the community. Upon learning of Mayor Braxton's recruitment and recent mayoral position, the Defendants devised a plan to thwart Mayor Braxton from appointing Black Town Councilmembers and to otherwise prevent the voters in majority-Black Newbern from electing their candidates of

choice.

54.     The outgoing Mayor Stokes and his outgoing Town Councilmembers decided to depart from the past practice of the Mayor naming the Town Councilmembers if no resident qualified as a candidate for the Town Council.

55.     To prevent Mayor Braxton from appointing a majority black Town Council, the Defendants Stokes, Broussard, Leverette, Thomas, and Tucker agreed to hold a secret meeting and adopt resolutions to conduct a special election.  No notice was given to Plaintiffs or other members of the Town's majority-Black electorate about this meeting and the resolutions passed at this meeting. The purpose and effect of failing to provide notice to voters or potential candidates was to prevent Black voters from voting for their candidates of choice and to prevent Black candidates for Town Council from learning about or qualifying for the special election.

56.     In August 2020, the Defendants Stokes, Broussard, Leverette, Thomas, and Tucker met in secret to adopt a "special" election ordinance. This was the first time in decades (if ever) that an ordinance setting a special election was proposed and adopted by the Town Council or purported Town Councilmembers.

57.     At this secret meeting, Defendant Stokes presented an "ordinance" setting a special election for the Town Council positions because the Town Councilmembers had allegedly "forgotten" to qualify as candidates for the 2020 municipal elections.  Under the ordinance, a special election for purposes of electing Town Councilmembers was scheduled for October 6, 2020.

58.     No public notice of a special election to be held on October 6, 2020 was ever published, in direct contravention of the Code. Defendants failed to provide Plaintiffs or other Black residents of the Town with any form of "notice of all municipal elections by publishing

16

notice thereof in a newspaper published in the city or town, and, if no newspaper is published in the city or town, by posting notices thereof in three public places in the city or town" about the alleged special elections scheduled for October 2020. Ala. Code § 11-46-22. Although Defendants knew that Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott intended to run for municipal offices and all Plaintiffs intended to vote in any special election, Defendants intentionally failed to give adequate notice to them and other Black voters in Newbern.

59.     As a result of the unpublished "special election" ordinance, Defendants Stokes, Leverett, Tucker, Broussard and Thomas filed statements of candidacy for the Town Council positions to qualify for the special election.

60.     Because notice of the October 6, 2020 special election was not provided to Plaintiffs and other residents of Newbern, Plaintiffs did not vote in that election. Because Defendants failed to provide the candidates or voters notice of the special election, Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott did not submit candidate statements or run for the Town Council positions. Defendants Stokes, Broussard, Leverett, Thomas, and Tucker were the only persons who qualified, and no Newbern residents voted in the uncontested special election.

61.     Unaware that the Defendants had secretly purported to set a special "election" and filed paperwork to qualify for the Town Council positions, Mayor Braxton obtained the consent of Plaintiffs Ballard, Patrick, Quarles, and Scott to serve on the Town Council.

62.     On November 2, 2020, Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott were sworn into office. The Oath of Office was filed with the County Probate Judge's office.

63.     Ten days later on November 12, 2020, Defendants Stokes, Broussard, Leverett, Thomas, and Tucker executed an Oath of Office at the City Attorney's office. The City Attorney filed these oaths with the Probate Judge. None of the Defendants informed Braxton or the Plaintiffs

17

that they were taking this action.

64.    Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott held a meeting in the Town Hall in late November 2020. This was the one and only meeting they held in the Town Hall as the new majority-Black Town government because Defendants acted to prevent the Plaintiffs from accessing any information regarding the Town, destroyed or removed documents from the Town Hall and locked down the Town Hall, preventing any access to the facility.

65.    As detailed above and below, Defendants conspired to prevent Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott from exercising their official duties. Defendants also stripped Mayor Braxton of all the duties, privileges and powers of the office of Mayor in order to retain control of Newbern.

**E. The Defendants Prevent Mayor Braxton and Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott from Exercising Their Official Duties.**

66.    Since November 2020, Defendants have engaged in a policy, practice, and course of conduct designed to thwart Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott from fulfilling their official duties; govern the town council in contravention of the Alabama Code; and undermine the right of Newbern residents, including Plaintiff Holley, to elect their candidates of choice. Defendant Stokes effectively assumed the role of Mayor; indeed he continues to hold himself out as mayor of Newbern and has continually and unlawfully interfered with Mayor Braxton's efforts to discharge his duties as Mayor. Additionally, Defendants Gary Broussard, Jesse Donald Leverett, Voncille Brown, Thomas, and Willie Richard Tucker continue to hold themselves as town councilmembers, thus preventing Plaintiffs James Ballard, Barbara Patrick, Janice Quarles, and Wanda Scott from exercising their duties as town councilmembers.

**1. The Defendants Denied Plaintiffs Braxton, Ballard, Patrick, Quarles and Scott Access to Town Hall.**

67.     One of the duties of the Mayor is to maintain Town Hall. There is an office in the Town Hall that the Town uses to conduct official business.

68.     In December 2020, after the first meeting the Plaintiffs held in the Town Hall as their capacity as Mayor and Town Councilmembers, Defendants had the locks to the Town Hall changed.

69.     In January 2021, Mayor Braxton gained access to the Town Hall and discovered that someone had removed official Town documents from the building. Mayor Braxton then had the locks changed so that he could have access to Town Hall.

70.     Sometime thereafter, upon learning that Mayor Braxton had gained access to the Town Hall, Defendants had the locks changed again. Mayor Braxton discovered that the locks had been changed in April 2021 and the Plaintiffs have not been able to gain uninterrupted access the building since April 2021.

71.     Indeed, Mayor Braxton was not allowed access to the Town hall in November 2022 to assist in setting up voting machines for the most recent sheriff's election.

**2. Defendant Stokes and His Agents Denied Mayor Braxton Access to Town Bank Accounts.**

72.     The Town of Newbern maintains a bank account with the People's Bank of Greensboro (hereinafter the "Bank"). The Bank has its main branch in Greensboro, AL. Greensboro is the county seat for Hale County AL.

73.     On several occasions after November 2020, Mayor Braxton went to the Bank to have his name placed on the Town's accounts. Mayor Braxton presented a Bank employee named Vickie (last name unknown) with documents showing he was the lawful Mayor of the Town and asked her to grant him full access to the Town's accounts.

19

74.    Ms. Vickie told Mayor Braxton that she would have to check with the Bank president and that he should come back the next day.

75.    Mayor Braxton returned the next day but Ms. Vickie did not meet with him. Another bank employee told Mayor Braxton that his name would not be added to the account and that Defendant Stokes would remain on the account.

76.    A day or two after this second meeting at the Bank, Mayor Braxton witnessed Defendant Stokes at the Bank meeting with Bank representatives. Since this day, the Bank has refused to honor any request from Mayor Braxton.

77.    In July 2022, Mayor Braxton sent the Bank a letter demanding that it provide Mayor Braxton as the Mayor of Newbern access to information regarding the Town's accounts. The Bank has ignored this letter. Upon information and belief, the Bank is following the Defendant Stokes's request not to communicate or deal with Mayor Braxton on any Town business.

**3. Defendant Stokes and his agents Denied Mayor Braxton Access to Official Town Mail and Diverted Mail Addressed to Mayor Braxton.**

78.    In early 2021, Mayor Braxton met with Valerie (last name unknown) who at the time was the postmaster for the Town.  He requested access to the Town's P.O. box and asked that the box be re-keyed. He showed Ms. Valerie documents that certified he was the Mayor. Ms. Valerie granted Mayor Braxton's request.

79.    Mayor Braxton received mail for the Town for approximately two weeks until he learned from Ms. Valerie that Defendant Stokes had complained to her superiors about being denied access to the Town's P.O. Box and that she had been instructed to allow Defendant Stokes access to the P.O. box.

80.    In late 2021, Lynn Thiebe replaced Ms. Valerie as the postmaster for the Town of Newbern.  Without his consent, Defendant Thiebe re-keyed the Town's P.O. Box and denied

Braxton access to the Town's P.O. Box.

81.     Later, Mayor Braxton requested access to the P.O. Box and showed Thiebe documents certifying him as the Mayor. He told Thiebe that Defendant Stokes did not have authority to deny him access and that he was taking over his job. He told Thiebe that he used to have access and that she should not deny him access. Thiebe still refused to grant him equal access to the P.O. box. Thiebe has given mail addressed to Mayor Braxton to Defendant Stokes.

82.     Without access to the Town's P.O. Box, Mayor Braxton cannot perform the duties of his position or exercise the privileges of being Mayor. The Plaintiffs Ballard, Patrick, Quarles, and Scott cannot perform their duties without Mayor Braxton's access to official Town business.

**4. Defendants' Denied Mayor Braxton Access to Official Town Information and Documents.**

83.     The Defendants Stokes, Broussard, Leverette, Thomas, and Tucker have instructed the City clerk and the City's accountant to deny Mayor Braxton access to financial information or documents related to the official Town business.

84.     After Mayor Braxton and the Plaintiffs Ballard, Patrick, Quarles, and Scott were sworn in and conducted a meeting at the Town Hall, the Defendants Stokes, Broussard, Leverette, Thomas, and Tucker had all the documents stored at the Town Hall removed.

85.     Williams resigned from her position as City clerk in November 2020. The Defendants lacking proper authority appointed Defendant Stokes's sister Dana (last name unknown) as the City clerk. Ms. Dana has refused to grant Mayor Braxton access to any documents or information regarding the Town's official business.

86.     Ms. Dana, upset with Mayor Braxton efforts to assert his rights as Mayor, confronted Braxton and told him, "You're not the mayor and we don't need you here."

87.     The Town's accountant Steve Kirk has also refused Braxton's requests for

information about the Town finances.  As recently as July 2022, Mayor Braxton sent a letter to Kirk requesting that he, among other things, grant access to financial records and that he provide Mayor Braxton with information about the Town's expenditures.  Kirk has not responded to his letter.

88.     Upon information and belief, the Defendants Stokes, Broussard, Leverette, Thomas, and Tucker have instructed Kirk to deny Mayor Braxton's requests for information. Without access to information about the Town's finances and expenditures, the Plaintiffs cannot perform their duties and exercise the privileges of their offices.

**5. Defendants Held Town Meetings Without Notice to Plaintiffs Braxton, Ballard, Patrick, Quarles and Scott and in Private Residences.**

89.     Even while continuing to hold themselves out as the Mayor and Town Councilmembers of Newbern, the Defendants Stokes, Broussard, Leverette, Thomas, and Tucker have not conducted regular public meetings in the Town Hall since the election of Mayor Braxton and his swearing in of Plaintiffs Ballard, Patrick, Quarles, and Scott.

90.     Defendants Stokes, Broussard, Leverette, Thomas, and Tucker have not provided Mayor Braxton and residents of the Town notice of public meetings.

91.     Defendants Stokes, Broussard, Leverette, Thomas, and Tucker have conducted meetings and business at private residences.

92.     Mayor Braxton holds the job of Mayor for a four-year period, unless lawfully removed from the position. The Town Council has prevented Braxton from fulfilling his responsibilities as Mayor and have effectively removed him from the position without any process.

**6. Defendant Stokes' Retaliation Against Mayor Braxton.**

93.     In 2022, Defendant Stokes "appointed" John Swanson as the fire chief.  Stokes also arranged for Swanson and his wife Susan Swanson to be put on the Newbern Fire Department's

Board of Directors.

94.     The Newbern Fire Department's Board of Directors has approximately seven members. Six of the seven members are residents of Newbern who are white. Upon information and belief, in addition to John and Susan Swanson, the Defendants Stokes, Broussard, Leverett, Thomas, and Tucker make up the fire department's Board of Directors.

95.      Mayor Braxton objected to Swanson being appointed as the fire chief without his approval.  Braxton also objected to John Swanson and Susan Swanson's appointment to the Board of Director's without his approval. As Mayor, the Board was required to consult with Mayor Braxton before these approvals. He raised concerns that the Black residents of Newbern were not being adequately represented on the Board and that this meant that the Black residents did not get the same level of service as the white residents of Newbern.

96.     In response to Braxton's objections to these appointments and to Braxton's efforts to assert his rights and privileges as Mayor, in the summer of 2022, the Defendants suspended Braxton from his position as a volunteer fire fighter and first responder.

97.     Stokes and John Swanson also changed the locks to the fire department building and deprived Braxton of access to the building and its equipment until the County EMA director intervened.

**7. Defendants' Improper Removal of Patrick Braxton as Mayor.**

98.     As described above, Defendants repeatedly thwarted Mayor Braxton from fulfilling his official duties and held themselves out as town councilmembers.

99.     In late 2020 and early 2021, at the same time that Plaintiffs held town council meetings, Defendants held their own meetings without any of the Plaintiffs present.

100.     At a March 2021 meeting, Defendants, purporting to act as the Town Council, voted

to appoint Defendant Stokes as mayor. At an April 2021 meeting, Defendants passed a resolution finding that Mayor Braxton had not attended town council meetings for 90 consecutive days and removing him as Mayor by operation of law under Ala. Code § 11-40-25(b).

101.     Defendants, purporting to act as the Town Council, adopted this resolution despite the fact that (1) Mayor Braxton in fact met with Plaintiffs during the relevant 90-day timeframe; (2) Defendants repeatedly prevented Mayor Braxton from entering town hall to attend meetings and conduct official business during this timeframe; (3) Defendants held purportedly official Town Council meetings at private residences without notice to Mayor Braxton; and (4) Plaintiffs James Ballard, Barbara Patrick, Janice Quarles, and Wanda Scott had been lawfully appointed as Town Councilmembers by Mayor Braxton and, at the time of Defendants' conduct, Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott were the only people with authority to adopt such a resolution.

## COUNT I

**Intentional Racial Discrimination in the Creation and Maintenance of the Hand-Me-Down-Governance System in Violation of the Fourteenth and Fifteenth Amendments to the United States Constitution (42 U.S.C. § 1983)**
**All Plaintiffs Against All Defendants**

102.     Plaintiffs re-allege and incorporate by reference each allegation contained in ¶¶ 1-4, 21-94, 96-100 and the subsequent prayer for relief as though fully set forth herein.

103.     It is well-established that the exclusion or limitation of a class of candidates based on "obstacles to candidate qualification" can result in a discriminatory "abridgement" of the right to vote on account of race in violation of the U.S. Constitution or the Voting Rights Act. *See, e.g.*, *Dougherty Cnty. Bd. of Educ. v. White*, 439 U.S. 32, 43 (1978); *Hadnott v. Amos*, 394 U.S. 358, 365-57 (1969); *Allen v. State Bd. of Elections*, 393 U.S. 544, 570 (1969). Likewise, policies and practices that result in a failure to provide voters or candidates with accurate information about upcoming elections, *Dillard v. Town of North Johns*, 717 F. Supp. 1471, 1476 (M.D. Ala. 1989),

24

have the "potential to 'undermine the effectiveness of voters who wish to elect [particular] candidates.'" *Morse v. Republican Party of Va.*, 517 U.S. 186, 205 (1996) (plurality) (quoting *Allen*, 393 U. S. at 570)). Here, Defendants' policies and practices have had and will continue to have the purpose and effect of preventing Plaintiffs and other Black people from voting for any candidates and running for office in violation of the Fourteenth and Fifteenth Amendments to the Constitution. *See Hadnott*, 394 U.S. at 358; *Anderson v. Martin*, 375 U.S. 399, 401-402 (1964).

104.    Plaintiffs Braxton, Ballard, Patrick, Quarles, Scott and Holley are Black residents of the Town of Newbern who are lawfully registered to vote in municipal elections. Defendants are responsible for election administration for all residents in Newbern, Alabama. Defendant Town of Newbern and Defendants Stokes, Broussard, Leverett, Thomas, and Tucker acted (or purported to act) under color of law to deprive Plaintiffs Braxton, Ballard, Patrick, Quarles, Scott, and Holley from their right to vote and thus, of equal protection of the laws on account of Plaintiffs' race.

105.    "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

106.    Factors to consider in this inquiry include: the (1) "impact of the official action," including whether it " 'bears more heavily on one race than another'"; (2) the "historical background of the decision" and whether it "reveals a series of official actions taken for invidious purposes"; (3) the "specific sequence of events leading up the challenged decision" and whether it departs procedurally or substantively from normal practice; and (4) the "legislative or administrative history" and what it reveals about the purpose of the official action. *Id.* at 266-68. Each of the factors point towards Defendants engaging in an intentionally discriminatory scheme to deprive Black candidates from holding office, and Black residents of Newbern from voting.

107.     *First*, the hand-me-down-governance system has had and will continue to have a "clear pattern, unexplainable on grounds other than race," despite appearing race neutral on its face. *Arlington Heights*, 429 U.S. at 266. Except for Defendant Thomas, every Black voter in Newbern, including Plaintiffs, has been denied the opportunity to know about or vote for mayor or town council in recent elections. Defendant Town of Newbern, and its purported officials Defendants Stokes, Broussard, Leverett, Thomas, and Tucker have not held municipal elections for decades. Instead, past mayors and town councilmembers were *de facto* appointed to their positions without filing the required paperwork, nor notifying the public about open positions or election dates, nor otherwise complying with state and federal law. The result of this discriminatory hand-me-down-governance system is that Defendants have deprived Black voters of the opportunity to vote or participate in—or even know about—any municipal election in Newbern. Although the town is majority Black, no Black person has ever been selected as mayor in this system of hand-me-down-governance, and only a token one Black person at a time has ever been appointed to serve on the Town Council through this hand-me-down-governance system.

108.     In 2020, Defendants Stokes, Broussard, Leverett, Thomas, and Tucker intended and executed a plan to exclude Plaintiffs and other Black voters in the Town from the electoral process. Defendants Stokes, Broussard, Leverett, Thomas, and Tucker sought to ensure that they would be the only ones to qualify as candidates for the Town council positions. The purpose and effect of Defendants plan was to permit an electorate of six people (83.33% of whom are white) to secretly select themselves as Town Councilmembers, so as to prevent the majority-Black voters in the Town from knowing about, participating in, or voting in an election for their candidates of choice. The impact was that Black residents have not been able to participate in elections for decades.

109.     *Second*, the historical background of the development of this system of hand-me-

26

down-governance demonstrates that its purpose and effect is to deny Black people the right to vote. This system originated around the time of the passage of the Voting Rights Act in 1965. At the time, Hale County registrar's employed discriminatory literacy tests, good moral character tests, and voucher requirements to prevent Black people from voting and registering to vote. *See Hale County*, 496 F. Supp. at 1211. In 1965, Black people (5,999) were 62.5% and whites (3,594) were 37.5% of Hale County's voting age population, but 94.4% of the county's registered voters were white (3,395) and only 3.6% were Black (218). *Williams*, 240 F. Supp. at 116.

110.    To maintain this system of Black disenfranchisement and deny Black voters and candidates the opportunity to participate in Newbern's government, white town leaders developed the hand-me-down-governance system, whereby white officials would appoint their white successors, refuse to provide notice about elections and candidate qualifications to Newbern's Black residents, and refuse to even hold contested elections.

111.    Defendants are the direct beneficiaries of this system. Defendants Stokes, Broussard, Leverett, Thomas, and Tucker can directly trace their appointments back to the original white town leaders who began this discriminatory system in or around the year of the VRA's passage in 1965.

112.    *Third*, the specific sequence of events, including procedural departures from past practices and substantive departures from the basic tenants of American democracy, further demonstrate Defendants' intent. Rather than break the cycle, Defendants have actively and intentionally maintained this intentionally discriminatory system of hand-me-down-governance. Defendants have taken actions with the purpose and effect of locking Black voters and candidates, including Plaintiffs, out of the political process. For example, before the 2020 elections, Defendant Stokes intentionally refused to provide Plaintiff Braxton with the forms and information necessary

to become a candidate for mayor in order to prevent Plaintiff Braxton from running for office and disrupting this system. Defendants have refused to purchase ballots or voting machines for the Town, and Defendants have refused to purchase other materials necessary to run elections.

113.    In August 2020, as soon as the possibility of a majority-Black Town Council that would have been appointed by Mayor Braxton became known to Defendants Stokes, Broussard, Leverett, Thomas, and Tucker, they took actions to prevent Plaintiffs Ballard, Patrick, Quarles, and Scott from assuming positions on the Newbern Town Council. Defendants Stokes, Broussard, Leverett, Thomas, and Tucker, purportedly acting under color of law, unlawfully adopted resolutions to hold a special election for Town Council positions. This was the first time in decades (if ever) that an ordinance setting a special election was proposed and adopted by the Town Council or purported Town Councilmembers. Defendants did not provide public notice of this special meeting, to the extent it even occurred, prior to unlawfully adopting resolutions setting a special election. Defendants intentionally did not provide public notice of the special election set for October 10, 2020. Instead, they ensured that they were the only residents who received notice of the special election. Defendants failed to notify any Plaintiff of the special municipal election.

114.    *Fourth*, the statements of Defendants, including Defendant Stokes brazenly admitting to Plaintiff Braxton that he was refusing to provide Plaintiff Braxton with the necessary forms to qualify as a candidate and his admission that Newbern does not have ballots or voting machines, further demonstrate a discriminatory intent. Defendant Stokes and his predecessors prior to 2020 had provided their successors in the hand-me-down-governance system with the necessary information and forms to become candidates. Only when Plaintiff Braxton, the first Black candidate for mayor, requested this information did Defendant Stokes refuse to provide it to him.

115.    As a result of Defendants' actions taken under color of law (or purportedly taken

under color of law), Plaintiffs have been deprived of their rights to vote in any municipal elections and participate in democracy because of their race and in violation of the Fifteenth Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

116.    The denial and abridgment of the rights of Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott, and Holley to vote and to run for office by Defendants Stokes, Broussard, Leverett, Tucker, Thomas, and Newbern is ongoing and will continue into the future absent relief.

## COUNT II

**Intentional Racial Discrimination in Defendants' Denial and Abridgment of the Rights of Black Candidates to Qualify to Run for Office in Violation of the Fourteenth and Fifteenth Amendments to the United States Constitution (42 U.S.C. § 1983)**
**Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott Against All Defendants**

117.    Plaintiffs re-allege and incorporate by reference each allegation contained in ¶¶ 38-100 and subsequent paragraphs as though fully set forth herein.

118.    The Defendants Stokes, Broussard, Leverett, Thomas, and Tucker acted (or purported to act) under color of law to deprive Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott of equal protection of the laws on account of Plaintiffs' race by preventing Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott, Black residents, from taking office and executing their official duties.

119.    Motivated to maintain an all-white Town Council and Mayor's office, the Defendants never held any elections, only providing opportunities to positions of power in the Town of Newbern to white residents for decades. The impact was that only one Black resident, Defendant Brown, had ever held office in Newbern until Braxton qualified for office.

120.    On or about August 10, 2020, the Defendants, purportedly acting under color of law, unlawfully adopted resolutions to hold a special election for Town Council positions because every then Councilmember had failed to timely qualify as a candidate for office. Though

Defendant Stokes occupied the position of Mayor, he orchestrated the special election resolution because he also intended to qualify as a candidate for Town Council.

121. Plaintiff Mayor Braxton did not discover that Defendants Stokes, Broussard, Leverett, Thomas, and Tucker had adopted the special election resolution that set a special election until the summer of 2021. No Plaintiffs received notice of a special election to be held in October 2020 because the Defendants concealed this information from the public.

122. Unaware of the secret special election, Plaintiffs Ballard, Patrick, Quarles, and Scott did not submit paperwork to qualify as candidates. Instead, they agreed to Plaintiff Mayor Braxton's request that they serve as appointed Town Councilmembers. As noted above, the past practice of the Town was that the Mayor would appoint Town Councilmembers if no one qualified for a seat on the Town Council. Consistent with this practice, Plaintiff Mayor Braxton approached the Plaintiffs Ballard, Patrick, Quarles, and Scott to serve on the Town Council in August and September of 2020.

123. Still unaware that Defendants Stokes, Broussard, Leverett, Thomas, and Tucker had orchestrated a secret election, Plaintiffs Ballard, Patrick, Quarles, and Scott were sworn in as Town Councilmembers in November 2020. They held a Town council meeting on or about November 20, 2020 at the Town Hall. This was the first time in the history of Newbern that Black residents held a majority of the Town Council seats.

124. Defendants Stokes, Broussard, Leverett, Thomas, and Tucker, with the assistance of the City Clerk, have also taken official actions (or purported to take official actions) to prevent Plaintiff Mayor Braxton from discharging his duties as Mayor and Plaintiffs Ballard, Patrick, Quarles, and Scott from discharging their duties, responsibilities and privileges as the rightfully appointed Town Councilmembers on account of their race.

125.    Since December 2020 and continuing thereafter, Defendants Stokes, Broussard, Leverett, Thomas, and Tucker excluded Plaintiff Mayor Braxton from Town council meetings and have conducted meetings in secret without notifying Plaintiffs Mayor Braxton, Ballard, Patrick, Quarles, and Scott.

126.    The Defendants have changed the locks and shut the Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott out of Town Hall preventing them from conducting any official business.

127.    The Defendants have removed official Town records stored at the Town Hall and instructed the City Clerk (who is related to Defendant Stokes) to not discuss or provide Plaintiffs Mayor Braxton, Ballard, Patrick, Quarles, and Scott any information regarding any official Town business.

128.    The Defendants have told and obtained the consent of the Town's Bank to deny Plaintiff Mayor Braxton access to financial information regarding the Town's accounts and have instructed the Town's accountant not to discuss or provide Plaintiff Mayor Braxton any information regarding the Town's finances.

129.    The Defendants have instructed the Town's attorney Holmes not to discuss any legal matters or other Town business with Plaintiff Mayor Braxton.

130.    The Defendants have told postmaster Thiebe to deny Plaintiff Mayor Braxton access to the Town's post office box and access to any official correspondence and have instructed Thiebe to give any official mail addressed to Mayor Braxton to Defendant Stokes.

131.    Defendants Stokes, Broussard, Leverett, Thomas, and Tucker, purportedly acting under color of law, have assigned or delegated the duties of the Mayor to the former white mayor, Defendant Stokes. Defendant Stokes has been acting as Mayor instead of Mayor Braxton. The

impact of these actions and resolutions by Defendants ensured that the Mayor of Newbern was again a white resident rather than Black resident.

132.     Defendants Stokes, Broussard, Leverett, Thomas, and Tucker's conduct is the product of intentional racial discrimination and perpetuates the history of race discrimination in Hale County and across the Black Belt. Their conduct further perpetuates the Defendant Town of Newbern's failure to hold elections for over 60 years.

133.     Over 80 percent of the residents of Newbern identify as Black and yet the Town has never had a Black Mayor. Indeed, Newbern has never had more than one Black person on the Town Council. When confronted with the first duly elected Black Mayor and majority Black Town Council, the Defendants undertook racially motivated actions to prevent Plaintiffs from exercising their official duties and sought to prevent Black voters and candidates from participating in the Defendants' special election.

134.     Prior transitions of power between white Mayors and Town Councilmembers of Newbern did not result in Defendants Stokes and other state officials' refusal to work with the designated Mayor and/or majority white Town Council.

135.     Prior transitions between a majority white Town Council to another majority white Town Council did not result in locking out the incoming Town Councilmembers, depriving them of access to official documents or other official business of the Town and/or an instruction to the Town's employees or agents not to interact or cooperate with the incoming Town Councilmembers. This obstructive conduct only occurred when a Black Mayor and majority Black Town Council was set to take over Town hall.

136.     As a result of the Defendants Stokes, Broussard, Leverett, Thomas, and Tucker's actions taken under color of law (or purportedly taken under color of law), the Plaintiffs Braxton,

Ballard, Patrick, Quarles, and Scott have been deprived of their rights to participate in Town governance and to discharge the duties and exercise the privileges of holding office because of their race and in violation of the Fifteenth Amendment and the Equal Protection Guarantee of the Fourteenth Amendment to the United States Constitution.

137.    The infringement of Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott's rights by Defendants Stokes, Broussard, Leverett, Thomas, and Tucker is ongoing and likely to continue into the future.

## COUNT III

**Conspiracy to Deny Federal Right to Vote**
**42 U.S.C.A. § 1985 (3)**
**All Plaintiffs Against All Defendants**

138.    Plaintiffs re-allege and incorporate by reference each allegation contained in ¶¶ 1-4, 21-94, 96-100, 104-111 and subsequent paragraphs as though fully set forth herein.

139.    Defendants Stokes, Broussard, Leverett, Thomas, Tucker, and the Town of Newbern conspired to deprive Plaintiffs Braxton, Ballard, Patrick, Quarles, Scott and Holley of the privileges and rights of residents of the Town to participate in the governance of the Town on account of their race.

140.    Though the Mayor of Newbern has been required to provide notice and conduct an election for Mayor and Town Council every four years, no notice of Mayoral or Town Council elections have been given and the Defendant Town of Newbern has not held an election in six decades, since the passage of the Voting Rights Act of 1965 ("VRA"), which eliminated many of the barriers to Black people registering to vote and voting in Alabama.

141.    Instead, the office of Mayor was "inherited" by a hand-picked successor and the newly designated Mayor then selected the Town Councilmembers. Defendant Stokes was mayor

from approximately 2008 until 2020.

142.     Defendants Stokes, Broussard, Leverett, Thomas, Tucker, and the Town of Newbern conspired to maintain that the office of mayor was treated as a "hand me down" position so that all prior mayors would remain white residents. No Black resident of Newbern has ever served as mayor prior to November 2020. Only one Black person has ever been selected to serve as a Town Councilmember before the appointment of Plaintiffs Ballard, Patrick, Scott and Quarles. In other words, the governance of Newbern has remained an overwhelmingly white body.

143.     The infringement of Plaintiffs Braxton, Ballard, Patrick, Quarles, Scott and Holley's rights by Defendants Stokes, Broussard, Leverett, Thomas, and Tucker is ongoing and likely to continue into the future.

### COUNT IV

**Conspiracy to Deny Federal Rights to Vote in Special Election**
**42 U.S.C.A. § 1985 (3)**
**All Plaintiffs Against All Defendants**

144.     Plaintiffs re-allege and incorporate by reference each allegation contained in ¶¶ 45-59, 104-111 and subsequent paragraphs as though fully set forth herein.

145.     Defendants Stokes, Broussard, Leverett, Thomas, and Tucker conspired to deprive all Plaintiffs of the privileges and rights of residents of the Town to participate in the governance of the Town and vote in the secret special election on account of their race.

146.     Defendants Stokes, Broussard, Leverett, Thomas, and Tucker conspired and met in secret to adopt a "special" election ordinance setting a special election was proposed and adopted by the Town Council or purported Town Councilmembers. Under the ordinance, a special election for purposes of electing Town Councilmembers was scheduled for October 6, 2020.

147.     Despite needing to provide "notice of all municipal elections by publishing notice

34

thereof in a newspaper published in the city or town, and, if no newspaper is published in the city or town, by posting notices thereof in three public places in the city or town" about the alleged special elections scheduled for October 2020. Ala. Code § 11-46-22.

148.    Thus, no Plaintiffs or Black residents of Newbern were aware of a special election nor could participate in it to elect a candidate of their choice.

149.    The infringement of Plaintiffs Braxton, Ballard, Patrick, Quarles, Scott, and Holley's rights by Defendants Stokes, Broussard, Leverett, Thomas, and Tucker is ongoing and likely to continue into the future.

## COUNT V

**Conspiracy to Deny Federal Right to Take Office**
**42 U.S.C.A. § 1985 (3)**
**Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott Against Defendants Stokes,**
**Broussard, Leverett, Thomas, and Tucker**

150.    Plaintiffs re-allege and incorporate by reference each allegation contained in ¶¶ 49-100, 116-132 and subsequent paragraphs as though fully set forth herein.

151.    Defendants acted in concert to prevent Plaintiffs Braxton, who is Black, from taking office and exercising power as the Mayor of Newbern.

152.    Defendants also acted in concert to prevent Plaintiffs Ballard, Patrick, Quarles, and Scott, who are Black, from taking office and exercising power as a Town Councilmember.

153.    Defendants Stokes, Broussard, Leverett, Thomas, and Tucker orchestrated an illegal secret special election so that they could remain in office and then undertook actions to (1) prevent Mayor Braxton from performing the duties of his job as Mayor; (2) prevent the Plaintiffs Ballard, Patrick, Quarles, and Scott, who Plaintiff Mayor Braxton had lawfully appointed, from taking office.

154.    Defendants Stokes, Broussard, Leverett, Thomas, and Tucker have continued to

deprive Mayor Braxton of the rights and privileges of his job as Mayor because of his race; and to prevent Plaintiffs James Ballard, Barbara Patrick, Janice Quarles, and Wanda Scott from discharging their duties because of their race.

155.    Defendants Stokes, Broussard, Leverett, Thomas, and Tucker conspired to deprive Plaintiffs, on account of their race, (i) equal protection of the laws; and (ii) equal privileges and immunities of the laws; and (iii) prevented or hindered the properly constituted Town Council and Mayor of the Town of Newbern from representing the majority Black residents of the Town in a manner that violates 42 U.S.C. Section 1985(3).

156.    The infringement of Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott's rights by Defendants Stokes, Broussard, Leverett, Thomas, and Tucker is ongoing and likely to continue into the future.

## COUNT VI

**Violation of Due Process**
**42 U.S.C. § 1983; First and Fourteenth Amendments to the U.S. Constitution**
**All Plaintiffs Against All Defendants**

157.    Plaintiffs re-allege and incorporate by reference each allegation contained in ¶¶ 1-4, 21-10, 104-111 and subsequent paragraphs as though fully set forth herein.

158.    The First Amendment and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution prohibits state and local governments from depriving individuals of life, liberty, or property without due process of the law, including the right to vote. *See Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (citing *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968)).

159.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution prohibits state and local governments from depriving individuals of the rights to life, liberty, or property without due process of the law.

36

160.    Section 1983, 42 U.S.C. § 1983, allows individuals to bring actions against state actors, including municipalities, for deprivations of federal constitutional and statutory rights, including those protected by the First and Fourteenth Amendments.

161.    Defendants Stokes, Broussard, Leverett, Thomas, Tucker's conduct has been taken under color of state and local law (or purportedly taken under color of law).

162.    The Defendant Town of Newbern is responsible for election administration for all of the residents of Newbern, Alabama.

163.    Neither the Defendant Town of Newbern nor Defendants Stokes, Broussard, Leverett, Thomas, and Tucker have ever hosted a municipal election to the knowledge of the residents of Newbern.

164.    After learning Plaintiff Mayor Braxton intended to lawfully appoint Plaintiffs to the Town Council, Defendants Stokes, Broussard, Leverett, Thomas, and Tucker organized an illegal special election to reappoint themselves to the Town Council.

165.    Defendants Stokes, Broussard, Leverett, Thomas, and Tucker in contravention of the Alabama Code, failed to provide notice to voters in Newbern of this special election, thereby preventing them from participating in the election. Defendants' refusal to hold a "legally-required election obviously erodes the democratic process" in a manner that is incompatible with due process. *See Duncan v. Poythress*, 657 F.2d 691, 703 (5th Cir. 1981). Defendants' refusal to provide all Plaintiffs with fair notice of the upcoming elections, and Defendants' refusal to provide Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott with a reasonable, nondiscriminatory method of qualifying as candidates violates the Constitution. *See Anderson*, 460 U.S. at 788.

166.    Defendants have not administered a mayoral or Town Council election in Newbern with adequate notice to Newbern's electorate. Defendants have not purchased the ballots or

equipment needed to run elections. Defendants have not provided candidates outside of the hand-me-down-governance system with the information and forms necessary to qualify to run for office.

167.    Defendants' refusal to host elections and provide adequate notice of a special election so that all the residents of Newbern could participate violates the constitutional rights of Plaintiffs Braxton, Ballard, Patrick, Quarles, Scott, and Holley.

168.    The infringement of Plaintiffs Braxton, Ballard, Patrick, Quarles, Scott, and Holley's rights by Defendants Stokes, Broussard, Leverett, Thomas, Tucker, and the Town of Newbern is ongoing and will continue into the future.

## COUNT VII

**Violation of Section 2 of the Voting Rights Act**
**52 U.S.C. § 10301; 42 U.S.C. § 1983**
**All Plaintiffs Against All Defendants**

169.    Plaintiffs re-allege and incorporate by reference each allegation contained in ¶¶ 2-4, 21-59 and subsequent paragraphs as though fully set forth herein.

170.    Under Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301(a), Congress made "clear that certain practices and procedures that *result* in the denial or abridgment of the right to vote are forbidden even though the absence of proof of discriminatory intent protects them from constitutional challenge." *Chisom v. Roemer*, 501 U.S. 380, 384 (1991). The VRA encompasses any abridgment of the right to vote by limiting the "'effectiveness' of a vote cast in 'any primary, special, or general election.'" *Morse*, 517 U.S. at 205 (quoting 52 U.S.C. § 10310(c)(1). "Rules concerning candidacy requirements and qualifications . . . fall into this category because of their potential to 'undermine the effectiveness of voters who wish to elect [particular] candidates.'" *Id*. (quoting *Allen*, 393 U.S. at 570); *see also Dougherty County Bd. of Ed. v. White*, 439 U. S. 32, 40 (1978); *Hadnott*, 394 U.S. at 366; *Arakaki v. Hawaii*, 314 F. 3d 1091, 1095-97 (9th Cir. 2002).

171.    Policies, procedures, qualifications, prerequisites, standards, or practices that result in the denial of the right to vote, including failing to provide voters or candidates with sufficient information concerning voting procedures, may also violate Section 2. *See Brnovich v. Demo. Nat'l Comm*., 141 S. Ct. 2321, 2333 n.4 (2021) (collecting vote denial cases including *Brown v. Post*, 279 F. Supp. 60, 63 (W.D. La. 1968), where parish clerks failed to equally provide accurate information about absentee voting to Black and white voters, and *United States v. Post*, 297 F. Supp. 46, 51 (W.D. La. 1969), where officials provided incorrect instructions to Black voters).

172.    Evidence (1) that Black voters "suffered discrimination in the past," that (2) effects of that discrimination persist," (3) about the size of racial disparity resulting from the challenged system, (4) other opportunities to vote outside the challenged system, and (5) the strength of a state interest in maintaining a challenged system are relevant factors. *Brnovich*, 141 S. Ct. at 2338-40.

173.    *First*, Alabama, Hale County, and Newbern have a long, well-established history of racial discrimination in voting, education, healthcare, employment and other areas against Black Alabamians.

174.    *Second*, as a result of that discrimination, Black voters in Newbern and Hale County tend to be poorer, less educated, have worse health outcomes, and lower employment than their white neighbors. "[L]ow income hinders political participation by restricting access to information and by increasing the inconvenience of registering and voting." *Hale County*, 496 F. Supp. at 1214; *see also Milligan v. Merrill*, 582 F. Supp. 3d 924, 1022 (N.D. Ala. 2022) (three-judge court) ("because white Alabamians tend to have more education and therefore higher income than Black Alabamians, they tend to be better able . . . [to] afford to contribute to political campaigns; [and] afford to run for office") (cleaned up), *aff'd sub. nom Allen v. Milligan*, 599 U.S. 1 (2023).

175.    *Third*, the hand-me-down-governance system has a substantial disparate impact on

Black voters. Although white voters are only 15% of the electorate, they hold five of Newbern's six elected offices (83%). *Cf. Johnson v. De Grandy*, 512 U.S. 997, 1017 (1994) ("one may suspect [discrimination] from political famine"). The Defendant Town and Defendants Stokes, Broussard, Leverett, Thomas, and Tucker, who held themselves out to be purported Town officials, have not sufficiently advertised elections in a way meant to genuinely inform or provide the necessary information to members of Newbern's majority-Black electorate about local elections or opportunities to run for office. The purpose and result of this system is that the Town Council has been and remains majority-white and that Councilmembers continue to be and have been almost exclusively held by white people. No Black person, until Plaintiff Braxton, knew how to vote or how to qualify to run in elections for mayor.

176.    *Fourth*, Defendants have refused to administer any aspect of the election system in the Town of Newbern in a fair, open, or nondiscriminatory manner. Rather, for decades, Defendants and their predecessors have operated and maintained the hand-me-down-governance system. Defendant Stokes provided incorrect or incomplete information to Plaintiff Mayor Braxton on how to qualify as a candidate for mayor. Defendants also did not provide any information to any other Plaintiffs on how to qualify as a candidate or participate in local elections.

177.    *Fifth*, Defendants lack any legitimate interest in maintaining this hand-me-down-governance system. Defendants are acting contrary to state law, which required the publication of information as well as contrary to Defendants' own past practices. The purported justifications for Defendants' continued use of the challenged system are tenuous. Defendants appear to maintain that the challenged system is merely consistent with past practices. But Defendants Stokes, Broussard, Leverett, Thomas, and Tucker have deviated from historical Town practices. Once Plaintiff Braxton became mayor and there was the possibility of a majority-Black Town Council,

Defendants held a secret meeting and, for the first time ever, called a secret special election to qualify a new town council without notice to Plaintiffs or other members of the majority-Black electorate of Newbern.

178.   Defendants Stokes, Broussard, Leverett, Thomas, and Tucker only provided information to one another, primarily white residents of Newbern, and no Black residents except Defendant Thomas, on how to qualify or otherwise vote for this special election for Town Council positions.

179.   Defendants Stokes, Broussard, Leverett, Thomas, and Tucker's conduct resulted in the discrimination of Black voters by preventing them from participating, as a candidate or voter, in municipal elections.

180.   All Defendants will continue to violate Plaintiffs' rights under the Voting Rights Act absent relief from this Court. Plaintiffs have no adequate remedy at law other than the judicial relief sought in this case.

181.   The infringement of Plaintiffs Braxton, Ballard, Patrick, Quarles, Scott, and Holley's rights by Defendants Stokes, Broussard, Leverett, Thomas, Tucker, and the Town of Newbern's ongoing and likely to continue into the future.

## **PRAYER FOR RELIEF**

107.   Wherefore premises considered, the Plaintiffs respectfully request that the Court enter an order:

(a)   Declaring Plaintiff Mayor Braxton as the rightful mayor of the town of Newbern;

(b)   Enjoining the Defendants from preventing, hindering, interfering (directly or indirectly) the Plaintiff Mayor Braxton from exercising the duties, responsibilities or privileges of his office as Mayor; and directing the Defendants to immediately grant Plaintiff Mayor

Braxton access to all official documents, accounts and Town property or to take such actions are necessary to permit such access;

(c)     Issuing a declaratory judgment against Defendants on all claims and counts, and enjoining Defendants from further violating the Constitution and the Voting Rights Act or otherwise infringing upon the rights of Plaintiffs;

(d)     Enjoining the Defendants from conducting any business for the Town;

(e)     Ordering Defendants to hold a special election for the Town Council positions in alignment with either the statewide or municipal 2024 election schedule, and provide complete and adequate notice to all residents of Newbern to participate in the special election; or alternatively, declaring that the Plaintiffs Ballard, Patrick, Quarles, and Scott are the rightful Town Councilmembers;

(g)     Awarding the Plaintiffs compensatory and all other proper damages against Defendant Town of Newbern only on Counts III to V as established at trial;

(h)     Awarding the Plaintiffs a reasonable attorney's fee and costs of litigation under 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e);

(i)     Retain jurisdiction over this matter and require all Defendants to subject future changes related to voting and eligibility to vote in municipal elections in Newbern for preclearance review from this Court or the U.S. Attorney General under Section 3(c) of the VRA, 52 U.S.C. § 10302(c);

(j)     Awarding any other injunctive, declaratory, equitable or other permissible relief the Court deems appropriate to remedy the violations of law established at trial.

Respectfully submitted,

/s/ Richard P. Rouco
Richard P. Rouco

/s/George Davies
George N. Davies

OF COUNSEL:

Quinn, Connor, Weaver,
Davies & Rouco, LLP
2 – 20th Street North
Suite 930
Birmingham, AL 35203
Tel. 205-870-9989
Fax. 205-803-4143
rrouco@qcwdr.com
gdavies@qcwdr.com

**NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.**

/s/ Morenike Fajana
Morenike Fajana*
Leah Wong*
40 Rector Street, 5th Floor
New York, NY 10006
(212) 217-1690
mfajana@naacpldf.org
lzwong@naacpldf.org

*admitted pro hac vice