IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PATRICK BRAXTON, JAMES BALLARD, BARBARA PATRICK, JANICE QUARLES, WANDA SCOTT, and DOROTHY HOLLEY, | * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | 2:23-cv-00127-KD-N |
| HAYWOOD STOKES III, GARY BROUSSARD, JESSE DONALD LEVERETT, VONCILLE BROWN THOMAS, WILLIE RICHARD TUCKER, and the TOWN OF NEWBERN, | * * * * * * | |
| Defendants. | * | |

## DEFENDANTS' MEMORANDUM BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

COME NOW Defendants Haywood Stokes III, Gary Broussard, Jesse Donald Leverett, Voncille Brown Thomas, Willie Richard Tucker, and the Town of Newbern (hereinafter "Defendants"), by and through counsel, and submit this memorandum brief in support of their motion to dismiss Plaintiffs' third amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support thereof, the Defendants state the following:

## FACTS OF THE COMPLAINT[1]

Plaintiff Patrick Braxton, an African-American, alleges that he became the first African-American Mayor of the Town of Newbern when he was elected as Mayor in 2020. (Doc. 75, ¶ 1). Prior to being elected Mayor, Braxton alleges that the Town of Newbern had not had an election for decades and that the position of Mayor of the Town of Newbern had instead been an "inherited" and "hand me down" position among white Town residents. (*Id.*, ¶ 3, 25-26). Braxton alleges that he was the only person who qualified as a candidate for Mayor because no one else qualified, including Defendant Haywood Stokes, III ("Stokes"), who is white and had been acting as Mayor. (*Id.*, ¶¶ 40, 45). Braxton also alleges that Stokes gave him incorrect information as to how to qualify for the mayoral election when he informed Stokes that he planned to run for the position. (*Id.*, ¶ 41). In spite of this, Braxton maintains that he still managed to qualify to run for the position by filing a statement of candidacy and statement of economic interests with the Circuit Clerk of Hale County and the State of Alabama. (*Id.*, ¶ 43-44). On the last day of qualifying, he also submitted his statement of candidacy and paid the $50 qualifying fee to the Town clerk. (*Id.*, ¶ 44). Due to no other resident lawfully

---

[1] Defendants recite the factual allegations from Plaintiffs' Third Amended Complaint, as those are the operative facts at this stage. *See Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff."). These may not be the actual facts.

qualifying as a candidate, Braxton claims that he became Mayor on or around July 22, 2020, by operation of law. (Doc. 1-3, ¶ 47).

Braxton alleges that he was the only candidate to qualify for <u>any</u> elected municipal office in Newbern. (*Id.*, ¶ 48). Following his alleged election to the Mayor position, County Probate Judge Arthur Crawford informed Braxton that he could appoint Town Councilmembers due to no one qualifying for the position. (*Id.*, ¶ 49). Braxton then proceeded to <u>appoint</u> the remaining Plaintiffs, namely Barbara Patrick, Wanda Scott, Jan Quarter, and James Ballard, to the open City council positions. (*Id.*, ¶¶ 2, 50). At that point, Plaintiffs allege that Defendant Stokes conspired with the other defendants to "hold a secret meeting" and adopt resolutions for conducting a special election in order to prevent a majority black Town Council from taking office. (*Id.*, ¶ 55). In order to do this, Plaintiffs allege that the Defendants "met in secret" without giving notice of the meeting and adopted resolutions to conduct a special election on October 6, 2020. (*Id.*, ¶¶ 56-57). Plaintiffs claim that Defendants failed to give notice of the special election to anyone, without regard to race. (*Id.*, ¶ 58). The Defendants then filed statements of candidacy and were the only people who qualified for the special election. (*Id.*, ¶¶ 59-60). Following the special election, the individual Defendants executed Oaths of Office at the City Attorney's office that were later filed with the Probate Judge

before assuming their new terms as Town Council members in November 2020. (*Id.*, ¶¶ 62-63).

The Plaintiffs held a meeting in the Newbern Town Hall in November 2020. (*Id.*, ¶ 64). Following this meeting, they allege that they were prevented from accessing Town Hall and official Town documents by the individual Defendants. (*Id.*). They further allege that Defendants have denied them access to Town bank accounts, official Town mail, and other Town information and documents. (*Id.*, ¶¶ 72-77, 78-82, and 83-88).

On November 21, 2022, Plaintiffs filed this action in the Circuit Court of Dallas County. On March 17, 2023, Plaintiffs filed their first amended complaint. (Doc. 1-3). The Defendants removed this action to this court on April 17, 2023. (Doc. 1). Plaintiffs filed a motion for leave to file a second amended complaint, which was granted on October 2, 2023. (Doc. 50; Doc. 56). Plaintiffs filed a second amended complaint on October 5, 2023. (Doc. 57). On February 6, 2024, Judge Nelson recommended that Plaintiffs' second amended complaint be dismissed as a shotgun pleading. (Doc. 70). Plaintiffs filed a motion for leave to file a third amended complaint on February 20, 2024, which was subsequently granted. (Doc. 71). On February 23, 2024, Judge Dubose entered an order adopting Judge Nelson's report and recommendations. (Doc. 73). Plaintiffs filed their third amended complaint that same day. (Doc. 75). In their Third Amended Complaint,

Plaintiffs allege the following claims: (1) a § 1983 intentional racial discrimination claim in violation of the Fourteenth Amendment and the Fifteenth Amendments to the U.S. Constitution for the creation and maintenance of a "hand-me-down governance system"; (2) a § 1983 intentional racial discrimination claim in violation of the Fourteenth Amendment and the Fifteenth Amendments to the U.S. Constitution for the "denial and abridgement of the rights of black candidates to qualify to run for office"; (3) conspiracy to deny federal right to vote; (4) conspiracy to deny federal rights to vote in special election; (5) conspiracy to deny federal right to take office; (6) a § 1983 violation of due process claim; and (7) violation of Section 2 of the Voting Rights Act. As Plaintiffs have failed to state a claim upon which relief can be granted, Plaintiffs' third amended complaint is due to be dismissed.

## **STANDARD OF REVIEW**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants now move to dismiss each claim asserted against them in Plaintiffs' third amended complaint. Rule 12(b)(6) permits a party to raise by motion the defense of "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules of Civil Procedure demands that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 12(b)(6) allows a defendant to move to

dismiss the complaint if it "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1318, (11th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175–76 (11th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 550 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## LEGAL ARGUMENT

I. **If Plaintiffs are alleging a procedural due process claim, their claims are due to be dismissed because Plaintiffs do not have a valid property interest in the offices they claim.[2]**

---

[2] Plaintiffs removed the term "equal protection" in their first cause of action heading, appearing to now make a procedural due process claim.

### A. Plaintiffs' claims should be dismissed because Alabama law requires elections to be held.

In their third amended complaint, Plaintiffs incorrectly allege without any supporting authority that Alabama law does not require elections to be held for Town council members. (Doc. 75, ¶ 51). However, Alabama law only provides for a council member to be appointed by other council members if there is a vacancy. *See* Ala. Code § 11-43-41. Because Plaintiffs James Ballard, Barbara Patrick, Janice Quarles, and Wanda Scott were not properly elected, they do not have a valid property interest in the offices in which they claim. Accordingly, the claims of these Plaintiffs are due to be dismissed.

### B. Plaintiffs cannot show that they have a legitimate claim to the political offices they claim to hold.

Under no set of facts do James Ballard, Barbara Patrick, Janice Quarles, and Wanda Scott have a legitimate claim to be council members for the Town of Newbern because they were not elected. Plaintiffs' complaint clearly states that these individuals were appointed instead of elected. (Doc. 75, ¶ 2). Thus, their claim to office is not valid. As stated above, a council member can be appointed by other council members if there is a vacancy; however, in this case, there were no validly elected council members to fill vacancies. *See* Ala. Code § 11-43-41. Alabama Code § 11-46-72 states that "the incumbent officers shall remain in office until their successors shall be elected and qualified" and an election can occur.

Thus, Alabama law clearly requires Town Council members to be elected and Council member vacancies to be filled by a council—not by appointment. Although Plaintiffs refer to this election as a "secret election," the Town Council members who properly remained in office attempted to remedy the issue by holding an election on October 6, 2020, to elect Town Council members pursuant to Alabama law. (*Id.*, ¶¶ 57, 121). Accordingly, all claims by Plaintiffs James Ballard, Barbara Patrick, Janice Quarles, and Wanda Scott are due to be dismissed.

Plaintiff Braxton's claim for mayor is likewise invalid. Taking Plaintiffs' version of facts as true, the Plaintiff was elected Mayor of the Town of Newbern, but he did not retain the position of Mayor because it was impossible for him to attend a council meeting with the required quorum. (Doc. 75, ¶ 99-101). Pursuant to Alabama Code § 11-40-25(b), any elected municipal official who misses all or regular specially called council meetings for ninety (90) consecutive days is removed from office. Further, Alabama Code § 11-40-25 requires a quorum for there to be an official meeting. *See also* Ala. Code § 11-43-48. Thus, ninety days after the first Monday in November following the election, Mayor Braxton became former Mayor Braxton. *See* Ala. Code § 11-43-44. Accordingly, Plaintiff Braxton has no legitimate claim as mayor.

### C. Plaintiffs' due process claims should be dismissed because adequate state remedies were available to Plaintiffs.

Even if Plaintiffs do have a property interest in the offices they claim, Plaintiffs' claims are due to be dismissed because Plaintiffs had adequate state remedies available. In *McKinney v. Pate*, the Eleventh Circuit Court of Appeals held that "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." 20 F. 3d 1550, 1557 (11th Cir. 1994). "It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) (finding that plaintiff failed to state a procedural due process claim when adequate state remedies were available). "In election-based due process claims, a federally protected right is implicated only when the entire election process—including the state's administrative and judicial review—fails to afford fundamental fairness." *Scott v. Garlock*, 2019 WL 4200400, *4 (M.D. Ala. July 31, 2019) (citing *Cotton*, 802 F.2d at 1316-17). The Eleventh Circuit Court of Appeals has stated the following:

> This rule (that a section 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to "remedy the procedural failings of its subdivisions and agencies in the appropriate fora—agencies, review boards, and state courts" before being subjected to a claim alleging a procedural due process violation.

*Cotton*, 216 F.3d at 1331.

In this case, Plaintiffs could have filed an election contest under Alabama law. Plaintiffs appear to allege that they did not receive notice of the election. *See* Doc. 75, ¶¶ 58-59. If Plaintiffs truly thought this was a "secret election," Plaintiffs sole recourse was to file an election contest arguing that they did not receive notice of the election. *See* Ala. Code § 11-46-69 et seq. An election contest would be an adequate state remedy available to Plaintiffs that would have provided an adequate process through which Plaintiffs could have challenged the "secret election" in this case. Accordingly, Plaintiffs had an adequate state remedy available, and their claims are due to be dismissed.

## II. If Plaintiffs are alleging an Equal Protection claim, their intentional race discrimination claims are due to be dismissed.

In their third amended complaint, Plaintiffs allege two intentional race discrimination claims in violation of the Fourteenth and Fifteenth Amendments— one for the "creation and maintenance of the hand-me-down governance system" and a second for the "denial and abridgement of the rights of Black candidates to qualify to run for office." (Doc. 75, PageID: 875, 880). Specifically, Plaintiffs allege that Defendants "executed a plan to exclude Plaintiffs and other Black voters in the Town from the electoral process." (Doc. 75, ¶ 108). However, none of the allegations asserted by Plaintiffs show any intent on the part of Defendants to discriminate against Plaintiffs <u>because</u> of their race.

Plaintiffs attempt to show intentional discrimination by making broad assertions such as that Defendants refused to provide necessary candidate forms and information, excluded Plaintiffs from Town Council meetings, changed the locks at the Town Hall, and removed official Town documents. (Doc. 75, ¶¶ 114, 126-27). However, there is nothing in the Plaintiffs' third amended complaint, taken in the light most favorable to the Plaintiffs, that would show that Defendants intended to discriminate against Plaintiffs <u>because</u> of their race. Thus, the Plaintiffs have failed to show that the Defendants, including a Black resident who serves on the Town Council, intentionally discriminated against the Plaintiffs on the basis of race, and these claims are due to be dismissed.

**III.    The Plaintiffs' three claims of conspiracy to deny federal rights under 42 U.S.C. § 1985(3) are due to be dismissed.**

Plaintiffs' claims of conspiracy to deny federal rights under 42 U.S.C. § 1985(3) fail, as Plaintiffs do not allege facts showing that the Defendants acted with some invidiously discriminatory animus. Section 1985(3) provides a cause of action against private individuals who "conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). In order to prevail on this claim, a plaintiff would have to prove each of the following elements: "(1) The existence of a conspiracy; (2) For the purpose of depriving,

either directly or indirectly, any person or class of persons, of the equal protection of the laws or of the equal privileges and immunities under the laws; (3) Some act in furtherance of the conspiracy; and (4) That the plaintiff was injured in person or property or deprived of having or exercising any right or privilege of a citizen of the United States." *Griffin v. Breckenridge*, 403 U.S. 88, 102–103 (1971). In *Griffin*, the U.S. Supreme Court stated that just because "the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." *Id.* at 101. Thus, Section 1985(3) should not be utilized "as a general federal tort law . . . ." *Id.* at 102.

## A. Plaintiffs cannot show that the individual Defendants acted with some invidiously discriminatory animus.

First, Plaintiffs have failed to allege that Defendants acted with some invidiously discriminatory animus. It is "the plaintiff's obligation to allege among other things, 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus' behind the defendant's action taken in furtherance of the conspiracy." *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993)). The "animus standard requires that the defendant proceeded on his course of conduct 'because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Dean*, 12 F.4th at 1255 (quoting *Bray*, 506 U.S. at 271-72). Moreover, a Section 1985(3)

claim is due to be dismissed when a plaintiff fails to plead sufficient facts showing that the defendants acted with invidiously discriminatory animus. *See, e.g., Phillips v. Scully*, 2022 WL 19934416, *5 (S.D. Ala. October 28, 2022) (dismissing a Section 1985 for failure to allege discriminatory animus); *Shedd v. Odom*, 2023 WL 2772627, *11 (N.D. Ala. February 8, 2023) (holding that the plaintiff failed to allege a viable Section 1985(3) claim, in part, due to plaintiff's failure to allege any invidiously discriminatory animus).

In *Dean*, African-American cheerleaders at a Georgia public university were prohibited from kneeling during the national anthem at football games. *Dean*, 12 F.4th at 1251. One of the African-American cheerleaders filed a lawsuit alleging a claim of conspiracy to commit civil rights violations under Section 1985(3) against the school's leadership, the county sheriff, and a Georgia legislator. *Id.* She specifically alleged that the sheriff engaged in a conspiracy to deprive her of her constitutional rights because of her race and due to the fact that she was protesting police brutality against African Americans. *Id.* at 1254. The district court found that the cheerleader failed to allege sufficient facts showing that the sheriff's actions were motivated by her race and granted the sheriff's motion to dismiss. *Id.* The Eleventh Circuit affirmed the district court's holding that the cheerleader failed to plead sufficient facts to support her conspiracy claim. *Id.* at 1257. The court further held that the fact that the sheriff's "targets are African American,

without more, does not make it plausible that he targeted the cheerleaders <u>because</u> they are African American." *Id.* at 1256 (emphasis in original). The court stated the following in regard to the plaintiff's argument that the protests were related to police brutality against African Americans:

> Certainly [the protests] relate to race and racial issues . . . , and they support the theory that [the sheriff] discriminated against [the plaintiff] because of the content of her protests . . . . But discrimination based on the protesting of racial issues, no matter how compelling those issues are, is simply not the same as discrimination based on the race of the protestors. Thus, the additional allegations do not support [the plaintiff's] theory that [the sheriff] discriminated against her because she is African American.

*Id.* at 1257. Therefore, the court held that "[the plaintiff failed to allege that [the sheriff] undertook the conspiracy because [she] and her teammates are African Americans" and upheld the district court's dismissal due to insufficient pleading. *Id.*

As in *Dean*, the Plaintiffs fail to plead any facts showing that the alleged actions of the individual Defendants were motivated by their race. Plaintiffs instead only broadly allege the following:

- Defendants Stokes, Broussard, Leverett, and Tucker are white residents of the Town. Defendant Thomas is a black resident of the Town. (*Id.*, ¶¶ 15-19);

- Defendants "conspired to deprive Plaintiffs of the privileges and rights of residents of the Town to participate in the

governance of the Town on account of their race," conspired to deprive Plaintiffs of the right to participate in the Town governance and "secret special election on account of their race," and "acted in concert" to deprive and prevent Plaintiffs from "discharging their duties because of their race." (*Id.*, ¶ 139, 145, 154); and

- The collective Defendants—both black and white—have "conspired to maintain that the office of mayor was treated as a 'hand me down' position so that all prior mayors would remain white residents" and "no Plaintiffs or Black residents of Newbern were aware of a special election" such that Plaintiffs were denied "on account of their race" equal protection, equal privileges and immunities, and the ability to represent the majority Black Town residents." (*Id.*, ¶ 142, 148, 155).

Plaintiffs make only conclusory allegations that the Defendants acted "on account of" or "because of" the Plaintiffs' race without providing any facts to show that their actions were motivated by race. (Doc. 75, ¶¶ 139, 145, 154). If Plaintiffs' allegations are true that no one other than Defendants had notice of the "secret special election," then no one else in the Town—whether white or black—would have had notice. Moreover, Plaintiffs assert these claims of motivation by race,

without any alleged support whatsoever, against Voncille Brown Thomas, a Black female. (*Id.*, ¶ 18). Accordingly, Plaintiffs' Section 1985(3) conspiracy claims are due to be dismissed.

### B. Plaintiffs' Section 1985(3) claim fails because Plaintiffs cannot show a meeting of the minds among defendants.

Plaintiffs cannot show a meeting of the minds among defendants to violate Plaintiffs' constitutional rights. As set forth above, a meeting of the minds is required to plead a Section 1985(3) claim. In *Odom v. City of Anniston*, the plaintiff's Section 1985(3) claim was dismissed because the plaintiff failed to allege sufficient facts regarding an agreement among defendants. 2021 WL 3851976, *3 (N.D. Ala. Aug. 27, 2021). In *Odom*, the plaintiff alleged that the city manager attended a meeting where the plaintiff's character was attacked and implied that the city manager was opposed to the plaintiff because of his race. *Id.* at *1. One of the defendants also spoke directly to the city manager during a city council meeting requesting that the city manager "make a change"; the plaintiff was fired several months later. *Id.* The Court held that the plaintiff's allegations were "not enough to support a reasonable inference that [the city manager] had a 'meeting of the minds'" with the other alleged conspirators. *Id.* at *3. Accordingly, the plaintiff's Section 1985(3) claim was dismissed.

Just as they fail to allege a violation of a specific constitutional right or invidiously discriminatory animus, Plaintiffs fail to plead sufficient facts to show

any agreement, or meeting of the minds, among Defendants. Plaintiffs instead allege only the following:

- "Defendant Stokes found willing participants in this plot in the in the Defendants Gary Broussard, Jesse Donald Leverett, Voncille Brown Thomas, and Willie Richard Tucker." (Doc. 75, ¶ 2);

- Defendants "agreed to hold a secret meeting and adopt resolutions to conduct a special election." (*Id.*, ¶ 55);

- Defendants "have instructed the City clerk and the City's accountant to deny Mayor Braxton access to financial information or documents related to the official Town business." (*Id.*, ¶ 83);

- Defendants have instructed accountant Steve Kirk "to deny Mayor Braxton's requests for information." (*Id.*, ¶ 88);

- Defendants "have not provided Mayor Braxton and residents of the Town notice of public meetings" and "have conducted meetings and business at private residences." (*Id.*, ¶¶ 90-91);

- Defendants "conspired and met in secret to adopt a 'special' election ordinance setting a special election . . . " (*Id.*, ¶ 146); and

- Defendants "acted in concert" to prevent a Black person from exercising power as the Mayor of Newbern and Black council members "from taking office and exercising power." (*Id.*, ¶ 151-52).

Thus, Plaintiffs fail to allege facts showing an agreement, or meeting of the minds, among Defendants. Instead, they have only generally alleged that there was an "agreement" among all defendants and that Defendants have instructed non-parties to withhold financial information and other documents from Braxton. These conclusory allegations are not sufficient to show a meeting of the minds. Accordingly, Plaintiffs' Section 1985(3) claims are due to be dismissed.

## IV.   Plaintiffs have failed to allege a valid claim under Section 2 of the Voting Rights Act.

Section 2 of the Voting Rights Act prohibits voting practices or procedures that discriminate on the basis of race, color, or membership in one of the groups identified in Section 4(f)(2) of the Act. Specifically, Section 2(a) states the following:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

In *Thornburg v. Gingles*, the U.S. Supreme Court stated that "[t]he 'right' question . . . is whether 'as a result of the challenged practice or structure plaintiffs do not have an equal opportunity to participate in the political processes and to elect candidates of their choice.'" 478 U.S. 30, 44 (1986). "A finding of discriminatory impact is necessary and sufficient to establish a section 2 violation." *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 942 (11th Cir. 2023). A violation of Section 2 exists if "members of a protected class 'have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.'" *League*, 66 F.4th at 942-43 (quoting *Chisom v. Roemer*, 501 U.S. 380, 388 (1991), quoting language now codified at 52 U.S.C. § 10301(b)). "A finding of discriminatory intent alone will not suffice." *League*, 66 F.4th at 943. Instead, a finding of discriminatory impact is required to find a violation of Section 2 of the Voting Rights Act. *Id.*

As to this claim, Plaintiffs allege that Defendants "called a secret special election to qualify a new town council without notice to Plaintiffs or other members of the majority-Black electorate of Newbern." (Doc. 75, ¶¶ 177). Plaintiffs also allege that Defendants failed to provide notice of the special election and that this resulted in "the discrimination of Black voters by preventing them from participating, as a candidate or voter, in municipal elections." (*Id.*, ¶ 179). However, if the facts Plaintiffs allege are taken in the light most favorable to

Plaintiffs and deemed true, Defendants failed to provide notice to <u>any</u> residents, which would result in the prevention of <u>all</u> residents to participate in the election as either a candidate or voter, not just Black residents of the Town of Newbern.

Here, the test would require a finding that, because of the registration-delivery provision, "'political processes leading to . . . election in [Newbern] . . . are not equally open to' black voters 'in that [they] have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.'" *League*, 66 F. 4th at 943-44 (quoting *Wis. Legislature v. Wis. Elections Comm'n*, ___U.S. ____, 142 S. Ct. 1245, 1248 (2022) (quoting 52 U.S.C. § 10301(b)).

Plaintiffs cannot meet this high burden, as their own allegations state that Defendants failed to provide notice of the election to any residents, which Plaintiffs allege resulted in no other residents voting in the election. (Doc. 75, ¶ 178-79). Therefore, Plaintiffs have failed to meet Section 2's high standard of showing that any actions taken by Defendants have resulted in the denial or abridgement of the Plaintiffs' right to vote because of their race, and Plaintiffs' claim alleging a violation of Section 2 of the Voting Rights Act is due to be dismissed.

### V. Plaintiffs' § 1983 claims against the Town are due to be dismissed, as Plaintiffs have failed to present a valid policy and custom claim against the Town.

Plaintiffs' § 1983 claims against the Town of Newbern are due to be dismissed, as Plaintiffs have failed to allege that any official Town policy or custom was the cause of their injury. In order for a municipality to be held accountable for the conduct of a Town official, a plaintiff must show that the execution of the local government's "policy" or "custom" was the cause of the injury. *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 694 (1978). In other words, "[a] local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'" *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1287 (11th Cir. 1998). Here, Plaintiffs have not properly alleged that the Town of Newbern had an unconstitutional policy or prove causation between an unconstitutional policy and any alleged violation of Plaintiffs' constitutional rights. As set forth above, Plaintiffs' § 1983 claims against the Town fail for want of an underlying constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Even if it could be shown, Plaintiffs cannot establish that the injury was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the Town]." *Monell*, 436 U.S. at 690. Plaintiffs present no evidence that any official policy of the Town is unconstitutional. As Plaintiffs have not alleged a viable policy and custom claim

against the Town under any recognized method, Plaintiffs' § 1983 claims against

the Town are due to be dismissed.

## CONCLUSION

The Plaintiffs have failed to state a claim against the Defendants upon which

relief can be granted. Accordingly, the Defendants move this Court to dismiss all

claims against them.

Respectfully submitted this the 8th day of March, 2024.

> */s/Rick A. Howard*
> Rick A. Howard (ASB-9513-W79R)
> M. Ashley Tidwell (ASB-3974-O48M)
> Morgan B. Beckman (ASB-3529-T81J)
> Attorneys for Haywood Stokes III,
> Gary Broussard, Jesse Donald Leverett,
> Voncille Brown Thomas, and Willie
> Richard Tucker

OF COUNSEL:

Holtsford Gilliland Hitson Howard
      Stevens Tuley & Savarese, P.C.
Post Office Box 4128
Montgomery, Alabama 36103-4128
334-215-8585
334-215-7101 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon:

Richard P. Rouco

George N. Davies
Quinn, Connor, Weaver, Davies & Rouco, LLP
2 North 20th Street, Suite 930
Birmingham, AL 35203

Morenike Fajana
Leah Wong
40 Rector Street, 5th Floor
New York, NY 10006

by placing same in the United States Mail, postage prepaid, or through the court's
electronic filing service, on this the 8th day of March, 2024.

/s/Rick A. Howard
OF COUNSEL