**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

|  |  |  |
|---|---|---|
| Patrick Braxton, James Ballard, Barbara Patrick, Janice Quarles, Wanda Scott and Dorothy Holley, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Case No. 2:23-CV-00127-KD-N |
| Haywood Stokes, III, Gary Broussard, Jesse Donald Leverett, Voncille Brown Thomas, Willie Richard Tucker and The Town of Newbern, | ) ) ) ) | |
| *Defendants*, | ) ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

FACTUAL BACKGROUND ......................................................................................1

LEGAL STANDARD ...................................................................................................5

ARGUMENT .................................................................................................................5

   I.    PLAINTIFFS ARE NOT REQUIRED TO EXHAUSTE STATE REMEDIES. ...............6

   II.   PLAINTIFFS HAVE PROPERLY STATED A CLAIM TO RELIEF ON ALL THEIR
CLAIMS ........................................................................................................................8

     A.   Plaintiffs Properly Allege that Defendants Violated Section 2 of the VRA...................8
     B.   Plaintiffs Adequately Allege an Intentional Discrimination Claim. ............................13
     C.   Plaintiffs Properly Allege that Defendants Violated the Right to Vote.......................17
     D.   Plaintiffs Adequately Allege *Monell* Liability Against the Town of Newbern. ............20
     E.   Plaintiffs State a Claim Under Section 1985(3). ........................................................22
        a.   The Second Amended Complaint Adequately Alleges a Racially Discriminatory
Motive.......................................................................................................................22
        b.   The Second Amended Complaint Adequately Alleges an Unlawful Agreement Under
Section 1985(3). .......................................................................................................24

CONCLUSION............................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                              **Pages**

*Ala. Legis. Black Caucus v. Alabama,*
   No. 2:12-CV-1081, 2012 WL 6706665 (M.D. Ala. Dec. 26, 2012) ........................................18

Ala. State Conf. of NAACP v. City of Pleasant Grove,
   372 F. Supp. 3d 1333 (N.D. Ala. 2019) .......................................................................... 17, 18

*Allen v. Milligan,*
   143 S. Ct. 1487 (2023)...................................................................................................15

*Am. Fed'n of Labor and Congress of Indus. Orgs. v. City of Miami, FL,*
   637 F.3d 1178 (11th Cir. 2011)......................................................................................29

*Anderson v. Celebrezze,*
   460 U.S. 780 (1983) ......................................................................................... 7, 20, 23

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................................5

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................................5

*Body by Cook, Inc. v. State Farm Mut. Auto. Ins.,*
   869 F.3d 381 (5th Cir. 2017) .........................................................................................27

*Bouldin v. City of Homewood,*
   174 So. 2d 306 (Ala. 1965) ...........................................................................................24

*Brnovich v. Democratic Nat. Comm.,*
   141 S. Ct. 2321 (2021)...................................................................................................13

*Brown v. City of Fort Lauderdale,*
   923 F.2d 1474 (11th Cir. 1991) .....................................................................................24

*Brown v. Post,*
   279 F. Supp. 60 (W.D. La. 1968).............................................................................. 10, 18

*Campbell v. Bennett,*
   212 F. Supp. 2d 1339 (M.D. Ala. 2002)........................................................................23

*Castaneda v. Partida,*
   430 U.S. 482 (1977) ......................................................................................................19

*Childree v. UAP/GA AG CHEM, Inc.,*
   92 F.3d 1140 (11th Cir. 1996) .......................................................................................26

*Chisom v. Roemer*,
    501 US 380 (1991) ...................................................................................13

*City of Birmingham v. Bouldin*,
    190 So. 2d 279 (1966) ............................................................................24

*Coal. for Ed. in Dist. One v. Bd. of Elections of City of New York*,
    370 F. Supp. 42 (S.D.N.Y.), *aff'd*, 495 F.2d 1090 (2d Cir. 1974) ...........14

*Dean v. Warren*,
    12 F.4 1248 (11th Cir. 2021) ..................................................................28

*Democratic Exec. Comm. of Fla. v. Lee*,
    915 F.3d 1312 (11th Cir. 2019) .......................................................20, 22

*Dillard v. Town of N. Johns*,
    717 F. Supp. 1471 (M. D. Ala. 1989) ................................. 10, 14, 18, 27

*Duncan v. Poythress*,
    657 F.2d 691 (5th Cir. Unit B 1981)......................................... 6, 8, 20, 22

*Edwards v. Sammons*,
    437 F.2d 1240 (5th Cir. 1971) ...................................................................7

*Ex parte Scrushy*,
    262 So. 3d 638 (Ala. 2018)......................................................................23

*Flowers v. Mississippi*,
    139 S. Ct. 2228 (2019)..............................................................................18

*G.H. v. Marstiller*,
    424 F. Supp. 3d 1109 (N.D. Fla. 2019)......................................................5

*Gonzalez v. Governor of Georgia*,
    978 F.3d 1266 (11th Cir. 2020) ...............................................................22

*Gonzalez v. Kemp*,
    470 F. Supp. 3d 1343 (N.D. Ga. 2020), *aff'd*, 978 F. 3d 1266 (11th Cir. 2020)...................8, 23

*Griffin v. Breckenridge*,
    403 U.S. 88, 29 L. Ed. 2d 338 (1971)......................................................28

*Hunt v. Aimco Props.*,
    *L.P.*, 814 F.3d 1213 (11th Cir. 2016).........................................................5

*Hunt v. Cromartie,*
   526 U.S. 541 (1999) ...................................................................................17

*Johnson v. De Grandy,*
   512 U.S. 997 (1994) .............................................................................. 11, 12

*Lane v. Wilson,*
   307 U.S. 268 (1939) ...............................................................................6, 19

*League of Women Voters of Fla., Inc. v. Detzner,*
   354 F. Supp. 3d 1280 (N.D. Fla. 2018).................................................7

*Lewis v. City of Union City,*
   877 F.3d 1000 (11th Cir. 2017) .............................................................16

*Maldonado v. Firstservice Residential, Inc.,*
   2021 U.S. Dist. LEXIS 114302 (S.D. Tex. June 18, 2021).....................26

*McMillian v. Johnson,*
   88 F.3d 1573 (11th Cir. 1996) ...............................................................25

*McMillian v. Monroe Cnty., Ala.,*
520 U.S. 781 (1997)................................................................................25

*Milligan v. Merrill,*
   582 F. Supp. 3d 924 (N.D. Ala. 2022).................................................3

*N.C. State Conf. of the NAACP v. McCrory,*
   831 F.3d 204 (4th Cir. 2016) ................................................................16

*N.R. v. Sch. Bd. of Okaloosa Cnty.,*
   418 F. Supp. 3d 957 (N.D. Fla. 2019)..................................................29

*Odom v. City of Anniston,*
   2023 U.S. Dist. LEXIS 159216 (N.D. Ala. Sept. 8, 2023) ....................30

*Oncale v. Sundowner Offshore Services, Inc.,*
   523 US 75 (1998) ..................................................................................19

*Park v. City of Atlanta,*
   120 F.3d 1157 (11th Cir. 1997)..............................................................26

*Powers v. CSX Transportation,*
   105 F. Supp. 2d 1295 (S.D. Ala. 2000)...........................................28, 30

*Rogers v. Lodge*,
  458 U.S. 613 (1982) ................................................................16

*Siegel v. LePore*,
  234 F.3d 1163 (11th Cir. 2000) ..................................................6

*Stout v. Jefferson Cnty. Bd. of Educ.*,
  882 F.3d 988 (11th Cir. 2018) ...................................................16

*Swanson v. Bennett*,
  219 F.Supp.2d 1225 (M.D. Ala. 2002) .......................................23

*Thornburg v. Gingles*,
  478 U.S. 30 (1986) ........................................................9, 14, 19

*Turner v. Fouche*,
  396 U.S. 346 (1970) ................................................................12

*United States v. Berks Cnty., Pa.*,
  250 F. Supp. 2d 525 (E.D. Pa. 2003) ........................................14

*United States v. Marengo County Com'n*,
  731 F. 2d 1546 (11th Cir. 1984) ...............................................13

*United States v. Palmer*,
  356 F.2d 951 (5th Cir. 1966) ....................................................13

*United States v. Post*,
  297 F. Supp. 46 (W.D. La. 1969) ..............................................10

*United States v. Wood*,
  295 F.2d 772 (5th Cir. 1961) ......................................................8

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) .......................................................15, 16, 18

*Williams v. Rhodes*,
  393 U.S. 23 (1968) .............................................................20, 22

*Yick Wo v. Hopkins*,
  118 U.S. 356, 6 S. Ct. 1064 (1886) ...........................................19

*Young Apartments, Inc. v. Town of Jupiter*,
  529 F. 3d 1027 (11th Cir. 2008) ...............................................17

**Statutes**

52 U.S.C. § 10301(b) ..................................................................................................10

52 U.S.C. 10308(f) ......................................................................................................8

Ala. Code § 11-43-2 ...................................................................................................21

Ala. Code § 11-46-21 .................................................................................................21

Ala. Code § 11-46-22 .................................................................................................21

Ala. Code § 11-46-69 (b)..............................................................................................7

## INTRODUCTION

Defendants have filed a second motion to dismiss Plaintiffs' Third Amended Complaint ("TAC") which treads the exact same ground as their prior motion to dismiss, *compare* Defs.' Br. in Support of Mot. to Dismiss the Third Amended Compl., ECF No. 77 [hereinafter "Defs.' Br."] to Defs.' Br. in Support of Mot. to Dismiss the Second Amended Compl., ECF No. 63. For all the same reasons identified in Plaintiffs' prior response in opposition, *see* Resp. to Mot. to Dismiss, ECF No. 65, Defendants' instant motion is meritless.

First, the detailed TAC is more than sufficient to provide the notice required under Rule 12. Fed. R. Civ. Pro. 12. A review of the TAC makes clear that the allegations firmly support each claim. Second, rather than refute the plausibility of Plaintiffs' allegations, as Defendants are required to do under Rule 12, Defendants ignore the majority of Plaintiffs' allegations; fail to accept other allegations as true; and repeatedly apply the wrong legal standards. The Court should therefore deny Defendants' motion to dismiss.

## FACTUAL BACKGROUND

For decades, the Town of Newbern has failed to hold elections as required by law. *See* TAC ¶¶ 25-26, 31, 49; Defs.' Answer to the First Am. Compl., ECF No. 3 ("Defs.' Answer) ¶ 20. About 85% of Newbern residents are Black and 15% are white. TAC ¶ 1. In response to the passage of the Voting Rights Act of 1965, which eliminated the most overt barriers to voting and registration for Black residents of Newbern, white town officials began refusing to hold elections, preventing Newbern's newly enfranchised majority-Black electorate from electing candidates of choice. *Id.* ¶¶ 1-3. Rather, Newbern used a system of "hand-me-down governance," where the sitting mayor picks a successor to "inherit" the role, and that mayor then appoints people to join the town council. *Id.* ¶¶ 1, 25.

Newbern's town council and mayor are legally required to provide notice and conduct an election for mayor and town council every four years. *Id.* ¶¶ 22, 42. Yet, for at least sixty years, Defendants and their predecessors have failed to conduct any municipal elections or provide sufficient public notice of any administered municipal elections. *Id.* ¶¶ 22-25. Instead, a series of white mayors and town councilmembers relied on the hand-me-down governance system to hand down their positions from one white person to the next, preventing Newbern voters, the majority of whom are Black, from electing their candidates of choice. *Id.* ¶¶ 25-26, 31. Prior to 2020, Newbern had only ever had one Black councilmember (Defendant Thomas) and had never had a Black mayor. *Id.* ¶ 31. Voting in Newbern is racially polarized in that Black people vote overwhelmingly for their preferred candidates (who are usually Black people) and white people vote overwhelmingly against the (usually Black) candidates preferred by Black voters. *Id.* ¶ 46.

In 2020, however, Plaintiff Patrick Braxton was lawfully elected mayor in an uncontested race. *Id.* ¶¶ 9, 39-49. Since then, Defendants have prevented him from exercising his full powers as mayor. *Id.* ¶¶ 50-101. And—upon learning that Newbern would have a majority-Black town council—Defendants administered a secret election only they had notice about and *de facto* appointed themselves as mayor and town council, claiming that they were the only Newbern residents who allegedly qualified as candidates in this election. *Id.* ¶¶ 50-65.

Defendants' infringement of Plaintiffs' voting rights occurs against a backdrop of persistent discrimination against Black voters in Hale County and throughout Alabama. Alabama has historically employed and continues to employ numerous voting practices that impair Black electoral success. *Id.* ¶¶ 29-31. Additionally, Black Alabamians continue to experience racial disparities in education, economic access, housing, and health, which are "inseparable from and

(at least in part) the result of, the state's history of official discrimination." *Milligan v. Merrill*, 582 F. Supp. 3d 924, 1022 (N.D. Ala. 2022) (three-judge court); *see generally* TAC ¶¶ 32-38.

In April 2020, Plaintiff Patrick Braxton, who is Black, decided to run for the office of Mayor of Newbern. TAC ¶ 39. At that time, Plaintiff Braxton told Defendant Woody Stokes that he planned on qualifying as a candidate for Mayor. *Id.* ¶ 41. Defendant Stokes gave Plaintiff Braxton incorrect information about how to qualify and what was needed to qualify. *Id.* Several months later, Plaintiff Braxton successfully identified the correct process and fulfilled the necessary requirements on his own. *Id.* ¶ 43. Plaintiff Braxton filed his statement of candidacy and statement of economic interests with the circuit clerk for Hale County and online with the State of Alabama. *Id.;* Defs.' Answer ¶ 27. Plaintiff Braxton was the only Newbern resident to qualify for any municipal office in Newbern. TAC ¶¶ 44, 50. Because he was the only person qualified, Plaintiff Braxton became Mayor of the Town of Newbern by operation of law in July 2020. *Id.* ¶ 47.

Former mayors in Newbern appointed people of their choice to the town council. *Id.* ¶¶ 25-26, 31, 49. Prior to 2020, Newbern had only ever had one Black town councilmember, and had never had a Black mayor. *Id.* ¶ 31. Defendant Stokes also engaged in this practice while serving as mayor from 2008 until 2020. *Id.* ¶¶ 25-26. In 2020, Plaintiff Braxton was the only candidate who qualified for any position. *Id.* ¶ 9. Because no one qualified to run for any town council positions, when Plaintiff Braxton lawfully won the office of town mayor, he recruited Newbern residents to serve on the town council. *Id.* ¶ 50. Although he sought out Black and white residents, only Black residents agreed to serve as town councilmembers. *Id.* ¶ 52. In the summer of 2020, Plaintiff Braxton recruited Plaintiffs James Ballard, Barbara Patrick, Janice Quarles, and Wanda Scott to serve as the town council and appointed them in the fall of 2020. *Id.* ¶¶ 9-14; 60-62.

Upon learning of Plaintiff Braxton's recent mayoral position and recruitment of Plaintiffs, Defendants devised a plan to thwart Plaintiff Braxton from appointing a majority-Black town council and to otherwise prevent Black voters in Newbern from electing their candidates of choice. *Id.* ¶ 53. To stop Mayor Braxton from appointing a majority-Black town council, Defendants Stokes, Broussard, Leverette, Thomas and Tucker held a secret meeting where they purported to act as the town council and adopted resolutions to conduct a special election for the first time in Newbern history. *Id.* ¶ 55; *see* Defs.' Answer ¶ 37. No notice was given to Plaintiffs or any other members of the public about this meeting, nor of the resolutions passed at this meeting. TAC ¶¶ 55-58. No public notice was given to Plaintiffs or other members of the public about qualifying deadlines, time, date, or other relevant information about the special election, in direct contravention of Alabama law. *See id.*

After this secret election occurred in October 2020, Defendants began to hold themselves out as mayor and town council. *Id.* ¶¶ 15-19, 63. Defendants' conduct continues Newbern's longstanding practice of preventing Black voters from participating in local elections, and worse, even knowing that local elections are happening. *Id.* ¶¶ 25-26, 31, 49. Defendants' illegal and racially discriminatory policy has the purpose and effect of depriving Plaintiffs and all residents of Newbern, particularly its Black residents, of the right to vote. Defendants have also prevented Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott from performing their official duties. As such, Plaintiffs' TAC asks this Court to order Defendants to administer a new election in accordance with Alabama Code to ensure that all voters in Newbern have a right to vote in town elections and that all voters have an equal opportunity to participate in the political process.

## <u>LEGAL STANDARD</u>

When considering a motion to dismiss under Rule 12(b)(6), the Court "is limited to the allegations in the complaint." Fed. R. Civ. Proc. 12(b)(6). In evaluating Plaintiffs' claims, the court accepts all well-pleaded facts as true, construes them in the light most favorable to Plaintiffs, and draws all reasonable inferences from those facts in Plaintiffs' favor. *See Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) .

 "To withstand a motion to dismiss under Rule 12(b)(6)," a complaint only "must include 'enough facts to state a claim to relief that is plausible on its face.'" *G.H. v. Marstiller*, 424 F. Supp. 3d 1109, 1113 (N.D. Fla. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means that "the plaintiff [has pled] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs' TAC easily satisfies Rule 12(b)(6).

## <u>ARGUMENT</u>

Defendants' motion to dismiss the TAC should be denied in its entirety. Defendants' motion contains all the same deficiencies as their prior motion to dismiss.[1] Defendants do not dispute the facial plausibility of Plaintiffs' well-pled TAC; instead, Defendants fail to engage with Plaintiffs' factual allegations, misstate the relevant legal standards, and attempt to present their own factual allegations – all of which are improper at this stage of the litigation. Defendants also have already admitted many of the facts central to this lawsuit—including that Defendants failed

---

[1] Defendants' current arguments regarding Plaintiffs' intentional discrimination claim, Section 2 claim and conspiracy claim appear to be completely copied and pasted from Defendants' prior motion to dismiss. *See* ECF Nos. 57 and 77.

to hold municipal elections for decades. Defs.' Answer ¶ 20. None of Defendants' remaining arguments have merit.

## I.   <u>PLAINTIFFS ARE NOT REQUIRED TO EXHAUSTE STATE REMEDIES.</u>

Defendants' primary new argument is that this Court should dismiss Plaintiffs' constitutional claims because adequate state remedies were available to Plaintiffs. This argument holds no water. Plaintiffs are not required to exhaust state court remedies to vindicate their constitutional right to vote. "Barring only exceptional circumstances, or explicit [federal] statutory requirements, resort to a federal court may be had without first exhausting the judicial remedies of state courts." *Lane v. Wilson*, 307 U.S. 268, 274–75 (1939); *see also Siegel v. LePore*, 234 F.3d 1163, 1174 (11th Cir. 2000) (en banc) (citations omitted) (declining to abstain in deference to state court procedures when the plaintiffs allege a violation of their constitutional voting rights under the Due Process Clause); *Duncan v. Poythress*, 657 F.2d 691, 700 (5th Cir. 1981) (same);[2] *Edwards v. Sammons*, 437 F.2d 1240, 1244 (5th Cir. 1971) ("the delay which follows from abstention is not to be countenanced in cases involving such a strong national interest as the right to vote"). "The law is crystal clear in the Eleventh Circuit. Federal courts do not abstain when voting rights are alleged to be violated." *League of Women Voters of Fla., Inc. v. Detzner*, 354 F. Supp. 3d 1280, 1283 (N.D. Fla. 2018).

As an initial matter, Defendants repeatedly misconstrued Plaintiffs' due process claims. Plaintiffs Ballard, Patrick, Quarles, and Scott do not allege a procedural due process claim or a property interest in their town council appointments. *See* TAC. Rather, all Plaintiffs allege

---

[2] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

violations of **substantive** due process insofar as their fundamental right to vote was violated when the Defendants failed to hold elections for decades and then held a secret election preventing most residents of Newbern from voting for the new town council. *Id.* ¶¶ 157-68. An election process can violate substantive due process if it is fundamentally unfair or otherwise unconstitutionally burdens the right to vote. *See Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983); *Duncan*, 657 F.2d at 704. When there was "broad-gauged unfairness," courts have the right to call for a new election. *Duncan*, 657 F.2d at 703; *see also Gonzalez v. Kemp*, 470 F. Supp. 3d 1343, 1352 (N.D. Ga. 2020), *aff'd*, 978 F. 3d 1266 (11th Cir. 2020).

Plaintiffs have requested relief from this Court for an entirely new election for the town council because Newbern has never held open elections. TAC ¶ 107. When Defendants failed to provide notice of the one secret election they purportedly held, de facto appointing themselves to town council again, it amounted to a perpetuation of the existing fundamentally unfair hand-me-down governance system, violating Plaintiffs' right to vote. TAC ¶¶ 49, 107. Here, no state process would be sufficient to cure these violations of the fundamental right to vote in fair elections as protected by our Constitution.[3]

---

[3] Furthermore, Defendants' argument about Plaintiffs' ability to contest the election is also inadequate here. Alabama Code § 11-46-69 does not constitute an adequate state remedy for the constitutional violations stemming from Defendants' failing to hold any elections for over six decades. The code requires "[a]ny contest of such an election must be commenced within five days after the result of the election is declared," presuming that elections were legally conducted with notice as required by the state code. *See* Ala. Code § 11-46-69 (b). Plaintiffs had no notice of any elections for over six decades of which they could have contested, as they allege Defendants intended. Furthermore, contesting an illegal secret election does not restore the generation of Newbern residents' rights to participate in municipal elections. This is the very type of case where "the election process itself reaches the point of patent and fundamental unfairness . . . well beyond the ordinary dispute over the counting and marking of ballots" in which a federal court must step in. *Duncan*, 657 F.2d at 703.

Similarly, the Voting Rights Act expressly does not require Plaintiffs to exhaust state or other remedies. *See* 52 U.S.C. 10308(f) ("The district courts of the United States . . . shall exercise [jurisdiction] without regard to whether a person asserting rights under the [Voting Rights Act] shall have exhausted any administrative or other remedies that may be provided by law."); *see also United States v. Wood*, 295 F.2d 772, 784 (5th Cir. 1961) (holding that a nearly identical voting rights provision, 52 U.S.C. § 10101(d), served to "specifically remove[]" the "affirmative defense of adequate state remedies").

Therefore, the availability of state law avenues to challenge municipal elections does not affect whether Plaintiffs can pursue claims under the Constitution or the Voting Rights Act. This Court has jurisdiction over the matter, regardless of whether Plaintiffs exhaust any state remedies.

## II.   PLAINTIFFS HAVE PROPERLY STATED A CLAIM TO RELIEF ON ALL THEIR CLAIMS

### A.   Plaintiffs Properly Allege that Defendants Violated Section 2 of the VRA.

Section 2 prohibits states from imposing any voting practice that "results in a denial or abridgment of the right of any citizen . . . to vote on account of race or color." 52 U.S.C. §10301(a). A violation of subsection (a) results where, "based on the totality of circumstances," a racial group has "less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. §10301(a)–(b). "The essence of a §2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986).

Defendants have again failed to meaningfully engage with the allegations in the Complaint. Defendants' only argument here is that Defendants' hand-me-down governance policy did not result in discrimination against Black voters. Instead, Defendants wrongly assert that their failure

to provide notice to all Newbern residents of their illegal special election impacted all voters equally—"not just Black residents." Defs.' Br. 20. Defendants appear to believe that there can be no discriminatory result because Defendants' facially race neutral conduct may impact some white voters as well as Black voters. Defendants' unfounded belief is legally and factually wrong.

Section 2 does not require that only members of a minority group be impacted by the challenged conduct for plaintiffs to prevail. Here, Plaintiffs clearly allege that Defendants, purported town officials, failed to provide Newbern residents, the majority of whom are Black, with notice about the municipal elections and gave this information only to themselves (four white people and one Black person). TAC ¶¶ 25-26, 28, 47-65. "[O]nce [town officials] voluntarily proceeded to provide . . . forms and information to any candidates, the town had to do so in a racially nondiscriminatory manner or run afoul of § 2." *Dillard v. Town of N. Johns*, 717 F. Supp. 1471, 1477 (M. D. Ala. 1989) (finding that a mayor violated Section 2 in failing to provide Black candidates with information about an upcoming election). As in *Dillard*, Defendants' Section 2 violation stems from selectively providing information to more white voters about the election while refusing to inform nearly all Black residents (save one) about the same. *Id*.; *see also United States v. Post*, 297 F. Supp. 46, 50-51 (W.D. La. 1969) (finding that election officials violated Section 2 in inadequately informing Black voters about the mechanics of a voting machine); *Brown v. Post*, 279 F. Supp. 60, 64 (W.D. La. 1968) (finding that officials violated Section 2 in failing to inform Black voters about absentee voting options).[4] Moreover, the Complaint alleges that Defendants' refusal to notify Newbern residents was due to their intentional scheme to prevent

---

[4] The 1982 Senate Report, which is the "authoritative source for legislative intent" about the amended Section 2, identifies both *United States v. Post* and *Brown v. Post* as paradigmatic examples of Section 2 violations. S. Rep. No. 97-417, at 30 n.119; *accord Brnovich* at 2333 & n.4 (2021).

Black voters there from electing their candidates of choice, in line with their decades-long practice of hand-me-down white governance in majority-Black Newbern. TAC ¶¶ 53-55.

The hand-me-down-governance system has a substantial disparate impact on the Black voters in Newbern in multiple ways. First, since at least the passage of the VRA in 1965, which resulted in the widespread enfranchisement of Black voters, Defendants and their predecessors have defied state law and declined to hold elections to prevent Newbern residents, 85% of whom are Black, from voting. TAC ¶¶ 1-3, 25-26, 31. Defendants' actions have effectively disenfranchised the majority-Black residents of Newbern, while benefiting white residents and the overwhelmingly white officials who have used the hand-me-down-governance system to hold onto power. Indeed, because voting is racially polarized in Hale County and across Alabama, the white officials in power almost certainly would have lost in any elections where the majority-Black electorate were free to vote for candidates of their choice. TAC ¶ 46.

Second, the results of Defendants' longstanding appointment process prevented the election of Black as well as Black-preferred candidates. *See* 52 U.S.C. § 10301(b) ("The extent to which members of a protected class have been elected to office . . . is one circumstance which may be considered"); *Johnson v. De Grandy*, 512 U.S. 997, 1000 (1994) (explaining that a lack of proportionality is "a relevant fact in the totality of circumstances"). Although white voters are only 15% of the voting-age population, TAC ¶ 1, no Black person has ever been appointed or otherwise selected as mayor under Defendants' system, TAC ¶¶ 25-26, 31. And, aside from Defendant Thomas, no Black person has ever been appointed to the town council. TAC ¶ 31. Today, white people purportedly hold 83% (or five of six) of Newbern's elected offices. TAC ¶ 15-19, 63. "One may suspect [discrimination] from political famine[.]" *De Grandy*, 512 U.S. at 1017; *accord*

10

*Turner v. Fouche*, 396 U.S. 346, 362–63 (1970) (finding that a government body's failure to appoint Black people to public office constituted strong evidence of racial discrimination).

Similarly, Defendants' practices had a significant disparate impact on Black voters in the uncontested "election" that Defendants held in 2020. There, only one Black person (Defendant Thomas) was notified of election and any related filing deadlines. TAC ¶ 31. In contrast, at least four white people (Defendants Stokes, Leverett, Tucker, and Broussard) knew about those elections. TAC ¶¶ 55-59. That is, while white people are only 15% of the population, Defendants ensured that white people were 83% of the people who knew about and qualified to run in the sham election. Finally, Black people were 100% of the opposition candidates (Plaintiffs Braxton, Ballard, Patrick, Quarles, and Scott) whom Defendants failed to notify about the uncontested election. TAC ¶¶ 60-61.

The purpose and result of this system is that the town council has been and remains overwhelming white, that predominately white people have been the only ones told about elections or candidate qualification rules, and that elected positions have been almost exclusively held by white people.

More fundamentally, Defendants' position that Section 2 requires that only members of one minority group be impacted by a challenged provision contravenes decades of controlling precedent. Rather, Section 2 "applies to a broad range of voting rules, practices, and procedures," and a violation "does not require outright denial of the right" and even "a 'facially neutral' law or practice may violate [Section 2]." *Brnovich v. Democratic Nat. Comm.*, 141 S. Ct. 2321, 2341 (2021). Voting practices that negatively impact Black and white voters alike but place a disproportionate burden on Black voters, can have a disparate impact. *See e.g., Chisom v. Roemer*, 501 US 380, 408 (1991) (Scalia, J., dissenting) ("If, for example, a county permitted voter

11

registration for only three hours one day a week, and that made it more difficult for blacks to register than whites, blacks would have less opportunity '*to participate* in the political process' than whites, and § 2 would therefore be violated") (emphasis in original); *United States v. Marengo County Com'n*, 731 F. 2d 1546, 1570 (11th Cir. 1984) ("By holding short hours the Board made it harder for unregistered voters, more of whom are black than white, to register."); *United States v. Palmer*, 356 F.2d 951, 952 (5th Cir. 1966) (holding that closing a registration office to everyone in a parish where fewer Black voters were registered than whites, had a discriminatory effect).

Here, Defendants' decision to hold a secret special election—after maintaining its hand-me-down governance policy and refusing to hold any municipal elections for the last sixty years—had a clear disparate impact. Newbern, currently 85% Black, has been a majority-Black town for at least the last 50 years, and has a history of racially polarized voting. TAC ¶¶ 21, 45-46. Defendants' refusal to provide notice to its Black electorate, and administration of an illegal special election to maintain majority-white town governance, *see* TAC ¶¶ 25-26, 31, 49, is violative of Section 2. *See e.g., United States v. Berks Cnty., Pa.*, 250 F. Supp. 2d 525, 540 (E.D. Pa. 2003) (finding a Section 2 violation based on the failure to provide adequate notice of an upcoming election); *Coal. for Ed. in Dist. One v. Bd. of Elections of City of New York*, 370 F. Supp. 42 (S.D.N.Y.), *aff'd*, 495 F.2d 1090 (2d Cir. 1974) (finding a violation based on the failure to properly disseminate election information). Defendants' decision to selectively inform only themselves (a majority white group of voters) about the election necessarily had a disparate impact on the majority-Black electorate and denied them the chance to vote. *See Dillard*, 717 F. at 1476.

When evaluating Plaintiffs' allegations under the totality of circumstances, including the nine Senate Factors relevant to assessing Section 2 violations, *see Gingles*, 478 U.S. at 44-45, it is clear that Plaintiffs have properly pled a Section 2 violation. Plaintiffs properly allege that

Newbern, Hale County, and the State have a history of discrimination in voting (TAC ¶¶ 27-31); that voting is racially polarized (TAC ¶¶ 45-46); and that Black voters are impacted by an ongoing discrimination in education, healthcare, the environment, and employment (TAC¶¶ 32-38), which negatively impact Black voters' ability to participate in the political process. *See Allen v. Milligan*, 143 S. Ct. 1487, 1505-06 (2023) (affirming a violation based on these factors).

Plaintiffs also allege facts demonstrating that each of the five *Brnovich* factors weigh in their favor. 141 S. Ct. at 2338-40. Again, Plaintiffs allege that Defendants' actions had a substantial disparate impact, TAC ¶¶ 173-75, and that Black voters in Newbern suffer racial discrimination and disparities in voting and other socioeconomic areas, TAC ¶¶ 27-38, 45-46. Plaintiffs further allege that the hand-me-down-governance system offers no other alternative method of voting, TAC ¶¶ 1, 3, 31, 107-110; that Defendants' actions are unique and not widespread because the hand-me-down-governance system is inconsistent with state and federal law, TAC ¶¶ 58, 66, 165, 177; and that Defendants have no legitimate justification for using this system and that any justifications are tenuous, TAC ¶ 177.

**B.  <u>Plaintiffs Adequately Allege an Intentional Discrimination Claim.</u>**

Plaintiffs adequately allege sufficient facts which—when taken as true, as they must be at this stage—support the inference that Defendants have a racially discriminatory purpose. Rather than acknowledge Plaintiffs' well-pleaded allegations, Defendants again ignore and misconstrue these allegations and the applicable law.

"Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). "Determining whether invidious discriminatory purpose was a motivating factor demands

a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.*
at 266.

Courts use the *Arlington Heights* framework to examine whether a facially neutral law was
passed with discriminatory intent, which includes: (1) the impact of the challenged law; (2) the
historical background; (3) the specific sequence of events leading up to its passage; (4) procedural
and substantive departures; (5) the contemporary statements and actions of key legislators. *See
Stout v. Jefferson Cnty. Bd. of Educ.*, 882 F.3d 988, 991 (11th Cir. 2018). Other relevant factors
include: (6) the foreseeability of the disparate impact; (7) knowledge of that impact; and (8) the
availability of less discriminatory alternatives. *Jean v. Nelson*, 711 F.2d 1455, 1486 (11th Cir.
1983). While these factors inform the discriminatory purpose inquiry, courts should not "miss[]
the forest in carefully surveying the many trees" by focusing on each factor in isolation. *N.C. State
Conf. of the NAACP v. McCrory*, 831 F.3d 204, 214 (4th Cir. 2016). Rather, "discriminatory intent
need not be proved by direct evidence," it can be determined "from the totality of the relevant
facts." *Rogers v. Lodge*, 458 U.S. 613, 618 (1982) (citation omitted). Plaintiffs need only plead "a
convincing mosaic of circumstantial evidence" to show intent. *Lewis v. City of Union City*, 877
F.3d 1000, 1018 (11th Cir. 2017). And intentional discrimination claims are rarely dismissed at the
pleading stage, where the Court must accept Plaintiffs' allegations as true, and weigh all inferences
in their favor. *See, e.g., Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Young Apartments, Inc. v.
Town of Jupiter*, 529 F. 3d 1027, 1044-45 (11th Cir. 2008); *Ala. State Conf. of NAACP v. City of
Pleasant Grove*, 372 F. Supp. 3d 1333, 1341 (N.D. Ala. 2019).

Plaintiffs' allegations amply support an inference of discriminatory purpose and effect—
far beyond what is required at the pleadings stage. Plaintiffs allege two intentional discrimination
claims – one based on Defendants' hand-me-down governance policy which has deprived them of

the right to vote because of their race, and another based on Defendants' Stokes, Broussard, Leverette, Thomas and Tucker obstruction of Plaintiffs Braxton, Ballard, Patrick, Quarles and Scott's ability to hold elected office. TAC ¶¶ 101-137. Upon realizing that Plaintiff Patrick Braxton would appoint a majority-Black Town Council, Defendants secretly organized an illegal election and failed to provide notice to Newbern's Black residents to prevent Newbern's first Black-majority municipal government from holding office, and voters in Newbern, the majority of whom are Black, from electing their candidates of choice. *See, e.g.,* TAC ¶¶ 2, 25-26, 31, 41, 45-65. After Plaintiffs' Braxton, Ballard, Patrick, Quarles and Scott duly assumed office, Defendants then prevented them from accessing town mail, money, and buildings and hindered them from exercising their official duties. *Id.* 66-100. Defendants undertook this course of conduct even though prior transitions of power between white town councils and white mayors all occurred without incident. *Id.* ¶¶ 50; 134-35.

Plaintiffs support these assertions by addressing the *Arlington Heights* factors in detail. *See, e.g.*, *Id.* ¶¶ 21, 53, 58, 63-65 (explaining how Defendants' conduct resulted in a disparate impact on Black Newbern residents, through the denial of the opportunity to vote, run for, and hold, municipal office); *id.* ¶¶ 27-31 (noting historical background including past findings of racial discrimination in voting and practice of "handing down" the positions of mayor and town councilmember from one white resident to the next); *id.* ¶¶ 25-26; 31, 41-65 (detailing evidence of procedural and substantive departures, including the administration of a municipal election without any notice, providing incorrect information to Plaintiff Braxton regarding how to qualify for mayor, and Defendants violating state law regarding notice of elections). This is more than sufficient to survive a motion to dismiss. *See e.g., Pleasant Grove*, 372 F. Supp. 3d at 1341; *Ala. Legis. Black Caucus v. Alabama*, No. 2:12-CV-1081, 2012 WL 6706665, at *4-5 (M.D. Ala. Dec.

26, 2012) (three-judge court); *see also Dillard v. Town of North Johns,* 717 F. Supp. at 1476*; United States v. Post,* 297 F. Supp. at 51 (W.D. La. 1969)*; Brown v. Post,* 279 F. Supp. (W.D. La. 1968). Indeed, Plaintiffs' allegations detail one of the rare cases where a "clear pattern, unexplainable on grounds other than race" is so clear that it alone is dispositive of a racially discriminatory intent. *See Arlington Heights*, 429 U.S. at 266; *Flowers v. Mississippi*, 139 S. Ct. 2228, 2246 (2019); *Yick Wo v. Hopkins*, 6 S. Ct. 1064, 1068 (1886); *Lane v. Wilson*, 307 U.S. 268 (1939).

Rather than refuting or engaging with Plaintiffs' allegations on the *Arlington Heights* factors, Defendants instead offer only the conclusory statement that "Plaintiffs have failed to show that the Defendants … intentionally discriminated against the Plaintiffs on the basis of race." Defs.' Br. 11. This lone assertion in no way undermines Plaintiffs' well-plead TAC. Defendants' second argument that Plaintiffs' intentional discrimination should be dismissed because Defendant Thomas is a Black resident who currently holds herself out as a town councilmember, *id.*, also misses the mark. The fact one Black resident has served as a purported town councilmember in Newbern's two-hundred-year history does not mean that she and other Defendants did not intend to discriminate. Black people are more than capable of discriminating against other Black people. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 US 75, 78 (1998) (rejecting "any conclusive presumption that [a person] will not discriminate against members of his own race"); *Castaneda v. Partida*, 430 U.S. 482, 499 (1977) (same); *cf. also Gingles*, 478 US at 57 (1986) (finding that the election of a Black person in special circumstances, like as an incumbent or running unopposed, does not preclude a finding of discrimination). As described above, Plaintiffs provide plenty of plausible facts, taken in totality, that Defendants engaged in a racially discriminatory scheme in failing to provide the Black residents of Newbern with notice of municipal elections. One Black

person serving in the purported town council does not diminish the discriminatory harms of this scheme.

**C.  Plaintiffs Properly Allege that Defendants Violated the Right to Vote.**

Plaintiffs have sufficiently and properly pled their due process claim. "Voting is the beating heart of democracy. It is a 'fundamental political right, because [it is] preservative of all rights.'" *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1315 (11th Cir. 2019) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)). The First and Fourteenth Amendments protect "the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968); *see Anderson v. Celebrezze*, 460 U.S. 780, 787-788 (1983). An official may violate the fundamental right to vote where, as here, defendants engage in a pattern of conduct that "erodes the democratic process" in failing to "properly [] carry out the state ordained electoral process.'" *Duncan v. Poythress*, 657 F.2d 691, 704 (5th Cir. Unit B 1981) (citations omitted) (also explaining that the right to vote implicates "substantive" due process). "[I]t is fundamentally unfair and constitutionally impermissible for public officials to disenfranchise voters in violation of state law so that they may fill the seats of government through the power of appointment." *Id.* at 704.

The constitutionality of a challenged election rule is governed by the *Anderson-Burdick* test. *Lee*, 915 F.3d at 1318 (11th Cir. 2019). Under that test, courts "weigh the character and magnitude of the asserted First and Fourteenth Amendment injury against the state's proffered justifications for the burdens imposed by the rule, taking into consideration the extent to which those justifications require the burden to plaintiffs' rights." *Id*.

If the burden imposed is severe, the law is subject to strict scrutiny. *Norman v. Reed*, 502 U.S. 279, 280 (1992); *see also Lee*, 915 F.3d at 1318 ("[A regulation] that severely burdens the

right to vote must be narrowly drawn to serve a compelling state interest.") (citations omitted). Defendants' hand-me-down governance policy fails strict scrutiny. First, Plaintiffs' right to vote is heavily burdened by Defendants' actions which run contrary to state law, the Constitution, and basic fairness. Second, Defendants have not identified any legitimate state interest that is served by their failure to regularly hold elections.

Plaintiffs allege that the right to vote was violated when Defendants impermissibly filled the town council vacancies by holding a special election without any notice to the residents of Newbern. *See* TAC ¶¶ 50-65. In support of this, Plaintiffs allege that they are injured by Defendants' history of failing to host municipal elections and subsequently not providing any notice when they did, as was the case with the special election for Town Council in 2020. *Id.* ¶¶ 21-26, 55-60. Under state law, Newbern is required to hold and notify voters about elections every four years. Ala. Code §§ 11-43-2(a) and (d), 11-46-21(a) (requiring quadrennial elections); Ala. Code § 11-46-22 (requiring the public to receive notices of elections). By their own admission, Defs.' Answer ¶ 20, Defendants have repeatedly failed to hold municipal elections in Newbern for decades in violation of state law.

Plaintiffs further allege that Defendants failed to give notice of the special election, so that white Newbern residents could remain the only candidates and Plaintiffs and every other resident in Newbern would not have an opportunity to elect their candidates of choice. TAC ¶¶ 1-4, 21-26, 31. Plaintiffs plausibly allege that by holding an uncontested special election no one but Defendants Stokes, Broussard, Leverette, Thomas and Tucker had knowledge of, Defendants effectively continued their unconstitutional system of primarily appointing white Newbern residents to the Mayor and Town Council positions. *Id.* ¶¶ 48-65. Plaintiffs describe how there had been no elections for Mayor or Town Council for decades and how, only after the first Black

resident of Newbern was officially elected mayor, did the purported town councilmembers decide to "remedy" the past practice of informal appointments to town council by conducting an unadvertised and uncontested special election. *See id.* Lastly, Plaintiffs plausibly pled facts that if no voters have knowledge of the special election, it is akin to Defendants failing to hold an election at all, constituting a "patent and fundamental unfairness in the electoral process," and thereby a due process violation. *Duncan,* 657 F.2d at 703; *see also Gonzalez v. Governor of Georgia*, 978 F.3d 1266 (11th Cir. 2020) (finding that the plaintiffs' constitutional right was violated where a state refused to hold an election in violation of state law).

Taking these allegations together, Defendants have undoubtedly burdened Plaintiffs' right to vote. The Eleventh Circuit has held that providing even belated notice about changed election rules violated voters' Fourteenth Amendment rights by creating "illusory" opportunities for voters to cast their ballot accurately. *Lee*, 915 F.3d at 1319, 1324 (voters' right to vote were burdened by an "infringement by the states" when the state provided late notice on regulatory changes affecting voters' deadline to cure ballots) (quoting *Williams v. Rhodes*, 393 U.S. at30-31). Because no notice was given to Plaintiffs or other residents of the 2020 election or related deadlines, Defendants' failure to give fair notice traveled into "unconstitutional territory." *Cf. Campbell v. Bennett*, 212 F. Supp. 2d 1339, 1343 (M.D. Ala. 2002) (finding that the State's failure to notify candidates of newly shortened qualification deadlines had unconstitutionally burdened their right to vote); *Swanson v. Bennett*, 219 F.Supp.2d 1225, 1229-31 (M.D. Ala. 2002) (same). Defendants' practices also severely restrict who may run for office, "limit[ing] the field of candidates from which voters might choose." *Anderson*, 460 U.S. at 787-788 (holding that overly restrictive candidate qualifications are unconstitutional*); cf. Anderson*, 460 U.S. at 787 (citations omitted) ("The right

to vote is 'heavily burdened' if that vote may be cast only for major-party candidates at a time when other parties or other candidates are 'clamoring for a place on the ballot.'").

Plaintiffs also plausibly allege that Defendants have no interest in failing to hold elections, in failing to notify voters, or in otherwise maintaining their hand-me-down governance system in violation of state law. *Cf. Gonzalez*, 978 F. 3d at 1271. Defendants do not genuinely argue otherwise. S*ee* Defs.' Br. Nor could they, given that the Alabama Supreme Court requires strict compliance with its notice of election laws and itself has required new special elections where officials fail to provide voters with the required notice of elections. *See e.g., Ex parte Scrushy*, 262 So. 3d 638, 641-42, 644-45 (Ala. 2018) (affirming an order calling for a new election where officials had failed to comply with the two-months advance notice required by Section 11-46-22(a)); *Bouldin v. City of Homewood*, 174 So. 2d 306, 311-13 (Ala. 1965) (holding that the failure to comply with certain notice requirements required an election's invalidation); *see also City of Birmingham v. Bouldin*, 190 So. 2d 279 (1966) (similar).

Accordingly, Plaintiffs have pled plausible facts to demonstrate that Defendants, the purported public officials of Newbern and the Town of Newbern, disenfranchised voters in violation of Alabama state law and the Fourteenth Amendment right to due process.

### D.  **Plaintiffs Adequately Allege *Monell* Liability Against the Town of Newbern.**

Defendants again attempt to argue that Plaintiffs are not entitled to relief from the Town of Newbern because they fail to allege *Monell* liability, citing the absence of allegations about an injury caused by a "policy statement, ordinance, regulation or decision officially adopted and promulgated by the Town," Defs.' Br. 21(internal quotation omitted). Defendants' argument is wholly without merit.

Defendants misstate the proper standard for alleging municipal liability. "A plaintiff can establish municipal liability under *Monell* in three ways: (1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *See Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991).

Here, Plaintiffs' TAC clearly alleges that Defendants are final policymakers who violated Plaintiffs' constitutional rights. *See e.g.,* TAC ¶¶ 15-19; 21-26, 31, 49-65. First, because final policymaking authority is governed by state law, Plaintiffs describe Newbern's form of government as provided by the Alabama Code. *See McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996), *aff'd sub nom. McMillian v. Monroe Cnty., Ala.,* 520 U.S. 781 (1997). Specifically, Plaintiffs allege that the town of Newbern "is governed by a mayor and five (5) Town Council positions. Ala. Code § 11-43-2;" it has "had a mayor-council form of government for decades;" and under Ala. Code § 11-46-22 and § 11-46-21, the mayor is responsible for providing official notice to voters about municipal elections and conducting these elections. TAC ¶ 22. Under the Code, therefore, the mayor and mayoral town council constitute the entire municipal government in Newbern.

Second, Plaintiffs' TAC names the individuals who continue to hold themselves out as mayor and town councilmembers of Newbern, and who, upon information and belief, previously held such municipal positions; maintained the hand-me-down governance policy; failed to administer municipal election; and failed to give notice of any municipal elections, including the 2020 illegal special election. *Id.* ¶¶ 15-19; 21-26, 31, 49-65. In doing so, Plaintiffs have clearly sought relief against the municipal officials who have "the responsibility for making law or setting

policy in any given area of a local government's business." *McMillian v. Johnson*, 88 F.3d at 1577. Defendants do not even dispute any of the alleged facts, and they must in any event be taken as true on a motion to dismiss. Furthermore, Defendants contend that they acted on behalf of the Town of Newbern when they failed to provide notice for, and held, a secret election. *See e.g.,* Defs.' Br. 7-8.

Because Plaintiffs have plainly sought relief from Newbern officials with final policymaking authority, and as described more fully above, Plaintiffs have clearly alleged how Defendants have violated their constitutional rights and Defendants' motion to dismiss based on Plaintiffs' failure to plead *Monell* liability should be denied.

### E.  Plaintiffs State a Claim Under Section 1985(3).

Plaintiffs allege sufficient facts from which the court can plausibly infer that the Defendants conspired to prevent the first Black mayor and his appointed town council from taking office and exercising any authority because they sought to maintain white control of the Town's government. Given Plaintiffs' allegations regarding Defendants' conduct and Hale County's history of racial discrimination in voting, the alleged unlawful agreement to prevent the Town's Black residents from constituting a majority of the Town's governing offices is more than plausible.

### a.  The Third Amended Complaint Adequately Alleges a Racially Discriminatory Motive.

To state a claim under § 1985(3), the plaintiff must show that a racial or class-based animus motivated the conspirators' actions. *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997); *Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146-47 (11th Cir. 1996). A plaintiff can allege discriminatory intent through direct or circumstantial evidence. *See Maldonado v. Firstservice Residential, Inc.*, 2021 U.S. Dist. LEXIS 114302, at *13 (S.D. Tex. June 18, 2021) (citing *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017)).

22

Plaintiffs' TAC adequately alleges that race motivated the Defendants' actions. As described above, the TAC explains how, in order to prevent Plaintiff Braxton from appointing a majority-Black town council, the Defendants held secret meetings and adopted resolutions to conduct a special election, failed to provide the Plaintiffs or other Black residents of the Town with notice of this special election, purported to re-appoint themselves as town councilmembers, and then undertook actions to prevent the newly appointed majority-Black council from exercising their duties as councilmembers. *See supra* Section I(B) to I(C); TAC ¶¶ 55, 58-62, 64-92.

Not only did the Defendants prevent a majority-Black town council and the Town's first Black mayor from exercising their official duties, Defendants also orchestrated the removal of Plaintiff Braxton and then replaced him with Defendant Stokes (the Town's former White mayor). TAC ¶¶ 98-101. The replacement of the first Black mayor of Newbern with a former White mayor supports the inference that race motivated the Defendants. *See Dillard v. Town of North Johns,* 717 F. Supp. at 1476.

With the removal of Plaintiff Braxton, the Defendants maintained white control of town government. TAC ¶¶ 118-137.  Indeed, the maintenance of white control of a town whose residents are overwhelming Black had motivated the decision to not hold elections for decades. *See supra* Factual Background. Because Plaintiff Braxton upset the "status quo" by becoming the first Black resident to qualify as Mayor, the Defendants undertook actions described in the TAC "to prevent Plaintiffs from exercising their official duties," and to "prevent Black voters and candidates from participating in the Defendants' special election." *Id.* 133.

Plaintiffs' allegations more than plausibly show how Defendants' actions violated Plaintiffs' rights because of their race. *See e.g.,* In *Powers v. CSX Transportation*, 105 F. Supp. 2d 1295, 1314 (S.D. Ala. 2000) (holding an allegation that the defendant had a policy of not placing

rail crossings in majority black neighborhoods a sufficient pleading of discriminatory motive); *Griffin v. Breckenridge*, 403 U.S. 88, 96–97, 91 S. Ct. 1790, 1795–96, 29 L. Ed. 2d 338 (1971).

The Defendants' reliance on *Dean v. Warren*, 12 F.4 1248 (11th Cir. 2021) is misplaced. In *Dean*, the plaintiffs alleged that defendants engaged in a racially motivated civil conspiracy to prevent Black high schoolers from kneeling during the national anthem as a form of protest against racial injustice. *Id.* at 1254-55. The Eleventh Circuit found that the plaintiff failed to properly plead a civil conspiracy claim because the complaint did not contain sufficient allegations that defendants' conduct was motivated by race-based animus. *Id.* at 1256. The court found that the plaintiff's complaint only "contains two allegations that arguably support her theory" that defendants were motivated by race. *Id.* Here, by contrast, the TAC repeatedly and clearly alleges that the Plaintiffs' race alone motivated the Defendants' actions. *See* TAC ¶¶ 2, 25-26, 31, 41, 45-65. Indeed, Defendants' chief purpose for undertaking the actions alleged in the TAC was to preserve and maintain white control of the Town's government.

### b.  The Second Amended Complaint Adequately Alleges an Unlawful Agreement Under Section 1985(3).

To plausibly allege a conspiracy under Section 1985(3) the Plaintiff must allege facts from which an agreement or understanding to violate Plaintiffs' rights may be inferred. *See*, *N.R. v. Sch. Bd. of Okaloosa Cnty.*, 418 F. Supp. 3d 957, 999 (N.D. Fla. 2019). An agreement may be inferred "from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct." *Am. Fed'n of Labor and Congress of Indus. Orgs. v. City of Miami, FL*, 637 F.3d 1178, 1192 (11th Cir. 2011).

Here, Plaintiffs allege that Defendants acted together when they jointly *inter alia* (1) maintained their hand-me-down governance policy; (2) decided to hold a secret meeting to adopt resolutions to conduct a special election; failed to give notice of the election; (3) purported to re-

appoint themselves as mayor and town councilmembers; (4) secretly signed the Oath of Office; (5) repeatedly met in secret; (6) denied Plaintiffs' access to Town documents, information, and buildings; (7) purported to vote Plaintiff Braxton out of office; and (8) held themselves out as purported town councilmembers. *See* TAC ¶¶ 55-91.

This is more than enough to show Defendants had an agreement to violate Plaintiffs' rights. *See e.g., N.R. v. Sch. Bd. of Okaloosa Cnty.*, 418 F. Supp. 3d at 999 (holding that the plaintiff had plausibly alleged an understanding among school district officials to deprive him of his substantive due process and equal protections rights because he alleged that (1) the school officials knew about reports of abuse but took no action; (2) that the school officials misrepresented the nature and extent of the abuse and (3) that the school officials allegedly engaged in intimidation and retaliation against an employee who reported abuse); *Powers v. CSX Transportation*, 105 F. Supp. 2d at 1315 (holding that an allegation that the "defendants jointly established a policy of race discrimination in the provision of railroad crossing safety devices" was sufficient to allege an agreement for purposes of Section 1985(3)); *Odom v. City of Anniston*, 2023 U.S. Dist. LEXIS 159216 at *47 (N.D. Ala. Sept. 8, 2023) (denying summary judgment against one of the defendants finding that reasonable jurors could infer a conspiracy because the City manager testified about "meetings and communications" with the defendant and a co-conspirator urging dismissal of the plaintiff; that the defendant and co-conspirator emphasized the need to hire someone of a different race to replace the plaintiff; and the defendant publicly thanked his co-conspirator for helping out on these things).

Defendants, again, seize on only a few allegations in Plaintiffs' Complaint in arguing that Plaintiffs' allegations of a conspiracy are "conclusory." Defs.' Br. 15. On the contrary, Plaintiffs' allegations of a common agreement are robust. And moreover, Defendants concede throughout

their motion to dismiss that they have acted together to fulfill a common purpose. *See supra*; Defs.'

Br. 7-8. As such, Defendants' argument here is meritless and should be denied.

## **CONCLUSION**

For all the reasons set forth above, Plaintiffs respectfully request that the Court deny

Defendants' Motion to Dismiss and Motion to Strike in their entirety.

Dated: March 25, 2024                                   Respectfully submitted,

                                                        */s/Morenike Fajana*
                                                        Morenike Fajana

**NAACP LEGAL DEFENSE AND**              **QUINN, CONNOR, WEAVER,**
**EDUCATION FUND, INC.**                 **DAVIES & ROUCO, LLP**

*/s/ Morenike Fajana*                    */s/ Richard P. Rouco*
Morenike Fajana*                         Richard P. Rouco
Leah Wong*                               George N. Davies
40 Rector Street, 5th Floor              2 – 20th Street North, Suite 930
New York, NY 10006                       Birmingham, AL 35203
(212) 217-1690                           T: 205-870-9989
mfajana@naacpldf.org                     Fax. 205-803-4143
lzwong@naacpldf.org                      rrouco@qcwdr.com
                                         gdavies@qcwdr.com

 ***Counsel for Plaintiffs***
  *Admitted pro hac vice

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2024, I presented the foregoing Opposition to Defendants' Second Motion to Dismiss for filing and uploading to the CM/ECF system which will send notification of such filing to all parties.

Respectfully Submitted,

*/s/ Morenike Fajana*

Morenike Fajana
NAACP Legal Defense
& Educational Fund
40 Rector Street, 5th Floor
New York, NY 10006
(212) 217-1690
mfajana@naacpldf.org