**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| Patrick Braxton, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> Haywood Stokes, III, *et al.*, <br><br> *Defendants*. | Civil Action No. 2:23-CV-00127-KD-N |

**PLAINTIFFS' SURREPLY IN OPPOSITION TO**
**DEFENDANTS' SECOND MOTION TO DISMISS**

i

## INTRODUCTION

Defendants' motion to dismiss the Third Amended Complaint ("TAC") should be denied. None of the new arguments raised for the first time in Defendants' reply brief have any merit. *See generally* Defs.' Reply Br. in Supp. of Their Mot. to Dismiss ("Defs.' Reply"), ECF No. 84. Defendants continue to fail to engage with Plaintiffs' factual allegations, misstate the relevant legal standards, and attempt to present their own factual allegations—all of which are improper at this stage of the litigation.

## ARGUMENT

I. **PLAINTIFF PATRICK BRAXTON FOLLOWED ALABAMA LAW IN QUALIFYING FOR THE 2020 MUNICIPAL ELECTIONS, AND IN THE ALTERNATIVE, PLAINTIFFS SEEK A NEW ELECTION FOR MAYOR.**

The TAC clearly alleges that Plaintiff Braxton was legally qualified to run for mayor in the 2020 election—*despite* the failure of the Town of Newbern and Defendants to provide Plaintiff Braxton and the other Plaintiffs with accurate or timely information about the upcoming elections. TAC ¶¶ 41-44, ECF No. 75; Ala. Code § 11-46-26; *see also* Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss ("Pls.' MTD Opp.") at 23, ECF No. 82. Alabama law required Defendant Stokes—as the outgoing mayor in office in 2020—to advertise the upcoming elections. Ala. Code § 11-46-22. Defendants' attempt to argue that Plaintiff Braxton's election to the role of mayor was illegal because *Defendants* failed to provide notice of this election, Defs.' Reply at 2, is illogical, as well as factually and legally wrong. Plaintiff Braxton was the only candidate who followed the law by properly filing his statements of candidacy and economic interests in accordance with Alabama law. TAC ¶¶ 43-44. Before his election in 2020, it was Defendant Stokes, and not Plaintiff Braxton, who had the purported legal responsibility to notify Newbern voters about the election. *Id.* ¶ 52. The TAC does not allege that Plaintiff Braxton kept elections a secret when he was a candidate or mayor. If any Newbern municipal elections in 2020—such as the election in which only Plaintiff

1

Braxton legally qualified for, or the special election in which Defendants conspired to keep a secret from the Black residents of Newbern—were illegal, it is because of Defendants' actions or inaction, and not the actions of Plaintiff Braxton.

Even if Defendants' unsupportable position that their failure to notify the public about the November 2020 elections invalidated Plaintiff Braxton's win were correct, it would only preclude Plaintiff Braxton from claiming injuries as a candidate or his claim to the office of mayor. *Id*. ¶ 42. Even if those claims are dismissed, the TAC separately alleges that Defendants violated all Plaintiffs' rights as voters due to Defendants' failure to notify the public of the November 2020 elections and prior elections, *id*. ¶¶ 157-181, and the Court should grant both new mayoral and town council elections for Newbern residents to decide their duly elected officials to remedy these injuries.

## II.    PLAINTIFFS' DUE PROECSS RIGHTS WERE VIOLATED NOT BECAUSE THE DEFENDANTS REMAINED IN OFFICE, BUT BECAUSE THEY HELD A SECRET ELECTION IN THEIR PURPORTED OFFICIAL ROLES.

In Section V of their reply brief, Defendants argue that Plaintiffs' due process rights were not violated because the Alabama Code mandates incumbent officers to remain in office until their successors are elected and qualified. Defs.' Reply at 7. Rather than refute the plausibility of Plaintiffs' claim that Defendants failed to provide notice for a special election, Defendants improperly and repeatedly try to conflate multiple issues. That Defendants, as purported incumbents from a hand-me-down governance system, could be allowed to stay in office until their successors shall be elected, does not address Plaintiffs' allegation of *how* the Defendants' successors were elected. As the TAC alleges, Defendants' successors were "elected" through a secret illegal special election, which violated the Plaintiffs' constitutional rights and amounted to Defendants effectively "re-appointing" themselves to the Town Council. *See* TAC ¶¶ 39-65.

2

As such, Plaintiffs requested relief from this Court for an entirely new election for the town council because Defendants, when remaining in their office, held uncontested "elections" without giving any notice to voters or their potential opponents to even qualify for such election. *Id*. ¶ 107. When Defendants failed to provide notice of the one election they purportedly held, *de facto* appointing themselves to town council again, it amounted to a perpetuation of the existing fundamentally unfair hand-me-down governance system, violating Plaintiffs' right to vote as they had for decades. *Id*. ¶¶ 49, 107.

Defendants' reply further misconstrues Plaintiffs' straightforward and well-pled due process claims in new ways. First, Defendants inaccurately insist that Plaintiffs alleged a right to maintain their town council appointments. Defs. Reply at 2-3. Plaintiffs allege no such property interest. Plaintiffs allege a due process claim in their constitutional right to vote. *See* Pls.' MTD Opp. 17-20; TAC ¶¶ 157-168.

Second, Defendants now argue that Plaintiffs' due process rights were not violated, because per Alabama's Code, a councilmember can be appointed by other councilmembers only when there is a vacancy. Defs.' Reply at 3. But Defendants never contend with how Defendants were in their appointed roles in the first place nor with Plaintiffs' clear allegations that Defendants violated the Constitution and state law in failing to hold elections for decades. This fact—which Defendants have previously admitted to (*see* Defs.' Answer to the First Am. Compl. ("Defs.' Answer") ¶ 20, ECF No. 3)—requires the Court to find that Plaintiffs have satisfied the pleading standard. *See Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1271 (11th Cir. 2020). Defendants also never contend with the fact that they did not provide notice to anyone but themselves about the 2020 special election they held for the first time in town history. *See* TAC ¶¶ 157-68. An election process violates due process if it is fundamentally unfair or otherwise unconstitutionally burdens the right

3

to vote. *See Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983); *Duncan v. Poythress*, 657 F.2d 691, 704 (5th Cir. 1981). When there is "broad-gauged unfairness," such as Black residents of Newbern continuing to have no opportunity to participate in any elections, the Court has the power to call for a new election. *Duncan*, 657 F.2d at 703; *see also Gonzalez v. Kemp*, 470 F. Supp. 3d 1343, 1352 (N.D. Ga. 2020), *aff'd*, 978 F. 3d 1266 (11th Cir. 2020).

Thus, *Gonzales* is still apt here. As Defendants acknowledge, in *Gonzales*, the Court found that defendants violated the Constitution by allowing an appointed official to serve beyond the remainder of their term and in failing to hold elections for that position as required by state law. *Gonzales v. Governor of Georgia*, 978 F. 3d 1266. Here, when Defendants similarly failed to hold elections and effectively reappointed themselves to office in an uncontested election which only they knew about, they also effectively refused to hold any election at all—in violation of state law.

To be clear, Plaintiffs allege violations of due process against all Defendants who were responsible for failing to host any elections for decades—and they also allege a violation of due process specifically for the 2020 special election Defendants admit to holding, that was held without notice to nearly every Black resident. Defendants admit to not having provided elections for decades. Defs.' Answer ¶ 20. Plaintiffs pled more than plausible facts that the only election held was a secret one without notice to anyone except for Defendants. *See* TAC ¶¶ 39-65.

These well-pleaded allegations set forth a clear federal constitutional claim. The First and Fourteenth Amendments protect "the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968); *see Anderson v. Celebrezze*, 460 U.S. 780, 787-788 (1983). An official may violate the fundamental right to vote where, as here, Defendants engage in a pattern of conduct that "erodes the democratic process" in failing to "properly [] carry out the state ordained electoral process.'" *Duncan*, 657

4

F.2d at 704 (citations omitted) (also explaining that the right to vote implicates "substantive" due process).

### III.   PLAINTIFFS HAVE ADEQUATELY ALLEGED A CONSPIRACY CLAIM WHERE DEFENDANTS WERE MOTIVATED BY DISCRIMINATION.

In Section VI of their reply brief, Defendants reiterate they were following Alabama law by remaining in office and holding a meeting to hold a special election. Defs.' Reply at 9-10. Defendants then assert with no support that they therefore did not have a racially discriminatory motive. *Id*. This conclusory argument, again, is not sufficient to dispute Plaintiffs' well-plead allegations.

First, Plaintiffs' TAC adequately alleges that race motivated the Defendants' actions for their § 1985(3) claims. *See e.g., Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997); *Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146-47 (11th Cir. 1996). A plaintiff can allege discriminatory intent through direct or circumstantial evidence. *See Maldonado v. Firstservice Residential, Inc.*, 2021 U.S. Dist. LEXIS 114302, at *13 (S.D. Tex. June 18, 2021) (citing *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017)).

Plaintiffs allege sufficient facts from which the Court can plausibly infer that the Defendants conspired to prevent the Plaintiff Braxton and his appointed town council from taking office and exercising any authority because Defendants sought to maintain white control of Newbern's municipal government. TAC ¶¶ 55, 58-62, 64-92. Given Plaintiffs' allegations regarding Defendants' conduct and Hale County's history of racial discrimination in voting, the alleged unlawful agreement to prevent Newbern's Black residents from constituting a majority of the town's governing offices is more than plausible. Because Plaintiff Braxton upset the "status quo" by becoming the first Black resident to qualify as mayor, the Defendants undertook actions described in the TAC "to prevent Plaintiffs from exercising their official duties," and to "prevent

Black voters and candidates from participating in the Defendants' special election." *Id.* ¶ 133. Then, Defendants also orchestrated the removal of Plaintiff Braxton and then replaced him with Defendant Stokes (the town's former white mayor). *Id*. ¶¶ 98-101. Furthermore, with the removal of Plaintiff Braxton, the Defendants maintained majority-white control of the town government. *Id*. ¶¶ 118-137. The replacement of the first Black mayor of Newbern with a former white mayor supports the inference that race motivated the Defendants. *See Dillard v. Town of North Johns,* 717 F. Supp. 1471, 1476 (M.D. Ala. 1989).

Second, Plaintiffs adequately pled facts that no notice was given for a town council meeting and special election. TAC ¶¶ 55-58. Plaintiffs did not see notice of any official meetings of special elections in the newspaper or public places in the city or town, as required by Ala. Code § 11-46-22. Defendants also admit that this was the first election ever held in decades but have yet to explain in any of their briefings how they notified the residents of Newbern to participate in such a momentous occasion. Defs.' Answer ¶ 20. Plaintiffs' allegations more than plausibly show how Defendants conspired to hold a secret meeting and secret special election to violate Plaintiffs' rights because of their race. *See e.g.,* In *Powers v. CSX Transportation*, 105 F. Supp. 2d 1295, 1314 (S.D. Ala. 2000) (holding an allegation that the defendant had a policy of not placing rail crossings in majority black neighborhoods a sufficient pleading of discriminatory motive); *Griffin v. Breckenridge*, 403 U.S. 88, 96–97 (1971).

### IV. PLAINTIFFS' OFFICIAL CAPACITY CLAIMS SHOULD NOT BE DISMISSED.

In Section VII of their reply brief, Defendants argue that because Plaintiffs have not alleged individual capacity claims, all claims against the individual Defendants in their official capacity should be dismissed with prejudice. Defs.' Reply at 10-11.

At the outset, Defendants' argument fails to consider that Plaintiffs' claims are based on conduct committed by Defendants as both *public* and *private* actors. *See e.g.,* TAC ¶¶ 15-19; 21-26, 31, 49-65. The precise bounds of Defendants' official governmental actions, and at which times Defendants were properly acting under color of law, strike at the heart of this dispute.

Second, Plaintiffs' TAC sufficiently and properly pled claims against Defendants in their official capacities. The TAC names the individuals who continue to hold themselves out as mayor and town councilmembers of Newbern, and who, upon information and belief, previously held such municipal positions; maintained the hand-me-down governance policy; failed to administer municipal election; and failed to give notice of any municipal elections, including the 2020 illegal special election. *See id.* In doing so, Plaintiffs have clearly sought relief against the municipal officials who have "the responsibility for making law or setting policy in any given area of a local government's business." *McMillian v. Johnson*, 88 F.3d 1554, 1577 (11th Cir 1996). If Defendants were holding themselves out to be the official town council in 2020 and prior, they were the officials directly responsible for administering municipal elections and providing notice of those elections. *See* Ala. Code § 11-46-22.

Indeed, the Eleventh Circuit has held that to establish personal liability in a Section 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right" and that the official's "policy or custom" played a part in the violation of federal law. *Yeldell v. Cooper Green Hosp.*, Inc., 956 F.2d 1056, 1060 (11th Cir. 1992) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quotations removed)). Plaintiffs have adequately alleged that Defendants were either acting under color of state law when they held themselves out to be town officials and held a secret special election, or, in the alternative, that they were continuing the "policy or custom" of the hand-me-down governance system that took place for decades in

Newbern. *See* TAC ¶¶ 115, 118, 120, 131, 136, 161; Pls.' MTD Opp. 20-22. Given their intimate involvement with the actions giving rise to the TAC, including the Defendants in their individual and official capacities in this litigation ensures that Plaintiffs obtain complete injunctive and declaratory relief.

## CONCLUSION

For all the reasons set forth above and in their initial opposition brief, Plaintiffs respectfully request that the Court deny Defendants' Second Motion to Dismiss in its entirety.

Dated: April 17, 2024

*/s/ Leah Wong*
Leah Wong

**NAACP LEGAL DEFENSE AND EDUCATION FUND, INC.**

*/s/ Leah Wong*
Leah Wong*
Morenike Fajana*
40 Rector Street, 5th Floor
New York, NY 10006
(212) 217-1690
mfajana@naacpldf.org
lzwong@naacpldf.org

***Counsel for Plaintiffs***
**Admitted pro hac vice*

**QUINN, CONNOR, WEAVER, DAVIES & ROUCO, LLP**

/s/ *Richard P. Rouco*
Richard P. Rouco
George N. Davies
2 – 20th Street North, Suite 930
Birmingham, AL 35203
T: 205-870-9989
Fax. 205-803-4143
rrouco@qcwdr.com
gdavies@qcwdr.com

8

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2024, I presented the foregoing Surreply to Defendants' Second Motion to Dismiss for filing and uploading to the CM/ECF system which will send notification of such filing to all parties.

Respectfully Submitted,

*/s/ Leah Wong*

Leah Wong
NAACP Legal Defense
& Educational Fund
40 Rector Street, 5th Floor
New York, NY 10006
(212) 217-1690
lwong@naacpldf.org