IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PATRICK BRAXTON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Civil Action No. 2:23-00127-KD-N |
| | ) |
| HAYWOOD STOKES, III, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on Plaintiffs Patrick Braxton, James Ballard, Barbara Patrick, Janice Quarles, Wanda Scott, and Dorothy Holley's (collectively "Plaintiffs") Motion for a Preliminary Injunction, (Doc. 81), and Memorandum in Support, (Doc. 81-1), Defendants Haywood Stokes, III, Gary Broussard, Jesse Donald Leverett, Voncille Brown Thomas, Willie Richard Tucker, and Town of Newbern's ("Newbern") (collectively "Defendants") Response, (Doc. 87), and Plaintiffs' Reply, (Doc. 89). The parties were present for an evidentiary hearing on the motion on May 6, 2024.

Plaintiffs allege extraordinary facts, namely that Defendants operate a "hand-me-down governance" system in the town of Newbern, Alabama, pursuant to which no regular municipal elections for mayor and Town Council (or "alderman") have been held since at least the mid-1960s. (Doc. 75 at 7-8; Doc. 81-1 at 8). A town of only 133 people as of the 2020 census, Newbern is about 67% black. (Doc. 81-1 at 8). Though Alabama law specifies that all towns hold elections every four years for the positions of mayor and town alderman, Ala. Code. § 11-43-2(a), (d); § 11-46-21(a), a series of white mayors and aldermen apparently "handed down" these positions until 2020. (Doc. 81-1 at 8-9). In 2020, Mr. Braxton decided to run for mayor, and in

1

July of that year, he qualified as a candidate by submitting the necessary forms and paying the requisite $50 fee. (Doc. 75 at 12-13; Doc. 81-6 at 4). Plaintiffs contend that Mr. Braxton became Newbern's first black mayor by operation of law since he was the only person who qualified, and that, in keeping with town custom, he appointed his own slate of Town Councilmembers. (Doc. 75 at 14-15). Subsequently, "[t]o stop Mayor Braxton from appointing his own majority-Black town council, Defendants Stokes, Broussard, Leverett, Thomas, and Tucker held a secret meeting where they purported to act as the town council and adopted resolutions to conduct a special election for the first time in Newbern history." (Doc. 81-1 at 11). Despite Alabama law regulating the notice that the mayor must give of all municipal elections, § 11-46-22, no Plaintiff saw or heard of a new Town Council election. (Doc. 81-6 at 5; Doc. 90-1 at 3; Doc. 90-2 at 3; Doc. 90-3 at 4; Doc. 90-4 at 3). "Only Defendants Stokes, Broussard, Leverett, Thomas, and Tucker knew about the special election, thus only they qualified as candidates and thereby effectively and fraudulently re-appointed themselves as the Town Council." (Doc. 81-1 at 12). While Braxton and his appointees were able to hold one meeting together, the locks were changed to Town Hall and Plaintiffs have not had uninterrupted access to the building since April 2021. (Doc. 81-6 at 5-6; Doc. 75 at 19). Meanwhile, Defendants Stokes, Broussard, Leverett, Thomas, and Tucker continue to hold themselves out as the Mayor and Town Councilmembers of Newbern. (Doc. 75 at 22).

In their motion for a preliminary injunction, Plaintiffs ask that the Court order a new, official election to be held at the same time as the November 2024 presidential election. (Doc. 81-1 at 27, 29). As explained at the preliminary injunction hearing and *infra*, while the Court finds that Plaintiffs are likely to succeed on the merits of their constitutional claim, Plaintiffs did not show irreparable harm for purposes of receiving *preliminary* injunctive relief. Thus, Plaintiffs' Motion,

(Doc. 81), is **DENIED**. Rather, the matter is specially set for a bench trial September 9-10, 2024, at the U.S. District Court for the Southern District of Alabama's Selma Courthouse, 908 Alabama Avenue, Selma, Alabama 36701.

I.	LEGAL STANDARD

"A preliminary injunction may be issued to protect the plaintiff from irreparable injury and to preserve the district court's power to render a meaningful decision after a trial on the merits." Canal Auth. of State of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974).[1] A party seeking a preliminary injunction must show that (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction will not be adverse to the public interest if issued. Vita Pharms., Inc. v. Alfieri, 23 F.4th 1282, 1290-91 (11th Cir. 2022). The third and fourth factors merge when the government is the opposing party. Gonzalez v. Governor of Ga., 978 F.3d 1266, 1271 (11th Cir. 2020). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." Forsyth Cnty. v. U.S. Army Corps of Eng'rs, 633 F.3d 1032, 1039 (11th Cir. 2011); State of Tex. v. Seatrain Int'l, S.A., 518 F.2d 175, 179 (5th Cir. 1975) ("[W]e must remember that granting a preliminary injunction is the exception rather than the rule."). Because the movant "must meet all four prerequisites to obtain a preliminary injunction, failure to meet even one dooms" its application. Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1248 (11th Cir. 2016). The district court has substantial discretion when weighing these factors to determine whether preliminary injunctive relief is warranted. Gonzalez, 978 F.3d at 1271 n.13.

---

[1] Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

3

When ruling on a motion for a preliminary injunction, the district court is to take all the well-pleaded allegations in the complaint and uncontroverted affidavits filed in support of the motion as true. Elrod v. Burns, 427 U.S. 347, 350 n.1 (1976). "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (cleaned up).

## II.   ANALYSIS

### A. Plaintiffs are Likely to Succeed on the Merits of Their Constitutional Claim

The likelihood of success on the merits factor – the first of the four that Plaintiffs must show to receive preliminary injunctive relief – is "generally the most important." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1232 (11th Cir. 2005) (per curiam). "A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success." Id. (emphasis included).

The First and Fourteenth Amendments protect "right of qualified voters, regardless of their political persuasion, to cast their votes effectively." William v. Rhodes, 393 U.S. 23, 30 (1968); Duncan v. Poythress, 657 F.2d 691, 704 (5th Cir. 1981) ("Just as the equal protection clause of the fourteenth amendment prohibits state officials from unlawfully diluting the right to vote, the due process clause of the fourteenth amendment forbids state officials from unlawfully eliminating that fundamental right."). The "right to be free from the purposeful decision of state officials to deny the citizens of a state the right to vote in an election mandated by law" is one of the Due Process Clause's "substantive guarantees." Duncan, 657 F.2d at 705. "No right is more precious in a free country than that of having a voice in the election of those who make the laws

4

under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." Wesberry v. Sanders, 376 U.S. 1, 17 (1964); see also Yick Wo v. Hopkins, 118 U.S. 356, 370 (1886) (stating that the right to vote is "regarded as a fundamental political right" because it is "preservative of all rights").

Courts evaluate the constitutionality of a challenged election law by applying the Anderson-Burdick test. Democratic Exec. Comm. of Fla. v. Lee, 915 F.3d 1312, 1318 (11th Cir. 2019) (citing Anderson v. Celebrezze, 460 U.S. 780, 789 (1983), and Burdick v. Takushi, 504 U.S. 428, 434 (1992)). "That test requires us to weigh the character and magnitude of the asserted First and Fourteenth Amendment injury against the state's proffered justifications for the burdens imposed by the rule, taking into consideration the extent to which those justifications require the burden to plaintiffs' rights." Lee, 915 F.3d at 1318.

The level of scrutiny that a court applies when reviewing a challenged election restriction depends on the degree that it limits the right to vote. See id. at 1319 ("The more a challenged law burdens the right to vote, the stricter the scrutiny to which we subject that law."). "Severe" restrictions on the right to vote merit strict scrutiny; that is, they must be "narrowly drawn" to advance a "compelling" state interest to pass judicial review. Norman v. Reed, 502 U.S. 279, 289 (1992). On the other hand, if the burdens imposed are only "reasonable, nondiscriminatory restrictions, then a State's important regulatory interests will usually be enough to justify it." New Ga. Project v. Raffensperger, 976 F.3d 1278, 1280 (11th Cir. 2020) (cleaned up). "[T]o subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest . . . would tie the hands of States seeking to assure that elections are operated equitably and efficiently." Burdick, 504 U.S. at 433.

5

As an initial matter, proof of discriminatory intent is not required to establish an undue burden on the right to vote under the Anderson-Burdick test. Lee, 915 F.3d at 1319 n.9 (explaining that discriminatory intent need not be proven under the Anderson-Burdick inquiry because the Equal Protection Clause is not implicated). When state officials deny the right enshrined in state law to participate in local elections, the courts are "faced with patent and fundamental unfairness in the electoral process." Duncan, 657 F.2d at 703 (citing Griffin v. Burns, 570 F.2d 1065, 1077 (1st Cir. 1978)); see also Gonzalez, 978 F.3d at 1271 (finding that since a state statute, pursuant to which the secretary of state cancelled the forthcoming election for the office of district attorney, violated the Georgia Constitution,[2] it "also [rose] to the level of a violation of the Due Process Clause of the Fourteenth Amendment"). "In this chiaroscuro corner of the law, one thing is clear: total and complete disenfranchisement of the electorate as a whole is patently and fundamentally unfair (and, hence, amenable to rectification in a federal court)." Bonas v. Town of N. Smithfield, 265 F.3d 69, 75 (1st Cir. 2001).

Alabama law mandates that all towns hold elections every four years for the positions of mayor and town alderman. § 11-43-2(a), (d); § 11-46-21(a) ("The regular municipal elections in cities and towns shall be held on the fourth Tuesday in August 1984, and quadrennially thereafter . . . .") (2020).[3] State law also details the notice that the mayor must give of all municipal elections. § 11-46-22.[4] The mayor must give notice of *all* municipal elections by publishing notice of it in a newspaper published in the town, and if no newspaper is published in

---

[2] In Gonzalez, the Supreme Court of Georgia answered the Eleventh Circuit's certified question that the state statute at issue violated the Georgia Constitution. 978 F.3d at 1270.
[3] Effective January 1, 2022, § 11-46-21(a) was amended such that regular municipal elections in cities and towns shall be held on the fourth Tuesday in August 2025.
[4] Effective January 1, 2022, § 11-46-22(a) was amended such that when the notice is of a regular election, the notice shall be published on the second Tuesday in June preceding the election or the first business day thereafter.

the town, by posting notices in three public places in the town. Id.[5]  Notice shall be published by certain dates preceding the election, depending on whether the election is regular or special. Id.

Plaintiffs argue that Defendants' actions Alabama law in at least two ways. First, Defendants have failed to regularly hold elections for mayor and town alderman and notify the electorate in the manner stipulated by state law. (Doc. 81-1 at 17); see § 11-43-2(a), (d); § 11-46-21(a); § 11-46-22. "It is fundamentally unfair and constitutionally impermissible for public officials to disenfranchise voters in violation of state law so that they may fill the seats of government through the power of appointment." Duncan, 657 F.2d at 704; Gonzalez, 978 F.3d at 1271 (same). Second, while the preliminary injunction hearing made clear that a factual dispute exists as to whether Stokes gave notice of the special October 2020 Town Council election, the mayor is obligated to do so under state law. (Doc. 81-1 at 17); see § 11-46-22. Notice is particularly important in the special election context,[6] where non-compliance with statutory notice specifications is "fatal to the validity of the election." McAdams, 40 So. 2d at 85; see also Ex parte Scrushy, 262 So. 3d 638, 641-45 (Ala. 2018) (refusing to issue a writ of mandamus against a circuit court order that voided a special election for town alderman in Hayneville for, *inter alia*, not giving at least two months' notice of the special election). More fundamental is the question whether Defendants, purportedly unelected as of August 2020, had the authority to call this special election in the first place.

As indicated at the preliminary injunction hearing, the Court finds that Plaintiffs are likely to succeed on the merits of their substantive due process claim; that is, Defendants' practices probably severely burden the right to vote protected by the First and Fourteenth

---

[5] § 11-46-22(b) provides for the form that the notice shall take.
[6] "This being a special, and not a general election where the law fixes the time, the requirements as to notice were mandatory and not directory . . . ." McAdams v. Ne Smith, 40 So. 2d 84, 85 (Ala. 1949).

7

Amendments and, given that Defendants submit no interest that is served by the status quo and that the alleged hand-me-down system defies state law, the challenged conduct is unlikely to survive strict scrutiny. See Lee, 915 F.3d at 1318 ("A law that severely burdens the right to vote must be narrowly drawn to serve a compelling state interest.").[7]

### B. Plaintiffs Will Not Suffer Irreparable Harm Unless the Preliminary Injunction Issues

A showing of irreparable harm is the sine qua non of injunctive relief. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (per curiam). Plaintiffs moving for preliminary injunctive relief must demonstrate that irreparable injury is likely in the absence of an injunction. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); see also Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990) ("The injury must be neither remote nor speculative, but actual and imminent . . . An injury is irreparable only if it cannot be undone through monetary remedies.") (internal quotations and citations omitted). A mere possibility of irreparable harm is not enough. Winter, 555 U.S. at 22. "As a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." Benisek v. Lamone, 585 U.S. 155, 158 (2018) (per curiam); cf. Yakus v. U.S., 321 U.S. 414, 440 (1944) ("The award of an interlocutory injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff.").

An injury is irreparable "if it cannot be undone though monetary remedies." Scott v. Roberts, 612 F.3d 1279, 1295 (11th Cir. 2010). As the Eleventh Circuit recently explained,

---

[7] Plaintiffs also argue that Defendants' hand-me-down governance system violates Section 2 of the Voting Rights Act. (Doc. 81-1 at 18-27). Having concluded that Plaintiffs are likely to succeed on the merits of their claim under the First and Fourteenth Amendments, which is sufficient to satisfy the first prerequisite for the availability preliminary injunctive relief, it is unnecessary to address this part of the motion.

8

> Casting a vote has no monetary value. It is nothing other than the opportunity to participate in the collective decisionmaking of a democratic society and to add one's own perspective to that of his or her fellow citizens. Each vote provides a unique opportunity to do that. No compensation a court can offer could undo that loss. The denial of the opportunity to cast a vote that a person may otherwise be entitled to cast—even once—is an irreparable harm.
>
> Indeed, several of our sister circuits have similarly concluded that missing the opportunity to vote in an election is an irreparable harm for the purposes of a preliminary injunction. *See, e.g.*, *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("[O]nce the election occurs, there can be no do-over and no redress. The injury to these voters is real and completely irreparable if nothing is done to enjoin this law."); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote ... constitutes irreparable injury." (citing *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986))). The district court did not abuse its discretion in agreeing.

Jones v. Governor of Fla., 950 F.3d 795, 828-29 (11th Cir. 2020) (per curiam); accord Singleton v. Merrill, 582 F. Supp. 3d 924, 1026 (N.D. Ala. 2022) (per curiam) ("Courts routinely deem restrictions on fundamental voting rights irreparable injury."). Missing the opportunity to vote in a forthcoming election in contravention of state law and thus the Fourteenth Amendment amounts to irreparable harm. Gonzalez v. Kemp, 470 F. Supp. 3d 1343, 1351 (N.D. Ga. 2020), aff'd, Gonzalez, 978 F.3d at 1271-72.

That said, the movant must show *imminent* irreparable harm for a preliminary injunction to issue. Ala. v. U.S. Dep't of Com., 546 F. Supp. 3d 1057, 1073 (M.D. Ala. 2021). "Indeed, the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." Wreal, 840 F.3d at 1248 (emphasis included). Here, as set forth on the record, Plaintiffs conceded during the preliminary injunction hearing that the contention in their Reply that "ensuring that a new election can be held in November 2024 is also significant because, under the Alabama Code, Defendants' current terms are due to expire this November" is incorrect. (See Doc. 89 at 5) (citing Ala. Code § 11-43-2(b)). On the contrary, Newbern's next regular municipal elections are to be held on the fourth

Tuesday in August 2025 and quadrennially thereafter. See § 11-46-21(a). That the Court has ordered a specially set trial for this case to be held during September 2024 – nearly one year before the date set under Alabama law for Newbern's next regular municipal election – undermines the element of urgency needed for preliminary injunctive relief. Cf. U.S. v. Lambert, 695 F.2d 536, 539-40 (11th Cir. 1983) ("It must be emphasized that the subject of this appeal is the denial of an injunction pending a final hearing and decision by the court. The purpose of such a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Preservation of the status quo enables the court to render a meaningful decision on the merits. Thus the harm considered by the district court is necessarily confined to that which might occur in the interval between ruling on the preliminary injunction and trial on the merits.") (cleaned up).

Relatedly, the moving party must generally show reasonable diligence, a maxim that "is as true in election cases as elsewhere." Benisek, 585 U.S. at 159. "A delay in seeking a preliminary injunction of even only a few months–although not necessarily fatal–militates against a finding of irreparable harm." Wreal, 840 F.3d at 1248; U.S. Dep't of Com., 546 F. Supp. 3d at 1073 ("The preliminary injunction standard's focus on *imminent* harm also places an onus on a plaintiff to demonstrate some sense of 'urgency or necessity,' and by sitting on his or her rights for even a few months, a plaintiff has squandered any corresponding entitlement to injunctive relief.") (emphasis included). Here, the gravamen of the asserted wrongs is a hand-me-down governance system that has resulted in no mayoral elections since at least the 1960s and purportedly culminated in the brazen special election for Town Council in October 2020 in which only the individual Defendants were able to vote and elected themselves. Defendants Stokes, Broussard, Leverett, Thomas, and Tucker were supposedly sworn in as the putative Town

Council on November 12, 2020, and Plaintiffs held their one and only meeting in Town Hall in late November 2020. (Doc. 75 at 17-18). And yet, Plaintiffs initiated this litigation in Dallas County Circuit Court in November 2022 and moved for a preliminary injunction in late March 2024. (Docs. 1-3, 81). "Simply put, equity aids the vigilant, not those who sleep on their rights." Arthur v. Allen, 574 F. Supp. 2d 1252, 1256 (S.D. Ala. 2008). Accordingly, because Plaintiffs have fallen short of establishing irreparable harm between now and the September 2024 trial, Plaintiffs' Motion, (Doc. 81), is **DENIED**.

      **DONE** and **ORDERED** this **10th** day of **May 2024**.

                                          **s / Kristi K. DuBose**
                                          **KRISTI K. DuBOSE**
                                          **UNITED STATES DISTRICT JUDGE**