## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **PATRICK BRAXTON, *et al*.,** | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO. 2:23-00127-KD-N** |
| | ) |
| **HAYWOOD STOKES III, *et al*.,** | ) |
| **Defendants.** | ) |

### <u>ORDER</u>

This action is before the Court on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss with brief in support collectively filed by Defendants Haywood Stokes III, Gary Broussard, Jesse Leverett, Voncille Thomas, Willie Tucker, and the Town of Newbern (Docs. 76, 77), an opposition response collectively filed by Plaintiffs Patrick Braxton, James Ballard, Barbara Patrick, Janice Quarles, Wanda Scott, and Dorothy Holley (Doc. 82), Defendants' reply in support of their motion (Doc. 84), and Plaintiffs' surreply (Doc. 88).[1] Upon consideration and for the reasons stated herein, the motion is **GRANTED in part** and **DENIED in part**.

### *I.    Background*

#### A.  Procedural History

Plaintiff Braxton, at the time proceeding without counsel (*pro se*), initiated this action November 21, 2022 in the Circuit Court of Dallas County, Alabama. (Doc. 2-1). After obtaining counsel, Braxton and the CA Plaintiffs filed an amended complaint on March 17, 2023, against the Town, the Newbern Defendants, Lyn Thiebe (a U.S. Postal Service employee), and People's

---

1 The following defined terms are used throughout:

- "**Defendants**" means Stokes, Broussard, Leverett, Thomas, Tucker, and the Town of Newbern
- "**Newbern Defendants**" means Stokes, Broussard, Leverett, Thomas, and Tucker
- "**Plaintiffs**" means Braxton, Ballard, Patrick, Quarles, Scott, and Holley
- "**Council-Appointee or CA Plaintiffs**" means Ballard, Patrick, Quarles, and Scott

Bank of Greensboro ("People's Bank"). (Doc. 2-8). Thiebe removed under 28 U.S.C. § 1442 on April 14, 2023, and Defendants removed with consent of People's Bank's pursuant to 28 U.S.C. § 1441 on April 17, 2023. (Docs. 1, 2). After the Newbern Defendants and People's Bank filed answers (Docs. 3, 5), an initial Fed. R. Civ. P. 16(b) scheduling order was entered June 7, 2023. (Doc. 16). Since removal, Thiebe and People's Bank have been dismissed without prejudice. (Docs. 30, 51). Discovery was temporarily stayed in August 2023. (Doc. 43). Plaintiffs filed a second amended complaint ("SAC") with the Court's leave on October 5, 2023. (Doc. 57).

On October 25, 2023, Defendants filed a motion to dismiss the SAC under Fed. R. Civ. P. 12(b)(6) with brief in support and moved to strike certain allegations therein. (Docs. 61, 62, 63). Following briefing, U.S. Magistrate Judge Katherine P. Nelson recommended the SAC be dismissed without prejudice as a shotgun pleading, that leave be granted for Plaintiffs to file a third amended complaint ("TAC"), and that Defendants' motions to dismiss and strike be denied as moot. (Doc. 70). No objections were filed.

On February 20, 2024, Plaintiffs filed a second motion to amend the complaint and a motion to lift the temporary stay of discovery. (Docs. 71, 72). On February 23, 2024, the Court adopted the Magistrate Judge's report and recommendations, dismissing the SAC without prejudice as a shotgun pleading, granting Plaintiffs leave to file a TAC, and denying Defendants' motions to dismiss and strike as moot. (Doc. 73). Plaintiffs' second motion to amend was also granted this date (Doc. 74), and the operative TAC was filed February 23, 2024. (Doc. 75).

Defendants filed the present Fed. R. Civ. P. 12(b)(6) motion to dismiss the TAC with brief in support on March 8, 2024. (Docs. 76, 77). That motion is briefed and ripe for disposition. (Docs. 82, 84, 88). Plaintiffs' motion to lift the temporary stay of discovery was granted April 2, 2024.

(Doc. 85). Plaintiffs have also filed a motion for a preliminary injunction, which was denied by the Court on May 3, 2024. (Doc. 93)

**B. Factual Allegations[2]**

Newbern's municipal government is comprised of a mayor and five aldermen (or "councilmembers"). Yet, the Town had not held an election for those positions in more than sixty years. Instead, it has historically practiced a form of "hand-me-down governance," where the sitting mayor would pick a successor to inherit the position and that successor would then appoint residents to serve as councilmembers. This system began in the 1960s and proliferated without alteration or challenge until 2020. Under hand-me-down governance, residents do not vote for their leadership, do not receive notice of elections, are not informed of when or how to become candidates for office, and are generally unable to select candidates of their choice.

As of April 2020, the Town's de facto municipal government was led by Defendant Stokes, who had held himself out as mayor since inheriting the position from his predecessor in 2008, and Defendants Broussard, Leverett, Thomas, and Tucker, each of whom held themselves out as councilmembers following appointment by Stokes.[3] Stokes, Broussard, Leverett, and Tucker are white, and Thomas is black. Thomas is the first and only black resident to serve as a

---

2 The Court takes the well-pled factual allegations in the TAC (Doc. 75) as true and views them in the light most favorable to Plaintiffs. *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

3 As pled, the Newbern Defendants were, and presently hold themselves out to be, at least the Town's de facto municipal government officials, "exercis[ing] the duties of a de jure office under color of appointment or election." *Malone v. State*, 406 So. 2d 1060, 1062 (Ala. Crim. App. 1981). Alabama has codified the de facto officer doctrine:

> The official acts of any person in possession of a public office and exercising the functions thereof shall be valid and binding as official acts in regard to all persons interested or affected thereby, whether such person is lawfully entitled to hold office or not and whether such person is lawfully qualified or not, but such person shall be liable to all penalties imposed by law for usurping or unlawfully holding office or for exercising the functions thereof without lawful right or without being qualified according to law.

Ala. Code § 36-1-2. *See Nguyen v. United States*, 539 U.S. 69, 77 (2003) (explaining the de facto officer doctrine "confers validity upon acts performed by a person acting under color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient") (citation omitted)).

councilmember. Prior to 2020, the Town has never had a black mayor.

In 2020, Braxton decided to challenge Stokes and run for mayor in the upcoming municipal elections. No notice of elections was given, and residents were not provided information on when or how to become candidates for municipal office. Despite this, Braxton complied with the necessary requirements and qualified as a candidate for the mayoral race before the deadline. He was the only resident to qualify as a mayoral candidate, and no residents qualified for any councilmember seat.  As the only candidate to qualify, Plaintiffs assert Braxton became mayor by operation of law.

In keeping with past practice, and apparently with the blessing of the county's probate judge, Braxton set out to recruit residents to serve as councilmembers in line with the Town's practice of hand-me-down governance. He selected the CA Plaintiffs to serve in those roles and appointed them, just as his predecessor had done.

Rather than permitting hand-me-down governance to take its course, the Newbern Defendants, spearheaded by Stokes, sought to prevent the CA Plaintiffs from assuming de facto power in Newbern. Acting in their roles as the Town's outgoing de facto municipal government, they adopted a resolution which set a special election for October 6, 2020, to fill the soon-to-be vacant councilmember seats, as no residents had qualified. Town residents were not made aware of the meeting during which this resolution was adopted and did not know about the upcoming special election. As a result, only five votes were cast in that special election. Those votes were cast only by the Newbern Defendants for themselves (Stokes ran for a council seat). The result, unsurprisingly, was a clean sweep in their collective favor.

Unaware of that ongoing effort by the Newbern Defendants, Braxton and the CA Plaintiffs were sworn into office November 2, 2020, and an oath of office was filed with the county's probate

judge. Ten days later, the Newbern Defendants, now holding themselves out as the newly elected councilmembers via special election, also executed an oath of office with the city attorney that was subsequently filed with the county's probate judge.

In November 2020, Braxton and the CA Plaintiffs held their first and only meeting in Newbern's town hall. Subsequently, the locks were changed to prevent their access. Braxton has also been denied access to the Town's records, financial documents, and mail. From November 2020 to April 2021, the Newbern Defendants held themselves out as councilmembers atop the Town's municipal government but held no public meetings. During that time, Braxton and the CA Plaintiffs also held themselves out as mayor and councilmembers, conducting meetings of their own. In April 2021, the Newbern Defendants, purportedly acting in their official capacities, removed Braxton from office for failing to attend meetings of which he says he was not made aware and elevated Stokes from councilmember to mayor.

At present, Stokes holds himself out as mayor and the other Newbern Defendants hold themselves out as councilmembers. So too do Braxton and the CA Plaintiffs, who continue to hold meetings and attempt to govern the Town to the extent possible, largely without avail. This action followed.

## II.    *Legal Standard*

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (citation omitted)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged… [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court accepts well-pled factual allegations as true and construes them in the light most favorable to the non-movant. *Speaker*, 623 F.3d at 1379 (11th Cir. 2010) (citation omitted).

## III.   Discussion

### A.  Shotgun Pleading Deficiencies

The TAC still bears some hallmarks of a shotgun pleading. *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015). Though deficiencies persist (and are noted where appropriate), the most notable concerns hamstringing the TAC's predecessor have been remedied. (*See* Doc. 70). Moreover, Defendants do not seek dismissal on shotgun pleading grounds, and they appear to fully comprehend the claims raised against them. Because the TAC largely "does what complaints must do" under Rules 8(a) and 10 by providing adequate notice of the claims and the grounds on which they rest, the Court proceeds to address Defendants' motion to dismiss. *See Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200, 1208 (11th Cir. 2019).

### B.  Official Capacity Claims

As an initial matter, the Court construes the Third Amended Complaint (TAC) as raising only official capacity claims against the Newbern Defendants for several reasons.

First, the "course of proceedings" indicate only official capacity claims are brought against these defendants. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).[4] Relatedly, the TAC is rife

---

4 Specifically, the SAC did not specify any capacity in which these defendants were being sued, and presuming personal capacity, the Newbern Defendants argued for dismissal primarily on qualified immunity grounds – a defense

with references to the Newbern Defendants exercising the power and authority of the Town's municipal government offices and each underlying (and allegedly unconstitutional) deprivation arises from acts or omissions related to those offices, e.g., failing to give notice of elections, failing to hold elections, failing to provide candidate paperwork, holding council meetings, passing ordinances or resolutions, etc. (*See generally*, Doc. 75). Second, after the Magistrate Judge noted Plaintiffs' failure to make such a distinction as being a contributing factor to the SAC's shotgun pleading deficiencies (*see* Doc. 70, PageID.785-86), the face of the current and operative TAC lists each defendant in the case caption **"in [his or her] official capacity**," but makes no mention of personal (or individual) capacity. (Doc. 75, PageID.852). *See Lundgren v. McDaniel*, 814 F.2d 600, 604 n.2 (11th Cir. 1987) (noting case captions are "helpful guidance" but "not determinative as to the parties to the action"). Third, Plaintiffs broadly seek declaratory, injunctive, and equitable relief on all counts, but also seeks damages relief specifically from the Town only with respect to Counts III, IV, and V. (Doc. 75, PageID.893). Because this is the only damages request, all other relief sought is necessarily declaratory, injunctive, or equitable in nature, and such relief would not be available from these defendants if sued in their personal capacities. *See Ingalls v. U.S. Space & Rocket Ctr.*, 2015 U.S. Dist. LEXIS 97383, *20-21 (M.D. Ala. July 27, 2015) (collecting cases

---

only available in personal capacity actions. (Docs. 57, 62, 63). *Accord Graham*, 473 U.S. at 166-68. Plaintiffs' opposition response countered by asserting "Defendants are not entitled to qualified immunity because the individual Defendants are sued in their official capacities, and Plaintiffs do not seek damages against Defendants in their individual capacity." (Doc. 65, PageID.730). Later in that same filing, Plaintiffs further disclaimed any personal capacity claims, at least with respect to the SAC. (*See* Doc. 65, PageID.751) ("Defendants are sued in their official capacity for injunctive and declaratory relief and, thus, are not entitled to quali[fied] immunity") and ("For the avoidance of doubt, Plaintiffs submit that their damages relief is sought against only the Defendant Town of Newbern")). Further, in Plaintiffs' motion to modify stay, they asserted "Plaintiffs have added claims solely for injunctive relief against the individual Defendants in their official capacities, which are also not subject to qualified immunity defenses." (Doc. 72, PageID.843) (citing *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 n.9 (11th Cir. 1995) ("Qualified immunity does not pertain to claims for injunctive or declaratory relief, because these claims are considered official capacity claims against the relevant governmental entity."))). These defendants might also have been able to raise legislative immunity had they been sued in their personal capacities. *See Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (holding local legislators entitled to absolute immunity from personal § 1983 liability for legislative activities).

for conclusion that injunctive and declaratory relief is unavailable under § 1983 from government officials sued in their individual capacities), aff'd 679 F. App'x 935 (11th Cir. Feb. 16, 2017) (unpublished).

The Newbern Defendants, sued in their official capacities only, are named in each of the TAC's seven counts. (Doc. 75). Four of those counts are brought under 42 U.S.C. § 1983 (Counts I, II, VI, and VII), and the remaining three are brought under 42 U.S.C. § 1985(3) (Counts III, IV, and V). (Id.).[5] Named in all but one of these counts (the exception being Count V) is the Town of Newbern, a municipal defendant. (Id.).

1.  Dismissal of Newbern Defendants from § 1983 Claims (Counts I, II, VI, VII)

It is well-settled that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Graham, 473 U.S. at 166. This is because "where a plaintiff brings an action against a public official in his official capacity, the suit is against the office that official represents, not the official himself." Welch v. Laney, 57 F.3d 1004, 1009 (11th Cir. 1995) (citation omitted). See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (explaining official capacity actions are "in actuality, suits directly against the [municipality] that the officer represents"). Based on these principles, the Supreme Court explained in Graham there is "no longer a need to bring official-capacity actions against local government officials," because under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), "local government units can be sued directly for damages and injunctive or declaratory relief." 473 U.S. at 167, n.14.

As a result, "courts in this Circuit routinely and overwhelmingly deem suits against both a local government official in his official capacity and the entity of which the officer is an agent to be redundant and dismiss the official-capacity claims against the individual defendant on that

---

5 All counts are also brought pursuant to 42 U.S.C. § 1988. (Doc. 75, PageID.854). Count VII is brought under § 1983 in conjunction with applicable provisions of the Voting Rights Act of 1965, 52 U.S.C. § 10101 et seq. (Id.).

basis." *M.R. v. Bd. of Sch. Comm'rs of Mobile Count*y, 2012 U.S. Dist. LEXIS 99535, \*9-10 (S.D. Ala. July 18, 2012) (collecting cases). *See e.g., BVCV High Point, LLC v. City of Prattville*, 2022 U.S. Dist. LEXIS 154894, \*10-11 (M.D. Ala. Aug. 29, 2022) (dismissing § 1983 claims against individual defendants in their official capacities as redundant because the city was also a defendant). This same dismissal-for-redundancy principle has been applied to claims under the Voting Rights Act of 1965, 52 U.S.C. § 10101 et seq., (hereinafter, "VRA"). *See Ala. State Conf. of the NAACP v. Pleasant Grove*, 372 F. Supp. 3d 1333, 1339 (N.D. Ala. Apr. 2, 2019) (dismissing VRA claims against mayor and city council members in their official capacities as duplicative and redundant of claims against city) (citations omitted).

As pled, each of Plaintiffs' § 1983 claims are properly construed as being asserted against the offices they represent (i.e., the office of mayor and offices of the councilmembers), and the ultimate party in interest – regardless of the type of relief sought – is the Town itself.

Defendants point to *Welch*, *Graham*, and *Yeldell v. Cooper Green Hosp., Inc*., 956 F.2d 1056 (11th Cir. 1992) to essentially argue that because the Newbern Defendants are sued solely in their official capacities and not individually, the presence of the Town itself as a defendant makes the Newbern Defendants' presence redundant and warrants their dismissal. (Doc. 84). Because that argument was raised for the first time in Defendants' reply, the Magistrate Judge granted Plaintiffs' leave to file a surreply. (Doc. 88; *see* Doc. 86).[6]

Plaintiffs' surreply does little to clear up their position, proffering Defendants fail to consider how the TAC implicates "conduct committed by Defendants as both *public* and *private*

---

[6] Generally, "arguments raised for the first time in a reply brief are not properly before a reviewing court." *Herring v. Sec'y, Dep't of Corr*., 397 F.3d 1338, 1342 (11th Cir. 2005). However, courts have discretion "to permit the filing of a sur-reply… when 'a valid reason for additional briefing exists, such as where the movant raises a new argument in its reply brief.'" *First Specialty Ins. Corp. v. 633 Partners, Ltd*., 300 F. App'x 777, 789 (11th Cir. 2008) (per curiam). *See also* S.D. Ala. CivLR 7(i) (permitting discretionary modifications to typical motion practice guidelines).

actors" and appearing to backtrack on the contention that they are not bringing individual capacity claims against the Newbern Defendants. (Doc. 88, PageID.1162) (emphasis in original). For example, they point to *Yeldell*, 956 F.2d at 1060, in making a point about "establish[ing] personal liability" in a § 1983 claim, and close by asserting inclusion of "the Defendants in their individual and official capacities in this litigation ensures that Plaintiffs obtain complete injunctive and declaratory relief." (Doc. 88, PageID.1162).

Plaintiffs do not cite to *Ex Parte Young*, 209 U.S. 123 (1909), but seemingly attempt to invoke it by arguing the Newbern Defendants should remain to "ensure[] that Plaintiffs obtain complete injunctive and declaratory relief." (Doc. 88, PageID.1162). *Ex Parte Young* stands for the principle "that official capacity suits for prospective relief to enjoin state officials from enforcing unconstitutional acts are not deemed to be suits against the state and thus are not barred by the Eleventh Amendment." *Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005). Stated differently, Plaintiffs imply the Newbern Defendants are necessary defendants because in the event injunctive or declaratory relief is awarded, these individual persons would be the ones to practically carry out such a grant of relief (e.g., by passing a resolution to implement a special election in accordance with a court order directing them to do the same).

*Ex Parte Young* does not apply here, however, because a municipality is not deemed to be the state or an instrumentality of the state for Eleventh Amendment purposes and the Newbern Defendants, as de facto municipal officials, are not state officials protected by Eleventh Amendment immunity. *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 47 (1994) ("Political subdivisions exists solely at the whim and behest of their State, yet cities and counties do not enjoy Eleventh Amendment immunity") (cleaned up)). Instead, the Town is a "person" subject to suit itself under § 1983. *Monell*, 436 U.S. at 690. The Supreme Court explains:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

*Id*.

The practical reality that the Newbern Defendants, acting in their official capacities, would be the ones to carry out any such grant of relief does not change the fact that any relief ultimately awarded would come from the Town itself, not from these individual defendants, who are powerless to implement such relief on their own and could only do so as a governing municipal body. *See* Ala. Code § 11-43-43 ("All legislative power and other powers granted to cities and towns shall be exercised by the council…"). Other courts in this circuit and beyond have reached similar conclusions in related factual circumstances. *See e.g., Murray v. Birmingham Bd. of Educ*., 2013 U.S. Dist. LEXIS 156225 (N.D. Ala. Oct. 13, 2013) (declining to revisit dismissal of official capacity claims against school board members due to the presence of a request for injunctive relief in part because board members "are powerless to act except by a vote of the board"); *M.R*., 2012 U.S. Dist. LEXIS 99535 at *17-18 (finding "Plaintiffs insist[ence] that official-capacity claims against municipal officials are not redundant of claims against the municipality as long as they seek injunctive relief, not money damages" to be unpersuasive and seeing no indication that "courts in this Circuit have treated the *Busby* rule any differently for claims of prospective injunctive relief than for those involving money damages"); *Daniel v. Huntsville City Bd. of Educ*., 2017 U.S. Dist. LEXIS 52708, *7 (N.D. Ala. Apr. 6, 2017) (finding *Murray*, 2013 U.S. Dist. LEXIS 99535, persuasive and concluding "official capacity claims for injunctive relief against the individual members of the Board… are redundant of the claims asserted against the Board itself"); *Vondra v. City of Billings*, 2023 U.S. Dist. LEXIS 8025, *11 (D. Mont. Jan. 17, 2023) ("Because the City of Billings is subject to suit under § 1983, this is not a case in which injunctive relief must

be sought against individual officials because the governmental entity is entitled to sovereign immunity. To the contrary, the injunctive relief that Plaintiffs seek against the Individual Defendants may be obtained through their claims against the City of Billings.").

For these reasons, all § 1983 official capacity claims against the Newbern Defendants are **DISMISSED without prejudice**, as they are redundant of claims against the Town itself.

2.   Dismissal of § 1985(3) Claims

The TAC includes three conspiracy counts brought under § 1985(3). (Doc. 75). Two allege a conspiracy among the Town and the Newbern Defendants in their official capacities to deny Plaintiffs' right to vote generally on account of hand-me-down governance (Count III) and specifically in the October 2020 special election (Count IV), while the third alleges a conspiracy among only the Newbern Defendants to deny Braxton and the CA Plaintiffs' "right to take office" by (1) preventing Braxton "from performing the duties of his job as Mayor" and (2) preventing the CA Plaintiffs "from taking office" and "exercising power" (Count V). (Doc. 75, PageID.884-87).[7]

Section 1985(3), in relevant part, makes it unlawful for:

> two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws…, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

In *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), the Supreme Court distilled a claim under § 1985(3) into its essential elements, subsequently interpreted by the Eleventh Circuit as requiring: (1) A conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of privileges and immunities under

---

7 Count V is a shotgun count because it includes two different conspiracies: one aimed at preventing Braxton from performing his duties as mayor, and a second aimed at preventing the CA Plaintiffs from taking office.

the laws; (3) an act in furtherance of the conspiracy; and (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627 (11th Cir. 1992) (citations omitted).

The parties' briefing primarily focuses on the second of these elements, going back and forth over whether Plaintiffs have included sufficient non-conclusory allegations to satisfy the "animus" standard. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275-76 (1993) (explaining the animus standard requires a showing of actions taken "because of, not merely in spite of, its adverse effects upon an identifiable group") (cleaned up)). (*See* Docs. 77, 72, 84). Secondarily, Defendants argue the TAC fails to plausibly allege a "meeting of the minds," which implicates the first element of a § 1985(3) claim, or the "conspiracy" itself. *Lucero*, 954 F.2d at 627. (Doc. 77). To satisfy this first element, a plaintiff "must show an agreement between 'two or more persons' to deprive him of his civil rights." *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) (citation omitted).

The Court need not address the parties' animus contentions, as Defendants' secondary argument hits on a more fundamental flaw with Counts III and IV: because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," *Graham*, 473 U.S. at 166, both of these counts alleging a conspiracy between the Newbern Defendants (in their official capacities) and the Town itself (the underlying entity on whose behalf the Newbern Defendants are acting) is essentially a conspiracy claim against only the Town, and a municipality cannot conspire with itself under the intracorporate conspiracy doctrine.

Under this doctrine "a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation," and the Eleventh Circuit has recognized the doctrine's applicability to public government entities. *Dickerson*, 200

F.3d at 767 (citation omitted). *See Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977), aff'g 421 F. Supp. 12, 15 (E.D. La 1976) (public university and university officials cannot conspire among themselves);[8] *Denney v. City of Albany*, 247 F.3d 1172, 1190-91 (11th Cir. 2001) (city and city employees cannot conspire among themselves); *Runs After v. United States*, 766 F.2d 347, 354 (8th Cir. 1985) ("The Tribal Council as an entity or governmental body cannot conspire with itself"), cited with approval by *Dickerson*, 200 F.3d at 767 (holding county jail and its employees considered "a single legal entity that cannot conspire with itself"). While worth noting that most cases applying this doctrine do so in the context of an agency relationship between a government entity and its employees (as opposed to elected officials), courts in this circuit and elsewhere have found the doctrine applies with equal force in both circumstances. *See Horne v. Russell County Comm'n*, 295 F. Supp. 2d 1289, 1294 (M.D. Ala. Dec. 9, 2003) (dismissing § 1985 official capacity claims against commissioners after finding no "distinction drawn in the case law between agents of the governmental entity who are elected officials and agents of the governmental entity who are employees"); *Allen v. City of Chicago*, 828 F. Supp. 543, 564 (N.D. Ill. July 2, 1993) (finding mayor, city commissioner, and aldermen to be incapable of conspiring with each other for purposes of § 1985(3) as "members of the same municipal corporation"); *Rabkin v. Dean*, 856 F. Supp. 543, 552 (N.D. Cal. June 22, 1994) (holding § 1985(3) claim "cannot be brought against the City for conspiring with its own officials").[9] Accordingly, Counts III and IV are due to be **DISMISSED with prejudice** under the intracorporate conspiracy doctrine because the allegedly conspiratorial

---

8 In *Bonner v. City of Prichard*, 661 F.3d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

9 The Eleventh Circuit has recognized only one exception to this doctrine for "conduct [that] violates the federal criminal code." *Grider v. City of Auburn*, 618 F.3d 1240, 1263 (11th Cir. 2010) (citation omitted). That exception does not apply here. Although other circuits have recognized additional exceptions which could present a closer question given the facts alleged, the Court declines to take up consideration of them here given the Eleventh Circuit's express reservation of the same. *See Edwards v. Dothan City Sch.*, 82 F.4th 1306, 1312 (11th Cir. 2023) (noting reservation of "independent stake" or "series of discriminatory acts" exceptions) (citations omitted)).

acts or omission underlying it are attributed to "a single legal entity that cannot conspire with itself." *Dickerson,* 200 F.3d at 767.

Count V is not barred by the intracorporate conspiracy doctrine because it implicates co-conspirators other than the Town and/or the Newbern Defendants – namely, People's Bank, Thiebe, and the Town's accountant Steve Kirk. (Doc. 75). However, this count fails to state a claim for want of an underlying constitutional violation. Even assuming Braxton and the CA Plaintiffs are the "rightful" members of the Town's government, § 1985(3) is not itself a source of any substantive rights. *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 833 (1983). And while there is no doubt the right to vote is fundamental, "the right to vote stops short of the right to hold office." *Smith v. Winter*, 717 F.2d 191, 198 (5th Cir. 1983). Simply put, this conspiracy alleges Defendants deprived Plaintiffs of their "federal right to take office," but there is no such cognizable right. *See Snowden v. Hughes*, 321 U.S. 1, 7 (1944) (citations omitted) ("[A]n unlawful denial by state action of a right to state political office is not a denial of a right to property or of liberty secured by the due process clause"); *Claussen v. Pence*, 826 F.3d 381, 385 (7th Cir 2016) ("[T]he right to assume or hold office is not a fundamental right"); *King v. Lumpkin*, 2012 U.S. Dist. LEXIS 193706, *23 n.11 (N.D. Ga. July 12, 2012) ("[T]he right to hold public office is not a fundamental right protected by the Constitution…"). Accordingly, Count V is due to be **DISMISSED with prejudice** for want of an underlying constitutional violation.

### C. Newbern's *Monell* Liability (§ 1983 Claims)

As explained above, because all § 1983 claims naming the Newbern Defendants in their official capacities are the functional equivalent of asserting those claims against the Town itself, Counts I, II, VI, and VII, are properly construed as being asserted solely against the Town.

Under *Monell* and its progeny, municipalities like Newbern "can be sued directly under §

1983 for monetary, declaratory, or injunctive relief." 436 U.S. at 690. However, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *Baxter v. Roberts*, 54 F.4th 1241, 1269 (11th Cir. 2022) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)) (emphasis in original). Theories of liability sounding purely in *respondent superior* are not cognizable. *Monell*, 436 U.S. at 691. Ultimately, a plaintiff must prove the municipality's policy, custom or practice caused the relevant constitutional deprivation. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). *See Graham*, 473 U.S. at 166 ("[A] governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation").

There are three recognized routes by which a plaintiff can establish a municipality's liability. First, a plaintiff can point to "an official policy enacted by its legislative body" – for example, an ordinance or resolution passed by the municipality's governing body. *Hoefling*, 811 F.3d at 1279 (citation omitted). *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body…because even a single decision by such a body unquestionably constitutes an official act of government policy") (citations omitted)). Second, a plaintiff can point to a municipality's unofficial custom or widespread practice that, "although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1981 (11th Cir. 1991) (cleaned up). To bring a viable custom or practice claim under this approach, plaintiffs must demonstrate the municipality was the "moving force" behind the deprivation. *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). *See id.* ("That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and

16

must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."). Third, a plaintiff can point to a final policymaker who "possesses final authority to establish municipal policy with respect to the action ordered." *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991) (citing *Pembaur*, 475 U.S. at 481). Determining whether municipal officials possess final policymaking authority is a question of state law. *See id.* (citations omitted). In addition to a direct action by a final policymaker, municipalities can also be liable under this approach "if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operation procedure" or "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Hoefling*, 811 F.3d at 1279 (citations omitted).

The § 1983 claims in Counts I, II, VI, and VII seek to hold the Town directly liable for injunctive or declaratory relief. (Doc. 75). Defendants broadly argue all § 1983 claims against the Town should be dismissed because Plaintiffs fail to point to an underlying constitutional violation, fail to point to a relevant policy, custom or practice, and fail to show causation. (Doc. 77). For the reasons explained below, the Court is not persuaded.

1. Counts I and II (Equal Protection)

The intentional racial discrimination claims in Counts I and II are rooted in equal protection. (Doc. 75).[10] These claims are predicated on the third approach to municipal liability

---

[10] The Court construes both Counts I and II as arising under equal protection. However, briefing reveals confusion on these counts, particularly Count II, which on its face appears to implicate Braxton and the CA Plaintiffs' claims to office either as a matter of procedural due process or as a property interest (i.e., deprivations of their right to take or hold office as "rightfully appointed Town Councilmembers" and deprivations of their ability to discharge the "duties, responsibilities and privileges" of those offices). (*See* Doc. 75). To the extent the Court implied such claims had been raised during the preliminary injunction hearing, such comments did not fully account for Plaintiffs' plain and subsequent disclaimer of them, at least as it relates to the CA Plaintiffs, in later briefing. (*See* Doc. 82, PageID.1107-08) (stating the CA Plaintiffs "do not allege a procedural due process claim or property interest in their town council appointments") and (Doc. 88, PageID.1157) ("Defendants inaccurately insists Plaintiffs alleged a right to maintain

with the Newbern Defendants being the relevant final policymakers. (*See* Docs. 75, 82). Plaintiffs allege substantive deprivations of their right to vote and ability to qualify as candidates for office, both because of hand-me-down governance and its impact on the 2020 regular municipal elections (Count I) and with respect to the implementation and holding of the October 2020 special election (Count II), contending those deprivations flowed from discrimination on the basis of race.

Under Alabama law, municipalities like Newbern are governed by a mayor and five councilmembers. Ala. Code § 11-43-2(b). Further, "[a]ll legislative power and other powers granted to cities and towns shall be exercised by the council…" Ala. Code § 11-43-43. When it comes to elections, the code imposes a duty on the mayor to give notice of all municipal elections. Ala. Code § 11-46-22(a). In the event elections are not held on the required day, the municipal governing body is responsible for setting an appropriate election. Ala. Code § 11-46-72. Where only one candidate qualifies for a given office, both the mayor and councilmembers have responsibilities to effectuate and certify that person's election to office. Ala. Code § 11-46-26. Based on the foregoing, at all times relevant here, Plaintiffs have identified the Newbern Defendants as the final policymakers with respect to local elections. Because they are the Town's final policymakers with respect to local elections under state law, if they are found to have violated Plaintiffs' rights, the Town can fairly be held liable under *Monell*. *Brown*, 923 F.2d at 1480.

The Eleventh Circuit has explained that "[a] successful equal protection claim under the Fourteenth Amendment requires proof of *both* an intent to discriminate and actual discriminatory effect." *Greater Birmingham Ministries v. Sec'y of Ala*., 992 F.3d 1299, 1321 (11th Cir. 2021) (emphasis in original) (citations omitted), reh'g en banc denied, *Greater Birmingham Ministries*

---

their town council appointments… Plaintiffs allege no such property interest.")). However, it is still unclear whether Plaintiff Braxton is asserting a procedural due process claim. ("The Town Council has prevented Braxton from fulfilling his responsibilities as Mayor and have effectively removed him from the position without any process." TAC at p. 22).

*v. Sec'y of State for Ala.*, 997 F.3d 1363 (11th Cir. 2021).[11]

As a general matter, is exceedingly rare in this day for courts to encounter government action taken with open and obvious discriminatory purpose or intent. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977) (noting that in such circumstances, or in those rare cases where facially neutral government action indicates "a clear pattern, unexplainable on grounds other than race," impact alone may be determinative). Instead, most equal protection challenges deal with government action that is facially neutral.

At the pleading stage, a plaintiff need only plausibly allege racial discrimination was, at least in part, a substantial or motivating factor behind the challenged government action. *Arlington Heights,* 429 U.S. at 265-66; *GBM*, 992 F.3d at 1321. *See Brown v. Board of School Comm'rs,* 706 F.2d 1103, 1106-07 (11th Cir. 1983) (explaining that continuation or maintenance of a practice enacted with discriminatory purpose or intent violates the equal protection clause). Ascertaining whether discriminatory purpose or intent underlies government action "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights*, 429 U.S. at 266. This inquiry is guided by a series of factors, derived from both *Arlington Heights* and subsequent Eleventh Circuit caselaw, including: (1) the impact of the challenged law; (2) the historical background; (3) the specific sequence of events leading up to its passage; (4) procedural and substantive departures; and (5) the contemporary statements and actions of key legislators. And, because these factors are not exhaustive, the list has been supplemented: (6) the foreseeability of the disparate impact; (7) knowledge of that impact, and (8) the availability of less discriminatory alternatives. *GBM*, 992 F.3d at 1322 (citation omitted).

Defendants' argument for dismissal of these counts is cursory at best, making no mention

---

11 Hereinafter referred to as "*GBM*" and "*GBM II*," respectively.

of the *Arlington Heights* factors, and only generally arguing Plaintiffs fail to allege discriminatory purpose or intent underlying hand-me-down governance or with respect to implementation of the October 2020 special election. (Doc. 77). They make no mention of discriminatory effect in their motion addressing these counts, and their argument on discriminatory intent is unpersuasive, especially when compared to Plaintiffs' detailed discussion of the *Arlington Heights* factors and accompanying factual allegations. (Doc. 75; *see* Doc. 82).

As to Count I, Plaintiffs ostensibly concede in briefing that hand-me-down governance is at least facially neutral but provide more than enough support for the Court to plausibly infer that the practice grew from discriminatory roots. (Doc. 75; *see* Doc. 82). Moreover, they describe how the practice continued over time through the 2020 regular municipal elections, while the final policymaker Newbern Defendants were in de facto control. (*Id.*). At a minimum, Plaintiffs have plausibly alleged acquiescence by the Town's final policymakers to this discriminatory-at-inception practice and/or maintenance of it by a failure to correct. (*Id.*). Further, because this practice continued unabated for the last sixty-plus years, the final policymaker Newbern Defendants' deviation from it (by way of implementing the October 2020 special election without notice) in the potential face of the Town's first all-black de facto municipal government is significant and a plausible indicator of discriminatory intent, at least in part, by those defendants which can be imputed on the Town itself for purposes of Count II. (*Id.*). *Arlington Heights,* 429 U.S. at 265-66; *GBM*, 992 F.3d at 1321. Accordingly, Defendants' motion is **DENIED** insofar as it seeks dismissal of Counts I and II.

2.  Count VI (Substantive Due Process)

This claim alleges the Town has systematically disenfranchised its residents for the last six decades by failing to provide notice of elections, the opportunity to vote in elections, any

opportunity to run or qualify for office, and the opportunity to elect representatives of their choice because hand-me-down governance (or more aptly, whoever the outgoing or incoming mayor is) pre-ordains their municipal government for them. (*See generally*, Doc. 75). This count also implicates those same deprivations specifically with respect to the October 2020 special election, which was also held without notice and disenfranchised the Town's residents. (*Id*.).

To the extent Defendants' motion seeks dismissal of this count, the Court is unpersuaded. Their opening brief does not appear to directly address either the hand-me-down governance aspect or the special election aspect of this claim. (Doc. 77). A two-pronged argument is advanced in their reply with respect to only the special election aspect of this claim, but for the reasons stated below, that argument is misplaced and ignores many of the TAC's key factual allegations.[12]

That argument begins by pointing to Ala. Code § 11-46-72, entitled "Procedure where election not held on day appointed," which provides:

> If any municipal election provided for in this article should not take place on the day appointed, the municipal corporation shall not for that cause be dissolved, but the incumbent officers shall remain in office until their successors shall be elected and qualified. The municipal governing body shall fix some day, as early as convenient, on which day said election shall be held, and the election shall be conducted in all respects as a regular election, and *the persons so elected shall hold office until the next general election and until their successors are elected and qualified*.

*Id*. (emphasis supplied). They rely upon the above-emphasized portion of this section to essentially argue that the Newbern Defendants: (1) complied with state law by remaining in office after the regular municipal 2020 election because no candidates (including themselves) were "elected and qualified" for the councilmember seats at that time, and (2) that holding the October 2020 special election was the proper action to be taken as a result. (Doc. 84).

---

12 The Magistrate Judge granted Plaintiffs' leave to file a sureply to address this argument raised by Defendants for the first time in their reply. (Doc. 86).

Plaintiffs' surreply seizes on two obvious flaws in this argument – first, they point out "Defendants never contend with how Defendants were in their appointed roles in the first place." (Doc. 88). As pled, the Newbern Defendants were appointed to their roles in a manner apparently contrary to state law, so they too were never legally "elected and qualified" for those positions. (Doc. 75). While they may have been serving in those roles de facto under color of appointment, there is an underlying factual dispute as to whether they legitimately held their positions atop Newbern's municipal government in the first place or currently. Second, and more importantly, their argument does not address Plaintiffs' allegations that the community did not receive appropriate notice of the special election or that no one voted in this election beyond themselves. (Docs. 75, 88). Thus, Defendants' motion is **DENIED** to the extent it seeks dismissal of Count VI.

3.   Count VII (VRA § 2)

Plaintiffs' § 2 claim challenges a series of practices and procedures which they contend have resulted in denial or abridgment of their collective right to vote and select candidates of their choice on account of race. (Doc. 75, PageID.889-92). This count implicates both hand-me-down governance and the October 2020 special election. (*Id.*). In relevant part, § 2 provides:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color... [a] violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

52 U.S.C. § 10301(a)-(b). A successful claim under § 2 of the VRA requires only a showing of discriminatory results and no demonstration of discriminatory intent is required. *GBM*, 992 F.3d at 1328-29. *See League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 942 (11th

Cir. 2023) ("A finding of discriminatory impact is necessary and sufficient to establish a section 2 violation.").

A violation of § 2 occurs when "the political processes leading to nomination or election are not equally open to participation by members of the relevant protected group in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Brnovich v. Democratic Nat'l Comm*., 141 S. Ct. 2331, 2337 (2021) (cleaned up). Evaluation of such a claim requires consideration of the totality of the circumstances. *Id. See Thornburg v. Gingles*, 478 U.S. 30, 47 (1986) ("The essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives.").

Addressing § 2 vote denial claims arising from a facially neutral time, place, and manner restriction in *Brnovich*, the Supreme Court set out a series of guideposts to aid lower courts in their analysis, including: (1) the size of the burden imposed, (2) deviation from standard practice in 1982, (3) disparate impact, (4) other available means of voting, and (5) strength of the state's interest in the voting practice. 141 S. Ct. at 2338-40. *See Fair Fight Action Inc. v. Raffensperger*, 593 F. Supp. 3d 1320, 1336-42 (N.D. Ga. Nov. 15, 2021) (applying *Brnovich* guideposts to § 2 vote denial claims). The *Brnovich* Court was careful to state these considerations not in terms of necessary factors or an exhaustive list and explained "any circumstance that has a logical bearing on whether voting is equally open and afford equal opportunity may be considered." 141 S. Ct. at 2338 (cleaned up).

Defendants' motion does not challenge the TAC to the extent it raises § 2 violations relating to hand-me-down governance, instead focusing only on the October 2020 special election. (Doc.

77). They summarize the crux of their argument for dismissal in a single sentence: "[I]f the facts Plaintiffs allege are taken in the light most favorable to Plaintiffs and deemed true, Defendants failed to provide notice to <u>any</u> residents, which would result in the prevention of <u>all</u> residents to participate in the election as either a candidate or voter, not just Black residents of the Town of Newbern." (Doc. 77, PageID.916) (emphasis in original).

Plaintiffs address this line of argument head on in their response in a way that blends argument relating to hand-me-down governance with argument relating to the October 2020 special election, despite Defendants only requesting dismissal of any § 2 claims implicating the latter. (Doc. 82; *see* Doc. 77). In any event, Plaintiffs overcome Defendants' boilerplate argument.

This case does not present allegations which would neatly lend themselves to application of all *Brnovich* guideposts, as Plaintiffs' allegations do not implicate a facially neutral time, place, and manner restriction. (Doc. 75). Although Plaintiffs appear to proffer the single government action taken by the final policymaker Newbern Defendants to implement that election was at least facially neutral, they contend the lack of notice or voting associated with it resulted in a disparate impact on the Town's majority-black electorate. (*Id*.). At this stage, the Court agrees these allegations are sufficient to withstand dismissal.

Only five residents received notice of the special election: four were white (Stokes, Broussard, Leverett, and Tucker) and one was black (Thomas). Put differently, 80% of those knowing about and voting in the election were white, despite the Town being predominantly black. That 80% figure is also relevant when considering that other the residents expressing interest in those positions (the CA Plaintiffs) were 100% black and allegedly excluded. (*Id*.).

Plaintiffs find support in the *Brnovich* guideposts, but their reference to the fifth is the most persuasive point of all. That guidepost looks to the strength of the government's interest in taking

the challenged action. 141 S. Ct. at 2339-40. Here, there is none. There is simply no legitimate government interest served by holding a council meeting in secret or by implementing and holding special election without providing appropriate notice of the same to the community. (Doc. 75 at ¶¶ 55-60, 178-79). Those requirements are imposed by state law, and as pled, were disregarded. *See* Ala. Code §§ 11-46-22 (requiring mayor to give notice of elections), 11-43-49 (requiring council meetings be open to the public), 11-46-72 (requiring council set a special election when election not held on designated date, to be conducted "in all respects as a regular election").

In sum, under the totality of the circumstances, Plaintiffs have viably alleged claims under § 2 of the VRA and plausibly shown the October 2020 special election led to discriminatory results, such that Defendants' motion is **DENIED** to the extent it seeks dismissal of Count VII.

## IV.   *Conclusion*

Upon consideration and for the reasons stated herein, Defendants' motion is **GRANTED in part** and **DENIED in part**:

- The individual Newbern Defendants are **DISMISSED without prejudice** from the § 1983 claims asserted in Counts I, II, VI, and VII, as any official capacity claims against them are duplicative of those same claims brought against the Town itself;

- The three § 1985(3) conspiracy claims in Counts III, IV, and V are **DISMISSED with prejudice** for reasons stated herein; and,

- Defendants' motion is **DENIED** in all other respects.

**DONE** and **ORDERED** the 14th day of May 2024.

*/s/ Kristi K. DuBose*
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**